JAMES M. NELSON – SBN 116442
nelsonj@gtlaw.com
AMBER JENE SAYLE – SBN 211999
saylea@gtlaw.com
NANCY J. DOIG – SBN 226593
doign@gtlaw.com
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709

Attorneys for Defendant
Wal-Mart Stores, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NISHA BROWN and KATHY WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., and DOES 1-50, inclusive,<br><br>      Defendants. | CASE NO. 5:09-CV-03339-EJD<br><br>DEFENDANT WAL-MART STORES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>Hearing:<br>Date:     September 9, 2011<br>Time:     9:00 a.m.<br>Judge:    Edward J. Davila<br>Courtroom 1-5th Floor |

## TABLE OF CONTENTS

I.      INTRODUCTION .........................................................................................1

II.     STATUTORY AND REGULATORY BACKGROUND...........................................3

III.    FACTUAL BACKGROUND .........................................................................4

        A.      WAL-MART'S OPERATIONS IN CALIFORNIA.....................................4

        B.      THE CHECK-OUT PROCESS AT WAL-MART VARIES FROM
                STORE-TO-STORE AND FROM LOCATION-TO-LOCATION
                WITHIN EACH STORE ...................................................................4

        C.      THE INDIVIDUAL WORK EXPERIENCES OF CASHIERS
                VARY CONSIDERABLY ..................................................................5

        D.      THE PLAINTIFFS AND THEIR CHARACTERIZATIONS OF
                WORK EXPERIENCES.....................................................................7

                1.      Nisha Brown ....................................................................7

                2.      Kathy Williamson. ............................................................7

                3.      Variations in the Named Plaintiffs' Claimed Work
                        Experiences .....................................................................8

        E.      MANAGERS EXERCISE DISCRETION AND TAKE INTO
                ACCOUNT INDIVIDUALIZED FACTORS WHEN CASHIERS
                REQUEST TO USE A STOOL...........................................................9

        F.      PLAINTIFFS' CLAIMED COMPARISON TO THE CHECK
                OUT PROCESS IN THE UNITED KINGDOM FAILS.............................10

IV.     LEGAL ARGUMENT.................................................................................10

        A.      THE STANDARDS GOVERNING CLASS CERTIFICATION .................10

        B.      THE PLAIN WORDING OF THE WAGE ORDER ITSELF
                REQUIRES THE INDIVIDUALIZED INQUIRY FATAL TO
                CLASS-WIDE ADJUDICATION.......................................................12

C.    PLAINTIFFS FAIL TO ESTABLISH THAT THERE ARE ISSUES OF LAW OR FACT COMMON TO THE PUTATIVE CLASS AS REQUIRED BY RULE 23(A). ..................................13

D.    PLAINTIFFS FAIL TO ESTABLISH THAT THEIR PROPOSED CLASS ACTION SATISFIES THE REMAINING CRITERIA OF RULE 23(A). ...............................................................................17

    1.    Plaintiffs Fail To Establish That the Putative Class Is Sufficiently Numerous To Justify Certification. ................17

    2.    Plaintiffs' Claims Are Not Typical of the Claims of the Class They Purport to Represent. .......................................17

E.    PLAINTIFFS FAIL TO SATISFY THE PREDOMINANCE AND SUPERIORITY PREREQUISITES OF RULE 23(B)(3). ............................19

    1.    The Predominance of Individualized Issues Precludes Certification. .......................................................................19

        a.    Individual Analysis Is Required. ...........................19

        b.    Wal-Mart's Affirmative Defenses Require Individualized Inquiries. .......................................21

    2.    Plaintiffs Have Not Established That Their Proposed Action Is the Superior Method of Adjudication. ...............22

        a.    Individual Issues Preclude a Finding of Manageability. ......................................................22

        b.    Administrative Remedies Are More Efficient and Expeditious Than Plaintiffs' Proposed Class Action. ............22

F.    CLASS CERTIFICATION IS ALSO INAPPROPRIATE DUE TO THE NATURE OF THE PENALTIES SOUGHT. .......................................23

V.    CONCLUSION. ..............................................................................................24

# TABLE OF AUTHORITIES

## Cases

<u>California Cases</u>

*Bright v. 99cents Only Stores*, 189 Cal. App. 4th 1472 (2010) .................................................................. 12

*Hernandez v. Chipotle Mexican Grill, Inc.*, 189 Cal App. 4th 751 (Cal. App. 2010) ............................. 13

*Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210 (2010) ......................................... 12

*Lamps Plus Overtime Cases*, 195 Cal. App. 4th 389 (Cal. App. 2011) ............................................... 13

*Tien v. Tenet Healthcare Corp.*, 192 Cal. App. 4th 1055 (Cal. App. 2011) ......................................... 13

<u>Federal Cases</u>

*Badillo v. American Tobacco Co.*, 202 F.R.D. 261 (D. Nev. 2001) ....................................................... 12

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) ............................. 21

*Cruz v. Dollar Tree Stores, Inc.*, 2011 WL 2682967 (N.D. Cal. July 8, 2011) ..................................... 15

*Gartin v. S & M Nutec LLC*, 2007 WL 1424654 (C.D. Cal. Apr. 4, 2007) ...................................... 18, 21

*Hagen v. City of Winnemucca*, 108 F.R.D. 61 (D. Nev. 1985) .............................................................. 18

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................................................ 11

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 2634248
  (W.D.Mo. July 5, 2011) ...................................................................................................................... 16

*In re Bridgestone/Firestone,* 288 F.3d 1012 (7th Cir. 2002) ................................................................ 21

*In re Computer Memories Secs. Litig.*, 111 F.R.D. 675 (N.D.Cal. 1986) ............................................. 19

*In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990) .......................................................................... 21

*In re Hotel Tel. Charges, 500 F.2d 86 (9th Cir. 1974)* ......................................................................... 22

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 268 F.R.D. 604 (N.D. Cal. 2010) .................. 16

*Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal. 2006) ......................................... 17, 20, 22

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ................................................................ 13

*Lanzarone*, 2006 WL 4393465 ............................................................................................................ 18

*Lewis v. Ford Motor Co.*, 263 F.R.D. 252 (W.D. Pa. 2009) .................................................................. 15

*M.D. Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668 (9th Cir. 1975) ..................................... 11

*Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) .................................................................................... 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001) .......................... 22

*O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404 (C.D. Cal. 2000) ..................................................... 22

*Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008) ..................................................... 13

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, --- F.3d ---, 2011
  WL 3524325, *9 (Aug. 12, 2011 6th Cir. 2011) .............................................................................. 16

*Poulos v. Caesars World, Inc.,* 379 F.3d 654 (9th Cir. 2004) .............................................................. 11

Prado-Steiman ex rel Prado v. Bush, 221 F.3d 1266 (11th Cir. 2000) ................................................ 18

*Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668 (9th Cir. 1975)............................................ 11, 18

*Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008)....................................... 13

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ................................. 17

*State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003) ................................. 23

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)................................. 10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ........................................ passim

*Walter v. Hughes Commc'ns, Inc.*, 2011 WL 2650711 (N.D. Cal. July 6, 2011).................................... 16

**California Statutes**

<u>California Labor Code</u>

§ 512(a) .................................................................................................................... 13

§ 1198.................................................................................................................... 3

<u>California Private Attorney General Act</u>

§ 2699(k) ............................................................................................. 3, 16, 23

<u>California Wage Order</u>

7-2001 .......................................................................................................... 3, 13

**Federal Statutes**

<u>Rules Enabling Act</u>

28 U.S.C. § 2072(b) ............................................................................. 21

**Other Authorities**

5 J.W. Moore, Moore's Federal Practice ¶ 23.46[1] (3d ed. 1997 & Supp. 2004)................................. 22

**Rules**

<u>Federal Rules of Civil Procedures</u>

Rule 23 .......................................................................................................... passim

Rule 23(a)...................................................................................................... passim

Rule 23(a)(1)................................................................................................. 17

Rule 23(a)(2) ................................................................................................ 13, 14

Rule 23(b) ..................................................................................... 10, 11, 20

Rule 23(b)(3)............................................................................ 11, 16, 19, 22

## I.     INTRODUCTION

Plaintiffs' claims arise from a California Wage Order which requires employers to "*provide*" seats to employees only "*when the work reasonably permits.*"  Plaintiffs urge the Court to certify a class of 28,838 associates who share the title of cashier on the theory that all such associates must perform their work in the same manner and that therefore seats are required for all.  Plaintiffs' bid for class certification rests on the assumption that the claimed work experience of one individual employed for five months as a cashier in California can fairly be extrapolated to a class of over 28,000 people and that the claims of all putative class members can be established through her representative testimony and alleged "common proof."  Neither of these assumptions is correct.

Wal-Mart uses twelve distinct check out configurations in 180 separate stores in California, each of which varies in size and operation depending on the type of store and its location.  Whether the work performed by any single cashier in any particular store at any particular check out reasonably permits the use of a seat is a highly individualized determination.  It is well established that the claimed experiences of a few cannot fairly be extrapolated to a diverse class of thousands merely because the class members share the same job title and stated responsibilities.  In light of the fact-specific inquiries necessary to adjudicate Plaintiffs' claims, Rule 23 certification should be denied.

Contrary to Plaintiffs' sweeping generalizations, the factual record demonstrates that the work performed by any individual cashier varies significantly.  Individual cashiers perform a wide range of functions which include zoning, scanning merchandise, managing returns, bagging, and maintaining the safety and cleanliness of the area.  The manner and amount of time spent by any individual cashier on any one of these functions is different depending on the particular checkout configuration, location in the store, shift, time of year, experience level, and store type.  What is more, the factual record demonstrates that the ability to use stools varies depending upon the situation.  Many associates find stools to be a hindrance and that the placement of stools in certain check-out locations poses a safety hazard, as cashiers can hurt themselves attempting to lift heavy items from a seated position and in getting on and off the stool frequently.  Whether the work performed by any individual class member reasonably permits the use of a seat turns upon factual determinations that yield a different answer for each associate.

DEN 97,586,104 v2 016436.123000

One of the principal tenets - and failings - of Plaintiffs' Motion is the bald assertion that the Wage Order imposes on employers an affirmative obligation to reconfigure and restructure their operations to accommodate seats, thereby affording all employees the opportunity to perform their jobs while seated. Yet no fair reading of the Wage Order imposes such a burden, and no legal authority supports such a sweeping obligation. Plaintiffs next point to individual Wal-Mart cashiers who have been provided seats as purported proof that the work performed by *all* cashiers must reasonably permit the use of a seat. This overreaching generalization is directly refuted by cashiers' own testimony, as check-out configurations, duties, and capabilities vary, and any decision to provide a particular cashier with a seat turns upon a discretionary and fact-specific assessment of that cashier's unique situation.

Equally detrimental to Plaintiffs' certification effort is the very wording of the Wage Order itself, which requires only that employers "provide" seats to employees where the performance of their jobs "reasonably" permits. The term "reasonably" itself elicits the need for individualized consideration. Due to the numerous variables which bear directly upon the actual work experience of any individual cashier, it cannot be said that what is reasonable in one situation is necessarily reasonable in another. Moreover, the verb "provide" has been interpreted in the context of the Wage Order to mean only that employers "make seats available" upon request, and not - as Plaintiffs assert - to ensure that every employee be supplied with a seat, irrespective of the employees' particular circumstances or preferences. To determine liability in this action would require the Court to ascertain whether any putative class member ever requested a seat, and, if so, the circumstances that led to its provision or denial. One need look no further than the named Plaintiffs themselves to highlight this critical distinction. Plaintiff Brown testified that she never requested a seat. That Plaintiffs appear to have now abandoned their class certification effort on behalf of Ms. Brown, purporting to move on behalf of Ms. Williamson only, speaks volumes about the material differences between the named plaintiffs and among the class members they purport to represent. These material differences are fatal to class certification.

The mere job title of cashier is not dispositive of the actual workday duties and experiences of any individual putative class member. Plaintiffs' theory of liability turns a blind eye to the necessity of these individualized inquiries, as it must, to try and justify certification under Rule 23. Although

Plaintiffs ask the Court to disregard these very real discrepancies in determining their Motion, to do so would run afoul of the Supreme Court's directive in *Wal-Mart Stores, Inc. v. Dukes* that the validity of each class member's claims be resolved "in one stroke." The fact-specific investigations necessary to establish liability in this context preclude satisfaction of Rule 23's requirements, chief among them commonality and predominance, and compel the denial of Plaintiffs' Motion.

## II.     STATUTORY AND REGULATORY BACKGROUND

Plaintiffs invoke the California Private Attorney General Act ("PAGA") to assert liability under section 1198 of California's Labor Code. While the Labor Code does not address, let alone require, an employer to provide seats, it does vest authority in the Industrial Welfare Commission ("IWC") to enact Wage Orders governing the hours and conditions of labor. The particular IWC Wage Order applicable to this proceeding is Section 14 of Wage Order 7-2001, which provides:

> 14. Seats
>
> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.[1]

Plaintiffs' assertion that pursuant to the Wage Order Wal-Mart must reconfigure its check-out lanes to uniformly afford all cashiers the opportunity to perform their duties from a seated position finds no support in the wording of the provision or the case law applying it.

---

[1] In 1986 the Division of Labor Standards ("DLSE") issued an opinion letter (the "Opinion Letter") interpreting a predecessor to Section 14 which clarifies that the Wage Order was intended for situations where the work is usually performed in a sitting position with machinery, tools or other equipment, and not intended to cover positions where the duties require employees to be on their feet, such as salespersons who are expected to be in a position to greet customers, move freely throughout the store to answer questions and assist customers in their purchases. (*See* Opinion Letter at 1, attached as Exhibit A to Wal-Mart's Request for Judicial Notice ("RJN").)

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*DEN 97,586,104 v2 016436.123000*

# III. FACTUAL BACKGROUND

## A. Wal-Mart's Operations in California.

Wal-Mart operates 180 stores in California, each of which varies in size and operation depending on the type of store and location. (*See* Declaration of Keith Hanleigh ¶ 3 ("Hanleigh Decl.").) Some of the stores within California, for instance, operate in metropolitan centers, such as Los Angeles or San Diego, while others cater to smaller, rural communities. Almost all stores have general merchandising departments, but many also include grocery departments and other specialty shops, such as vision centers, Tire & Lube Express, pharmacies, health clinics, hair salons, and banks. Wal-Mart also operates a variety of store types in California, from discount Wal-Mart stores, which average 108,000 square feet and employ approximately 225 associates, to 24-hour Supercenters, which average around 185,000 square feet and employ 350 or more associates. (*Id.*)

Each store employs a number of cashiers who are generally responsible for interacting with the customer, processing the merchandise purchased by the customer through the check-out process, and ensuring that safety, cleanliness, and loss prevention goals are met by performing maintenance and cleaning at and around their stations as required. (*Id.* ¶ 6.) The number of cashiers staffed in any given store at any given time varies. California stores employ anywhere from 30-60 cashiers, and between approximately 10-40 are scheduled to work at any given time. Currently, Wal-Mart employs approximately 8,821 cashiers throughout California, and has employed approximately 28,858 individuals in that position over the class period. (*Id.* ¶ 5.) Throughout Wal-Mart stores there are various seats and benches available to cashiers, either at the front of the store, in the break room or outside. The locations of the seats and benches vary depending upon the store layout, but are generally accessible throughout the store.

## B. The Check-out Process at Wal-Mart Varies From Store-to-Store and From Location-to-Location Within Each Store.

Plaintiffs erroneously assume that each cashier assisting in the check-out process uses "the same standardized equipment contained within Wal-Mart's standardized check-out lanes." (Mot. at 8.) The assumption is wrong. Cashiers at Wal-Mart may work at any one of twelve different check out configurations throughout the store, any one of which will necessarily impact the manner in which the

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

cashier's job is performed. (Hanleigh Decl. ¶ 4.) These twelve different configurations include belted front-end registers, non-belted front-end "speedy" or "express" registers, a front-end tobacco register with a gated area and bullpen, a front-end "Que Track" system consisting of five non-belted registers but a single customer queue, and numerous outlying registers located in any one of eight different departments including the Garden Center. (*Id*. ¶¶ 4a - 4m.) Although the registers themselves are similar, the check-out configurations and type of merchandise processed is vastly different depending on where in the store the register is located and the type of store at issue (Supercenter or Discount Store). Consequently, the degree of mobility required of any cashier will vary depending upon the particular check out location at which the cashier is working. These variations give rise to the individualized inquiry necessary to determine whether the work of any particular cashier at any particular check out location reasonably permits the use of a seat.

**C.**   **The Individual Work Experiences of Cashiers Vary Considerably.**

Throughout their brief, Plaintiffs point to the written cashier job description to argue that a cashier's job function of assisting customers through the check-out process is "uniform." (Mot. at 6-8.) Plaintiffs oversimplify the work activities of cashiers and ignore the variations that exist in their performance. Nothing about a cashier's work experience is "uniform." The actual work experience of any cashier is directly impacted not only by the particular check out configuration at which the cashier is working, but also by the particular shift, the type of merchandise processed in the specific check out area, how and if the merchandise is bagged and loaded in the cart (through the use of a bag carousel or otherwise), time of year, experience of the cashier and store staffing. At any time, a cashier may be involved in any one of the following tasks:

- Processing merchandise through scanning items (either by passing them over a built in scanner or by using the hand held scanner), bagging the items, and loading them into the customer's cart;
- Redlining their area which entails walking around to the entrance of their cashier line when the cashier is open and available and directing customers to their lane;
- Restocking bags, cleaning supplies, and other items maintained at the register;
- Assisting with stocking and handling of register end-cap merchandise, damaged goods, merchandise left behind, UPC problems, and pricing integrity;

- Wiping down their register station to ensure it is neat, clean, and clutter-free, and eliminating obstacles in the cash register lane to prevent slip, trip and fall hazards; and

- Taking items that customers did not purchase back to the customer service desk for return or restocking those items in their original areas.

(*See* Composite of Wal-Mart Store Associates' Declarations; Summary of Declarations attached as Exhibit C to the Declaration of James M. Nelson ("Nelson Decl."); *see also* Hanleigh Decl. ¶ 6.) The amount of time spent by any individual cashier on any one of these tasks will differ depending upon a variety of factors.

For example, because speedy check-out lanes are used only by customers with a limited number of items, cashiers assigned to those registers may not ring up as many large or bulky items and may spend less time loading bags or checking carts for un-scanned items. (Store Associate Decl. Ex. 4 ¶ 8 (Emery)[2], Ex. 11 ¶ 14 (Talbert), Ex. 12 ¶ 6 (Ireton).) Cashiers staffed in the unique "Que Track" system in one store are not as frequently called upon to redline their areas in light of the design of that system. (Store Associate Decl. Ex. 2 ¶ 10 (Aronsohn).) Cashiers may also be called upon to assist in other departments or other areas of the store as needed throughout the day. (Store Associate Decl. Ex. 7 ¶ 10 (Petersen).) Overnight cashiers are typically less busy in scanning items than their day-time counterparts and may be assigned to zone other parts of the store. (Store Associate Decl. Ex. 4 ¶ 8 (Emery).)

With respect to the process of scanning and bagging merchandise, some cashiers lift items weighing up to 20 pounds from the customers' carts and move them across the built-in scanner. (Composite of Wal-Mart Store Associates' Declarations; Summary of Declarations attached as Exhibit C to Nelson Decl.) Other cashiers regularly walk around the counter to use a hand scanner to hand scan bulkier or heavier items. (*Id*.) Cashiers assigned to the garden center, or cashiers who work in stores with a higher percentage of elderly customers, may use the hand scanner more frequently or otherwise pick up and assist with loading items more often. (*Id*.) In fact, at least one register at many of the stores

---

[2] Citations to Exhibits to the Composite of Wal-Mart Store Associates' Declarations are as follows: Store Associate Decl. [Ex. #] [¶ No.] ([Declarant Surname]).

contains only a portable hand scanner, which will necessarily require that cashier to hand-scan all items. (Store Associate Decl. Ex. 2 ¶ 5 (Aronsohn); Store Associate Decl. Ex. 8 ¶ 6(f) (Pettigrew).) Plaintiffs' representation that the experiences of cashiers are uniform bears no relationship to the factual record. There is no "common proof" of actual job experiences and no basis upon which the claimed experience of a few can be fairly applied to a class of thousands.

**D.    The Plaintiffs and Their Characterizations of Work Experiences.**

**1.    Nisha Brown.**

Nisha Brown was employed at three separate Wal-Mart stores in California for a combined period of thirteen months. During her first three-month stint with the Company in 2004, she was hired as a sales associate in the Jewelry department but was eventually transferred to the role of cashier before her termination for fraud (allowing a personal friend use her employee discount card). (Brown Dep. Tr. at 21:19-22:16, attached to Nelson Decl. as Exhibit A.) Four years later, Ms. Brown filled out an application for employment at a different California Wal-Mart store in which she claimed she had never before worked at Wal-Mart and admittedly falsified both her social security number and employment history. (*Id*. at 29:20-36.) During her deposition, Ms. Brown admitted that she intentionally lied on her application because she knew she was not otherwise re-hireable. (*Id*. at 30:2-20.) She worked as a cashier for another ten months in two separate stores until July 22, 2010, when the Company uncovered the fact that she falsified her application and terminated her employment for cause for the second and final time. While none of these facts in isolation are determinative, collectively they give rise to serious concerns over Ms. Brown's adequacy as a class representative.

**2.    Kathy Williamson.**

Kathy Williamson worked at three Wal-Mart stores, only one of which was located in California. She worked at the California location for approximately five months between March and August of 2008 in the position of cashier. (Williamson Dep. Tr. at 35:24-36:14, attached to Nelson Decl. as Exhibit B.) She was assigned to front-end, garden, jewelry and tobacco registers. (*Id*. at 80, 99-100.) On at least two occasions in that time period, she was placed on medical leave associated with her personal medical issues, returning to work with restrictions that required limited standing and no lifting "big items." (*Id*. at 57:17-58:20.) Ms. Williamson testified that she continued to perform duties as a

cashier but would take frequent breaks during which she would sit on benches at the front of the store or in the break room. (*Id*. at 60-61; *see also* Wage Order Section 14B.) She also worked as greeter at the front of the store where she could sit on stools while greeting customers. (Williamson Dep. Tr. at 62, attached to Nelson Decl. as Exhibit B.) Ms. Williamson terminated her employment with Wal-Mart in August 2008 to obtain back surgery. She testified that at the time she left, working was "miserable" for her because the "job required me to be more mobile than I was." (*Id*. at 115:6-19.) She also claims she requested and was denied a stool on two occasions. (*Id*. at 105:11-25.)

### 3. Variations in the Named Plaintiffs' Claimed Work Experiences

Plaintiffs' own testimony demonstrates that there are material differences in the work experiences of cashiers. Ms. Brown and Ms. Williamson both testified that the times they were required to perform duties which required they stand and remain mobile - such as redlining, zoning and restocking supplies at the register - varied. (Brown Dep. Tr. at 77, 92-93, 96, attached to Nelson Decl. as Exhibit A; Williamson Dep. Tr. at 66-67, 112-15, attached to Nelson Decl. as Exhibit B.) Plaintiffs further conceded that the register to which they were assigned greatly impacted how busy they were and when and how they performed the full range of their duties. (Williamson Dep. Tr. at 63-64, 128-29, attached to Nelson Decl. as Exhibit B; Brown Dep. Tr. at 131-32, attached to Nelson Decl. as Exhibit A.) For example, Ms. Brown expressly recalled that she was not supposed to redline while stationed at the tobacco lane, but she also conceded that most customers in that line requested cigarettes, which required she walk to the back to grab that item. (Brown Dep. Tr. at 102-03, attached to Nelson Decl. as Exhibit A.) Ms. Williamson also recalled the "cigarette lane" being especially busy and described the need to perform additional walking, leaning and stretching while assigned to that lane. (Williamson Dep. Tr. at 129 attached to Nelson Decl. as Exhibit B..) Unlike Kathy Williamson, Nisha Brown testified that she never requested a stool. (Brown Dep. Tr. at 137:25-138:7, attached to Nelson Decl. as Exhibit A.) These factual differences bear directly on the individualized inquiry needed to determine whether any putative class wanted a seat, requested a seat, and could reasonably perform their job from a seat.

**E.** **Managers Exercise Discretion and Take Into Account Individualized Factors When Cashiers Request to Use a Stool.**

Managers are expected to exercise their own discretion in considering and approving the use of a stool upon request based upon the particular circumstances at issue. Such requests are generally considered in one of two ways. First, managers consider a request for a stool by an individual cashier as a possible reasonable accommodation under the Americans with Disabilities Act or as a job aid to assist associates with a medical condition under Wal-Mart's "Accommodation in Employment Policy (Medical Related)." Managers also consider requests for stools in their sole discretion without reference to other medical policies. (Hanleigh Decl. ¶¶ 8-9; *see also* Summary of Declarations attached as Exhibit C to Nelson Decl.) It is up to the individual manager - in conjunction with those she or he deems appropriate - to make a determination on a case-by-case basis depending on the explanation provided, the needs of the store, any accommodation or modification to duties that may be available, and whether the particular cashier can effectively perform certain job duties while seated, either intermittently or throughout the day. (Hanleigh Decl. ¶ 9.)

Plaintiffs maintain that because Wal-Mart provided seats to at least 29 cashiers during the class period, the work performed by *all* cashiers in every location throughout every store in the state ofCalifornia must reasonably permit the use of a seat. (Mot. at 11-14.) The assertion is incorrect. A fact specific inquiry is required and engaged in by Wal-Mart to determine whether the work performed by any particular cashier at any particular location reasonably lends itself to the use of a seat. Moreover, store managers are vested with discretion to provide seats in situations in which it is determined that the range of duties can be modified or that the cashier may use the stool without creating a safety hazard. (Store Associate Decl. Ex. 14 ¶ 11-12 (Rocheleau), Ex. 11 ¶ 18 (Talbert); *see generally* Composite of Wal-Mart Store Associates' Declarations.)

Plaintiffs' argument similarly presumes that a seat may be used at any register location when in point of fact most register locations are not appropriate for the use of a stool. The decision to allow placement of a stool at any register is also within the discretion of the store manager, who carefully determines whether the use of a stool at particular areas in their store will or will not adversely affect job performance and safety. Several managers confronted with such requests determined that it was more

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1  convenient for the cashier and the store to re-assign the cashier to a non-standard register. (Store

2  Associate Decl. Ex. 4 ¶ 11 (Emery), Ex. 11 ¶ 18 (Talbert); Composite of Wal-Mart Store Associates'

3  Declarations.) Other managers have temporarily assigned cashiers to other positions entirely. (Store

4  Associate Decl. Ex. 12 ¶ 5 (Ireton).) Due to these fact specific variations, utilization of a stool is not a

5  one size fits all proposition.

6  **F.  Plaintiffs' Claimed Comparison To the Check Out Process in the United Kingdom Fails.**

7  Plaintiffs hired private investigators to take photographs of ASDA stores in Great Britain to

8  assert that because in England check out configurations were engineered in a manner to permit an

9  employee to perform limited check out functions from a seated position, Wal-Mart is required to do the

10  same in California. Leaving aside the fact that such a sweeping obligation finds no support in the law,

11  the retail operation of ASDA is not comparable to Wal-Mart's retail operations in California. Unlike

12  Wal-Mart, ASDA's focus is primarily grocery, with 75% to 90% of their floor space dedicated to

13  grocery and clothing items. Consequently, customers tend to purchase fewer and smaller items. Unlike

14  Wal-Mart, ASDA does not employ "cashiers." Instead, the check out mechanism in ASDA stores

15  involves the performance of two distinct positions: Check Out Operator and Service Host. (Declaration

16  of Helen Milford ¶ 4 ("Milford Decl.").) The Check Out Operator has limited responsibilities, all of

17  which require them to remain seated at their register and none of which require mobility or standing.

18  (*Id*. ¶ 5.) The functions that do require mobility and standing are performed by the Service Host. (*Id*.

19  ¶ 6.) Thus, many of the functions performed by cashiers in Wal-Mart's California stores are, in ASDA

20  stores, instead performed by the Service Host, and the analogy Plaintiffs hope to draw, fails.

21  **IV.  LEGAL ARGUMENT**

22  **A.  The Standards Governing Class Certification**

23  Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of

24  the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011)

25  (citation omitted). In all cases, the party seeking certification bears the burden of demonstrating not

26  only that the proposed class satisfies the four prerequisites of Rule 23(a), but also that the action may be

27  maintained under at least one subsection of Rule 23(b). *See Valentino v. Carter-Wallace, Inc.,* 97 F.3d

28  1227, 1234 (9th Cir. 1996). The Court must deny class certification if Plaintiffs fail to satisfy even one

of the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 622 (1997). *See also M.D. Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir. 1975) ("the failure of any one of Rule 23's requirements destroys the alleged class action.").

To satisfy Rule 23(a), Plaintiffs bear the burden of demonstrating that: (1) the putative class is sufficiently numerous; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims and defenses are typical of those of the rest of the class; and (4) the named plaintiffs can adequately protect the interests of the class. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). Further, because Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3), it is incumbent upon them to establish that: (1) common questions of law and fact predominate over questions affecting individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Poulos v. Caesars World, Inc.,* 379 F.3d 654, 664 (9th Cir. 2004). The overwhelming predominance of individualized issues and the ready availability of efficient administrative procedures to resolve Plaintiffs' claims preclude certification under Rule 23(b)(3). The Court need not even reach Rule 23(b)(3), however, given Plaintiffs' failure to satisfy even one of the requirements of Rule 23(a), most notably commonality. *See Amchem,* 521 U.S. at 622.

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 131 S.Ct. at 2551. To the contrary, a party seeking class certification must affirmatively demonstrate her compliance with each provision of Rule 23, and "[a]ctual, not presumed, conformance" with the Rule remains indispensable. *Id.* (citation omitted). While Plaintiffs understandably urge the Court to ignore the evidence indicating that the duties of cashier cannot reasonably be performed in a seated position, the myriad factual differences among the day-to-day work experiences of Wal-Mart cashiers is at the forefront of the rigorous analysis required to determine whether the prerequisites of Rule 23 have been met. In conducting its analysis, the Court must properly evaluate "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 131 S.Ct. at 2551-52 (citations omitted). *See also Hanon,* 976 F.2d at 509 (courts may consider the evidence in class action determinations even if evidence relates to the merits). Here, a rigorous analysis of Plaintiffs' attempts to satisfy Rule 23's criteria demonstrates that Plaintiffs' Motion for class certification fails on six independently sufficient grounds, chief among which are lack of commonality and predominance.

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**B.** **The Plain Wording of the Wage Order Itself Requires the Individualized Inquiry Fatal to Class-Wide Adjudication.**

The very text of Section 14 – which states that employees "shall be *provided* with suitable seats when the nature of the work *reasonably* permits the use of seats" – underscores that individualized determinations are required. Nothing in the Wage Order mandates the blanket obligation of seats for all employees that Plaintiffs urge. Evaluation of whether the nature of a particular cashier's work "reasonably" permits the use of a seat turns upon facts specific to that cashier's particular work experience and situation. The work that cashiers perform is not static. The title of cashier is not the monolithic position Plaintiffs hope to portray. Work experiences vary by store type, by checkout configuration, by location of the checkout within the store, and across time as within a workweek or even a shift, cashiers are assigned to perform different tasks. Where "the class advanced by the representative Plaintiffs as well as those of the proposed members of the Plaintiff class[] are replete with individual issues," adjudication through the class wide mechanism or representative testimony fails, and class certification should be denied. *Badillo v. American Tobacco Co.*, 202 F.R.D. 261, 264 (D. Nev. 2001).

Plaintiffs' argument in support of certification also relies on Plaintiffs' subjective interpretation of the word "provide," which, Plaintiffs suggest, means that Wal-Mart is required to uniformly supply each Wal-Mart cashier with a seat, irrespective of whether that cashier has asked for or would even use a seat.[3] In what appears to be the sole authority to have interpreted the word "provide" in the context of Section 14, however, a federal district court recently concluded that the word "provide" in this context means merely to "make seats available" upon request, and not to ensure that every employee is given a seat regardless of the employees' wishes. Specifically, on August 10, 2011, the U.S. District Court for the Central District of California entered an Order dismissing a Section 14 claim filed against Bank of America on the basis that "defendants' only obligation was to make seats available to employees to the extent they want them or request them, not necessarily to ensure that every employee has a seat,

---

[3] Plaintiffs rely on *Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210 (2010) and *Bright v. 99cents Only Stores*, 189 Cal. App. 4th 1472 (2010), in support of their certification effort. To the extent Plaintiffs maintain that these cases are dispositive of the interpretation of the term "provide" in the context of Section 14, the cases are inapposite to the issue.

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

regardless of whether they want one or not." (*See* Order Dismissing Plaintiffs' Complaint with Prejudice and attached Transcript of Proceedings, attached as Exhibit D to RJN).[4]

Here, applying the plain and logical meaning of the verb "provide" demonstrates that an employer's obligation under Section 14 is to make seats available to employees when the work reasonably permits *and* to the extent the employees want and request them. It is not to ensure that every employee has a seat, regardless of the employees' stated wishes or preferences. Determining whether each member of the putative class requested a seat, however, requires an inquiry tailored to each putative class member. Moreover, the factual record demonstrates that many cashiers prefer not to use a seat because it makes it far more difficult for them to perform their duties. (Store Associate Decl. Ex. 14 ¶ 11 (Rocheleau), Ex. 10 ¶ 9 (Sonderhouse).) Such an assessment defeats class-wide adjudication.

## C. Plaintiffs Fail To Establish That There Are Issues of Law or Fact Common to The Putative Class as Required by Rule 23(a).

Plaintiffs' failure to establish that "there are questions of law or fact common to the class" sufficient to satisfy Rule 23(a)(2) is fatal to their bid for class-wide adjudication. Plaintiffs enumerate a laundry list of questions that purportedly satisfy the commonality prerequisite. The Supreme Court, however, has recently made clear that the ability to articulate common questions no longer suffices to satisfy Rule 23(a)(2). In *Dukes*, the Supreme Court cautioned that the commonality language of Rule 23(a)(2) is "easy to misread, since any competently crafted class complaint literally raises common

---

[4] As further evidence that to "provide" means merely to "make available," authorities construing the interpretation of the word "provide" in California Labor Code section 512(a) and Wage Order 7-2001 – which imposes an obligation on California employers to "provide" employees who work for a period of time of more than five hours per day a meal period of not less than 30 minutes – support the construction of "provide" as to "make available," and not to ensure that employees actually take advantage of what is made available to them. Although the issue is currently before the California Supreme Court (*see Brinker Restaurant v. S. C.*, review granted Oct. 22, 2008, S166350, and *Brinkley v. Public Storage*, review granted Jan. 14, 2009, S168806), the prevailing view is that the word "provide" means only that employers must make meal periods available, and have no duty to ensure that employees actually take their meal periods. *See Lamps Plus Overtime Cases*, 195 Cal. App. 4th 389, 402-04 (Cal. App. 2011), *review granted* July 20, 2011; *Tien v. Tenet Healthcare Corp.*, 192 Cal. App. 4th 1055 (Cal. App. 2011), *review granted* May 18, 2011; *Hernandez v. Chipotle Mexican Grill, Inc.*, 189 Cal App. 4th 751 (Cal. App. 2010), *review granted* Jan. 26, 2011. The majority of federal courts construing California wage law, including this Court, are in accord. *See Brown v. Federal Express Corp.*, 249 F.R.D. 580, 584-86 (C.D. Cal 2008); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 512-16 (N.D. Cal. 2008); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 533 (S.D. Cal. 2008); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 644-46 (N.D. Cal. 2008).

questions." *Dukes*, 131 S.Ct. at 2551 (internal quotations and citation omitted). "Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," which does not mean merely that they have suffered a violation of the same provision of law. *Id.* (citation and quotations omitted). To the contrary, the claims of a putative class must "depend upon a common contention" which "must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

> What matters to class certification … is not the raising of common "questions" – even in droves – but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (citation omitted).

Although Plaintiffs here appear to recognize the significance of the *Dukes* ruling on the Rule 23(a)(2) commonality requirement, they attempt to distinguish *Dukes* on the grounds that the facts involved there were far more "complex[]" than those in this action because *Dukes* involved over one million plaintiffs, who held different jobs who were subjected to a variety of policies. (Mot. at 15). In contrast, Plaintiffs maintain, this action involves putative class members who "hold the same job title, have the same job duties and responsibilities, perform the same tasks, work pursuant to the same uniform job description, and were injured by the same uniform, top-down corporate policy." [5] (*Id.*) Plaintiffs' attempts to circumvent *Dukes'* requirements are unavailing. As the sworn declarations evidence, the mere job title of cashier is not dispositive of the actual workday duties and experiences of any putative class member. Plaintiffs' generalizations aside, nowhere does the *Dukes* decision limit its pronouncements on commonality to large classes, or classes involving members with different job titles.

---

[5] Plaintiffs' eleventh-hour alteration of the definition of the class they seek to certify also bespeaks their recognition of the incompatibility of the term "provide" with class treatment. In this regard, Plaintiffs' Motion seeks certification of a class of "[a]ll persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the position of Cashier." (Mot. at 1.) Plaintiffs' Class Action Complaint, in contrast, originally set forth the putative class definition as: "All persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the position of Cashier, *or similar position that regularly involves the operation of a cash register, and were not provided with a seat*." (*See* Compl. ¶ 9) (emphasis added).

*Cf. Cruz v. Dollar Tree Stores, Inc.*, 2011 WL 2682967 (N.D. Cal. July 8, 2011). Plaintiffs'
protestations provide no compelling grounds explaining why the *Dukes* commonality standard should
not apply.

Plaintiffs cannot satisfy the commonality requirement because they cannot "affirmatively
demonstrate" that there are common questions of law or fact such that the "determination of [their] truth
or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*
Although Plaintiffs recite a list of allegedly common questions – including (a) whether the tasks
performed by Wal-Mart cashiers can be performed while seated, and (b) whether cashier work
reasonably permits the use of a seat[6] –each of these questions will generate a different answer for each
individual claimant, a result prohibited by the *Dukes* decision. *See id.; see also Lewis v. Ford Motor
Co.*, 263 F.R.D. 252, 259 (W.D. Pa. 2009) ("commonality will not be found where the alleged common
issues can only be resolved by making factual determinations that will be different for each class
member." (citation omitted)).

Because adjudication of whether the job responsibilities of any putative class member could
reasonably be performed with a seat necessarily entails an evaluation of the actual work duties of each
Wal-Mart cashier, there can be no commonality as articulated by *Dukes*. In *Dollar Tree Stores, supra*,
2011 WL 2682967, for instance, the court, based on *Dukes*, decertified a class based on lack of
commonality and predominance, notwithstanding the plaintiffs' evidence that all class members were
given uniform training and materials, the same on-the-job tools, uniform "daily planners" that required
them all to perform certain tasks, and were subject to other policies intended to standardize their
experiences. *Id.* at *8. "While this evidence does provide some proof that class members shared a
number of common employment experiences," it did not provide common proof of their actual job
experiences. *Id.* Noting that "the United States Supreme Court's recent decision in *Dukes* provides a
forceful affirmation of a class action plaintiff's obligation to provide common proof of class-wide
liability in order to justify class certification," the court concluded that "Plaintiffs have failed to provide
common proof to serve as the 'glue' that would allow a class-wide determination of how class members

---

[6] *See* Mot. at p. 16.

1    spent their time on a weekly basis.  In the absence of such proof, the commonality threshold, let alone

2    the predominance inquiry of Rule 23(b)(3), has not been met." *Id*. at \*5.  *See also In re Bisphenol-A*

3    *(BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 2634248 (W.D.Mo. July 5, 2011) (citing to

4    *Dukes* to deny class certification); *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, ---

5    F.3d ---, 2011 WL 3524325, \*9 (Aug. 12, 2011 6th Cir. 2011) (same); *Walter v. Hughes Commc'ns,*

6    *Inc.*, 2011 WL 2650711 (N.D. Cal. July 6, 2011) (same).

7            So, too, here, Plaintiffs have failed to proffer any "glue" to hold putative class members' claims

8    together.  Whether one particular cashier who runs the cigarette register in a Sacramento Wal-Mart

9    Supercenter can reasonably perform her job responsibilities with a seat is hardly dispositive of whether

10   another cashier in Oakland who runs the register in the Garden Department in a low-traffic Wal-Mart

11   Store performs duties that reasonably permit his use of a seat.  Moreover, Plaintiffs' proposed

12   extrapolation of the experience of one to over 28,000 runs directly counter to the Supreme Court's

13   refusal in *Dukes* to accept a proposed extrapolation of one to 12,500, half the magnitude urged by

14   Plaintiffs here.  *See Dukes*, 131 S.Ct. at 2556.  Plaintiffs' gross generalizations regarding the claimed

15   uniformity of duties performed as a cashier are insufficient to cure this deficiency and are directly

16   refuted by the factual record.  *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 268 F.R.D.

17   604, 611 (N.D. Cal. 2010).  The putative class is awash in other individual issues and conflicts among

18   class members that are ultimately irresolvable, such that the claims of many cannot be fairly resolved

19   through representative testimony.  That Ms. Williamson claims she asked for but was denied a stool,

20   while Ms. Brown concedes she never asked for one, is yet another material difference.  The distinction

21   between those who have asked and those who have not asked for a seat is real, not speculative, and

22   material to a core liability issue.  Such is not the stuff of class actions.[7]

23

24   ───────────────

     [7] Commonality is also destroyed through implementation of PAGA's own penalties provision.  Section
25   2699(e) grants this Court discretion to award "a lesser amount than the maximum civil penalty amount
     specified . . . if, *based on the facts and circumstances of the particular case*, to do otherwise would
26   result in an award that is unjust, arbitrary and oppressive, or confiscatory." *Id* (emphasis added).  The
     actual penalty is $100 per *aggrieved* employee for the initial violation and $200 per *aggrieved* employee
27   per pay period for each subsequent violation.  *Id.*  Under Plaintiffs' theory, the Court would need to
     exercise its discretion to avoid an "unjust, arbitrary and oppressive, or confiscatory award" by
28   identifying which class members were actually "aggrieved," again requiring individualized inquiry.

**D.** **Plaintiffs Fail to Establish That Their Proposed Class Action Satisfies the Remaining Criteria of Rule 23(a).**

Not only do Plaintiffs fail to satisfy the commonality requirement, Plaintiffs also cannot meet Rule 23(a)'s remaining prerequisites of numerosity, typicality, and adequacy. Any one of these shortcomings is sufficient to deny certification.

**1.** **Plaintiffs Fail To Establish That the Putative Class Is Sufficiently Numerous To Justify Certification.**

A Rule 23 class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs fail to satisfy this threshold requirement. In particular, Plaintiffs summarily conclude that this prerequisite is satisfied because "Wal-Mart has employed over 10,000 cashiers in California during the applicable statute of limitations period." (Mot. at 14). As set forth above, however, to establish liability, Plaintiffs must demonstrate, among other things, that class members requested and were denied a seat. Plaintiffs elsewhere concede that discovery has revealed that Wal-Mart received only 39 requests for stools, and that of those requests, Wal-Mart provided stools to 29 California cashiers. (Mot. at 13-14.) Accordingly, *ten* cashiers were allegedly denied the use of stools, defeating certification on numerosity grounds.[8]

**2.** **Plaintiffs' Claims Are Not Typical of the Claims of the Class They Purport to Represent.**

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Thus, a class representative seeking to satisfy the typicality requirement of Rule 23(a) must establish that her "claims do not differ significantly from the claims or defenses of the class as a whole." *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 248 (C.D. Cal. 2006) (citations omitted). In addition, "the presence of defenses unique to a particular class member precludes certification on representativeness and typicality grounds." *Gartin v. S & M Nutec LLC,* 2007 WL 1424654, at *4, *10

---

[8] Plaintiff may respond that not all such requests were documented but such an assertion merely attempts to solve the lack of numerosity by embracing a Tsunami of individual proof issues.

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

DEN 97,586,104 v2 016436.123000

(C.D. Cal. Apr. 4, 2007) (holding "[w]here the substantive claims depend on individual permutations … the claims of the named plaintiffs who have the same general complaint against the defendant as the class are not typical.")

Here, the unique circumstances of the named Plaintiffs demonstrate that their claims are atypical of those of the class they purport to represent. Because Plaintiff Brown concedes that she never asked anyone at Wal-Mart for a seat,[9] her claims are not typical of those putative class members who did request seating. *See Prado-Steiman ex rel Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000). Conversely, Plaintiff Williams, who alleges that she did request seating, does not share claims typical of those putative class members who did not request seating. Furthermore, although Plaintiffs allege that the job duties of cashier were uniform and unwavering among all Wal-Mart cashiers in California, this allegation is at variance with the factual record. For these reasons, Plaintiffs cannot establish the typicality necessary for class treatment of their claims.

### 3. Plaintiffs Fail To Satisfy Their Burden of Proving Adequacy of Representation.

Courts are cautioned to "carefully scrutinize the adequacy of representation in all class actions." *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975). This heightened level of scrutiny is warranted because the adequacy requirement "reaches constitutional dimensions, in that the class action's outcome is binding on all class members." *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 65 (D. Nev. 1985); *Molski v. Gleich,* 318 F.3d 937, 955 (9th Cir. 2003).

Careful scrutiny of Plaintiffs' claims demonstrates that Plaintiffs cannot adequately and fairly protect the interests of absent class members as Federal Rule 23(a) directs. First, there is a conflict between the interests of Plaintiffs and the absent class members, many of whom have attested that a seat would only hinder them in the performance of their duties, and do not wish to have seats forced on them.[10] This creates an "incurable conflict… that goes to the heart of the claim presented and therefore precludes certification." *Lanzarone*, 2006 WL 4393465 at *7. Further, serious credibility issues

---

[9] *See* Transcript of April 27, 2011 Deposition of N. Brown at 125:12-15, attached to the Nelson Decl. as Exhibit A.

[10] *See* Composite of Wal-Mart Store Associates' Declarations.

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
DEN 97,586,104 v2 016436.123000

undermine the adequacy of Plaintiff Brown, who has admitted under oath to violating Wal-Mart policy by permitting one of her friends to use her discount card, intentionally misrepresenting her social security number on her Wal-Mart job application, and lying about other information on her Wal-Mart job applications, including other positions held and length of former employment.[11] "[I]it is self-evident that a Court must be concerned with the integrity of individuals it designates as representative for a large class of plaintiffs." *In re Computer Memories Secs. Litig.*, 111 F.R.D. 675, 682 (N.D.Cal. 1986). Plaintiffs' counsel appear to recognize Ms. Brown's inadequacy, as the Motion ignores Ms. Brown completely and purports to present Ms. Williamson as the sole class representative.

**E.**    **Plaintiffs Fail to Satisfy the Predominance and Superiority Prerequisites of Rule 23(b)(3).**

Even beyond the requirements of Rule 23(a), Plaintiffs must also establish that their action is amenable to class certification under Rule 23(b)(3) by demonstrating that: (1) common questions of law and fact predominate; and (2) a class action is superior to alternate means of resolving the dispute. Plaintiffs fail to make either showing.

**1.**    **The Predominance of Individualized Issues Precludes Certification.**

**a.**    **Individual Analysis Is Required.**

Plaintiffs' bid for class certification hinges on the presumption that the actual day-to-day tasks performed by one cashier, Ms. Williamson, were necessarily carried out on a uniform basis by all Wal-Mart cashiers throughout California. In this regard, Plaintiffs boldly proclaim that "the ultimate merits issue involved in this case – whether the nature of the work of the cashier position reasonably permits the use of a seat – can easily be determined on a class-wide basis because the job tasks, responsibilities and essential functions of the cashier position are the same for all cashiers." (Motion at 8).[12] This assertion is inaccurate. As set forth above, there is no common proof of actual job experiences. Instead, the evidence demonstrates that the scope of responsibilities undertaken by Wal-Mart cashiers, the

---

[11] *See* Dep. of N. Brown, Ex. A, 21:19-25; 22:1-16; 28:20-25; 29:1-25; 30:1-20; 31:19-25; 32:1-11; 33:5-25; 34:1, 20-25; 35:1-25; 36:1-22. To wit, Ms. Brown stated on one of her Wal-Mart job applications that she had held a previous position for four and one-half years when in fact she had held the position for a couple of months. *See id.* 36:10-22.

[12] In so stating, Plaintiffs implicitly concede that, conversely, the claims at issue would not be amenable to certification where, as here, the job responsibilities varied among California cashiers.

manner in which each individual cashier completes his or her tasks, and the time it takes to complete those tasks vary depending on each cashier, each cashier's check out configuration, checkout procedures, shift, store location, time of year, experience level, customer base and customer purchases. In particular:

- The particular duties of cashiers vary depending on the configuration of the check out lane. There are at least twelve separate register configurations in California Wal-Marts, each of which involves different physical requirements when checking out customers, and several of which – such as those located at the Tire Lube & Express, Sporting Goods, and Photo Centers Departments – require the cashiers to walk between the register and other locations during the checkout process;

- Cashiers regularly rotate check-out lanes and may be called upon to assist in other departments of the store as needed throughout the day;

- Overnight cashiers' experiences vary from those on the day time shift as night cashiers are typically less busy than their day-time counterparts and therefore may be assigned to zone other parts of the store;

- Cashiers staffed on the "Que Track" system are not as frequently called upon to redline their areas;

- Cashiers with less experience spend more time "zoning" their areas;

- Individual managers exercise considerable discretion in their consideration of cashiers' requests to use seats, and make such determinations on a case-by-case basis; and

- Even those cashiers who use stools concede that they must frequently get on and off the stool and perform the majority of their duties standing.

Evaluation of whether the nature of a particular cashier's work reasonably permits the use of a seat requires a factual investigation into, *inter alia*, that cashier's store, register, experience level, and shift. Class treatment is improper where, as here, an individualized inquiry is necessary to determine liability. *See Domino's Pizza, Inc.*, 238 F.R.D. at 253 (no predominance where "this is not the typical case where a class can be certified because the class members' duties are, or can be determined to be, roughly identical … Here the variability goes to whether an individual class member has any claim at all…"). Because the Court would have to address each of these issues on a one-by-one basis for each cashier in the proposed class, Plaintiffs cannot meet their burden under Rule 23(b)(3).

### b. **Wal-Mart's Affirmative Defenses Require Individualized Inquiries.**

Not only would individual issues inundate the proper adjudication of whether the work of each putative class member reasonably permits the use of a seat, but individual issues also would predominate with respect to Wal-Mart's affirmative defenses to Plaintiffs' claims. "[T]he presence of defenses unique to a particular class member precludes certification … on predomination grounds." *Gartin v. S & M Nutec LLC*, 2007 WL 1424654, *10 (C.D. Cal. Apr. 4, 2007). As is its right, Wal-Mart has raised numerous affirmative defenses to Plaintiffs' claims, including, that Plaintiffs are not aggrieved employees, and that they lack standing. Wal-Mart also intends to raise as defenses that most putative class members did not ask for – or want – seats, and that the job duties of certain class members do not reasonably permit the use of a seat. The evidence to be presented concerning these defenses, and any determination of their applicability, rises and falls on individual issues.

It is well recognized that a class action violates due process where it deprives a defendant of the opportunity to rebut evidence introduced against it. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 345 (4th Cir. 1998); *In re Fibreboard Corp.,* 893 F.2d 706, 712 (5th Cir. 1990). Were this an individual action, Wal-Mart clearly would have rights to question a claimant and introduce evidence about his or her job responsibilities, whether he or she requested a seat, and whether any such request was granted, and to have the Court assess the relevance and weight of the parties' evidence on such matters. These rights are not abrogated merely because a case is brought as a class action. *See In re Bridgestone/Firestone,* 288 F.3d 1012, 1020 (7th Cir. 2002). In seeking to abrogate Wal-Mart's rights to challenge each putative class member's claims with proof pertaining to that class member, Plaintiffs' proposed approach also runs afoul of the Rules Enabling Act, 28 U.S.C. § 2072(b), which instructs that the rules of procedure "shall not abridge, enlarge, or modify any substantive right." *See Amchem,* 521 U.S. at 613 (explaining that "Rule 23's requirements must be interpreted in keeping with … the Rules Enabling Act…"); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999) ("no reading of [Rule 23] can ignore the [Enabling] Act's mandate that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'").

WAL-MART STORES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## 2. Plaintiffs Have Not Established That Their Proposed Action Is the Superior Method of Adjudication.

Federal Rule 23(b)(3) also requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. Indeed, "a class action must be **better than**, and not merely as good as, other methods of adjudication," to justify class treatment. 5 J.W. Moore, Moore's Federal Practice ¶ 23.46[1] (3d ed. 1997 & Supp. 2004) (emphasis added). Under the present facts, a class action is hardly the superior method of adjudicating Plaintiffs' claims. Not only would individualized determinations inundate Plaintiffs' proposed action, creating staggering problems of manageability, but putative class members also have available speedy, efficient, and effective methods of recovery through California's labor laws. Either of these facts, alone, defeats a finding of superiority.

### a. Individual Issues Preclude a Finding of Manageability.

The presence of individual issues and the myriad cashier-specific determinations to be made in this action impede judicial efficiency. *See O'Connor v. Boeing N. Am., Inc.,* 197 F.R.D. 404, 414-15 (C.D. Cal. 2000). The predominance of individualized issues highlighted above renders a class trial of Plaintiffs' claims unmanageable, especially because the particular work experiences of one particular cashier cannot be extrapolated to the class as a whole. *See Domino's Pizza, Inc*., 238 F.R.D. at 253. The "desirability of allowing small claimants a forum in which to recover for alleged large-scale violations does not eclipse the problem of manageability." *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974). To allow otherwise would "excuse[] plaintiffs from proving the essential elements of their cause of action." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 191 (3d Cir. 2001). Far from being manageable, class-wide adjudication of this action would prove cumbersome, unwieldy, and ultimately infeasible.

### b. Administrative Remedies Are More Efficient and Expeditious Than Plaintiffs' Proposed Class Action.

Because there are superior means by which Plaintiffs' claims can be resolved without resorting to the cumbersome and costly mechanisms of this proposed class action, Plaintiffs cannot satisfy the superiority requirement of Rule 23(b)(3). Because California's labor laws provide convenient and accessible remedial systems for aggrieved employees, those putative class members who believe they

have been harmed may avail themselves of the administrative procedures in place to address Wal-Mart's alleged violation of Section 14. Any plaintiff who actually requested but was denied a seat could file a separate suit. Further, a class member could obtain redress through a DLSE administrative hearing. Use of either of these vehicles is clearly superior to the unmanageable class action urged by Plaintiffs.

**F. Class Certification Is Also Inappropriate Due to The Nature of the Penalties Sought.**

Certification of the present action would be improper on the separate ground that the enormous penalties sought by Plaintiffs and the putative class pursuant to PAGA bear no relation to any harm they may have incurred, in further violation of Wal-Mart's Due Process rights. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003). Any punishment awarded must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426. Thus, a punitive award that lacks a sufficient "nexus to the specific harm suffered by the plaintiff" violates a defendant's due process rights. *Id.* at 422-23.

Here, certification of the proposed class would violate Wal-Mart's due process rights in light of the enormous penalties sought by Plaintiffs, which are wholly disproportionate to any harm allegedly suffered by Plaintiffs or by members of the putative class. The magnitude of the penalties sought is particularly egregious given that PAGA contains an express provision preserving the exclusivity of the workers' compensation scheme. *See* section 2699(k). Because the exclusive remedy for any injury cashiers could allegedly have sustained from not being able to sit down would be provided by the workers' compensation laws, the penalties sought by Plaintiffs cannot represent compensation for such injuries as a matter of law. As such, the penalties sought bear no relationship to any alleged harm, and are unconstitutional.

In light of all the foregoing, Plaintiffs have failed to establish any of the prerequisites for class certification under Rule 23, and their proposed action would violate both the Due Process Clause and the Rules Enabling Act. Certification of the proposed class would not only be improper, it would contravene the purposes underlying Rule 23 and subvert any notions of efficiency, economy, and justice.

## V. CONCLUSION

Given all the foregoing, Plaintiffs have failed to satisfy their burden of establishing the requirements of Rule 23(a) and (b).  For the reasons set forth above, Wal-Mart respectfully requests the Court to deny Plaintiffs' Motion.


Dated:  August 19, 2011                    GREENBERG TRAURIG, LLP


                                           By:/s/James M. Nelson
                                              James M. Nelson
                                              Amber Jene Sayle
                                              Nancy J. Doig
                                              Attorneys for Defendant
                                              Wal-Mart Stores, Inc.