1              UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    NISHA BROWN, ET AL,          )
                                  )
6                   PLAINTIFFS,   ) NO. CV-09-03339-EJD
                                  )
7          VERSUS                 ) SEPTEMBER 9, 2011
                                  )
8    WAL-MART STORES, INC.,       ) PAGES 1 - 53
                                  )
9                   DEFENDANTS.   )
     ─────────────────────────────)

10

11

12

                 TRANSCRIPT OF PROCEEDINGS
13       BEFORE THE HONORABLE EDWARD J. DAVILA
              UNITED STATES DISTRICT JUDGE
14

15

16

     A-P-P-E-A-R-A-N-C-E-S:
17

     FOR THE PLAINTIFFS:   MCINERNEY & JONES
18                         BY:  CHARLES A. JONES
                           18124 WEDGE PARKWAY #503
19                         RENO, NV 89511

20                         RIGHETTI GLUGOSKI, P.C.
                           BY:  MATTHEW RIGHETTI
21                         456 MONTGOMERY STREET
                           SUITE 1400
22                         SAN FRANCISCO, CA 94101

23   (***APPEARANCES CONTINUED ON NEXT PAGE)

24   COURT REPORTER:       GEORGINA GALVAN COLIN, CSR
                           LICENSE NUMBER 10723
25

                                                        1

1     APPEARANCES CONTINUED:

2

3     FOR THE DEFENDANT:     GREENBERG TRAURIG LLP
                             BY:   JAMES NELSON
                             1201 K STREET, SUITE 1100
4                            SACRAMENTO, CA 95814

5                            GREENBERG TRAURIG LLP
                             BY:   JEANNETTE M. BROOK
6                                  BRIAN L. DUFFY
                             1200 17TH STREET, SUITE 2400
7                            DENVER, CO 80202

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                SEPTEMBER 9, 2011
 2                 P-R-O-C-E-E-D-I-N-G-S
 3                 (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HAD:)
 5                 THE CLERK:  CALLING CASE NUMBER 093339,
 6    BROWN ET AL V. WAL-MART ON FOR MOTION TO CERTIFY
 7    CLASS.
 8                 COUNSEL, PLEASE STATE YOUR APPEARANCES.
 9                 MR. NELSON:  JAMES NELSON APPEARING FOR
10    TRAURIG ON BEHALF OF WAL-MART.
11                 MS. BROOK:  JENNY BROOK ON BEHALF OF
12    WAL-MART.
13                 THE COURT:  THANK YOU.  GOOD MORNING.
14                 MR. DUFFY:  GOOD MORNING, YOUR HONOR.
15    BRIAN DUFFY ON BEHALF OF WAL-MART.
16                 THE COURT:  THANK YOU.  GOOD MORNING.
17                 MR. JONES:  GOOD MORNING, YOUR HONOR.
18    CHARLES JONES ON BEHALF OF PLAINTIFFS.
19                 AND ALSO MY CO-COUNSEL MATT RIGHETTI.
20                 THE COURT:  THANK YOU.  GOOD MORNING.
21                 MR. RIGHETTI:  GOOD MORNING.
22                 THE COURT:  AND THIS IS PLAINTIFFS'
23    MOTION --
24                 MR. JONES:  THAT'S RIGHT, YOUR HONOR.
25                 THE COURT:  -- I BELIEVE.  AND I HAVE
```

```
1    READ BOTH OF YOUR BRIEFS AND PLEADINGS IN THIS

2    MATTER.  THANK YOU FOR THOSE.

3              SO I HAD SOME QUESTIONS FOR YOU ABOUT

4    YOUR MOTION.  AND, LET ME ASK YOU, IS THERE

5    ANYTHING ELSE EITHER SIDE WISHES TO TELL ME THAT

6    YOU HAVEN'T ALREADY PUT IN YOUR BRIEFS; ANYTHING

7    ELSE?

8              MR. JONES:  NOT FROM THE PLAINTIFFS, YOUR

9    HONOR.

10             MR. NELSON:  I DON'T BELIEVE SO FROM THE

11   DEFENDANT, YOUR HONOR.

12             THE COURT:  OKAY.  THANK YOU.

13             YOU CAN BE SEATED.  THANKS VERY MUCH.

14             SO, AS I READ THE PLAINTIFFS' PLEADINGS

15   HERE, THE BASIS OF YOUR CLAIMS ARE, LIE WITH THIS

16   WAGE ORDER, 7-2001 SECTION 14, I THINK.

17             MR. JONES:  THAT'S CORRECT, YOUR HONOR.

18             THE COURT:  I WANTED TO TALK A LITTLE BIT

19   OR ASK YOU A LITTLE ABOUT THE WORDING IN THAT.  IT

20   SEEMS TO SAY THAT SECTION A SAID, "SHALL BE

21   PROVIDED."

22             MR. JONES:  THAT'S CORRECT.

23             THE COURT:  I WONDER IF YOU COULD TELL

24   ME, WHAT DOES THAT MEAN?

25             MR. JONES:  WELL, THE WAY THAT THE WORD
```

1    "PROVIDED" HAS BEEN INTERPRETED, YOUR HONOR, IS IN

2    THE WAY THAT WE CERTIFY IN THIS PARTICULAR CASE, IS

3    THAT SEATS MUST BE MADE AVAILABLE FOR USE FOR THE

4    CASHIERS.

5              IN THIS PARTICULAR CASE, WAL-MART ADMITS

6    THEY DO NOT PROVIDE, I.E. MAKE SEATS AVAILABLE FOR

7    THE CASHIERS TO USE DURING A SUBSTANTIAL PORTION OF

8    TIME THAT THEY ARE PERFORMING THEIR CHECKOUT DUTIES

9    IN THE CASH REGISTER AREAS.

10             THE ALLEGATION HERE IS THAT THE NATURE OF

11   A CASHIER'S WORK REASONABLY PERMITS THE USE OF A

12   SEAT.  AND AS A RESULT WAL-MART HAS AN OBLIGATION

13   TO MAKE SEATS AVAILABLE TO ITS CASHIERS WHILE THEY

14   ARE CHECKING OUT CUSTOMERS AT THE CHECKOUT STAND.

15             THE TYPES OF TASKS THAT ARE PERFORMED BY

16   CASHIERS IN THIS CASE ARE LARGELY UNDISPUTED.

17   WAL-MART'S RULE 30(B)(6) DESIGNATES TOLD US THAT

18   THEY'RE THE SAME.  AND THESE PEOPLE DO WHAT THEIR

19   TITLE SUGGESTS, THEY'RE CASHIERS.  THEY TAKE AN

20   ITEM FROM THE COUNTER, MOVE IT OVER A SCANNER,

21   PLACE IT INTO A BAG, AND PROCESS PAYMENT.

22             AND IT'S OUR CONTENTION, AND WE BELIEVE

23   WAL-MART'S OWN ADMISSIONS HAVE SHOWN, THAT THESE

24   WORK TASKS CAN IN FACT BE PERFORMED WHILE SEATED.

25   AND THAT'S WHY THEY GIVE PEOPLE STOOLS, AND HAVE

1    CREATED CHECKOUT LANES SPECIFICALLY DESIGNED TO BE

2    USED BY SOMEONE IN A WHEELCHAIR.

3              AND, ALSO, THEIR AFFILIATE IN THE UK HAS

4    PEOPLE SEATED WHILE THEY PERFORM THESE TASKS.

5              THE COURT:  SO LET ME NOT DEAL WITH THE

6    UK JUST NOW.

7              MR. JONES:  CERTAINLY.

8              THE COURT:  FIRST FOCUS ON CALIFORNIA

9    WAL-MARTS.

10             MR. JONES:  CERTAINLY.

11             THE COURT:  SO "SHALL BE PROVIDED" MEANS

12   IF I START MY FIRST DAY AS A CASHIER MY SUPERVISOR

13   COMES UP AND SAYS TO ME WELCOME, HERE'S WHAT YOU'RE

14   TO DO; AND BY THE WAY, HERE'S YOUR STOOL.

15             MR. JONES:  YES.  YES, YOUR HONOR.

16   "SHALL BE PROVIDED" MEANS, IN OUR INTERPRETATION OF

17   THE WAGE ORDER, MEANS THAT THEY HAVE A MANDATORY

18   OBLIGATION TO MAKE SEATS AVAILABLE TO THE CASHIERS.

19             IF THE CASHIERS CHOOSE THAT THEY DON'T

20   WANT TO USE THE SEAT ALL THE TIME, WE'RE CERTAINLY

21   NOT SUGGESTING THAT ANYONE BE STRAPPED DOWN INTO A

22   SEAT OR A STOOL.

23             THE COURT:  SO I COME IN ON MY FIRST DAY

24   AS AN EMPLOYEE; I'M INTRODUCED TO MY CASH REGISTER,

25   MY WORK STATION; THESE ARE THE BAGS; THIS IS WHERE

1    PENS ARE; THESE ARE PENCILS; HERE'S YOUR WORK
2    STOOL.
3              MR. JONES:  CORRECT, YOUR HONOR.  EITHER
4    HAND THEM THE WORK STOOL, OR THE STOOL WOULD
5    ALREADY BE IN PLACE AT THE CASH REGISTER STATION.
6              IN THIS PARTICULAR CASE, YOUR HONOR,
7    THERE ARE A LOT OF OPTIONS AVAILABLE TO WAL-MART IN
8    TERMS OF HOW IT CHOSES TO COMPLY WITH THE SEATING
9    REQUIREMENT.  A STOOL IS ONE OPTION; OTHER OPTIONS
10   ARE CHAIRS.
11             THE COURT:  I SEE.  SO LET ME ASK YOU
12   ALSO IF YOU COULD TELL ME WHAT -- THERE'S OTHER
13   INFORMATION HERE.  I THINK IT'S FROM WAL-MART'S
14   EMPLOYMENT MANUAL, AND THAT IDENTIFIES CASHIERS AS
15   A 30548 CASHIER.
16             MR. JONES:  CORRECT, YOUR HONOR.
17             THE COURT:  TELL ME WHAT THAT IS.
18             MR. JONES:  IT'S IMPORTANT, YOUR HONOR,
19   BECAUSE WHAT WAL-MART DID IS THEY CONDUCTED THEIR
20   OWN STUDY BACK IN, BEFORE THE CLASS PERIOD STARTED
21   IN THIS CASE.  AND IT WAS A VERY INVOLVED PROCESS.
22             IT INCLUDED A SURVEY FORM THAT WAS
23   CREATED BY WAL-MART BASED UPON ALL OF ITS TRAINING
24   MATERIALS, AND BASED UPON ALL OF ITS JOB
25   DESCRIPTIONS FOR CASHIERS.  THEY ALSO ENLISTED THE

1    SERVICE OF A STATISTICIAN AND MARKET RESEARCH FIRM

2    AND SUBJECT MATTER EXPERTS FOR WAL-MART.  AND WHAT

3    THEY DID IS THEY SENT THE SURVEY FORM OUT TO ALL OF

4    THE JOB POSITIONS WHO HAD SOME OF THEIR FUNCTIONS

5    TO OPERATE A CASH REGISTER STATION.

6         BASED UPON THE SURVEY RESULTS, WHAT THEY

7    WERE ABLE TO DETERMINE IS THAT THERE WAS A CERTAIN

8    SUBSET OF PERSONS WHOSE PRIMARY JOB RESPONSIBILITY

9    IT WAS TO OPERATE A CASH REGISTER AT A CHECKOUT

10   STAND.  AND THEY DETERMINED THAT THE FUNCTIONS AND

11   THE JOB TASKS PERFORMED BY THOSE SUBSETS OF

12   EMPLOYEES WERE THE SAME.  AND SO WHAT THEY DID THEN

13   WAS THEY GAVE ALL PERSONS WHOSE PRIMARY JOB DUTY IT

14   WAS TO OPERATE A CASH REGISTER STATION THE JOB CODE

15   OF 30548.

16        AND WHAT YOU SEE WHEN YOU LOOK AT THAT

17   EXHIBIT, YOUR HONOR, AND I BELIEVE IT'S EXHIBIT 9

18   TO MY DECLARATION IN SUPPORT OF A REPLY, WHAT

19   YOU'LL SEE IS THAT THERE ARE VARIOUS JOB POSITIONS

20   LISTED IN THERE.  THOSE JOB POSITIONS ON THE

21   LEFT-HAND SIDE OF THE PAGE WERE THE PRIOR, OR THE

22   EARLIER JOB DESCRIPTION.  AND THEN ON THE

23   RIGHT-HAND SIDE OF THE PAGE IT SHOWS YOU WHAT THE

24   NEW JOB POSITION OR JOB TITLE WAS AFTER THE SURVEY

25   WAS CONDUCTED.

1           IN THE MIDDLE OF THE PAGE YOU SEE THE JOB

2   CODE.  AND YOU'LL SEE THAT EVERYBODY WHO HAS THE

3   TITLE OF CASHIER IS 30548.

4           SO WHAT IS IMPORTANT ABOUT THAT IS YOU

5   WILL ALSO SEE FROM THIS DOCUMENT THAT PEOPLE WHO

6   WORK IN THESE OUTLYING REGISTER AREAS, LIKE TIRE

7   LUBE & EXPRESS, OR SPORTING GOODS, THESE PEOPLE ARE

8   NOT CASHIERS; THESE PEOPLE ARE NOT --

9           THE COURT:  SO YOU HAVE AMENDED YOUR

10  PLEADINGS FROM YOUR ORIGINAL PLEADINGS.  YOU HAD A

11  LARGER -- IT SEEMS LIKE YOU HAD A LARGER SCOPE, AND

12  NOW YOU'VE NARROWED IT.

13          IS THIS NOW FOCUSED TO THE 30548

14  CASHIERS?

15          MR. JONES:  THAT IS ABSOLUTELY CORRECT,

16  YOUR HONOR.

17          THE COURT:  AND DO THOSE CASHIERS, 30548

18  CASHIERS, INCLUDE SPORTING GOODS, TIRE & LUBE, AND

19  GARDEN?

20          MR. JONES:  THEY ARE NOT INCLUDED WITHIN

21  THE CLASS DEFINITION OF CASHIER.  AND THAT'S WHY

22  THIS DOCUMENT IS IMPORTANT.

23          IT SHOWS TO US THAT PERSONS THAT HAVE

24  THIS 30548 ARE CASHIERS, AND THAT'S THEIR PRIMARY

25  JOB TITLE.  AND THAT'S EXACTLY WHY WE AMENDED OUR

1    PLEADINGS, YOUR HONOR, IS DISCOVERY SHOWED US THAT

2    WAL-MART ITSELF HAD SPECIFICALLY IDENTIFIED A GROUP

3    OF PERSONS WHOSE PRIMARY JOB FUNCTION WAS TO

4    OPERATE A CASH REGISTER STATION.  AND THAT'S WHY WE

5    DECIDED TO GO AHEAD AND LIMIT OUR CLASS DEFINITION

6    TO THOSE FOLKS.

7            AND WAL-MART'S OWN RULE 30(B)(6)

8    DESIGNATE TOLD US AS WELL THAT THE PEOPLE WHO WORK

9    IN THESE OUTLYING REGISTERS DON'T HAVE A JOB

10   FUNCTION OF A, JOB TITLE OF A CASHIER.  THEY ARE

11   MORE AKIN TO SALES PERSONS, YOUR HONOR.

12           SO WHEN YOU WOULD GO TO THE TIRE LUBE &

13   EXPRESS STATION THE INDIVIDUAL WHO WOULD ASK YOU,

14   YOU KNOW, ABOUT WHAT KIND OF SERVICES YOU'RE

15   LOOKING FOR -- AN OIL CHANGE, TIRE CHANGE, ET

16   CETERA -- MAY ALSO RING YOU UP ON THE CASH

17   REGISTER.  BUT THEIR JOB FUNCTION IS NOT TO WORK AS

18   A CASHIER; IT'S TO WORK MORE AS A SALE PERSONS.

19           THE COURT:  SO, LET ME ASK MR. DUFFY, OR

20   ANYONE WHO CAN ANSWER THIS QUESTION, JUDGE REAL HAD

21   AN OPINION ABOUT WHAT "SHALL PROVIDE" MEANS.

22           MR. NELSON:  THAT'S CORRECT, YOUR HONOR.

23           THE COURT:  WHAT ARE YOUR THOUGHTS ON

24   THAT?

25           MR. NELSON:  WELL, AGAIN, WE'RE IN THE

                                                    10

1    CLASS CERTIFICATION PHASE, NOT NECESSARILY THE

2    MERITS PHASE.  OBVIOUSLY, WE TEND TO AGREE MORE

3    WITH JUDGE REAL THAN WE DO WITH PLAINTIFFS'

4    COUNSEL.

5          BUT I THINK ONE OF THE THINGS THAT IS

6    PART OF THE ISSUE HERE IS THAT IN DOING THIS

7    ANALYSIS, IN TRYING TO FIGURE OUT EXACTLY WHAT THIS

8    PARTICULAR WAGE ORDER MEANS, THERE IS A LAYER OF

9    INDIVIDUALITY INHERENT IN THE PROCESS, A LAYER OF

10   INDIVIDUALITY.  AND THIS IS JUST ONE PLACE WHERE I

11   DISAGREE WITH COUNSEL IS THAT TO DO AN ANALYSIS AS

12   TO WHAT A CASHIER ACTUALLY DOES IS NOT THE SAME

13   THING AS DOING AN ANALYSIS OF WHAT THE CASHIER'S

14   JOB DESCRIPTION IS.

15         IT'S NOT NECESSARILY THE SAME THING AS TO

16   WHAT THE CASHIER'S OVERALL RESPONSIBILITIES ARE.

17   BECAUSE WHAT THE WORK REASONABLY PERMITS DOES IN

18   FACT TURN ON WHAT THE INDIVIDUAL IS ACTUALLY DOING

19   ON A DAILY BASIS.

20         SO IN THAT SENSE WE WOULD BE LOOKING AT

21   THINGS LIKE, YES, ON THAT PARTICULAR FIRST DAY, THE

22   INDIVIDUAL, MAYBE THAT FIRST DAY AT WAL-MART HE MAY

23   BE AT ONE PARTICULAR CHECKSTAND, BUT THE NEXT DAY

24   HE OR SHE MAY BE AT AN ENTIRELY DIFFERENT

25   CHECKSTAND WITH A DIFFERENT CONFIGURATION, DOING

11

1    DIFFERENT THINGS.

2            THE OTHER THING THAT'S INHERENTLY

3    INDIVIDUAL, WE THINK, IS THAT, THIS WHOLE ANALYSIS

4    THAT KIND OF THE 30,000 FOOT POLICY LEVEL IGNORES

5    THE INDIVIDUAL'S EXPERIENCE OF THE ACTUAL CASHIERS

6    AND THE ACTUAL MANAGERS.

7            AND TAKING A STEP BACK, KIND OF INTO THE

8    REAL WORD OF A RETAIL EXPERIENCE, IF YOU THINK

9    ABOUT WHO IS ACTUALLY WORKING AT WAL-MART, AND WHO

10   IS ACTUALLY SHOPPING THERE, WHAT YOU FIND IS, NOT

11   SURPRISINGLY, ALL OF THOSE ARE INDIVIDUAL HUMAN

12   BEINGS.  ALL OF THEM HAVE INDIVIDUAL IDIOSYNCRATIC

13   CHARACTERISTICS.

14           NOT EVERY CASHIER IS THE SAME HEIGHT; NOT

15   EVERY CASHIER IS THE SAME WEIGHT; NOT EVERY CASHIER

16   HAS THE SAME LIFTING CAPABILITIES.  SOME OF THEM

17   MAY HAVE SOME MEDICAL RESTRICTIONS THAT ARE NOT

18   DISABILITY-RELATED, AS LONG AS THE DISABILITY IS

19   CLEAR, BUT ONCE YOU PUT AN OBSTRUCTION IN IT, IT

20   MAY BE AFFECTED.

21           ON THE OTHER END OF IT, FROM A CUSTOMER

22   PERSPECTIVE, MUCH OF WHAT THE CASHIER DOES IS

23   DIRECTLY DEPENDANT ON WHAT EACH INDIVIDUAL WAL-MART

24   CUSTOMER CHOOSES TO PURCHASE AND HOW THEY MANAGE

25   THAT PURCHASE.

1          FOR EXAMPLE, DEPENDING UPON WHERE THE

2     CUSTOMER PUTS A PARTICULAR ITEM IN A PARTICULAR WAY

3     IN THE CART, THAT ITSELF CAN AFFECT BOTH THE

4     REACHING ANGLE AND THE LIFTING DISTANCE THAT'S

5     REQUIRED TO ACTUALLY PROCESS THAT TRANSACTION.

6          THE COURT:  SO, I UNDERSTAND THAT.  I

7     THINK WE'VE ALL HAD THOSE EXPERIENCES.  I'M NOT

8     BRINGING IN EXTRINSIC EVIDENCE INTO THIS.

9          MR. JONES:  CERTAINLY.

10         THE COURT:  BUT I THINK IT'S COMMON

11    KNOWLEDGE THAT WE'VE SEEN THAT.

12         SOMEBODY SITTING DOWN AND SOMEBODY BUYS,

13    IT'S IMPOSSIBLE TO GET OUT OF COSTCO -- PARDON ME

14    FOR MENTIONING ONE OF YOUR RIVALS -- BUT YOU CAN'T

15    LEAVE A COSTCO STORE WITH ANYTHING SMALLER THAN A

16    FOUR-BY-FOUR BOX, I'M TOLD.

17         AND I UNDERSTAND THAT IT WOULD BE

18    DIFFICULT FOR SOMEONE TO LIFT THAT.  AND I EXPECT

19    THAT AN EMPLOYEE AT COSTCO OR WAL-MART PERHAPS

20    TAKES THE HANDHELD SCANNER AND WALKS AROUND, SCANS

21    THE PACKAGE.

22         MR. JONES:  I THINK THAT THERE'S A

23    DISTINCTION IN SIMPLY THAT THE WAL-MART EXPERIENCE

24    IS A LITTLE BIT MORE CASHIER INTENSIVE IN THE SENSE

25    THAT THE COSTCO PEOPLE TYPICALLY ARE JUST LITERALLY

                                                    13

1    MOVING IT DOWN THE BELT TO THE END AND GOOD LUCK

2    PACKING IT UP.

3            HERE WE ARE TALKING ABOUT PRODUCTS

4    ACTUALLY BEING LIFTED UP, SCANNED, AND PUT INTO

5    BAGS IN SOME INSTANCES, AND LOADED BACK IN THE

6    CART.  SO I THINK YOUR ANALYSIS IS CORRECT.  IT'S

7    JUST THAT THE WAL-MART EXPERIENCE IS A LITTLE BIT

8    MORE MANUALLY LABOR INTENSIVE.

9            THE COURT:  BUT SHOULD IT MATTER IF THEY

10   GET A STOOL OR NOT; FROM DAY ONE YOU SHALL HAVE A

11   STOOL; AND THEN IT'S AT THE EMPLOYEE'S DISCRETION

12   TO USE IT OR NOT.

13           MR. NELSON:  WELL, I THINK IT DOES

14   MATTER.  BECAUSE, AGAIN, THIS IS SORT OF MERITS,

15   BUT THE WHOLE NOTION IS DOES THE WORK REASONABLY

16   PERMIT THE EMPLOYEE TO PERFORM THAT WORK WHILE

17   SEATED?

18           THE COURT:  AND I DON'T MEAN TO FLIRT

19   WITH THE MERITS HERE, BUT IT DOES, I THINK, GO AS

20   TO SOME OF THESE ISSUES ABOUT COMMONALITY.

21           MR. NELSON:  NO, I AGREE.  AND THE COURT

22   IS PERMITTED TO GO SOMEWHAT INTO THE MERITS ISSUE.

23   IT'S THE "REASONABLY PERMITS" PART THAT BECOMES

24   SUCH AN INDIVIDUALIZED ANALYSIS.  BECAUSE YOU HAVE

25   TO FACTOR IN THE PHYSICAL CHARACTERISTICS NOT ONLY

1        OF THE CASHIER BUT WHAT THE CASHIER IS ACTUALLY

2        BEING COMPELLED TO MANIPULATE.  AND THAT'S GOING TO

3        VARY FROM CUSTOMER TO CUSTOMER.  AND THAT'S BEFORE

4        YOU GET INTO THE ISSUE OF WORK AREA TO WORK AREA.

5                AND, AGAIN, WITH ALL DUE RESPECT TO

6        COUNSEL, I DON'T THINK I'VE SEEN AN AMENDED

7        COMPLAINT IN THIS CASE.

8                I'VE SEEN A DIFFERENCE IN THE CLASS

9        CERTIFICATION MOTION DESCRIPTION OF WHO IS COVERED.

10       I DON'T RECALL SEEING THAT WAS SPECIFICALLY LIMITED

11       TO 30548 CASHIERS, BUT I THINK THERE ARE FACTUAL

12       ISSUES WITH RESPECT TO THAT.

13               BEFORE WE MOVE ON FROM THAT THOUGH,

14       HOWEVER, I'LL JUST NOTE THAT I THINK STILL IN THE

15       30548 CATEGORY, THESE THINGS, THINGS LIKE THE

16       TOBACCO COUNTER PERSON WHO IS CONSTANTLY MOVING

17       FROM A CUSTOMER TELLING THEM WHAT THEY WANT, BACK

18       TO, COMING BACK AND FORTH, THAT'S A COMPLETELY

19       DIFFERENT EXPERIENCE, MUCH LIKE HOUSE AND GARDEN

20       WOULD BE.

21               THE COURT:  SO ARE YOU SAYING THAT PERSON

22       SHOULD NOT BE PART OF THE CLASS?

23               MR. NELSON:  NO.  I'M JUST SAYING THAT

24       RIGHT NOW I BELIEVE THAT PERSON IS PART OF THE

25       CLASS, AND THEIR INDIVIDUAL CHARACTERISTICS ARE NOT

1     COMMON WITH THOSE OF OTHER PEOPLE.

2              AND, AGAIN, THE OTHER ASSUMPTION HERE I

3     THINK WE NEED TO CAREFULLY EXAMINE IS THE NOTION

4     THAT IT'S NOT ONLY THE CASHIERS STATIONS ARE A

5     LITTLE DIFFERENT, IT'S THE FACT THAT PEOPLE ROTATE

6     THROUGH DIFFERENT ROTATIONS WITHIN THE CASHIER

7     SYSTEM.  SO THE INDIVIDUAL WHO TODAY MIGHT BE ON A

8     BELTED STATION TOMORROW MIGHT BE IN THE BACK

9     COUNTER.

10             THE OTHER POINT IS JUST SIMPLY IT IS

11    INDIVIDUALIZED AND DISTINCT OPERATIONS NOT ONLY TO

12    WHAT EACH INDIVIDUAL CASHIER IS DOING WITH THAT

13    INDIVIDUAL CUSTOMER PURCHASE, BUT EXACTLY HOW THEY

14    ARE DOING IT.

15             IN OTHER WORDS, SOMETIMES IT MAY BE THE

16    CASE THAT THE INDIVIDUAL CASHIER CAN JUST SIMPLY

17    LOOK OVER AT THE ITEM AND EITHER PULL IT ACROSS THE

18    SCANNER OR REACH OVER WITH THE HAND SCANNER.

19    SOMETIMES IT MAY BE THE CASE THEY ACTUALLY HAVE TO

20    GO AROUND THE COUNTER, AS YOU NOTED, AND SOME OF

21    THAT IS GOING TO DEPEND AGAIN ON THE INDIVIDUAL

22    CHARACTERISTIC OF THE CASHIER.

23             THE COURT:  SO SHOULD THE CLASS BE

24    LIMITED TO THE 30548 OR FOR ALL CASHIERS?

25             MR. JONES:  YOUR HONOR, ALL PERSONS WHO

16

1    WORK FOR WAL-MART WHO HAVE THE JOB TITLE OF CASHIER

2    ARE IDENTIFIED BY JOB CODE 30548, THOSE ARE THE

3    PERSONS THAT ARE INCLUDED WITHIN OUR CLASS.

4            IF YOU LOOK AT THE ORIGINAL COMPLAINT,

5    THE COMPLAINT SOUGHT CERTIFICATION OF CASHIERS.

6    AND IT JUST ADDED AN ADDITIONAL SENTENCE THAT SAID,

7    OR WHO BASICALLY SPEND A SUBSTANTIAL PORTION OF

8    TIME USING A CASH REGISTER STATION.

9            NO, WE DID NOT FILE A FIRST AMENDED

10   COMPLAINT IN THIS CASE; NOR WERE WE REQUIRED TO DO

11   SO.  WE SIMPLY STUCK WITH THE FIRST SENTENCE IN OUR

12   CLASS DEFINITION AND ELIMINATED THE LATTER BECAUSE,

13   AS WE LEARNED IN DISCOVERY, WAL-MART HAD DETERMINED

14   FOR US A SUBSET OF ITS WORKFORCE WHOSE PRIMARY DUTY

15   IT WAS TO OPERATE A CASH REGISTER STATION.

16           A LOT OF THE ARGUMENTS I'M HEARING TODAY

17   FROM OPPOSING COUNSEL ARE COMPLETELY CONTRARY TO

18   WHAT I WAS TOLD WHEN I SAT DOWN ACROSS THE TABLE

19   FROM WAL-MART'S RULE 30(B)(6) DESIGNATES ON TOPICS

20   SUCH AS WHAT ARE THE JOB TASKS PERFORMED BY

21   CASHIERS; WHAT ARE THEIR RESPONSIBILITIES; WHAT ARE

22   THEIR ESSENTIAL FUNCTIONS, ET CETERA, ET CETERA.

23           THE COURT:  YOU TALKING ABOUT THE

24   30(B)(6) RULE?

25           MR. JONES:  CORRECT, YOUR HONOR, THE RULE

17

1    30(B)(6) STATEMENTS.

2            AND WHAT THESE PEOPLE TOLD ME WAS THE JOB

3    TASKS ARE THE SAME; THE RESPONSIBILITIES ARE THE

4    SAME.  THE ESSENTIAL FUNCTIONS ARE THE SAME.  OUR

5    EXPECTATIONS ARE THE SAME.

6            THE COURT:  MR. NELSON, SHOULD I BE

7    CONCERNED WITH THAT?

8            MR. NELSON:  I DON'T THINK SO, YOUR

9    HONOR.

10           ACTUALLY, I THINK IT PROBABLY EXEMPLIFIES

11   OUR POINT, WHICH IS IN ANY KIND OF STRUCTURE WHERE

12   YOU'RE TALKING ABOUT A GRAND, AGAIN, A 30,000 FOOT

13   DESCRIPTION OF IT, WE GENERALIZE.  WE CAN SIT HERE

14   TODAY AND SAY WELL, WHAT DO PEOPLE IN THE NORTHERN

15   DISTRICT DO?  WELL, WE SIT IN A ROOM AND TALK TO

16   EACH OTHER.  THAT WOULD BE TECHNICALLY ACCURATE; IT

17   DOESN'T PARTICULARLY DESCRIBE IN DETAIL WHAT WE'RE

18   DOING.

19           THE COURT:  BUT IF THESE ARE 30(B)(6)

20   STATEMENTS.

21           MR. NELSON:  THEY ARE 30(B)(6)

22   STATEMENTS.  AND THEY'RE 30(B)(6) STATEMENTS

23   TALKING ABOUT THE OVERALL POLICY AND OVERALL PIECES

24   OF WHAT THE JOB IS.  IT'S NOT NECESSARILY A

25   DESCRIPTION OF THE ACTUAL LABOR WORK THAT'S

1    PERFORMED.  AND THE WAGE ORDERS SPEAKS TO WHETHER

2    THE WAY THE WORK IS PERFORMED ACTUALLY REASONABLY

3    PERMITS SEATING.

4            AND SO WHAT WE'RE SEEING HERE, I THINK,

5    IS THAT THERE IS IN FACT A SIGNIFICANT AMOUNT OF

6    VARIATION ONCE YOU GET RIGHT DOWN IN THE TRENCHES

7    WHERE PEOPLE WORK.  WE ARE TALKING ABOUT THE

8    WORKERS HERE, WHERE THESE PEOPLE WORK.  WHAT THEY

9    DO ON A DAILY BASIS YOU CAN GENERALIZE AS BEING

10   SIMILAR, BUT WHEN YOU LOOK AT THE INDIVIDUAL TASKS

11   AND HOW THEY DO IT, AND WHERE THEY DO IT IN THE

12   STORES, THAT'S VERY, VERY DIFFERENT; NOT ONLY AS

13   BETWEEN CASHIERS BUT ON A DAILY BASIS.

14           MR. JONES:  YOUR HONOR, IF I MAY RESPOND

15   TO THAT POINT?

16           I THINK YOU'LL SEE THAT WE PRODUCED A LOT

17   OF PAGES OF DEPOSITION TESTIMONY FROM RULE 30(B)(6)

18   WITNESSES.  I THINK YOU'LL SEE THAT THE QUESTIONS

19   THAT WERE ASKED WERE NOT FROM THE 30,000 FOOT

20   LEVEL.  THE QUESTIONS THAT WERE ASKED WERE FROM THE

21   LEVEL OF TELL ME WHAT CASHIERS DO.

22           THOSE WERE THE CATEGORIES UPON WHICH THE

23   30(B)(6) WITNESSES WERE DESIGNATED.  AND THOSE,

24   THAT'S THE TESTIMONY THAT THEY PROVIDED TO US.

25           IT'S ALSO IMPORTANT TO NOTE, YOUR HONOR,

1    THAT WAL-MART BRINGS UP IN ITS OPPOSITION,

2    MR. NELSON STATED HERE TODAY, SOME DIFFERENCE

3    BETWEEN A TASK WHICH CAN BE PERFORMED BASED UPON

4    THE CONFIGURATION OF THE CASH REGISTER STATION.

5    AND HERE AGAIN WHAT WAL-MART'S OWN WITNESSES, RULE

6    30(B)(6) WITNESSES, TOLD US WAS THE TASKS ARE THE

7    SAME; THE JOB IS DONE THE SAME WAY, REGARDLESS OF

8    THE CONFIGURATION OF A CASH REGISTER STATION.

9         ANOTHER REASON WHY WAL-MART'S ADMISSIONS

10   FROM ITS RULE 30(B)(6) DESIGNATES AND OWN DOCUMENTS

11   REFUTE THAT ARGUMENT IS BECAUSE UNDER ITS ADA

12   POLICY, WHEN THEY PROVIDE A STOOL TO SOMEONE WHO

13   HAS A DISABILITY, THEY PROVIDE THE SAME STOOL

14   REGARDLESS OF THE CONFIGURATION OF THE CASH

15   REGISTER STATION.

16        AND THEY'RE ABLE TO DO THAT BECAUSE HERE

17   AGAIN WAL-MART CONDUCTED ITS OWN STUDY.  THEY

18   TESTED IT.  THEY BROUGHT IT INTO THEIR LAYOUT AND

19   DESIGN AREA; THEY PUT THIS STOOL THAT THEY HAD

20   SELECTED, WHICH IS OF A CERTAIN HEIGHT AND WEIGHT

21   AND FOOTPRINT, AND THEY PUT IT IN THEIR DIFFERENT

22   CASH REGISTER CONFIGURATIONS.  AND THEY DETERMINED

23   THAT THIS IS THE ONE WE WANT TO USE BECAUSE THIS IS

24   THE ONE THAT FITS.  THIS IS THE ONE THAT FITS

25   WITHIN OUR FOOTPRINT, REGARDLESS OF WHETHER IT'S A

1    BELTED, OR A NON-BELTED, OR A SPEEDY CHECKOUT

2    CONFIGURATION.

3              I DID WANT TO NOTE, YOUR HONOR, BEFORE

4    THE POINT ESCAPES ME, YOU ASKED ABOUT JUDGE REAL'S

5    DECISION IN THE GREEN VERSUS BANK OF AMERICA CASE.

6    LOOKING -- WAL-MART TAKES GREAT LIBERTY WITH THAT

7    OPINION.  FIRST OF ALL, THAT OPINION HAS BEEN

8    APPEALED TO THE NINTH CIRCUIT.

9              THE COURT:  IT'S ON APPEAL.  IT'S A BENCH

10   OPINION.

11             MR. JONES:  IT'S A BENCH OPINION.  IT HAS

12   BEEN APPEALED.

13             AND JUDGE REAL DID NOT SAY IN THERE THAT

14   THERE IS A CONDITION THAT SOMEONE MUST REQUEST A

15   SEAT BEFORE IT IS PROVIDED.  THE ANALOGY THAT

16   WAL-MART MAKES TO THE MEAL AND REST PERIOD CASES IS

17   A FALSE ONE.  BECAUSE, HERE AGAIN, NO WHERE IN

18   THOSE CASES, AND THIS IS THE LAMPS PLUS AND FEDERAL

19   COUNTERPARTS OF INTERPRETING MEAL AND REST BREAK

20   LAW AS WELL, NOWHERE IN THOSE CASES DOES IT SAY

21   THAT AN EMPLOYEE MUST REQUEST A BENEFIT BEFORE THE

22   BENEFIT IS PROVIDED.

23             IT SIMPLY SAYS THAT THE EMPLOYER NEED NOT

24   ENSURE, IN THE MEAL AND REST BREAK SCENARIO, THE

25   EMPLOYEE NEED NOT ENSURE THAT THE EMPLOYEE TAKE A

                                                      21

1    MEAL OR REST BREAK.  HOWEVER, THE EMPLOYER MUST

2    MAKE THE MEAL AND REST BREAK AVAILABLE TO THE

3    EMPLOYEE.  THAT'S THE ANALOGY THAT IS CORRECT WITH

4    OUR CASE.

5              THERE IS NOTHING THAT SAYS THAT THE

6    EMPLOYEE HAS TO FIRST REQUEST THE USE OF A SEAT.

7    IT'S SIMPLY THAT THE EMPLOYER MUST MAKE THE SEAT

8    AVAILABLE TO THE EMPLOYEE IF THE NATURE OF THE WORK

9    PERMITS IT.

10             THE COURT:  SO HOW DO YOUR CLASS MEMBERS,

11   HOW ARE THEY DEFINED ACCORDING TO THAT?  DO YOU

12   HAVE TO FIND PEOPLE WHO SAY, CASHIERS WHO SAY YES,

13   IT WAS MADE AVAILABLE TO ME, OR NO IT WASN'T?

14             MR. JONES:  IN THIS CASE IT'S QUITE

15   SIMPLE, YOUR HONOR, BECAUSE WAL-MART ADMITS THAT IT

16   HAS A COMMON POLICY OF NOT MAKING AVAILABLE,

17   PERIOD; END OF STORY.

18             THE COURT:  SO WE DON'T NEED ANY

19   TESTIMONY, ANY EVIDENCE FROM YOUR CLIENTS?

20             MR. JONES:  THAT'S CORRECT, YOUR HONOR.

21   BECAUSE IN THIS PARTICULAR CASE THE COMMON POLICY

22   IS THEY DON'T PROVIDE A SEAT.

23             MR. NELSON:  ACTUALLY, YOUR HONOR, I

24   THINK I NEED TO TAKE ISSUE WITH THAT DEPOSITION

25   TRANSCRIPT THAT COUNSEL IS RELYING ON.

1            THE FIRST QUESTION WAS, DO YOU HAVE A

2     POLICY ON SEATING?  AND THE ANSWER WAS NO.

3            THEN THE QUESTION WAS, WELL, WHAT IS YOUR

4     POLICY WITH RESPECT TO ADA ACCOMMODATIONS, AND HOW

5     DOES THAT WORK?  THERE WAS SOME OBJECTION TO THAT;

6     AND THERE WAS A SECONDARY ONE AS TO JOB

7     ACCOMMODATIONS AND A POLICY TO THAT, A RESPONSE TO

8     THAT ONE.

9            AND THE THIRD QUESTION WAS A VERY

10    GENERALIZED, WELL, DOES WAL-MART GENERALLY PROVIDE

11    SEATS?  THE ANSWER, NO.  BUT THAT WAS IN THE

12    CONTEXT OF TALKING ABOUT THE ADA POLICY STATEMENT.

13           THE REASON I POINT THIS OUT IS IT'S VERY

14    CLEAR FROM THE STORE MANAGER LEVEL THAT THEY ARE

15    NOT LIMITED BY A POLICY THAT PRECLUDES THEM FROM

16    RESPONDING TO REQUESTS FOR SEATING.  THEY CAN GRANT

17    IT OR NOT.  WHETHER IT IS ADA OR NOT, OR WHETHER IT

18    IS A JOB ACCOMODATION OR NOT.

19           THE OTHER POINT I THINK IN THAT SETTING

20    IS GOING TO BE THERE IS A FUNDAMENTAL -- WELL, THE

21    FIRST POINT IS GOING TO BE SIMPLY THAT THE WORD

22    "PROVIDE" IN THIS CONTEXT DOESN'T, I DON'T BELIEVE

23    HAS BEEN JUDICIALLY DEFINED.  WE ARE ALL WORKING

24    FROM ANALOGY HERE.  BUT THERE'S A DIFFERENCE AND

25    DISTINCTION TO SOME DEGREE BETWEEN --

1          THE COURT:  BUT THE WORD THAT PRECEDES

2     PROVIDE IS "SHALL" WHICH IS PRETTY DIRECTIVE.

3          MR. NELSON:  WELL, IT IS.  BUT IT'S ALSO

4     LIMITED BY "REASONABLY PERMITS" AND "SUITABLE

5     SEATS."  SO THERE ARE A NUMBER OF VARIABLES.

6          THE COURT:  WHAT DOES THAT MEAN,

7     "REASONABLY PERMITS?"

8          MR. NELSON:  WELL, I THINK WE'RE JUST

9     GOING TO HAVE TO DEVELOP THAT ON THE MERITS, YOUR

10    HONOR.

11         THE COURT:  I SEE.

12         MR. NELSON:  I THINK THAT'S ONE OF THE

13    CHALLENGES HERE THAT, AS TO SOME PARTICULAR WORK

14    STATIONS.  THEY MIGHT BE ABLE TO SAY IN SOME

15    PARTICULAR STORES AND SOME PARTICULAR ENVIRONMENTS

16    ON ANY GIVEN DAY YOU MIGHT BE ABLE TO MAKE THAT

17    CONCLUSION, BUT ON OTHER DAYS YOU WON'T BE ABLE TO.

18    YOU WILL BE LOOKING AT DIFFERENT FACTS IN EACH

19    INDIVIDUAL DAY, AS TO EACH INDIVIDUAL CASHIER.

20         THE OTHER POINT IS I THINK THAT THERE IS

21    A DISTINCTION BETWEEN A REST AND MEAL PERIOD, BEING

22    PROVIDED AS INHERENTLY A BENEFIT, AND A STOOL BEING

23    PROVIDED OR A SEAT, WHICH COULD BE A BENEFIT BUT

24    COULD ALSO BE AN IMPEDIMENT.  IT COULD ALSO BE A

25    TRIPPING HAZARD.

1          IT COULD BE THE SORT OF THING THAT

2     SOMEONE WHO DOES NOT REQUIRE A PARTICULAR

3     ACCOMODATION OR ASSISTANCE TO PERFORM HIS WORK, AS

4     LONG AS THE FLOOR AREA IS CLEAR, BUT YOU INJECT

5     THAT OBJECT INTO THE WORK AREA, AND NOW SUDDENLY

6     THAT'S NOT A BENEFIT; IT'S A HINDRANCE TO WHAT

7     THEY'RE DOING.

8          SO THERE IS A LITTLE BIT OF A COGNITIVE

9     DISCONNECT TO THIS CONCEPT.

10         THE COURT:  SO, MR. JONES, WHEN YOU

11    SAY -- OKAY, DAY ONE I SHOW UP; I'M INTRODUCED TO

12    MY CASHIER, I'M INTRODUCED TO MY CASH MACHINE, OR

13    REGISTER, MY WORK AREA, MY PENCILS, MY PAPER, AND

14    ALL OF THAT, AND I'M INTRODUCED TO MY STOOL.

15    ACCORDING TO THE CODE 7-2001 SECTION 14, WAL-MART

16    SAYS HERE'S YOUR STOOL, I'M OBLIGATED TO GIVE YOU

17    YOUR STOOL; AND I SAY, YOU KNOW WHAT, THIS IS

18    REALLY INTERFERING WITH MY ABILITY TO DO MY JOB,

19    PLEASE TAKE IT AWAY.

20         MR. NELSON:  AGAIN, THAT'S A MERITS

21    QUESTION, YOUR HONOR.

22         BUT, AND I THINK, AND THIS IS THE

23    PROBLEM, IS THAT WITHOUT GETTING INTO THAT TOO

24    TERRIBLY FAR, THERE IS A DISTINCTION BETWEEN --

25    WELL, FIRST OF ALL, WHAT WE DON'T KNOW IS WHETHER

25

1    THE WAGE ORDER AS CURRENTLY CONFIGURED WOULD

2    ACTUALLY ALLOW THE EMPLOYEE TO SAY NO; AND THE

3    EMPLOYER SAYS FINE, NO, I'M NOT GOING TO GIVE IT TO

4    YOU THEN.  WE DON'T KNOW THE ANSWER TO THAT

5    QUESTION.

6            THE COURT:  FINE.  BUT MY QUESTION WAS

7    BASED ON YOUR DESCRIPTION A MOMENT AGO ABOUT

8    DIFFERENT CHARACTERISTICS OF THE JOB AND THE WORK

9    PLACE.

10           MR. NELSON:  WELL, RIGHT.  AND THE

11   PROBLEM THEN BECOMES OKAY, SO THE EMPLOYER -- IF

12   THAT CONSTRUCTION FLIES -- THEN YOU HAVE A PROBLEM

13   OF IS THE STOOL REASONABLY SUITABLE TO THE WORK THE

14   EMPLOYEE IS GOING TO BE PERFORMING THAT FIRST DAY?

15   THAT'S AN INDIVIDUAL ANALYSIS.

16           AND WHEN YOU COME BACK THE SECOND DAY THE

17   INDIVIDUAL MAY BE AT A DIFFERENT WORK STATION AND

18   YOU DO THE SAME ANALYSIS OVER AGAIN.  THAT'S PRETTY

19   INDIVIDUALIZED, YOUR HONOR.

20           MR. JONES:  YOUR HONOR, I THINK WHAT I

21   HEAR FROM OPPOSING COUNSEL IS THAT THERE ARE

22   VARIOUS COMMON ISSUES SURROUNDING THE PROPER

23   INTERPRETATION OF THE WAGE ORDER IN THIS CASE.  AND

24   AS WE NOTED IN OUR MOVING PAPERS, THERE ARE COMMON

25   ISSUES IN THIS CASE THAT CONCERN PROPER

26

1   INTERPRETATION OF THE WAGE ORDER.

2          AND IT'S CLEAR THAT THE PLAINTIFFS'

3   INTERPRETATION DIFFERS FROM THE DEFENDANTS'

4   INTERPRETATION.  THAT IS THE TYPE OF DISPUTE THAT A

5   CLASS ACTION LITIGATION WAS DESIGNED SPECIFICALLY

6   TO ADDRESS, BECAUSE THESE ISSUES ARE COMMON.

7          AND HERE, AGAIN, YOUR HONOR, WHAT I AM

8   HEARING AGAIN AND AGAIN FROM MR. NELSON TODAY, AND

9   WHAT I SAW IN THEIR BRIEFS, ARE ARGUMENTS THAT WERE

10   COMPLETELY CONTRADICTED BY THEIR OWN RULE 30(B)(6)

11   DESIGNATES.  MR. NELSON STATED THAT IT MAY BE A

12   SAFETY HAZARD TO HAVE A STOOL WITHIN A PARTICULAR

13   CASH WRAP.  AGAIN, WAL-MART'S RULE 30(B)(6)

14   DESIGNATE ON THIS TOPIC, HERMINIO VARGAS

15   (PHONETIC), TOLD US, WE HAVE DETERMINED THAT A

16   STOOL IS NOT A SAFETY HAZARD.  AS A RESULT OF THAT,

17   THAT'S ALSO IN THEIR OWN POLICY DOCUMENTS, THEIR

18   QUICK REFERENCE DOCUMENTS.

19          THE COURT:  TELL ME AGAIN, IN REGARDS TO

20   CASHIERS, QUOTE UNQUOTE, IN THE TIRE AND LUBE AREA,

21   ARE THOSE INCLUDED IN YOUR PROSPECTIVE CLASS?

22          MR. JONES:  YOUR HONOR, AS WAL-MART HAS

23   TOLD US, THEY ARE NOT INCLUDED IN THE CLASS BECAUSE

24   THEY ARE NOT CASHIERS.  THEY HOLD A DIFFERENT JOB

25   TITLE ALL TOGETHER.

27

1          THE COURT:  AS DO THE GARDEN, THE

2     INDIVIDUALS, PEOPLE WHO WORK IN THE GARDEN AREA?

3          MR. JONES:  YES, YOUR HONOR.

4          AND, AGAIN, THAT IS IDENTIFIED WITHIN THE

5     EXHIBIT TO MY REPLY DECLARATION.  AND IF YOU LOOK

6     ON THE SECOND PAGE OF THE EXHIBIT, YOU WILL SEE JOB

7     CODE 30564 IS THE ONE, TWO, THREE, FOUR, FIVE,

8     SIXTH ONE DOWN.  YOU'LL SEE LAWN AND GARDEN SALES

9     ASSOCIATE; AND THEIR JOB CODE WAS CHANGED TO SIMPLY

10    LAWN AND GARDEN SALES ASSOCIATE.  THESE PEOPLE ARE

11    NOT CASHIERS.

12         THE COURT:  AND THE SPORTING GOODS PEOPLE

13    AS WELL?

14         MR. JONES:  THE SPORTING GOODS PEOPLE ARE

15    AT THE VERY BOTTOM OF THAT PAGE, YOUR HONOR.  AND

16    THEY HAVE THE JOB CODE 30567.

17         THE COURT:  I'M JUST TRYING TO MIND THE

18    LIMITS OF THE CLASS.

19         MR. JONES:  NO, I UNDERSTAND, YOUR HONOR.

20         YES, THESE PEOPLE ARE EXCLUDED FROM OUR

21    CLASS DEFINITION BECAUSE THEY DO NOT HAVE THE JOB

22    TITLE, AND THE PRIMARY JOB FUNCTION, AND SPEND OVER

23    TWO-THIRDS OF THEIR WORK TIME PERFORMING THE SAME

24    WORK TASK, WHICH IS CASHIERING.  SO A LOT OF THE

25    ARGUMENTS THAT ARE BEING MADE BY WAL-MART, ONCE

1    AGAIN, YOUR HONOR, WAL-MART HAD THE OPPORTUNITY TO

2    PRESENT THESE ARGUMENTS TO US WHEN WE DEPOSED THEIR

3    RULE 30(B)(6) DESIGNATES.  HOWEVER, THEY DID NOT DO

4    SO.  THEY PAINTED QUITE A DIFFERENT PICTURE; THEY

5    PAINTED A PICTURE OF UNIFORMITY.

6           AND HERE, AGAIN, YOUR HONOR, WE ARE

7    TALKING ABOUT CASHIERS.  THESE ARE PEOPLE WHO

8    PERFORM THE SAME REPETITIVE TASK, OVER AND OVER

9    AGAIN.

10          I KNOW MR. NELSON KEEPS SUGGESTING THAT

11   WE'RE AT THE 30,000 FOOT LEVEL BUT -- AND YOU HAVE

12   THE TESTIMONY IN THE RECORD ON THE STUDY THAT WAS

13   DONE BY WAL-MART, WHICH WAS A VERY, VERY INVOLVED

14   STUDY THAT WAS SPECIFICALLY DESIGNED TO FIGURE OUT

15   WHAT THESE PEOPLE ARE DOING AND WHAT THEIR PRIMARY

16   JOB FUNCTION IS.  SO WAL-MART HAS ALREADY DEFINED

17   THESE ISSUES FOR US, YOUR HONOR, BY THEIR RULE

18   30(B)(6) DESIGNATES, YOUR HONOR.

19          AND, AGAIN, I WOULD POINT YOUR HONOR ON

20   THE IMPORTANCE IN THE PLAINTIFF'S VIEW OF THE

21   ACCOMMODATION POLICY.  WE'RE MAKING ALLEGATIONS

22   UNDER THE ADA HERE.  THE IMPORTANCE OF THAT TO OUR

23   PARTICULAR CASE IS IT DEMONSTRATES A COUPLE OF

24   THINGS.

25          IT DEMONSTRATES, NUMBER ONE, THAT PERSONS

29

1    WHO ARE CASHIERS ACTUALLY CAN DO THE WORK WHILE

2    SEATED IN A STOOL, OR ELSE WAL-MART WOULDN'T GIVE

3    THEM THE STOOL.  UNDER THEIR OWN ACCOMMODATION

4    POLICY, THEY WOULD OFFER THEM A DIFFERENT POSITION,

5    A REASSIGNMENT.  BECAUSE UNDER THEIR ACCOMMODATION

6    POLICY THEY ONLY GIVE YOU THE USE OF THE STOOL IF

7    YOU CAN PERFORM THE ESSENTIAL FUNCTIONS OF THAT

8    POSITION WHILE SEATED.

9            THE COURT:  WELL, MR. NELSON SUGGESTS

10   THAT A CASHIER POSITION AT WAL-MART MIGHT BE

11   DIFFERENT ON A DAY-TO-DAY BASIS.  SOMEONE MIGHT BE

12   WORKING AT ONE LOCATION AS A CASHIER AND THEN MOVE

13   TO ANOTHER LOCATION AS A CASHIER, THAT I GUESS,

14   MR. NELSON, MIGHT NOT ACCOMMODATE A STOOL?

15           MR. JONES:  THAT'S --

16           THE COURT:  IS WHAT YOU WERE SUGGESTING?

17           MR. NELSON:  WELL, IT'S VERY CLOSE.

18           I THINK WE'RE ON THE SAME WAVE LENGTH,

19   YOUR HONOR.  IT'S NOT THAT THE JOB TITLE CHANGES,

20   IT'S THE PHYSICAL TASK BEING PERFORMED WHICH

21   CHANGES DEPENDING ON WHERE THE INDIVIDUAL IS.

22           THE COURT:  WOULD THAT CHANGE, THE FACT

23   THAT THERE'S A DELTA IN THEIR LOCATION THEN CAUSE

24   DAMAGE TO A CLASS MEMBERSHIP AS COUNSEL SUGGESTS;

25   IS THAT WHAT YOU'RE SAYING?

30

1              MR. NELSON:  I'M SORRY?

2              THE COURT:  YOU'RE SAYING THAT THAT

3      PERSON WHOSE JOB CHANGES SITE, THEN THERE'S NO

4      COMMONALITY AS TO THAT PERSON?

5              MR. NELSON:  WELL, I THINK THAT'S

6      CORRECT; THERE'S NO COMMONALITY.  BUT THERE'S ALSO

7      A PROBLEM WITH, WE'RE BACK TO THE INDIVIDUALIZED

8      PROOF AS TO ANY GIVEN DAY WHETHER WHAT THE

9      INDIVIDUAL DOES REASONABLY -- PHYSICALLY DOES, AND

10     HOW THEY DO IT, PHYSICALLY DOES, REASONABLY PERMITS

11     THE SEAT.

12             THE OTHER THING THAT KIND OF GETS LOST IN

13     THE SHUFFLE HERE IS THAT WITH RESPECT TO THE POLICY

14     QUESTIONS THAT WERE ASKED AT THE 30(B)(6)

15     DEPOSITION, WHEN YOUR HONOR GOES BACK TO LOOK AT

16     THAT SEQUENCE, YOU'LL NOTICE THAT THE QUESTION THAT

17     WASN'T ASKED AT THE END WAS, YOU KNOW, IS THERE A

18     ROUTINE PROVISION OF SEATS, NO.

19             THE QUESTION THAT WAS ASKED WAS, DO STORE

20     MANAGERS HAVE THE INDIVIDUAL DISCRETION TO GRANT

21     REQUESTS WHEN ASKED?  AND THE ANSWER TO THAT

22     QUESTION IS CLEARLY YES FROM THE EVIDENCE WE

23     PRESENTED IN COURT.

24             THE COURT:  WHEN ASKED FOR A STOOL, OR

25     ASKED --

                                                          31

1          MR. NELSON:  WHEN ASKED FOR A STOOL, YES.

2    THAT'S A DISCRETIONARY DECISION OF THE STORE

3    MANAGER.

4          AND THAT SORT OF GETS INTO THE SECONDARY

5    KIND OF POINT, THAT IF WE EVER GET PAST THE ISSUE

6    OF COMPLIANCE WITH THE ORDER, WE'RE GOING TO HAVE

7    TO START FIGURING OUT WHAT IT IS WE'RE GOING TO DO.

8          AND I THINK THIS IS PROBABLY WHERE

9    COUNSEL AND I DISAGREE MOST, IS THAT THERE MAY BE

10   SOME ISSUES THAT WE'RE GOING TO HAVE TO -- THERE

11   ARE SOME LEGAL ISSUES WE HAVE TO RESOLVE LATER.

12   THE PROBLEM IS WE HAVE TO FIGURE OUT WHO THEY ARE

13   GOING TO APPLY TO NOW.

14         AND THE PROBLEM WITH THAT IS THERE ARE SO

15   MANY LAYERS OF INDIVIDUALIZED PROOF, AND THE IMPACT

16   OF AN INDIVIDUAL EMPLOYEE IS SIGNIFICANT.

17         THERE MAY BE A FEW PEOPLE OUT THERE THAT

18   HAVE SOME DECENT CLAIMS.  I WOULD SUGGEST TO YOU

19   THAT MS. BROWN PROBABLY IS NOT ONE OF THEM.  JUST

20   BECAUSE OF HER FACT PATTERN.

21         I DON'T, I KNOW PLAINTIFF DIDN'T MOVE ON

22   HER BEHALF, BUT AN EMPLOYEE WHO OBTAINS A POSITION

23   THROUGH FALSEHOOD IS PROBABLY NOT A GOOD CLASS

24   REPRESENTATIVE.  WE'D LIKE TO THINK THEY'RE NOT

25   REPRESENTATIVE OF ALL THE CLASS.

32

1           BUT THERE ARE GOING TO BE EMPLOYEES OUT

2    THERE, OUT OF 28,000, AND THERE'S GOING TO BE A

3    ROGUE MANAGER WHO MAY BEHAVE BADLY, YOU KNOW.  AND

4    WE DON'T KNOW WHO THEY ARE AT THIS POINT.  THE ONLY

5    WAY YOU'RE GOING TO FIND THAT OUT IS GOING PERSON

6    BY PERSON.

7           BUT THOSE PERSONS WHO MAY HAVE A CLAIM

8    OUT THERE, BY PULLING THEM INTO THIS PROCESS, WE'RE

9    GOING TO EXTINGUISH THEIR VALID CLAIMS, ALONG WITH

10   A GREAT MASS OF PEOPLE, IF WE GO DOWN THIS PATH.

11   AND I SUGGEST THAT IS NOT AN APPROPRIATE THING TO

12   DO, EITHER FOR WAL-MART OR FOR THE EMPLOYEE.

13          THE COURT:  AND TELL ME A LITTLE BIT MORE

14   ABOUT THAT; WHY WOULD THAT HAPPEN?

15          MR. NELSON:  WELL, I MEAN, YOU CAN LOOK

16   AT THIS GROUP, YOU CAN LOOK AT THE TWO NAMED

17   PLAINTIFFS, YOU MIGHT HAVE SOMEONE OUT THERE WHO IS

18   MORE AGGRIEVED THAN EITHER OF THOSE TWO.  AND IF

19   THAT'S THE CASE, THAT INDIVIDUAL RIGHT NOW HAS A

20   RIGHT TO BRING THEIR OWN INDIVIDUAL CLAIM.

21          IF WE CERTIFY A CLASS, THEY LOSE THAT

22   OPPORTUNITY.  THEY'RE GOING TO BE SWEPT IN WITH THE

23   OTHER SEVERAL THOUSAND PEOPLE, AND THE INDIVIDUAL

24   TEXTURE OF THEIR POTENTIAL FOR A CLAIM WILL BE

25   EXTINGUISHED.

1              IT'S THE MIRROR IMAGE OF THE PROBLEM

2      WAL-MART FACES, IN A SENSE THAT DUE PROCESS IS A

3      PRETTY IMPORTANT THING.  AND THE ISSUE THEN, I

4      DON'T WANT TO EXAGGERATE TOO MUCH HERE, BUT IT

5      SOUNDS GOOD TO SAY WELL, WE'RE GOING TO RESOLVE ALL

6      THESE CLAIMS IN ONE FELL SWOOP, BUT YOU CAN QUICKLY

7      COME UP WITH SOME EXAMPLES WHERE THAT IS NOT A GOOD

8      IDEA.  YOU HAVE TO FIGURE OUT WHETHER THIS WORKER

9      -- EVERYBODY GETS ASYLUM OR NOBODY GETS ASYLUM BY

10     ASKING THIS GUY.  I MEAN, THAT'S PROBABLY NOT AN

11     APPROPRIATE WAY TO DO IT.

12             THE COURT:  BUT ISN'T THAT INHERENT IN

13     ALL CLASS ACTION CASES?

14             MR. NELSON:  IT IS.  AND THAT'S WHY IT'S

15     A LIMITED REMEDY, IT'S WHAT THE COURT SAYS, YOU

16     HAVE TO BE VERY, VERY CAREFUL WHAT YOU END UP DOING

17     IS A REQUEST THAT IS AN IDENTICAL REQUEST AS TO

18     EVERYBODY.  THE FACTS ARE IDENTICAL AS TO

19     EVERYBODY; THE OUTCOME FURTHERS THE RESOLUTION OF

20     DISPUTE, AND THAT OUTCOME IS GOING TO BE THE SAME

21     FOR EVERYBODY.

22             THE COURT:  LET'S ASK MR. JONES HOW THEY

23     PLAN TO SOLVE THAT PROBLEM.

24             MR. JONES:  NO PROBLEM, YOUR HONOR.  TWO

25     POINTS I'D LIKE TO ADDRESS.

1            THE COURT:  CAN YOU -- YOU'RE ADDRESSING

2    THIS QUESTION?

3            MR. JONES:  I'M ADDRESSING SOME OF THE

4    STATEMENTS THAT HE MADE.

5            THE COURT:  HOW DO YOU SOLVE THIS

6    PROBLEM?

7            MR. JONES:  I'M SORRY, WHICH WAS THIS

8    PROBLEM?

9            THE COURT:  THE PROBLEM HE JUST SPOKE OF,

10   OF DEFINING THE CLASS.

11           MR. JONES:  OF DEFINING THE CLASS?

12           THE COURT:  RIGHT.

13           MR. JONES:  THE CLASS HAS ALREADY BEEN

14   DEFINED.

15           THE COURT:  HE SAID THAT, YOU KNOW, YOU

16   MIGHT HAVE SOME PEOPLE WHOSE DUE PROCESS RIGHTS --

17           MR. JONES:  YES, YOUR HONOR.

18           THE COURT:  THAT'S THE QUESTION.

19           MR JONES:  THIS IS EXACTLY WHAT I'M

20   TRYING TO ADDRESS.

21           THE STATUTE ITSELF, 2699(E) DEFINES THE

22   TERM "AGGRIEVED EMPLOYEE."  AGGRIEVED EMPLOYEE IS

23   DEFINED AS:  ANY PERSON WHO IS EMPLOYED BY THE

24   ALLEGED VIOLATOR, AND AGAINST WHOM ONE OR MORE OF

25   THE ALLEGED VIOLATIONS WAS COMMITTED.

1              ALL PERSONS ARE AGGRIEVED IN THIS CASE.

2    NO ONE IS AGGRIEVED MORE OR LESS THAN ANYONE ELSE,

3    BY DEFINITION OF THE STATUTE.  AND, ACTUALLY, THIS

4    COURT, IN DOCKET NUMBER 52, IN DENYING THE

5    DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS,

6    SPECIFICALLY NOTED THAT THE DEFINITION UNDER PAGA

7    OF AGGRIEVED EMPLOYEE IS THE SAME FOR EVERYONE.  SO

8    ALL CASHIERS ARE AGGRIEVED THE SAME.

9              TO ADDRESS THE SECOND POINT THAT

10   MR. NELSON MADE, WHICH IS CONCERNING OPT-OUTS,

11   THAT'S THE BEAUTY OF A CLASS ACTION MECHANISM.  IF

12   THE COURT CERTIFIES THIS CASE, THE NEXT THING THAT

13   WOULD HAPPEN WOULD BE THAT NOTICE WOULD BE SENT TO

14   ALL THE CASHIERS.  AND THE CASHIERS WOULD BE

15   ADVISED OF THEIR RIGHTS IN THIS ACTION.  AND THE

16   CASHIERS WOULD ALSO BE ADVISED OF THE FACT THAT IF

17   THEY WANTED TO THEY COULD CHOOSE TO OPT-OUT OF THE

18   CASE AND PURSUE THEIR OWN INDIVIDUAL ACTION, OR

19   HIRE THEIR OWN ATTORNEY.

20             THESE ARE THE OPT-OUT RIGHTS THAT ARE

21   PROVIDED UNDER RULE 23(B)(3) CERTIFIED CLASS.  SO

22   THE OPT-OUT ARGUMENT THAT MR. NELSON IS MAKING

23   SIMPLY NEVER ARISES IN THIS CASE.

24             MR. NELSON:  WELL, I THINK, YOUR HONOR,

25   THE PROBLEM WITH THAT IS THAT IT'S, AGAIN, IN A

1    LABORATORY ENVIRONMENT IT SOUNDS GREAT.  THE ISSUE

2    ISN'T WHETHER UNDER THE STATUTE THE COURT -- WE ARE

3    NEW TO THE CASE BUT WE HAVE READ YOUR RULINGS --

4    THE ISSUE ISN'T WHETHER THESE INDIVIDUALS MIGHT BE

5    AGGRIEVED EMPLOYEES IF IN FACT A VIOLATION HAS

6    OCCURRED, THE QUESTION IS THE DEGREE TO WHICH THEY

7    ARE AGGRIEVED.

8              AND THIS COURT HAS AN OBLIGATION AT SOME

9    POINT IN TIME TO EXERCISE ITS REASONABLE DISCRETION

10   TO MAKE A CONCLUSION AS TO WHO GETS WHAT IF THERE'S

11   GOING TO BE A PENALTY AWARDED.

12             THE COURT:  WELL, THE STATUTE HAS A

13   REMEDY; DOESN'T IT?  THERE'S $100, $200, SOMETHING

14   LIKE THAT.

15             MR. NELSON:  RIGHT.  BUT THEN THIS COURT

16   HAS TO EXERCISE ITS DISCRETION TO DETERMINE WHETHER

17   THE PENALTY SHOULD BE REDUCED IN SOME RESPECTS, AND

18   WHO SHOULD GET MORE.

19             I MEAN, YOU CAN LOOK AT THE TWO NAMED

20   PLAINTIFFS HERE, IF THE REQUEST MATTERS -- AN ISSUE

21   THAT WE'RE GOING TO HAVE TO RESOLVE ANOTHER DAY --

22   IF THE REQUEST MATTERS, I MEAN, YOU CAN LOOK AT

23   THOSE TWO PLAINTIFFS AND SAY WELL, WE'VE GOT ONE

24   WHO MADE THE REQUEST, AND ONE WHO DIDN'T.  AND THE

25   ONE WHO MADE THE REQUEST AND WAS REFUSED, MAYBE SHE

1    IS A BIT MORE AGGRIEVED AND ENTITLED TO A BIT MORE

2    ON THE PENALTY SIDE.

3              THE COURT:  MAYBE THEY HAVE A DIFFERENT

4    CAUSE OF ACTION.

5              MR. NELSON:  EXCUSE ME?

6              THE COURT:  THEY MIGHT HAVE A DIFFERENT

7    CAUSE OF ACTION.

8              MR. NELSON:  I THINK IT WOULD BE THE SAME

9    CAUSE OF ACTION, YOUR HONOR.  BUT --

10             THE COURT:  I'M NOT A LAWYER, SO I DON'T

11   KNOW.  THEY MIGHT HAVE SOMETHING ELSE TO PURSUE.

12             MR. NELSON:  YOU'RE RIGHT.  THEY MIGHT.

13   BUT, AGAIN, THAT'S AN INDIVIDUALIZED INQUIRY, WHICH

14   IS THE WHOLE POINT HERE.

15             MR. JONES:  YOUR HONOR, THERE'S A VERY

16   WELL DEVELOPED BODY OF CASE LAW THAT SQUARELY HOLDS

17   THAT THE DIFFERENCE IN THE AMOUNT OF DAMAGES ONE

18   CLASS MEMBER MAY RECEIVE AS OPPOSED TO ANOTHER IS

19   NOT A VALID BASIS UPON WHICH TO DENY CLASS

20   CERTIFICATION.

21             MR. NELSON DID, AGAIN, HIGHLIGHT ANOTHER

22   COMMON LEGAL ISSUE INVOLVED IN THIS CASE WHICH IS

23   THE PROPER INTERPRETATION OF THE WAGE ORDER.  AND

24   ALSO, I THINK IT'S IMPORTANT TO REMEMBER WHAT THE

25   SPECIFIC --

38

1          THE COURT:  SO THAT POINT -- PARDON ME --

2     THAT POINT YOU SUGGEST IS ANOTHER FACTOR OF

3     COMMONALITY AS TO ALL THESE POTENTIAL CLAIMS?

4          MR. JONES:  YES.

5          THE COURT:  THE DETERMINATION OF THE WAGE

6     ORDER, WHAT THAT MEANS.

7          MR. JONES:  THE PROPER INTERPRETATION OF

8     THE WAGE ORDER, YES, YOUR HONOR.

9          CLEARLY, THE PLAINTIFFS AND WAL-MART HAVE

10    A DIFFERENT INTERPRETATION ABOUT THE PROPER

11    INTERPRETATION OF THE WAGE ORDER.  THAT IS A COMMON

12    LEGAL ISSUE THAT SHOULD BE APPLIED TO ALL 28,000

13    CASHIERS BECAUSE THEY DO THE SAME WORK.

14          AND THE NEXT THING, YOUR HONOR, IS THAT

15    THIS IDEA THAT THE DEGREE TO WHICH SOMEONE IS

16    AGGRIEVED MAY VARY FROM PERSON TO PERSON IS

17    COMPLETELY INCONSISTENT WITH THE LANGUAGE OF PAGA

18    ITSELF, WHICH STATES THAT ALL AGGRIEVED EMPLOYEES,

19    AS I JUST QUOTED TO YOUR HONOR.

20          BUT IT'S ALSO IMPORTANT TO NOTE THAT THIS

21    IS REMEDIAL LEGISLATION.  AND IT IS TO BE LIBERALLY

22    CONSTRUED WITH AN EYE TOWARD PROTECTING EMPLOYEES.

23    THE CALIFORNIA SUPREME COURT NOTED THAT OVER AND

24    OVER AGAIN, INCLUDING IN THE ARIAS CASE.

25          AND THEY ALSO, IT'S IMPORTANT TO NOTE

1    THAT THE WHOLE REASON WHY PAGA WAS ENACTED, AND

2    THAT'S THE VEHICLE THAT PLAINTIFFS ARE USING IN

3    THIS PARTICULAR CASE, AND PAGA WAS ENACTED BECAUSE

4    OF THE FACT THAT THE LABOR WORK FORCE DEVELOPMENT

5    AGENCY IN THE STATE OF CALIFORNIA WAS UNDERFUNDED.

6    THE CALIFORNIA LEGISLATURE DETERMINED THAT IT WAS

7    VERY IMPORTANT TO CONTINUE THE VIGOROUS ENFORCEMENT

8    OF CALIFORNIA'S LABOR LAWS.

9           AND AS A RESULT PAGA WAS ENACTED, WHICH

10   ALLOWS AN INDIVIDUAL EMPLOYEE TO SUE NOT ONLY ON

11   BEHALF OF OTHER AGGRIEVED EMPLOYEES, WHICH IS WHAT

12   WE ARE DOING IN THIS CASE, BUT ALSO ON BEHALF OF

13   THE STATE OF CALIFORNIA TO ENFORCE CALIFORNIA'S

14   LABOR LAWS.

15          AND WHAT THEY DID WHEN THEY ENACTED PAGA

16   IS THEY SAID WHEN YOU HAVE A SPECIFIC LABOR LAW

17   THAT DOES NOT INCLUDE ITS OWN REMEDY PROVISION, YOU

18   CAN SUE FOR CIVIL PENALTIES.  WHICH IS WHAT WE'RE

19   DOING HERE, WHICH ARE $100 FOR THE FIRST VIOLATION,

20   $200 FOR EACH SUBSEQUENT VIOLATION.  SEVENTY-FIVE

21   PERCENT OF THOSE DAMAGES GO TO THE STATE OF

22   CALIFORNIA, 25 PERCENT OF THOSE DAMAGES GO TO THE

23   EMPLOYEES.

24          THERE IS NO SUPPORT IN THE LAW THAT ONE

25   EMPLOYEE SHOULD RECEIVE MORE PENALTIES THAN ANOTHER

1    EMPLOYEE SHOULD RECEIVE.  AND IT'S ALSO IMPORTANT

2    THAT CALIFORNIA COURTS, IN THE AMARAL CASE, HAVE

3    ADDRESSED THIS NOTION OF REDUCING THE AMOUNT OF

4    PENALTIES, AND THEY SPECIFICALLY NOTED THAT

5    PENALTIES ARE MANDATORY.

6             AND IN THIS PARTICULAR CASE, YOUR HONOR,

7    WE'RE NOT ASKING YOU TO HAVE AN INDIVIDUAL BY

8    INDIVIDUAL REWARD FOR CIVIL PENALTIES.  WE'RE

9    ASKING YOU TO LOOK AT THIS CASE IN TOTAL, BECAUSE

10   THIS IS A STATUTE THAT'S BEEN AROUND FOR 34 YEARS.

11   THIS REQUIREMENT HAS BEEN THERE; WAL-MART HAS

12   CHOSEN NOT TO COMPLY WITH IT.

13            AND WAL-MART'S ACTIONS IN THIS CASE, AS I

14   NOTED, THEY HAVE HAD AVAILABLE TO THEM CASH WRAPS

15   THAT ARE SPECIFICALLY DESIGNED TO ALLOW FOR THE USE

16   OF SEATS.  AND THEY HAVE ALSO, SINCE 2003 --

17            THE COURT:  YOU'RE GIVING ME YOUR CLOSING

18   ARGUMENT.

19            MR. JONES:  I APOLOGIZE, YOUR HONOR.

20   THANK YOU VERY MUCH.

21            THE COURT:  LET ME ASK YOU, SHOULD WE

22   EXCLUDE INDIVIDUALS FROM THE CLASS WHO WERE OFFERED

23   SEATS?

24            MR. JONES:  THE INDIVIDUALS WHO WERE

25   PROVIDED WITH SEATS, THERE ARE 29 OF THEM OUT OF

1    THE 28,000 PEOPLE; THEY WOULD BE EXCLUDED FROM THE

2    CLASS DURING THE PERIOD OF TIME IN WHICH THEY WERE

3    ALLOWED TO USE THE SEATS.  BECAUSE, AS YOU'LL SEE

4    FROM WAL-MART'S RESPONSES, THERE WERE 39 REQUESTS.

5    AND THIS WAS A SPECIFIC INTERROGATORY THAT WE SENT

6    TO WAL-MART ASKING THEM TO IDENTIFY EVERYONE WHO

7    HAD MADE A REQUEST.  THAT'S WHAT THEY DID.  THERE

8    WERE 39 PEOPLE.

9         OF THOSE 39, 29 WERE PROVIDED WITH SEATS.

10   BUT THEY WERE ONLY PROVIDED WITH SEATS FOR A

11   LIMITED DURATION OF TIME.  SO, FOR EXAMPLE, IF

12   SOMEONE HAD A BROKEN FOOT, ONCE THEIR BROKEN FOOT

13   HAD HEALED WAL-MART TOOK THE STOOL AWAY.  BECAUSE,

14   AGAIN, WAL-MART'S POLICY AND PRACTICE IS THEY DON'T

15   ALLOW THEIR CASHIERS TO USE STOOLS UNLESS THERE'S

16   AN EXCEPTION.

17        THE COURT:  SHOULD THOSE INDIVIDUALS, IF

18   THERE ARE ANY, WHO WERE OFFERED SEATS BUT DECLINED

19   THEM BE EXCLUDED?

20        MR. JONES:  NO.  THEY SHOULD BE INCLUDED

21   IN THE CLASS.

22        THE COURT:  IT MAKES NO DIFFERENCE IF

23   THEY WERE OFFERED BUT THEY SAID NO, I DON'T WANT

24   IT?

25        MR. JONES:  THE EMPLOYEES?

42

1          THE COURT:  YES.

2          MR. JONES:  I'M NOT, THERE'S NO EVIDENCE

3    OF ANY EMPLOYEE BEING OFFERED A SEAT AND NOT

4    WANTING IT.  WHAT THE EVIDENCE SUGGESTS IS THAT

5    THERE ARE EMPLOYEES WHO REQUESTED IT AND WAL-MART

6    DIDN'T PROVIDE IT.

7          HERE AGAIN, YOUR HONOR, THE PLAIN

8    LANGUAGE OF THE STATUTE AND THE CASES INTERPRETING

9    IT DON'T IMPOSE THE REQUIREMENT IF ONE DOESN'T

10   REQUEST IT.

11         MR. NELSON:  YOUR HONOR, I THINK PART OF

12   THE PROBLEM HERE IS, AGAIN, IT'S UNDERSTANDABLE

13   WHEN YOU RELY ON THINGS THAT MAY BE EASY, BUT WE

14   CAN'T KIND OF GLIDE OVER THE THINGS THAT MAKE IT

15   HARD.

16         YES, ITS TRUE THAT THERE WERE 39

17   DOCUMENTED REQUESTS FOR SEATS, AS TO WHICH 29 WERE

18   GRANTED.  THAT ACTUALLY SUGGESTS A PRETTY GOOD

19   RATIO OF OFFER TO ACCEPTANCE.  PARTICULARLY WHEN

20   YOU'RE TALKING ABOUT WHETHER THE POSITION

21   REASONABLY PERMITS THE USE OF A SEAT.

22         WHAT THAT DOESN'T TAKE INTO ACCOUNT IS

23   ALL THE ORAL REQUESTS THAT MAY HAVE BEEN MADE OUT

24   THERE AND PROCESSED IN SOME DIFFERENT FASHION.

25   AND, AGAIN, THAT'S AN INDIVIDUAL MANAGER'S

1    DISCRETION.

2              THE NOTION THAT WE'RE ONLY TALKING ABOUT

3    THIS ONE CODE I THINK IS ALSO A LITTLE BIT

4    MISLEADING IN ONE SENSE.  AND I'M NOT KNOCKING

5    COUNSEL FOR IT, BUT THE CHALLENGE HERE IS THAT ONE

6    CODE DOESN'T IN EFFECT DESCRIBE CASHIERS.  THE FACT

7    THAT THERE ARE OTHER CODES DESCRIBING OTHER

8    FUNCTIONS DOESN'T NECESSARILY MEAN THE CASHIER IS

9    NOT ALSO PERFORMING THOSE FUNCTIONS.  AND, AGAIN,

10   WE'VE GOT THE CONTINUUM OF A CLASS PERIOD TO DEAL

11   WITH.  IT'S JUST NOT QUITE THAT EASY.

12             THE COURT:  SO YOU MENTION, MR. NELSON,

13   THE INDIVIDUAL, GOING BACK TO THE INDIVIDUAL I

14   GUESS WHIMS, IF YOU WILL, OR THE DECISION OF THE

15   MANAGERS; DOES THAT TRUMP THIS STATUTE THEN?  IS

16   THAT WHAT YOU'RE SUGGESTING?

17             MR. NELSON:  NO.  I'M NOT SAYING THE

18   DECISIONS OF THE MANAGERS NECESSARILY TRUMP THE

19   STATUTE.  I'M SUGGESTING THAT ALTHOUGH WE CAN WAX

20   ON A LITTLE BIT ABOUT, YOU KNOW, INTERPRETING THE

21   WAGE ORDER BROADLY, AND ALL THAT SORT OF THING, AND

22   IT IS, BUT YOU CAN'T INTERPRET A REGULATION BEYOND

23   THAT WHICH IT REGULATES.

24             HERE WHAT WE'RE TALKING ABOUT IS THE

25   OBLIGATION ARISES, IF AT ALL, ONLY AT THE POINT

1    THAT YOU REACH A CONCLUSION THAT THE ACTUAL WORK

2    BEING PERFORMED BY THE INDIVIDUAL AT THAT POINT IN

3    TIME REASONABLY PERMITS IT TO BE PERFORMED USING A

4    SEAT.  THERE IS AN AWFUL LOT THAT GOES INTO THAT

5    ANALYSIS IN THE MERITS SIDE LATER.

6         BUT IF IN FACT THAT ANALYSIS IS

7    PERFORMED, THINGS ARE GOING TO COME UP DIFFERENT

8    ANSWERS AS TO DIFFERENT PEOPLE AT DIFFERENT TIMES.

9         THE COURT:  AND THAT'S THE QUESTION, WHAT

10   IS REASONABLY PERMIT, OR REASONABLY PERFORMING THE

11   DUTIES; THAT MIGHT BE A MERITS QUESTION.

12        MR. NELSON:  WELL, THAT IS A PART OF THE

13   MERITS QUESTION.

14        BUT THE MORE IMPORTANT THING, FROM OUR

15   PERSPECTIVE, YOUR HONOR, IS THAT IT'S AN INDIVIDUAL

16   QUESTION.  YOU'RE NOT GOING TO BE ABLE TO RESOLVE

17   THAT, WE THINK, IN TERMS OF TREATING A LOT OF

18   PEOPLE AS THOUGH THEY'RE EXACTLY THE SAME BECAUSE

19   THEY SIMPLY AREN'T.

20        YOU CAN, YOU CAN EASILY, WITHOUT DOING

21   ANYTHING OTHER THAN APPLYING COMMON SENSE, FIGURE

22   OUT IF AN INDIVIDUAL IS RELATIVELY TALL THEY MAY

23   NOT HAVE TO GET OFF A STOOL TO LOOK OVER TO SEE

24   WHAT'S AT THE BOTTOM OF A CART.  WELL, THAT IS PART

25   OF THE JOB.  BUT HOW OFTEN IT'S GOING TO BE

1    REQUIRED ON ANY GIVEN SHIFT IS GOING TO BE AN

2    INDIVIDUALIZED ANALYSIS; WHETHER IT'S REQUIRED AT

3    EACH INDIVIDUAL STATION IS AN INDIVIDUALIZED

4    ANALYSIS.

5              THE COURT:  SO LET ME GIVE YOU TWO

6    MINUTES TO GIVE ME YOUR, ANYTHING ELSE YOU THINK I

7    SHOULD KNOW ABOUT IN REGARDS TO THIS MOTION,

8    MR. JONES.

9              MR. JONES:  THANK YOU, YOUR HONOR.

10             THE MANAGER DISCRETION ISSUE THAT YOU

11   WERE DISCUSSING WITH MR. NELSON DOES NOT COME INTO

12   PLAY IN THE CLASS CERTIFICATION ANALYSIS FOR TWO

13   REASONS.  THE FIRST REASON IS BECAUSE THE STATUTE

14   ITSELF, WAGE ORDER SECTION 14 STATES THAT ALL

15   WORKING EMPLOYEES SHALL BE PROVIDED.  THE MANAGERS

16   DON'T HAVE THE DISCRETION TO PICK AND CHOOSE UNDER

17   THE STATUTE AS TO WHO SHOULD GET A SEAT AND WHO

18   SHOULDN'T GET A SEAT.

19             AND NUMBER TWO, UNDER WAL-MART'S OWN

20   POLICY, THERE'S MINOR DISCRETION THAT IS EXHIBITED

21   BY THE MANAGEMENT.  THIS IS NOT A WAL-MART V. DUKES

22   SITUATION WHERE THE MANAGERS ARE EXERCISING

23   DISCRETION ON HIRING AND FIRING ISSUES.  THE POLICY

24   ITSELF STATES THAT TYPICALLY STOOLS SHOULD BE

25   PROVIDED BECAUSE WAL-MART ITSELF HAS DONE THE

46

1    STUDIES TO DETERMINE THAT IT'S NECESSARY TO DO SO.

2          IN THE PLAINTIFFS' ESTIMATION, YOUR

3    HONOR, WE'RE HEARING A LOT OF DISTINCTIONS WITHOUT

4    DIFFERENCES AS IT PERTAINS TO, YOU KNOW, ONE

5    EMPLOYEE MAY BE TALLER THAN ANOTHER EMPLOYEE, ONE

6    EMPLOYEE MAY HAVE BLOND HAIR, ONE EMPLOYEE MAY HAVE

7    BROWN HAIR.  THE POINT IS THE WORK THAT IS

8    PERFORMED BY CASHIERS IS THE SAME FOR ALL CASHIERS.

9    AND THAT INVOLVES TAKING AN ITEM, MOVING IT OVER A

10   SCANNER, AND PLACING IT INTO A BAG.  IT IS OUR

11   CONTENTION THAT THE NATURE OF THAT WORK REASONABLY

12   PERMITS THE USE OF A SEAT.

13          WE GENERALLY DISAGREE ABOUT THE PROPER

14   INTERPRETATION OF THE WAGE ORDER REQUIREMENTS IN

15   THIS CASE.  THOSE ARE COMMON LEGAL ISSUES THAT THIS

16   COURT SHOULD RESOLVE ONCE, AS OPPOSED TO HAVING

17   OTHER COURTS AND ADMINISTRATIVE BODIES RESOLVE THE

18   SAME ISSUE 28,858 SEPARATE TIMES.

19          THE PLAINTIFFS WOULD SUBMIT, YOUR HONOR,

20   IN THIS PARTICULAR CASE THAT WE HAVE MET THE

21   ELEMENTS NECESSARY TO SATISFY CLASS CERTIFICATION.

22   AND WE'VE ADDRESSED MOST OF THOSE ELEMENTS TODAY.

23          AND WE DON'T HAVE ANYTHING ELSE, YOUR

24   HONOR.

25          THE COURT:  THANK YOU.

47

1           MR. JONES:  THANK YOU FOR YOUR TIME.

2           MR. NELSON:  YOUR HONOR, IT'S NO SURPRISE

3    THAT WE DISAGREE.

4           I THINK WHAT I GO BACK TO HERE IS THAT IF

5    WE GO BACK TO THE ACTUAL RULE 23 ELEMENTS, THERE

6    ARE A NUMBER OF ISSUES HERE.  THERE ARE GOING TO BE

7    SOME ISSUES REGARDING NUMEROSITY DEPENDING UPON HOW

8    THE COURT RULES ON THE MERITS ISSUES LATER.  THE

9    PROBLEM IS YOU'RE GOING HAVE TO RULE ON THE

10   NUMEROSITY ISSUE BEFORE YOU RULE ON THE MERITS

11   ISSUE.

12          THERE ARE SOME ISSUES HERE WITH RESPECT

13   TO FUNDAMENTAL DUE PROCESS.  RULE 23 IS A NARROW

14   EXCEPTION.  AND IT IS DESIGNED TO BE SUCH.  AND

15   IT'S ALL WELL AND GOOD TO SAY THAT THE BEAUTY OF

16   THE PROCESS IS THOSE PEOPLE WHO THINK THEY MAY HAVE

17   BETTER CLAIMS CAN OPT-OUT.

18          WELL, WE CAN'T OPT-OUT.  ALTHOUGH, IF YOU

19   WANT TO GIVE US THE OPPORTUNITY TO, WE'D BE

20   DELIGHTED.  BUT WE CAN'T OPT-OUT ON THE CLASS

21   PROCESS.  BUT WE END UP WITH THOSE INDIVIDUALS OUT

22   THERE WHOSE CIRCUMSTANCES MAY BE SUCH THAT EITHER

23   THEY WERE OFFERED OR REFUSED A SEAT, WE DON'T HAVE

24   THE ABILITY TO OPT-OUT ADDING THOSE PEOPLE IN THE

25   CLASS.  THAT'S AN INDIVIDUAL DEFENSE ISSUE,

1        INDIVIDUAL DUE PROCESS RIGHTS TO PURSUE THAT.

2               WE ALSO HAVE THE ISSUE HERE THAT

3        SOMETIMES AN IDENTICAL OUTCOME IS NOT A GOOD THING

4        IF THE ISSUE ISN'T IDENTICAL.  IN THIS PARTICULAR

5        SETTING PARTICULARLY THERE ARE A LOT OF REASONS OUT

6        THERE TO CONCLUDE THAT WE CANNOT SIT HERE TODAY AND

7        KNOW WHAT 28,000 PEOPLE'S WORK EXPERIENCE WAS TO BE

8        ABLE TO LUMP THEM ALL IN ONE BUCKET AND SAY, WE

9        DON'T REALLY CARE ABOUT YOUR INDIVIDUAL DUE PROCESS

10       RIGHTS ANY MORE; YOU'RE GOING TO BE TREATED AS ONE

11       HOMOGENOUS BLOB OF PEOPLE.

12              THAT, THAT'S A VERY, VERY SIGNIFICANT

13       THING THAT THIS COURT PROCESS IS SUPPOSED TO BE ON

14       A VERY SPARING BASIS, AND ONLY WITH HIGH LEVEL OF

15       CONFIDENCE THAT NEITHER OF THOSE INDIVIDUALS WHO

16       MAY HAVE OTHER CLAIMS, THOSE INDIVIDUALS WHO ARE

17       PART OF THIS PROCESS, THAT THEY'RE NOT GOING TO BE

18       HARMED BY THAT, AND THAT A DEFENDANT'S RIGHTS TO

19       DEFEND ITSELF ARE NOT GOING TO BE HARMED BY DOING

20       IT EITHER.

21              WE THINK WHAT WE'VE SEEN HERE TODAY IS

22       THAT THERE IS A SIGNIFICANT DIFFERENCE BETWEEN WHAT

23       YOU CAN SAY AT A HIGH LEVEL AND GENERALIZED FASHION

24       ABOUT WHAT A CASHIER CONCEPTUALLY DOES VERSUS THE

25       DAY-TO-DAY EXPERIENCE OF THE ACTUAL CASHIERS

1    THEMSELVES, AND WHAT THEY PHYSICALLY DO AND HOW

2    THEY DO IT.  AND THAT GETS US RIGHT TO THAT CORE

3    QUESTION OF WHAT, WHETHER A PARTICULAR POSITION ON

4    A PARTICULAR DAY REASONABLY PERMITS THE USE OF A

5    STOOL.  AND WE'RE BACK AGAIN, BACK TO THE PROBLEM

6    THAT, FOR BETTER OR FOR WORSE, THE STRUCTURE SAYS

7    YOU NEED TO FIGURE OUT WHETHER THAT ISSUE CAN BE

8    RESOLVED ON A CLASS BASIS BEFORE YOU KNOW WHAT THE

9    FACTS ARE RELATED TO THAT ISSUE.

10           ALL WE CAN SAY RIGHT NOW IS WE HAVE

11   28,000 HUMAN BEINGS OUT THERE WHO HAVE BEEN

12   INTERACTING WITH A FEW MILLION CUSTOMERS, ALL OF

13   WHOM ARE PEOPLE IN THEIR OWN RIGHTS; INDIVIDUALS

14   WHO REACT DIFFERENTLY IN DIFFERENT PLACES,

15   DIFFERENT SETTINGS.  ALL OF THAT STUFF STRONGLY

16   SUGGESTS THAT THIS IS NOT A HOMOGENOUS KIND OF

17   EXERCISE WHERE YOU CAN SAY, YOU KNOW, EVERYBODY OUT

18   THERE COULD REASONABLY BE PERMITTED A STOOL ON

19   EVERY SINGLE DAY IN EVERY SINGLE CLASSIFICATION.

20           IT'S NOT THAT KIND OF ANALYSIS.  AND FOR

21   THAT REASON WE SUGGEST THE COURT DENY THE MOTION

22   FOR CLASS CERTIFICATION.

23           THE COURT:  LET ME ASK, I'M GOING TO

24   INVITE YOU JUST TO EXPAND FOR A MINUTE ON

25   NUMEROSITY OBJECTIONS OR COMMENTS.  TELL ME ABOUT

1    THAT.

2                I HADN'T HARD THAT YET, SO TELL ME ABOUT

3    THAT.

4                MR. NELSON:  WELL, THERE ARE A COUPLE OF

5    LAYERS.

6                FIRST OF ALL, IF IN FACT THE REQUEST

7    MATTERS, WE'RE TALKING ABOUT 10 PEOPLE.  WE DON'T

8    KNOW WHETHER IT MATTERS OR NOT RIGHT NOW.  BUT

9    THAT'S OBVIOUSLY THE PROBLEM.

10               GETTING BEYOND THAT, EVEN IF IT DOESN'T

11   MATTER, WE DON'T REALLY KNOW AT ANY PARTICULAR TIME

12   HOW MANY OF THE PEOPLE WHO HAD THAT CASHIER TITLE

13   WERE PERFORMING ON A DAILY BASIS JOBS THAT COULD

14   HAVE BEEN PERFORMED WITH A STOOL.  WHATEVER THAT

15   DEFINITION ULTIMATELY ENDS UP BEING, WE DON'T KNOW

16   WHO THOSE PEOPLE ARE.  AND WE DON'T KNOW WHETHER

17   THAT'S GOING TO CHANGE FROM DAY-TO-DAY.

18               DEPENDING UPON HOW THAT SORTS ITSELF OUT,

19   I THINK UPON A NUMBER OF OTHER ISSUES, IT MAY VERY

20   WELL BE THE CASE THAT IT'S THE VAST MAJORITY OF

21   PEOPLE WE'RE TALKING ABOUT HERE, THE WORK THEY WERE

22   PERFORMING ON ANY PARTICULAR DAY WASN'T REASONABLY

23   SUITED TO BEING PERFORMED WHILE SEATED.  WE SIMPLY

24   DON'T KNOW.

25               THE COURT:  MR. JONES, WOULD YOU LIKE TO

1    RESPOND TO THAT?

2              MR. JONES:  YES, YOUR HONOR.  THANK YOU.

3              WITH RESPECT TO NUMEROSITY, WE DO KNOW

4    WHO THE PEOPLE ARE THAT HAVE THE PRIMARY DUTY OF

5    PERFORMING WORK AT A CASH REGISTER.  WAL-MART HAS

6    DEFINED THAT CLASS FOR US.  THEY ARE PEOPLE WITH

7    THE JOB TASK OF CASHIER; THAT'S THEIR

8    RESPONSIBILITY.  THERE ARE 28,000 OF THEM.  AND WE

9    WOULD SUBMIT THAT NUMEROSITY HAS BEEN ESTABLISHED.

10             WAL-MART'S WHOLE ARGUMENT ON NUMEROSITY

11   HINGES ON A REWRITE OF THE WAGE ORDER THAT SOMEONE

12   HAS TO REQUEST THE USE OF A SEAT BEFORE THEY WOULD

13   BE ENTITLED TO USE THE WAGE ORDER.

14             THE ONLY OTHER POINT THAT I WOULD MAKE,

15   YOUR HONOR, IN CLOSING IS THAT WAL-MART IS, IT'S

16   IRONIC THAT WAL-MART IS SUGGESTING THAT THIS COURT

17   SHOULD NOT TREAT THESE 28,000 PEOPLE AS A

18   HOMOGENOUS POPULATION WHEN THAT IS EXACTLY WHAT

19   WAL-MART HAS DONE IN THIS CASE.  THEY CREATED THE

20   CLASS.  THEY STUDIED IT, THE JOB TITLE OF CASHIER.

21             THANK YOU, YOUR HONOR.

22             THE COURT:  THANK YOU VERY MUCH.  I

23   APPRECIATE IT.

24             YOU WILL GET AN ORDER.

25             (WHEREUPON, PROCEEDINGS WERE CONCLUDED.)

52

1

2                    <u>CERTIFICATE OF REPORTER</u>

3

4

5

6           I, GEORGINA GALVAN COLIN, PRO TEMPORE

7    COURT REPORTER FOR THE UNITED STATES DISTRICT COURT

8    FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

9    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11           THAT THE FOREGOING TRANSCRIPT IS A FULL,

12   TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDING HAD

13   <u>BROWN, ET AL. VS WAL-MART, INC.</u> CASE NUMBER

14   CV-09-03339 EJD, DATED SEPTEMBER 9, 2011, THAT I

15   REPORTED THE SAME IN STENOTYPE TO THE BEST OF MY

16   ABILITY, AND THEREAFTER HAD THE SAME TRANSCRIBED BY

17   COMPUTER-AIDED TRANSCRIPTION AS HEREIN APPEARS.

18

19

20

21

22                            /S/

23                    _____

                      GEORGINA GALVAN COLIN, CSR
24                    LICENSE NUMBER 10723

25

                                                        53