UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NISHA BROWN, ET AL., | ) Case No.: 5:09-CV-03339 EJD |
| Plaintiffs, | ) **ORDER GRANTING MOTION FOR** |
| v. | ) **CLASS CERTIFICATION** |
| WAL-MART STORES, INC., | ) **(Re: Docket No. 81)** |
| Defendant. | ) |

Pending before the court is Plaintiff Kathy Williamson's ("Williamson") motion for an order (a) certifying the following class pursuant to Fed. R. Civ. P. 23(b)(3): "All persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the position of Cashier"; (b) appointing Williamson as the class representative for the class; and (c) appointing the following firms as Class Counsel: McInerney & Jones, Righetti Glugoski P.C., and Dostart Clapp & Coveney, LLP. For the reasons discussed below the motion is GRANTED.

**I. BACKGROUND**

In a Complaint filed in the Superior Court of the County of Alameda on June 11, 2009, Williamson and Plaintiff Nisha Brown ("Brown") allege that Defendant Wal-Mart Stores, Inc. ("Wal-Mart") failed to provide its cashier employees, including Plaintiffs, with seats, despite the fact that the nature of cashier work reasonably permits the use of seats. Plaintiffs allege this failure to provide seats to cashiers violates Wage Order 7-2001, § 14 and Cal. Labor Code § 1198. Based on these violations, Plaintiffs filed this class action under the California Private Attorney General

1  Act of 2004 ("PAGA"), Cal. Labor Code § 2698, et seq. Compl. ¶¶ 17-18. On July 21, 2009, Wal-Mart filed its Answer and removed the case to this court pursuant to § 4 of the Class Action Fairness Act of 2005. Notice of Removal at 2-3.

## II. LEGAL STANDARDS

### A. Wage Order 7-2001

Section 14 of California's Industrial Welfare Commission Wage Order 7–2001 states:

14. Seats

(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

Cal. Code Regs. Tit. 8 § 11070(14).

California's Private Attorneys General Act of 2004 permits an "aggrieved employee" to institute an action "on behalf of himself or herself and other current or former employees" to collect civil penalties for a violation of any provision of the California Labor Code. Cal. Lab. Code § 2699(a). California Labor Code Section 2699(f)(2) provides that "[i]f, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

### B. Class Certification

A party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23. Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977). Under Rule 23(a), a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

2

Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

In addition, the party seeking certification must show that the action falls within one of the three subsections of Rule 23(b). In this case, Williamson seeks certification pursuant to 23(b)(3), which permits certification of cases where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Williamson bears the burden of demonstrating that they have met the four requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).

### III. DISCUSSION

**A. Wal-Mart Declarations Not Considered In Reaching This Decision**

As a preliminary matter, the court addresses whether it should consider the declarations Wal-Mart has submitted in support of its opposition — specifically, the declarations of Keith Hanleigh (Docket No. 85) and fourteen store associates (Docket No. 87): Khassan Abdallah, Marc Aronsohn, Kathleen Billiet, Sandi Emery, Joshua Huston, Michael Lancaster, Synetria Petersen, Edward Pettigrew, Juan Solis, Randall Sonderhouse, Joy Talbert, Lellani Ireton, Dottie Monahan, and Karen Rocheleau. In her reply brief, Williamson argues that these declarations should be stricken pursuant to Fed. R. Civ. P. 37(c)(1).

Fed. R. Civ. P. 26(a)(1)(A) requires parties to disclose the identity of witnesses who are likely to have discoverable information supporting a party's claims or defenses. Rule 26(e)(1)(A) requires parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "This particular subsection, implemented in the 1993 amendments to the Rules, is a recognized broadening of the sanctioning power. The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material . . . .'" Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259

3
Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

F.3d 1101, 1106 (9th Cir. 2001) (citations omitted). The Rule applies even where a party does not violate an explicit court order, "and even absent a showing in the record of bad faith or willfulness." Id. Rule 37(c)(1) was amended in 2000 to "explicitly add[ ] failure to comply with Rule 26(e)(2) as a ground for sanctions under Rule 37(c)(1), including exclusion of withheld materials." Fed. R. Civ. P. 37 Advisory Committee's Note (2000). Nevertheless, "[t]wo express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." Yeti, 259 F.3d at 1106.

Williamson argues that none of these declarants' identities were ever disclosed under Rule 26, identified in response to interrogatories seeking the identity of any person who had facts that supported Wal-Mart's defenses, or otherwise disclosed to Plaintiffs. See Decl. Charles A. Jones Supp. Pl.'s Reply, Docket No. 93 ("Jones Reply Decl.") Ex. 1, Wal-Mart's Feb. 12, 2010 Rule 26 Disclosures; Ex. 2, Wal-Mart's March 30, 2010 Am. Resp. Special Interrog. No. 17. Rather, Williamson asserts that the identity of these declarants were disclosed for the first time when Wal-Mart filed its opposition to this motion. Thus, Plaintiffs were deprived of the opportunity to depose these declarants, whose statements contradict the deposition testimony of Wal-Mart's 30(b)(6) witnesses. Wal-Mart has not argued, at the hearing or otherwise, that it had disclosed the identity of these declarants or that its failure to do so was justified or harmless.

Thus, the court finds that Wal-Mart failed to disclose pursuant to Rule 26 the identities of declarants Keith Hanleigh, Khassan Abdallah, Marc Aronsohn, Kathleen Billiet, Sandi Emery, Joshua Huston, Michael Lancaster, Synetria Petersen, Edward Pettigrew, Juan Solis, Randall Sonderhouse, Joy Talbert, Lellani Ireton, Dottie Monahan, and Karen Rocheleau. Accordingly, these declarations will not be considered in support of Wal-Mart's opposition to this motion pursuant to Rule 37(c)(1).

**B. Requests for Judicial Notice**

Wal-Mart requests the court take judicial notice of the following documents:

1. December 5, 1986 DLSE Opinion Letter from Albert J. Reyff to Jacqueline Soufi, Request for Judicial Notice Supp. Opp'n, Docket No. 83 ("Def.'s RJN") Ex. A;

4
Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

2. Declaration of Lloyd W. Aubrey, Jr. dated April 30, 2010, filed in San Diego County Superior Court, Case No. 37-2009-00087938-CU-OE-CTL, <u>Kristen Hall v. Rite Aid Corporation</u>, <u>Id.</u> Ex. B;

3. The Occupational Health and Safety Administration's Guidelines for Retail Grocery Stores, <u>Id.</u> Ex. C; and

4. Notice of Lodging of Proposed Order Dismissing Plaintiffs' Complaint with Prejudice, together with the [Proposed] Order Dismissing Plaintiffs' Complaint with Prejudice, filed in the United States District Court, Central District of California Case No. 11-CV-045710-R-AGR, <u>Rhonique Green and Olivia Giddings v. Bank of America, et al.</u>, <u>Id.</u> Ex. D.

Williamson requests the court take judicial notice of the following documents:

1. December 16, 1979 Letter to the DLSE from Dora B. Finley; Pl.'s Request for Judicial Notice, Docket No. 94 ("Pl.'s RJN") Ex. A;

2. December 28, 1979 Opinion Letter from Margaret T. Miller to Dora B. Finley, <u>Id.</u> Ex. B.

Williamson does not object to the court taking judicial notice of the existence of the documents provided by Wal-Mart. Williamson, however, objects to the court accepting the facts asserted in the Aubry Declaration as true. Williamson also objects to Wal-Mart's characterization of the December 5, 1986 DLSE letter as a "DLSE opinion letter" and argues that it is instead akin to an "advice letter." <u>See</u> Pl.'s Reply Supp. Class Cert. at 14-15. Wal-Mart does not object to Williamson's request for judicial notice.

A "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). Because neither party objects to the court taking judicial notice of the existence of these documents, the court GRANTS the requests for judicial notice. As Williamson argues, however, "judicial notice of matters of public record is limited to the existence and authenticity of a document; the veracity and validity of the contents remain open to dispute." <u>Bernardi v. JPMorgan Chase Bank</u>, NA., No. C–11–04543 RMW, 2012 WL 33894, *1 n. 1 (N.D. Cal., Jan. 6, 2012).

5

Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

### C. Rule 23(a)(2) and (3): Commonality and Typicality; and Rule 23(b)(3)

"The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157–158, n. 13 (1982). The class members' "claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 n. 5 (2011).

Williamson argues that the class members share the common issue of whether Wal-Mart's policy of not providing seats to its cashiers[1] in California stores violates Section 14 because the nature of a Wal-Mart cashier's work reasonably permits the use of seats.

### 1. Common Policy Not To Provide Seats

Williamson argues that all California cashiers have suffered the same injury because Wal-Mart has a uniform policy of not providing them seats. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1033 (2012). Even if there is an express policy in compliance with labor regulations, "an employer may not undermine a formal policy [that is in compliance with labor regulations] by pressuring employees to perform their duties in ways that [violate the regulations]." Id. at 1040. Plaintiff needs to offer "substantial evidence" of the company-wide

---

[1] The job title "Cashier" in this motion and class definition refers to "only the positions with Job Code 30548." Pl.'s Reply Supp. Class Cert. at 10:26-28, Docket No. 92.

policy or practice that violated regulations. See id. at 1051–52; Garvey v. Kmart Corp., No. C 11-02575 WHA, 2012 WL 2945473, at *4 (N.D. Cal. July 18, 2012).

Here, there is substantial evidence that Wal-Mart had a common policy of not providing seats to its cashiers in its California stores. Herminio Vargas ("Vargas"), Wal-Mart's 30(b)(6) designee on Wal-Mart's polices regarding the use of a seat, testified that, although Wal-Mart will provide stools to particular cashiers as a reasonable accommodation for a disability and as a job aid for a medical condition, outside of those two circumstances, Wal-Mart does not provide seats to its cashiers. Decl. Charles A. Jones Supp. Pl.'s Mot. ("Jones Decl.") Ex. 19, Rule 30(b)(6) Designee Vargas Dep. at 19:9-24, Docket No. 81-7. Vargas's testimony during his Rule 30(b)(6) deposition that cashiers, who do not qualify for a disability-related accommodation or a medically-related job aid, are not provided seats is binding on Wal-Mart. See, e.g., Calpine Corp. v. Ace American Ins. Co., No. C 05-00984 SI, 2007 WL 3010570, at *7 (N.D. Cal. Oct. 12, 2007). There is also evidence that requests for seats by cashiers were denied. Of the thirty-nine requests for stools as an accommodation or job aid, Wal-Mart provided stools to twenty-nine California cashiers.[2] Jones Decl. Ex. 25, 1/18/2001 and 2/15/2011 E-mails from Defense Counsel (listing requests made for the use of stools by California cashiers during the class period as well as the disposition of each request).

Wal-Mart argues that it had a policy that if a cashier requested a seat, a manager could exercise her discretion in considering the request based upon the particular circumstances at issue. Def. Wal-Mart's Opp'n at 9:2-4. Wal-Mart, however, has not argued that employees were notified that they could make such a request, and Wal-Mart has not provided any evidence that any employee received a seat through this process. Additionally, the Hanleigh Declaration that describes the policy of discretionarily providing a seat upon request has been excluded from consideration pursuant to Fed. R. Civ. P. 37(c)(1) and directly contradicts Vargas' 30(b)(6) testimony. Finally, despite Wal-Mart's current lack of evidence, if some employees were provided a seat upon request outside of the accommodation and job aid program, the proposed class also

---

[2] At oral argument, Williamson clarified that these twenty-nine cashiers "would be excluded from the class during the period of time in which they were allowed to use the seats." Tr. at 41:24-42:16, Docket No. 101.

7
Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

shares the common issue concerning whether, under the proper interpretation of the Wage Order, an employer's duty to provide a seat is triggered only after employee specifically requests a seat.[3]

In sum, Williamson has presented evidence that Wal-Mart's witness admitted Wal-Mart does not provide seats to cashiers unless the cashier has a disability or medical condition; there is evidence that requests for seats by cashiers were denied; there is no evidence that that any policy that seats would be provided upon request was actually told to cashiers; and there is no evidence that any cashier, who did not have a disability or medical condition, received a seat after making a request. Thus, Williamson has provided substantial evidence that Wal-Mart had a common policy of not providing seats to its cashiers in California stores and that these cashiers share a common injury. See Garvey, 2012 WL 2945473, at *3 (finding substantial evidence that Kmart had a common policy of not providing seats to its cashiers where Kmart's witnesses argued that they did not believe that it was good business for cashiers to have seats; there was some evidence that requests for seats by cashiers were denied; and there was little evidence showing that the purported policy that seats would be proved upon request was actually told to cashiers.)

**2. Common Nature of the Work**

There is persuasive evidence that Wal-Mart cashiers spent the majority of their time working at registers during the class period. See, e.g., Jones Reply Decl. Ex. 5, Rule 30(b)(6) designee John Crecelius Dep. ("Crecelius Dep.") at 22:5-23:4 (cashiers spend 68% of their time at

---

[3] District courts in this Circuit have disagreed regarding whether an employer need not make seating available until requested by employees. Compare Echavez v. Abercrombie and Fitch Co., Inc., No. CV 11–9754 GAF (PJWx), 2012 WL 2861348, at *4 (C.D. Cal. Mar. 12, 2012) ("Nothing in the language of § 14 suggests that the employee is required to 'want' or 'request' a seat before its protections apply. . . . although an employer need not force an employee to sit down, the employer is under an obligation to make suitable seating available for employees' use. Thus, Plaintiff is not required to allege that she requested or communicated a desire for a seat in order to state a claim for violation of Cal. Lab.Code section 1198 and Wage Order 7–2001 § 14.") with Def.'s RJN Ex. D., Transcript of July 18, 2011 Motion Hearing in Green v. Bank of Am. N.A., No. CV 11–45751–R (C.D. Cal.) (finding that under § 14, the employer's "only obligation was to make seats available to its employees to the extent they want them or request them, not necessarily to ensure that every employee has a seat, regardless of whether they want one or not." Id. at 4:13–17. The court dismissed the claim because the plaintiffs "ha[d] not alleged any facts to suggest that they ever requested a seat, were ever denied a seat, or even that they wanted a seat." Id. at 4:17–19.) This court need not decide this issue at this time because Williamson has provided substantial evidence that Wal-Mart had a policy of not providing seats to cashiers except when the cashier had a disability or a medical reason. Wal-Mart has not offered any evidence that, outside of those two circumstances, it had a policy of discretionarily providing seats upon request, any class member received a seat, or the class members were aware that they could be provided a seat if requested.

8
Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

a cash register station) and 32:21-24 (primary job function of a cashier is to check customers in and out); Jones Reply Decl. Ex. 3, Rule 30(b)(6) designee Jackie Grube Dep. ("Grube Dep.") at 22:11-23 (primary duty of cashiers is to operate a cash register).

It is undisputed that common tasks for every Wal-Mart cashier working at his or her register included scanning items; bagging items; loading them into the customer's cart; walking to the entrance of their line to signal to customers it is open; assisting with stocking of end-cap merchandise and damaged goods, etc.; wiping down their register and ensuring it is neat and clutter-free; and taking unwanted items to the customer service desk or restocking items. Opp'n at 5-6. Williamson argues that a trier of fact could determine whether these common tasks could reasonably be performed while seated, and such a determination would apply to all Wal-Mart cashiers at its California stores.

Wal-Mart argues that individual differences between cashiers' experiences prevent any common conclusion regarding whether a seat should be provided to all cashiers. Specifically, Wal-Mart cites (1) the variation in cash-register configurations, (2) the particular shift a cashier is working, (3) the type of merchandise processed at different registers, (4) how and if merchandise is bagged and loaded in the cart, (5) time of year, (6) experience of the cashier, (7) store staffing, and (8) the amount of damages due each cashier if liability is found. Opp'n at 5:16-20, 23:10-12.

First, Wal-Mart argues that there are twelve different configurations for the checkout register areas in the 180 California Wal-Mart stores and the configuration would affect whether there could be suitable seating. Opp'n at 1:10-13. Wal-Mart argues that "[t]hese twelve different configurations include belted front-end registers, non-belted front-end 'speedy' or 'express' registers, a front-end tobacco register with a gated area and bullpen, a front-end 'Que Track' system consisting of five non-belted registers but a single customer queue, and numerous outlying registers located in any one of eight different departments including the Garden Center. Although the registers themselves are similar, the check-out configurations and type of merchandise processed is vastly different depending on where in the store the register is located and the type of store at issue (Supercenter or Discount Store). Consequently, the degree of mobility required of any

9

Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

cashier will vary depending upon the particular check out location at which the cashier is working." Opp'n at 5:1-9 (internal citations to excluded declarations omitted).

Wal-Mart's argument fails for two reasons. First, Wal-Mart's 30(b)(6) designee Jakie Grube testified that, regardless of the location or configuration of the cash register station or the checkout lane, the job duties of all California cashiers are the same, Wal-Mart's expectations regarding the type of work that cashiers perform are the same, the physical activities that they perform are the same, and the essential functions of their position are the same. Jones Decl. Ex. 8, Grube Dep. at 33:20-34:21. When specifically asked about a speedy checkout, a belted checkout, or a self-checkout, Grube again testified that these types of tasks performed by cashiers at those checkout configurations are the same. Id. Additionally, any variance in the work performed at outlying registers in specific departments[4] that are not at the main front-end register bank is irrelevant because the persons who access those outlying registers normally are not cashiers and instead have a different titled position. Jones Reply Decl. Ex. 5, Crecelius Dep. at 104:12-105:16; see also Jones Reply Decl. Ex. 9 at 2 (listing different job titles for associates employed in Lawn & Garden, Sporting Goods and Photo Departments).

Wal-Mart's next five arguments—that whether a seat must be provided depends on individual differences depending on the shift, the type of merchandise, if merchandise is bagged and loaded in the cart, time of year, experience of the cashier, and store staffing—fail for similar reasons. Any evidence Wal-Mart submitted indicating that these factors vary between cashiers and affect whether a cashier's work permits the use of a seat has been excluded pursuant to Fed. R. Civ. P. 37(c)(1). Additionally, Wal-Mart's 30(b)(6) witness Jackie Grube testified that "[n]o matter what shift they worked on" there is no difference in cashiers' job responsibilities, essential functions, and physical activities, a statement that directly contradicts Wal-Mart's opposition. Jones Reply Decl. Ex. 3, Grube Dep. at 19:14-23. Additionally, any variance associated with the type of merchandise purchased at the outlying registers is irrelevant because, as discussed above, cashiers do not operate those registers. Finally, Wal-Mart's general arguments about potential

---

[4] These department include Tire and Lube Express, Electronics, Lawn & Garden, Seasonal, Pharmacy, Deli, Sporting Goods, Jewelry, Hardware, and Apparel. at 104:12-20.

10
Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

differences between the work of different cashiers, unsupported by evidence, are insufficient to show that individual inquiries outweigh the predominate issue of whether the common duties for all Wal-Mart cashiers permits seating.

Two other courts in this Circuit have recently evaluated whether a class of retail cashiers should be certified for purposes of determining whether the employer violated Section 14 by not providing them seats. In Garvey v. Kmart, a court in this District certified a class of Kmart cashiers in one store and found that the "minor variances" in (1) physical stature of each cashier, (2) cash-register configurations (3) the time spent at the front-end cash register versus performing other duties in the store, and (4) the amount of damages due each cashier were not "sufficient to defeat class certification when Kmart cashiers spent the majority of their time performing common tasks at their registers, and Kmart has a common policy of not providing seats." See Garvey, 2012 WL 2945473, at *4. In Kilby v. CVS Pharmacy, Inc., however, a court in the Southern District of California denied a motion to certify a class of CVS cashiers because CVS could not be "held liable based on the generally known fact that its Clerk/Cashiers sometimes operate cash registers" and "CVS offer[ed] proof that Clerk/Cashiers' job duties are inconsistent from day to day, shift to shift, or even from store to store" that suggested "an individualized, fact-intensive analysis is necessary." Kilby v. CVS Pharmacy, Inc., No. 09cv2051–MMA (KSC), 2012 WL 1132854, at *5-6 (S.D. Cal. Apr. 4, 2012).

Unlike the defendant in Kilby, here, Wal-Mart has not offered proof that the nature of the work varies between individual cashiers. Instead, Wal-Mart's 30(b)(6) witnesses have provided evidence to the contrary. See, e.g., Jones Decl. Ex. 8, Grube Dep. at 33:20-34:21; Jones Reply Decl. Ex. 3, Grube Dep. at 19:14-23. Wal-Mart's 30(b)(6) witnesses have also established that cashiers spend the majority their time operating a cash register. See, e.g., Jones Reply Decl. Ex. 5, Crecelius Dep. at 22:5-23:4 (cashiers spend 68% of their time at a cash register station) and 32:21-24 (primary job function of a cashier is to check customers in and out); Jones Reply Decl. Ex. 3, Grube Dep. at 22:11-23 (primary duty of cashiers is to operate a cash register). Thus, the evidence presented to this court establishes facts more similar to the facts in Garvey than in Kilby. As in Garvey, none of the potential sources of variance that Wal-Mart relies upon are sufficient to defeat

11
Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

class certification when Wal-Mart cashiers spend the majority of their time performing common tasks at their registers, and Wal-Mart has a common policy of not providing seats.

Lastly, Wal-Mart argues that there are individual issues about the amount of statutory damages due if liability is found; the enormous penalties sought bear no relation to any harm incurred; and that PAGA expressly preserves workers' compensation as the exclusive remedy for injury or death. A violation of Section 14 may subject an employer to a penalty of up to $100 per person, per pay period, for the initial violation, and $200 per person, per pay period, for each subsequent violation. Cal. Lab. Code § 2699(f)(2). The court, however, can award a lesser amount than the maximum civil penalty amount specified if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory. Id. § 2699(e)(2).

Wal-Mart's argument that this discretion requires an individualized inquiry and defeats certification is unpersuasive. As discussed above, Wal-Mart had a common policy of not providing seats to cashiers and the question of whether this policy violated Section 14(A) is amenable to class adjudication. California labor law is clear that "[a]s a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1022 (2012); see also Hilao v. Estate of Marcos, 103 F.3d 767, 782 (9th Cir. 1996) (approving the use of a statistical sample of the class claims to determine damages); Garvey, 2012 WL 2945473, at *5 (certifying class of Kmart cashiers and finding the issue of damages from Section 14 violation could be resolved through sampling). Thus, the issue of damages can be resolved after the common issue of liability is resolved. Wal-Mart's remaining arguments fail because Section 2699(e)(2) allows for the penalty to be lessened and thus would prevent an unjust award of penalties, and Wal-Mart has not shown that statutory penalties under PAGA for the deprivation of a seat in violation of Section 14 is compensation for injury or death that would be exclusively provided for by workers' compensation.

For these reasons, the controversy is appropriate for class treatment because Wal-Mart had a common policy of not providing seats for cashiers. A class action is superior to other methods for

12

fairly and efficiently adjudicating the controversy because it would not be cost-effective for each Wal-Mart cashier to bring an individual lawsuit, given that each cashier only has a relatively small financial interest. Williamson's claim is typical of the class claim because she was a Wal-Mart cashier at a California store, performed tasks common to Wal-Mart cashiers, and was not provided with a seat. Jones Decl. Ex. 26, Williamson Decl. ¶¶ 2-4.

**C. Rule 23(a)(4): Adequacy of Representative Plaintiff and Class Counsel**

Rule 23(a) requires is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interests with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted). The adequacy requirement is met here.

Plaintiffs' counsel is experienced in both labor law and class actions. McInerney & Jones, Righetti Glugoski P.C., and Dostart Clapp & Coveney, LLP have been involved in over fifty class actions, many of which are employment related. Jones Decl. ¶¶ 4-8. The claims made by Williamson, as well as the relief sought, are similar to those of the class that Williamson seeks to represent. Williamson declares that she has no conflict with the interests of other class members. Jones Decl. Ex. 26, Williamson Decl. ¶ 7.

Wal-Mart, however, argues that Williamson cannot adequately represent the class members because many of the class members have attested that a seat would hinder them in the performance of their duties and do not wish to have seats forced on them. Again, the declarations Wal-Mart cites in support of this argument have been excluded under Fed. R. Civ. P. 37(c)(1). Additionally, the argument that cashiers would have seats forced upon them is unpersuasive. Williamson has not argued that Section 14's requirement that "employees shall be provided with suitable seats" means that cashiers who do not want to use a seat would have a seat forced upon them. Cal. Code Regs. Tit. 8 § 11070(14). Wal-Mart also argues that Brown cannot adequately represent the class members because she has credibility issues. Brown, however, has not moved to become the class representative.

Thus, the court finds that Williamson and McInerney & Jones, Righetti Glugoski P.C., and Dostart Clapp & Coveney, LLP can adequately protect the interests of the class.

**D. Rule 23(a)(1): Numerosity**

The numerosity requirement does not mean that the class must be so numerous that joinder Is impossible but rather simply that joinder of the class is impracticable. <u>Arnold v. United Artists Theatre Circuit, Inc.</u>, 158 F.R.D. 439, 448 (N.D. Cal. 1994). In this case, Wal-Mart has employed over 10,000 cashiers in California during the applicable statute of limitations period. Jones Decl. Ex. 2, Defendant's March 30, 2010, Amended Response to Special Interrogatory No. 6 (Wal-Mart "estimates it employs approximately 10,000 Cashiers at any given time within California."); Ex. l, Defendant's January 20, 2011 Amended Response to Special Interrogatory No. 6 (Wal-Mart "estimates it employed 22,572 front-end Cashiers in its California Wal-Mart Stores" but that number may be inflated because, if an employee was employed multiple different times that employee is counted separately for each employment period.). Thus, the class is sufficiently numerous.

### IV. CONCLUSION

For the reasons stated, Williamson's motion for class certification is GRANTED. This order certifies the following class under Rule 23(b)(3) to pursue a claim for violation of Wage Order 7–2001(14) against Wal-Mart:

> "All persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the position of Cashier."

The class definition shall apply for all purposes, including settlement. This order APPOINTS Kathy Williamson as class representative. Pursuant to Rule 23(g), this order APPOINTS the following firms as class counsel: McInerney & Jones, Righetti Glugoski P.C., and Dostart Clapp & Coveney, LLP.

Dated: Cwi wuv46. 4234

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:09-CV-03339 EJD
ORDER GRANTING MOTION FOR CLASS CERTIFICATION