UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NISHA BROWN, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>WAL-MART STORE, INC.,<br><br>　　　　Defendant. | Case No. 09-cv-03339-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 213 |

In this certified class action, Plaintiffs Kathy Williamson and Nisha Brown (collectively, "Plaintiffs") move for exclusion sanctions against Defendant Wal-Mart Store, Inc. ("Wal-Mart"). Dkt. No. 213. Specifically, Plaintiffs request that the Court prohibit Wal-Mart from using certain information that was not disclosed by Wal-Mart until well after the close of fact discovery and strike Wal-Mart's expert reports which heavily rely on that information. For the reasons stated at the April 26, 2018 hearing and provided below, the Court GRANTS in part and DENIES in part Plaintiffs' motion for sanctions.

I. **BACKGROUND**

The Court offers an overview of the circumstances leading to Plaintiffs' filing of the sanctions motion; specific details are explored in the Court's analysis in a later section. This class action was originally filed in California Superior Court in June 2009 and removed to federal court by Wal-Mart in July 2009. Dkt. No. 1. Plaintiffs contend that Wal-Mart has violated § 14 of California Wage Order 7–2001 (the "Wage Order") by failing to provide seats for its cashier employees. Id. In August 2012, this Court certified a class of "[a]ll persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
1

position of Cashier." Dkt. No. 110 at 14. On appeal, the Ninth Circuit affirmed the certification order. See Brown v. Wal–Mart Stores, Inc., 651 F. App'x 672 (9th Cir. 2016). Thereafter, proceedings continued before this Court.

Of particular relevance here is the timing of discovery. With the case back in full swing, the Court set a fact discovery cutoff of December 31, 2017 and an expert discovery cutoff of March 30, 2018, with opening expert reports due on February 28, 2018 and rebuttal expert reports due on March 14, 2018. Dkt. Nos. 166, 167, 202. A couple events warrant mentioning.

On June 23, 2017, Plaintiffs served Wal-Mart with document requests, which sought, among other things, all documents supporting Wal-Mart's contention that the nature of cashiers' work at the front-end checkout lanes does not reasonably permit the use of a seat. Dkt. No. 213-8 at 2–3. Wal-Mart provided supplemental responses on September 8, 2017 in which it agreed to "produce a video of a California Wal-Mart cashier using a stool and videos depicting injuries to Wal-Mart associates and/or customers caused by stools for use by cashiers." Dkt. No. 213-10 at 3–4. Wal-Mart also generally indicated that it had "otherwise previously produced all non-privileged, responsive documents or things in the demanded category that are in its possession, custody, or control." See id. By the end of fact discovery, Wal-Mart produced just over 87 hours' worth of video footage of California and non-California cashiers. Dkt. No. 213-1 ("Jones Decl.") ¶ 5; Dkt. No. 213-13 at 3.

Additionally, on October 31, 2017, Plaintiffs served another document request asking Wal-Mart to produce daily productivity reports (known as SWAS reports) for all cashier class members. Dkt. No. 213-11 at 2–3. In response, Wal-Mart noted that the "SWAS Reports are only available temporarily for a short period of time before being archived with an overseas vendor" but stated that Wal-Mart would produce the available SWAS reports responsive to Plaintiffs' request. Dkt. No. 213-12 at 3. By the close of fact discovery on December 31, 2017, Wal-Mart produced approximately 600 SWAS reports to Plaintiffs. Dkt. No. 223-7 ("Klevorn Decl.") ¶ 8.

In reliance on Wal-Mart's disclosures, Plaintiffs filed their motion for summary judgment on January 2, 2018. Dkt. No. 192. The parties also fully briefed the issue whether this Court

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
2

United States District Court
Northern District of California

should decertify the class in January and February 2018. Dkt. Nos. 193, 203, 205. Then, on March 1, 2018 (one day after the February 28, 2018 deadline), Wal-Mart uploaded three expert reports to its file-sharing site. Dkt. No. 213-3. When Plaintiffs began reviewing the reports, they noticed that Wal-Mart's experts had relied on a large amount of information that had never been disclosed or otherwise made available to Plaintiffs. Jones Decl. ¶¶ 7–9. Plaintiffs made multiple attempts to contact Wal-Mart on March 1 and 2, 2018; they finally got in touch on the afternoon of March 2, 2018. Id. ¶ 10. During the ensuing phone call, Wal-Mart's counsel confirmed that Wal-Mart had provided information to its experts that had not been produced to Plaintiffs. Id.

Plaintiffs sought to remedy the situation quickly in light of the upcoming March 14, 2018 deadline to file rebuttal expert reports and the March 30, 2018 close of expert discovery. Id. But Wal-Mart had difficulty transmitting all of the data to Plaintiffs. Id. ¶ 11. On March 8, 2018, Plaintiffs received a large chunk of the evidence from Wal-Mart. Id. ¶ 12. However, information continued to trickle in throughout the month of March, with the last of the information becoming fully available to Plaintiffs on March 28, 2018. Dkt. No. 224-1 ("Coveney Decl.") ¶ 5. The volume of information that had not been produced was staggering. For example, while Wal-Mart had provided Plaintiffs with approximately 87 hours of video, Wal-Mart provided 650 hours of video to its expert. Jones Decl. ¶ 11. Similarly, whereas Wal-Mart turned over 600 SWAS reports to Plaintiffs during discovery, Wal-Mart gave 357,450 SWAS reports to its expert. Id. ¶ 12.

In the midst of these revelations, Plaintiffs filed their motion for sanctions on March 9, 2018. Dkt. No. 213 ("Mot."). To facilitate ongoing expert discovery, the Court moved the deadline for rebuttal reports to May 14, 2018 and the close of expert discovery to May 18, 2018. Dkt. No. 221. The Court also set a briefing schedule for the sanctions motion. Id. Wal-Mart filed its opposition on March 30, 2018, Dkt. No. 224 ("Opp."), and Plaintiffs filed their reply on April 6, 2018, Dkt. No. 225 ("Reply"). The Court held a hearing on April 26, 2018. Dkt. No. 228.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. Rule 26(a)(1)(A)(ii) mandates that parties, "without awaiting a discovery request," hand over "a copy—or a description

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
3

by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Rule 26(e)(1)(A), in turn, requires parties to supplement their prior disclosures "in a timely manner" when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." In this way, Rule 26(e) creates an "ongoing duty to supplement or correct prior disclosures or discovery responses" without the need for a request from another party. 8A Charles Alan Wright et al., Federal Practice and Procedure § 2048 (3d ed. 2017).

Failure to comply with Rule 26(a) or (e) is sanctionable under Rule 37(c)(1). That subsection provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule also lists other sanctions that a court may impose in addition to or in lieu of an exclusion sanction. See Fed. R. Civ. P. 37(c)(1)(A)–(C). Rule 37(c)(1) is "self-executing" and "automatic" in order to provide "a strong inducement for disclosure of material." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment). Once a violation is shown, the non-compliant party seeking to introduce the information has the burden to demonstrate that the "failure to disclose the required information is substantially justified or harmless." Id. at 1106–07.

### III. DISCUSSION

Plaintiffs move for sanctions under Rule 37(c)(1) on the basis that Wal-Mart provided certain information to three experts—Dr. Jeffrey Fernandez, Dr. Deborah Foster, and Dr. Yoram Wind—but did not disclose the information to Plaintiffs until months after the close of fact discovery. Plaintiffs request that the Court prohibit Wal-Mart from using the information, strike the three expert reports that rely in large part on that information, and order Wal-Mart to pay

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
4

$65,275 in expenses incurred because of Wal-Mart's untimely production. Mot. at 1. The Court proceeds by scrutinizing Wal-Mart's conduct with respect to each of the three identified experts.

### A. Dr. Fernandez

Dr. Fernandez is an ergonomist who was retained by Wal-Mart to provide an opinion on the potential musculoskeletal effects that could result from cashiers performing their job while sitting. Wal-Mart brought Dr. Fernandez on board as a consultant expert on August 1, 2017. Dkt. No. 224-4 ("Sbardellati Decl.") ¶ 2. Dr. Fernandez requested two categories of information from Wal-Mart: (1) videos of cashiers performing their jobs and (2) cashier transaction data (known as "register pull data"). Id. ¶ 3. Wal-Mart sent the requested materials to its attorneys who promptly forwarded them along to Dr. Fernandez. Id. Specifically, Wal-Mart supplied 650 hours of video between December 20, 2017 and January 18, 2018 and supplied over 2.25 gigabytes of register pull data and analysis on December 26, 2017. Id.; Dkt. No. 213-6.[1] During fact discovery, which did not close until December 31, 2017, Plaintiffs were provided a total of 87 hours of video. Jones Decl. ¶ 11. They did not receive the remaining video or the register pull data used by Dr. Fernandez until March 8, 2018. Coveney Decl. ¶ 4; Jones Decl. ¶ 12. Even then, Plaintiffs had technical issues in accessing the videos, so Wal-Mart had to physically deliver the videos on March 26, 2018 and had to provide a program for Plaintiffs to view the videos on March 28, 2018. Coveney Decl. ¶¶ 4–5.

The data underlying Dr. Fernandez's report was not timely disclosed. Dr. Fernandez received relevant videos as early as December 20, 2017 and received the register pull data on December 26, 2017. Although both of these dates preceded the close of fact discovery, Wal-Mart did not disclose the same information to Plaintiffs within the December 31, 2017 deadline. Rather, Wal-Mart produced the information to Plaintiffs on March 8, 2018, over a week after the

---

[1] Also, Dr. Fernandez and his team conducted site visits of thirty-seven California Wal-Mart locations to take measurements of the dimensions of Wal-Mart's checkout lane configurations; these visits began at the end of October 2017 and most were completed by early December 2017, though a handful occurred on January 10 and 11, 2018. Dkt. No. 213-6.

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
5

February 28, 2018 deadline for the parties to file their opening expert reports. Importantly, too, Wal-Mart provided the information not on its own initiative but only after Plaintiffs recognized and inquired into the deficiency. These significant gaps in time demonstrate that Wal-Mart's supplemental disclosure was not made "in a timely manner" from the moment when Wal-Mart "learn[ed] that in some material respect [its] disclosure or response [wa]s incomplete." Fed. R. Civ. P. 26(e)(1)(A).

Wal-Mart's argument against untimeliness is unavailing. Wal-Mart points out that it did not upgrade Dr. Fernandez from a consulting expert to a testifying expert until February 22, 2018. Sbardellati Decl. ¶ 5. In Wal-Mart's view, it "complied with its Rule 26(a) [and (e)] disclosure requirements because it did not consider using the materials in support of its defense until Dr. Fernandez became a testifying expert." Opp. at 13. But Wal-Mart cites no legal precedent supporting its dividing line between consulting and testifying experts. And the text of Rule 26(a)(1) dispels the notion that a party may wait to turn over pertinent materials until it has concrete plans to use them in support of its defense. Instead, the disclosing party must produce documents that it "has in its possession, custody, or control and *may* use to support its . . . defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Under that broad standard, Wal-Mart had an obligation to turn over the videos and register pull data well before it made the determination to designate Dr. Fernandez as a testifying expert in mid to late February.

The Court further notes that even the delay between Wal-Mart's decision to have Dr. Fernandez testify and Wal-Mart's production to Plaintiffs was unnecessary. The exact date of Wal-Mart's decision about Dr. Fernandez's expert status is unclear. Dr. Fernandez reviewed the information from Wal-Mart (including the videos and register pull data) and created a draft summary of his views, which Wal-Mart and its attorneys received on February 14, 2018. Sbardellati Decl. ¶ 5. Wal-Mart's declaration states: "At that time, it was determined that Dr. Fernandez would be designated as a testifying expert, and his retention agreement was revised accordingly on February 22, 2018." Id. Even assuming that the decision came closer to the end of

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

6

the span from February 14 to February 22, Wal-Mart does not fully account for the further delay in providing the information to Plaintiffs.

In particular, the Court finds disingenuous Wal-Mart's representation that "[t]he materials that Dr. Fernandez considered in reaching his opinions were then disclosed on February 28, 2018." Opp. at 13. In fact, Wal-Mart did not give over the information until March 8, 2018, and only because Plaintiffs affirmatively requested it. Moreover, Plaintiffs' opening expert report was due on February 28, 2018, so it was critical that Wal-Mart provide the information relied on by its experts before that date. At a minimum, disclosure on February 22 could have facilitated a change in the case schedule to accommodate Plaintiffs' need to review the new information. By postponing, Wal-Mart further exacerbated the problem that Plaintiffs' expert was "in effect locked-in to the factual record as of the time fact discovery closed." Apple, Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012). The Court need not say whether Wal-Mart's delay in late February was sufficient by itself to warrant sanctions under Rule 37(c)(1), but it supports a finding of untimeliness.

Wal-Mart's actions are made more problematic by the fact that Plaintiffs served document requests in June 2017 that were expansive enough to cover the videos and register pull data. Those requests sought all documents supporting Wal-Mart's contentions that "the nature of Cashier's work at the front end checkout lanes does not reasonably permit the use of a seat/stool," "the quality and effectiveness of the overall job performance of Cashiers would be hindered by providing Cashiers with a seat/stool," and "the physical layout of any of the front end checkout lanes . . . does not accommodate the use of a seat or stool by Cashiers." Dkt. No. 213-8 at 2–3. And Wal-Mart responded to those requests in September 2017 by agreeing to "produce a video of a California Wal-Mart cashier using a stool and videos depicting injuries to Wal-Mart associates and/or customers caused by stools for use by cashiers." Dkt. No. 213-10 at 3–4. That production suggests that the videos and register pull data that Wal-Mart provided to Dr. Fernandez also would have satisfied Plaintiffs' request. To make matters worse, Wal-Mart also verified to Plaintiffs that it had "otherwise previously produced all non-privileged, responsive documents or things in the

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
7

demanded category that are in its possession, custody, or control." See id. Even if all of that were not enough, in October 2017, Wal-Mart explicitly listed "[v]ideo footage depicting cashiers working in cash wraps while standing" and "[d]ata related to cashier efficiency" as categories of documents that Wal-Mart "contemplated to be used in support of the material allegations of its Answer or to rebut the material allegations of Plaintiff's complaint." Dkt. No. 213-13 at 2–3. Thus, Wal-Mart did not disclose the data underlying Dr. Fernandez's report in a timely manner.

Nor has Wal-Mart established that its untimely disclosure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Court has already discounted Wal-Mart's sole justification for being late—namely, that Dr. Fernandez did not become a testifying expert until late February 2018. Opp. at 14. With respect to harm, Wal-Mart asserts that Plaintiffs have not suffered any prejudice because they still have time to conduct expert discovery and prepare their rebuttal reports. Id. at 15. The Court disagrees. Wal-Mart withheld a massive amount of information: while Wal-Mart produced 87 hours of video to Plaintiffs during discovery, it produced 650 hours of video and over 2.25 gigabytes of register pull data to Dr. Fernandez. Plaintiffs could not have reviewed any of this information before March 8, 2018, as the information was in Wal-Mart's exclusive control. Because fact discovery closed on December 31, 2017, Plaintiffs have been prevented from conducting follow up discovery or depositions related to this information. See Mot. at 20. The prejudice suffered by Plaintiffs is also heightened because they have filed a summary judgment motion in reliance on Wal-Mart's representations that it had produced all documents supporting its contentions. Although Wal-Mart is willing to allow additional fact discovery as necessary, see Opp. at 15, such accommodations would require significant further changes to the case schedule. See Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1180 (9th Cir. 2008) ("[M]odifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless."); Wong v. Regents of Univ. of Cal., 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other parties in that manner is not harmless.").

Wal-Mart's tardiness has also affected expert discovery. To be sure, the Court has extended expert discovery deadlines, so Plaintiffs have until May 14, 2018 to prepare rebuttal reports and until May 18, 2018 to conduct depositions. But the deadline to designate experts and serve opening reports expired before Plaintiffs received the information from Wal-Mart. And the consequences are readily apparent. Plaintiffs have been precluded from assessing whether additional experts are needed in light of the undisclosed information. Further, Plaintiff's expert was required to file his opening report with a proverbial hand tied behind his back because he did not have the full range of factual information available to him and so could not advance his own affirmative analysis of the information. See Apple, 2012 WL 3155574, at *5 ("Although expert discovery had not yet concluded, the experts were in effect locked-in to the factual record as of the time fact discovery closed and could not test the factual basis for the newly amended contentions by conducting additional discovery."). The Court cannot unring that bell without upsetting the entire case schedule. See Hoffman, 541 F.3d at 1180. Accordingly, Wal-Mart has failed to meet its burden to show substantial justification or harmlessness.

Having determined that sanctions are appropriate, the Court must decide what sanction to impose. Although Rule 37(c)(1) enumerates examples of sanctions that a court may impose in addition to or instead of an exclusion sanction, "in the ordinary case, violations of Rule 26 may warrant evidence preclusion." R & R Sails, Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1247 (9th Cir. 2012). Where, as here, an exclusion sanction does not amount to dismissal of a claim, it need not be accompanied by a finding of willfulness or bad faith. Id. The Court finds that exclusion is warranted here. This Court has already issued an exclusion sanction against Wal-Mart in this case for noncompliance with Rule 26—specifically, Wal-Mart failed to timely disclose the identities of fifteen declarants before filing an opposition to Plaintiffs' motion for class certification. Dkt. No. 110 at 4. The Court explained that Wal-Mart's untimeliness "deprived [Plaintiffs] of the opportunity to depose these declarants" and concluded that exclusion was justified. Id. The Ninth Circuit affirmed the imposition of that sanction on appeal. Brown, 651 F. App'x at 674.

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

9

Here, Wal-Mart withheld a substantial amount of information that bears on Plaintiffs' case while simultaneously providing that same information to its own expert, Dr. Fernandez. Plaintiffs were understandably surprised by the late production: not only did it far outweigh in quantity and quality the information that had previously been produced, but it also came after the deadlines for fact discovery and opening expert reports had passed. A lesser sanction would not be appropriate. By producing the videos and register pull data after the close of fact discovery, Wal-Mart has prevented Plaintiffs from conducting further fact discovery related to that information and from incorporating those findings into Plaintiffs' opening expert report. The only way to restore both parties to equal footing with respect to the videos and register pull data is to exclude them. The Court also notes that exclusion of this evidence (and striking of the related expert report) does not eviscerate Wal-Mart's case, as Wal-Mart still has other evidence and arguments that it may proceed with. Accordingly, the Court precludes Wal-Mart from using the videos and register pull data and strikes Dr. Fernandez's expert report to the extent that it relies on the excluded videos and register pull data.

### B. Dr. Foster

The sanctions dispute with respect to Dr. Foster centers on Wal-Mart's production of SWAS reports.[2] Dr. Foster is an economist who was retained by Wal-Mart on February 16, 2018 to provide an opinion on the average productivity of seated cashiers versus standing cashiers. Kelvorn Decl. ¶ 11. For this reason, it was important for her to review the SWAS reports, which are productivity reports that include statistics about the number of items and customers each cashier handles.

Wal-Mart provided a much smaller universe of SWAS reports to Plaintiffs during discovery than to Dr. Foster. On October 31, 2017, Plaintiffs served a document request singling out SWAS reports: their demand for production requested that Wal-Mart produce "[a]ll Associate

---

[2] Wal-Mart also provided Dr. Foster with data relating to accommodations requests made by California cashiers for a seat or stool under Wal-Mart's accommodations policy.

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
10

SWAS Reports for front end Cashiers for all of YOUR California stores during the time period that a front end Cashier CLASS MEMBER was allowed to use a seat/stool during the performance of his/her work during the CLASS PERIOD." Dkt. No. 213-11 at 2–3. Wal-Mart's December 4, 2017 response objected to the request as burdensome, stating that the "SWAS Reports are only available temporarily for a short period of time before being archived with an overseas vendor." Dkt. No. 213-12 at 3. Apparently, the SWAS reports are "maintained on an active basis for three days, with any older reports archived." Klevorn Decl. ¶ 5. However, Wal-Mart indicated that it would "produce the available Associate SWAS Reports responsive to [Plaintiffs'] request." Dkt. No. 213-12 at 3. Wal-Mart faced some difficulties in the retrieval process because its personnel had to extract SWAS reports individually using a laborious thirteen-step process. Klevorn Decl. ¶ 7. By the close of fact discovery on December 31, 2017, Wal-Mart produced approximately 600 SWAS reports to Plaintiffs. Id. ¶ 8.

That number pales in comparison to the 357,450 SWAS reports that Wal-Mart provided to Dr. Foster. Jones Decl. ¶ 12. As Wal-Mart's declarant describes it, "[a]fter the close of fact discovery, recognizing that the SWAS reports may be used by Wal-Mart in this matter, Wal-Mart renewed its efforts to retrieve any remaining SWAS reports that were practically available." Klevorn Decl. ¶ 9. On February 15, 2018, Wal-Mart contacted the third-party vendor that manages access to the archive database to ask if SWAS reports could be pulled in batches; the vendor said it was not possible. Id. However, another vendor solved the problem by writing software that would allow the reports to be pulled electronically in batches. Id. ¶ 10. That vendor began pulling all of the available reports on February 20, 2018 and finished on February 23, 2018. Id. ¶¶ 10–11. Wal-Mart forwarded the SWAS reports to its counsel that day (February 23, 2018), and counsel provided them to Dr. Foster the same day. Id. After Plaintiffs contacted Wal-Mart on March 2, 2018 regarding the deficient disclosure in connection with Dr. Foster's February 28, 2018 expert report, the missing 356,850 SWAS reports were uploaded to the file-sharing site on March 5, 2018 and a DVD containing PDF copies was delivered on March 8, 2018. Coveney Decl. ¶ 3; Jones Decl. ¶ 12.

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
11

The Court finds that the additional SWAS reports were not timely disclosed. Plaintiffs' October 31, 2017 document request sought all SWAS reports for the cashier class members. Wal-Mart produced only 600 SWAS reports to Plaintiffs by the close of fact discovery on December 31, 2017. Nevertheless, at that time, Wal-Mart's duty to supplement had already been triggered because Wal-Mart was fully aware that its disclosure was materially incomplete. See Fed. R. Civ. P. 26(e)(1)(A). Yet Wal-Mart never informed Plaintiffs that it had not produced all of the SWAS reports or that it was continuing to collect SWAS reports. Nor does Wal-Mart identify any steps that it was taking in the interim to secure the SWAS reports. Rather, it appears that Wal-Mart did nothing to pursue the outstanding SWAS reports until February 15, 2018 when Wal-Mart decided that the reports would be helpful for its own case. At that point, Wal-Mart made arrangements and sorted out the batching problems so that the vendors could provide the remaining 356,850 SWAS reports on February 23, 2018.

The difficulty associated with retrieving the SWAS reports does not make Wal-Mart's early March disclosure timely or excuse the delay. Wal-Mart does not advance an argument that the SWAS reports were outside its "possession, custody, or control" merely because a third-party vendor maintains the archive database. See Fed. R. Civ. P. 26(a)(1)(A)(ii). Even if Wal-Mart "had difficulties retrieving the universe of available SWAS reports and expended substantial time, effort and resources to obtain them," Opp. at 8, there is no explanation for the one-and-a-half month gap (from the end of December 2017 to mid-February 2018) where Wal-Mart ceased all retrieval efforts. Indeed, had Wal-Mart asked its vendor to confront the batching problem in December 2017, the vendor could have implemented the simple solution that drastically cut down the recovery time. Wal-Mart's one-and-a-half month hiatus is made all the more troubling by the fact that Wal-Mart's statements were likely to mislead Plaintiffs into believing that all of the relevant SWAS reports had been turned over. Wal-Mart never clarified or qualified its December 2017 response to Plaintiffs' document request that it would "produce the available Associate SWAS Reports responsive to [Plaintiffs'] request." Dkt. No. 213-12 at 3. And Wal-Mart had

otherwise identified "[d]ata related to cashier efficiency" and "data related to variants in product mix" as categories of documents to be used in Wal-Mart's defense. Dkt. No. 213-13 at 2–3.

Further underscoring the untimeliness is the gap between Wal-Mart receiving the full set of SWAS reports and its production to Plaintiffs. Wal-Mart contends that "Plaintiffs were made aware of the full scope of the SWAS reports a mere five days after they came into the possession of Wal-Mart." Opp. at 10. That statement might be technically correct, but it obfuscates the fact that Plaintiffs alerted Wal-Mart—not vice versa—about the missing SWAS reports and the fact that Plaintiffs did not have the SWAS reports in hand until March 5, 2018 at the earliest. Even setting aside those issues, it is unclear why Wal-Mart waited five days from receiving the SWAS reports on February 23, 2018 to bring them to Plaintiffs' attention. Plaintiffs had asked for this exact set of information from Wal-Mart on October 31, 2017, and time was of the essence because Plaintiffs' opening expert report was due on February 28, 2018. In light of these circumstances, the Court concludes that Wal-Mart did not disclose the extra 356,850 SWAS reports in a timely manner.

Wal-Mart has not made a showing that its untimely disclosure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Wal-Mart does not raise any substantial justifications beyond those already rejected above. Opp. at 14. And most of Wal-Mart's harmlessness contentions repeat those already addressed with respect to Dr. Fernandez. Id. at 15. Wal-Mart's SWAS-specific arguments miss the mark. Wal-Mart argues that "[b]ecause Wal-Mart had already produced some SWAS reports, Plaintiffs should have been or actually were aware of the content, substance and layout of the SWAS reports." Id. at 10; id. at 11 ("[A]ll Plaintiffs received [in Wal-Mart's subsequent disclosure] was more of the same information."). What Wal-Mart fails to appreciate is that Plaintiffs did not have access to the particular information in the undisclosed SWAS reports. Wal-Mart does not suggest that the 600 SWAS reports that were timely disclosed are representative of the entire set of reports, and Wal-Mart would need to justify that claim given the significant disparity between the amounts disclosed and not disclosed. Because Plaintiffs did not have the additional 356,850 SWAS reports before February 28, 2018, they lost the opportunity

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
13

to have their expert consider them in his opening expert report and develop an affirmative case based on all of the evidence. Deposing Dr. Foster and preparing a rebuttal report would not fully cure that prejudice because those acts involve dissecting and critiquing Dr. Foster's analysis, not presenting Plaintiffs' own contentions. Thus, Wal-Mart has not shown harmlessness.

As with Dr. Fernandez, the Court finds it appropriate to follow the usual course that "violations of Rule 26 may warrant evidence preclusion." R & R Sails, 673 F.3d at 1247. Wal-Mart's actions here are particularly egregious because Plaintiffs expressly requested the SWAS reports, but Wal-Mart produced a very small fraction without informing Plaintiffs that production was incomplete. Then, Wal-Mart turned around and retrieved the SWAS reports for itself, giving them to its own expert, Dr. Foster, but still holding them back from Plaintiffs. Wal-Mart provided the additional 356,850 SWAS reports only after Plaintiffs affirmatively asked for them, and, by that time, fact discovery had closed and the deadline for expert opening reports had elapsed. Wal-Mart thus stripped Plaintiffs of the opportunity to engage in further fact discovery and have their expert consider this evidence in his opening expert report. Exclusion is commensurate with the harm caused by Wal-Mart's failure to timely disclose and has been endorsed in previous cases presenting similar circumstances. See, e.g., Jones v. Travelers Cas. Ins. Co. of Am., 304 F.R.D. 677, 682 (N.D. Cal. 2015). Because Dr. Foster's report relies almost exclusively on the SWAS reports, the Court also strikes her expert report in its entirety. The Court reiterates that this sanction does not actually or practically eliminate Wal-Mart's ability to defend against the suit.

**C. Dr. Wind**

Dr. Wind is a marketing professor who was retained by Wal-Mart to provide an opinion on consumer perceptions of seated cashiers. Klevorn Decl. ¶ 2. To form his opinions, Dr. Wind decided to conduct a consumer survey and therefore requested that Wal-Mart provide video footage of seated and standing cashiers performing their work. Id. ¶ 3. On February 8, 2018, Wal-Mart recorded a forty-five minute video of Wal-Mart associates performing cashier duties in seated and standing positions at an Arkansas Wal-Mart location. Id. The footage was made available to Dr. Wind on February 15, 2018, and he chose a limited amount (namely, eight of

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
14

thirty-six total spliced clips) to use in his study. Id. ¶ 4. Wal-Mart's attorneys attempted to transmit Dr. Wind's eight clips to Plaintiffs via the file-sharing site on March 3, 2018. Coveney Decl. ¶ 6. Due to some continued technical difficulties, Wal-Mart arranged for hand delivery of a flash drive on March 5, 2018. Id. Wal-Mart supplied all thirty-six clips on a hard drive on March 8, 2018. Id.

Plaintiffs' argument that Wal-Mart's disclosure of these videos was untimely is relatively weak. Unlike the other evidence discussed above, the video footage relied on by Dr. Wind was not created until after the close of fact discovery. Even if the clock started running on February 8 when Wal-Mart shot the video, Plaintiffs had the entirety of the footage by March 8, four weeks later. And it is not entirely clear that the period should stretch that long when Dr. Wind did not select clips until February 15 and Wal-Mart attempted to make the chosen clips available on the file-sharing site on March 3. Nevertheless, the Court need not resolve any of these issues.

Regardless whether the disclosure was untimely, Wal-Mart has sufficiently established that any delay was harmless. To begin, the undisclosed information clocks in at a total of forty-five minutes, making any review eminently manageable. More importantly, in contrast to the evidence used by Drs. Fernandez and Foster, the audiovisual evidence used by Dr. Wind does not depict or describe the work of California class members and was not requested by Plaintiffs during discovery. Indeed, Dr. Wind's video footage shows an improvised version of Arkansas Wal-Mart employees working as cashiers at a Wal-Mart store in Arkansas. This reflects the basic fact that Dr. Wind's task was to conduct a general evaluation of consumers' reactions to seated and standing cashiers, not an examination of the particular work of California cashiers. In other words, the footage itself has little significance in the case apart from its connection to Dr. Wind's survey, and collection of the data was expressly designed to facilitate the survey.

For this reason, Wal-Mart's contentions about ongoing expert discovery ring true in this context. Plaintiffs have until May 14, 2018 to file a rebuttal to Dr. Wind's report and until May 18, 2018 to conduct expert discovery. Those dates provide ample time and opportunity for Plaintiffs to poke and prod Dr. Wind's survey methodology for weaknesses and flaws. Plaintiffs

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
15

are not at a disadvantage for not having the video footage before the opening expert report deadline because the footage does not form part of the underlying factual landscape. Instead, the footage was created specifically for Dr. Wind's survey, which seeks to reach broad conclusions about consumers' preferences for seated or standing cashiers. Courts commonly find that the ability to take expert discovery and respond to an expert's testimony is sufficient to cure an expert-specific deficiency. See, e.g., Davis v. Phillips 66, No. 17-CV-00128-JST, 2018 WL 692045, at *2 (N.D. Cal. Feb. 2, 2018) (finding no prejudice where plaintiff's expert disclosure was missing required information but defendant "took the witnesses' depositions" and "designated rebuttal experts"); Semtech Corp. v. Royal Ins. Co. of Am., No. 03-CV-02460-GAF, 2005 WL 6192906, at *3 (C.D. Cal. Sept. 8, 2005) (finding no prejudice where plaintiff's supplemental expert report was filed late because defendant had enough time to depose the expert and rebut the report before trial). Thus, the Court denies Plaintiffs' request for exclusion of Dr. Wind's opening expert report and the underlying video footage.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for sanctions is GRANTED in part and DENIED in part. Wal-Mart is precluded from using the videos and register pull data provided to Dr. Fernandez, and Dr. Fernandez's report is stricken to the extent that it relies on that information. Wal-Mart is precluded from using the additional 356,850 SWAS reports provided to Dr. Foster, and Dr. Foster's report is stricken in its entirety because it relies almost exclusively on the SWAS reports. Wal-Mart may use the video footage provided to Dr. Wind, and Dr. Wind's report is not stricken. The Court also denies as excessive Plaintiffs' further request for expenses incurred because of Wal-Mart's untimely disclosure of evidence.

**IT IS SO ORDERED.**

Dated: April 27, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 09-cv-03339-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS
16