CHARLES A. JONES State Bar No. 224915
KELLY McINERNEY State Bar No. 200017
JONES LAW FIRM
9585 Prototype Ct., Suite B
Reno, Nevada 89521
Telephone: (775) 853-6440 / Facsimile: (775) 853-6445
Email: caj@cjoneslawfirm.com. Kelly@cjoneslawfirm.com

MATTHEW RIGHETTI, State Bar No. 121012
RIGHETTI GLUGOSKI, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone: (415) 983-0900 / Facsimile: (415) 397-9005
Email: matt@righettilaw.com

Class Counsel

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NISHA BROWN and KATHY WILLIAMSON, individually and on behalf of all others similarly situated,<br><br> Plaintiffs,<br><br>vs.<br><br>WAL-MART STORES, INC., and DOES 1 through 50 inclusive,<br><br>      Defendants. | CASE NO.:  5:09-CV-03339-EJD<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:      July 12, 2018<br>Time:      9:00 AM<br>Location:  Courtroom 4 (5th Floor)<br>Judge:     Honorable Edward J. Davila |

# <u>TABLE OF CONTENTS</u>

Table of Contents ....................................................................................................... i

Table of Authorities ............................................................................................ ii-iv

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ........................................................................................ 3

III.  RELEVANT HISTORY OF IWC WAGE ORDERS ........................................ 5

IV.   THE SUITABLE SEATING REQUIREMENT DOES NOT VIOLATE THE
      CALIFORNIA APA ............................................................................................ 9

V.    WAL-MART RETAINS THE ABILITY TO SEEK REDRESS FROM THE
      LEGISLATURE FOR THE REPEAL OR MODIFICATION OF THE SUITABLE
      SEATING REQUIRMENT ................................................................................ 11

      A.    Wal-Mart Also Retains The Right To Seek An Exemption From The Suitable
            Seating Requirement Directly Through The DLSE ................................. 12

VI.   WAL-MART'S CONSTITUTIONAL ARGUMENT'S FAIL ........................... 13

      A.    Wal-Mart Misconstrues Both The History And Applicability Of The Suitable
            Seating Requirement ............................................................................... 14

      B.    The New Your Times Article Is Both Inadmissible and Irrelevant ...................... 16

      C.    Wal-Mart's Due Process Rights Have Not Been Violated ................................... 17

      D.    The Current Enforcement Scheme Does Not Unduly Infringe Upon The Authority
            Of The Executive ....................................................................................... 17

VII.  WAL-MART'S PROPOSED REMEDY OF DECLARING THE WAGE ORDER
      UNCONSTITUTIONAL IS NOT SUPPORTED ............................................. 18

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Brown v. Wal-Mart Stores, Inc.*
(9th Cir. 2016) 651 F. App'x 672 .................................................................. 1

*Cunha v. IntelliCheck, LLC*
(N.D. Cal. 2017) 254 F. Supp. 3d 1124, 1132 ........................................... 4

*Dynamex Operations W., Inc. v. Superior Court*
(April 30, 2018) 2018 WL 1999120 ................................................... *passim*

*Galbraith v. County of Santa Clara*
(9th Cir. 2001) 307 F.3d 1119, 1125-26 ................................................... 16

*Garvey v. Kmart Corp.*
(N.D. Cal. 2012) 2012 WL 1231803 .......................................................... 15

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
(9th Cir. 1989) 896 F.2d 1542, 1550 ........................................................... 3

*In re S. Bay Expressway, L.P.*
(Bankr. S.D. Cal. 2011) 445 B.R. 732, 741 ............................................... 4

*Lee v. City of Los Angeles*
(9th Cir. 2001) 250 F.3d 668, 688-690 ...................................................... 16

*Shame on You Prods., Inc. v. Elizabeth Banks*
(C.D. Cal. 2015) 120 F. Supp.3d 1123, 1146 ............................................. 4

*Shame on You Prods., Inc. v. Banks*
(9th Cir. 2017) 690 F. App'x 518 ................................................................. 4

*Valenzuela v. Giumarra Vineyards Corp.*
(E.D. Cal. 2009) 614 F. Supp.2d 1089, 1093 ........................................... 18

## **STATE CASES**

*Bearden v. U.S. Borax, Inc.*
(2006) 138 Cal. App. 4th 429, 434-35, 487 .......................................... 10, 11

*Brinker Rest. Corp. v. Superior Court*
(2012) 53 Cal. 4th 1004, 1027 ...................................................................... 9

*California Labor Fed'n, AFL-CIO v. Indus. Welfare Comm'n*
(1998) 63 Cal. App. 4th 982, 993-94 ........................................................ 19

*Carmel Valley Fire Protection Dist. v. State*
(2001) 25 Cal. 4th 287, 297 ................................................................. 17, 18

*Cty. of Sonoma v. Superior Court*
(2009) 173 Cal. App. 4th 322, 336-37 ........................................................ 4

*Huntington Memorial Hospital v. Superior Court*
(2005) 131 Cal. App. 4th 893, 902...................................................................... 9

*Industrial Welfare Com. v. Superior Court*
(1980) 27 Cal. 3d 690, 702............................................................................... 8

*Jenkins v. Knight*
(1956) 46 Cal. 2d 220, 222........................................................................... 3, 20

*Kilby v. CVS Pharmacy Inc.*
(2016) 63 Cal. 4th 1, 11-13 ..................................................................... *passim*

*Martinez v. Combs*
(2010) 49 Cal. 4th 35, 54, 60-61 .............................................................. *passim*

*Mathews v. Harris*
(2017) 7 Cal. App. 5th 334, 349-50 ................................................................... 4

*Mendiola v. CPS Security Solutions, Inc.*
(2015) 60 Cal. 4th 833, 838 ............................................................................. 6

*Morillion v. Royal Packing Co.*
(2000) 22 Cal. 4th 575, 581 ............................................................................. 5

*Murphy v. Kenneth Cole Prods., Inc.*
(2007) 40 Cal. 4th 1094, 1102 ....................................................................... 6, 9

*Rivera v. Division of Industrial Welfare*
(1968) 265 Cal. App.2d 576, 594 ....................................................................... 8

*San Francisco v. Superior Court of San Francisco*
(1928) 94 Cal. App. 318, 320 ....................................................................... 3, 20

*Tidewater Marine W., Inc. v. Bradshaw*
(1996) 14 Cal. 4th 557, 569 ............................................................................. 5

*Tobe v. City of Santa Ana*
(1995) 9 Cal. App. 1069, 1084-85 ..................................................................... 5

**RULES/REGULATIONS**

California Administrative Code Title 8 § 11215-14 ....................................... 9, 16

California Administrative Procedure Act § 11340 ............................................... 9

California Administrative Procedure Act § 11342 ......................................... 9, 10

California Administrative Procedure Act § 11350 ............................................... 9

California Code of Civil Procedure § 1085.................................................... 3, 20

California Code of Regulations Title 8 § 11070 .......................................... 2, 8, 15

California Labor Code §15................................................................................ 19

California Labor Code § 24 ........................................................................................... 7, 19

California Labor Code § 57 ........................................................................................... 18

California Labor Code § 61 ........................................................................................... 12

California Labor Code § 70 ........................................................................................... 18

California Labor Code § 95 ........................................................................................... 12

California Labor Code § 98 ........................................................................................... 12

California Labor Code §226 .......................................................................................... 11

California Labor Code §510 .......................................................................................... 11

California Labor Code §512 .......................................................................................... 10

California Labor Code §1173 ........................................................................................ 3, 18

California Labor Code §1182 ........................................................................................ 11

California Labor Code §1185 ........................................................................................ *passim*

California Labor Code §1187 ........................................................................................ 6

California Labor Code §1193 ........................................................................................ 2, 12

California Wage Order §2699 ....................................................................................... 13

California Government Code§ 11340 ........................................................................... 8

California Wage Order §16 ........................................................................................... 10

Federal Rule of Civil Procedure 12 ............................................................................. 3, 5

Industrial Wage Code 1913 .......................................................................................... *passim*

Industrial Wage Code 1937 .......................................................................................... 7

Industrial Wage Code Wage Order 7 R ....................................................................... *passim*

## **OTHER**

California Constitution Article 20 ................................................................................ 7, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The breadth and scope of relief requested in Wal-Mart's motion is breathtaking. Wal-Mart's motion seeks to deem California's primary regulatory scheme – reflected in Wage Orders issued by the California Industrial Welfare Commission ("IWC") – unconstitutional.   Although Wal-Mart specifically targets Wage Order 7-2001 §14(a), if accepted, Wal-Mart's Motion would dismantle each of the eighteen Wage Orders issued by the IWC.  The far-reaching impact of Wal-Mart's request would have a devastating effect on far more than the 100,000 class members in this case.[1]   It would also both strip away the rights of tens of millions of California workers for whose specific benefit the Wage Orders were enacted in the first instance and throw into disarray the entirety of California's principal statutory scheme which is relied upon by courts, employers, and employees alike. See, *Dynamex Operations W., Inc. v. Superior Court*, 2018 WL 1999120 at *27 (April 30, 2018) ("Dynamex") [confirming that the IWC Wage Orders serve the dual purpose of both benefitting California workers, as well as law abiding businesses that comply with the wage orders thereby ensuring that such responsible companies are not hurt by unfair competition from competitor businesses].[2]

According to Wal-Mart's motion, because the California Legislature defunded the IWC in 2004, Wal-Mart is now, *arguendo*, powerless to petition any branch of government for modification or repeal of the Wage Order's suitable seating requirement.   Armed with only an

---

[1]    According to Wal-Mart, the number of members in this certified class has increased from 80,000 to over 100,000.
[2] It should not be overlooked that this motion was filed after nearly nine years of litigation, this Court's Order certifying the class (ECF No.110), the Ninth Circuit's Order affirming class certification (*Brown v. Wal-Mart Stores, Inc.* 651 F. App'x 672 (9th Cir. 2016), the filing of Plaintiffs' Motion for Summary Judgment (ECF No. 192), this Court's denial of the Motion to Decertify the Class (ECF No. 230), and just five months prior to the start of trial.

inadmissible "link" to an article from the New York Times suggesting that sitting continuously for nine to ten hours per day may lead to health problems, Wal-Mart muses that had the IWC not been defunded, the *possibility* exists that the IWC would have modified or rescinded the Wage Order's seating requirements.   So, as Wal-Mart's argument goes, (a) California's decision to defund the IWC deprived the IWC from amending or rescinding any/all of the Wage Orders in violation of the California Administrative Procedure Act ("APA") (Cal. Govt. Code §11340 *et seq)*, and (b) the remedy for such a violation would be to deem unconstitutional the entirety of California's Wage Order regulatory scheme.

Wal-Mart's desperate eleventh-hour attempt to escape the requirements of §14(a)'s suitable seating provision, a requirement that has existed in one form or another in the IWC Wage Order applicable to the mercantile industry since 1919, and has remained largely unchanged since 1976 (*Kilby v. CVS Pharmacy Inc.,* 63 Cal.4th 1,11-13 (2016)), must be rejected for the following reasons:

- Contrary to Wal-Mart's assertion, the Wage Orders issued by the IWC "shall be valid and operative" and are "expressly exempt" from the provisions of the APA requirements relied upon by Wal-Mart to support its misplaced constitutional challenge.  *Martinez v. Combs*, 49 Cal. 4th 35, 60–61 (2010); Cal. Labor Code §1185; Stats 1949. Ch. 1454, §12, p. 2538, as amended;

- Contrary to Wal-Mart's argument, it has *many* avenues available to seek either the re-funding of the IWC or the modification or repeal of the Wage Order's suitable seating requirement. Namely, Wal-Mart still has the ability to seek redress through the California Legislature. See, *Dynamex, supra*, at *14 [confirming that "The Legislature defunded the IWC in 2004, however its wage orders remain in effect. [Citation.] **The Legislature, of course, retains the authority to re-fund the IWC or to revise any provisions of the current wage orders through the enactment of new legislation."]** (emphasis added);

- In addition to seeking recourse through the California Legislature, Wal-Mart neglects to mention that it can also request an exemption from the seating requirement provisions at issue here via Section 17 of the Wage Order (i.e., through the Division of Labor Standards Enforcement ("DLSE"), the entity charged with the

responsibility of enforcing the IWC Wage Orders. See, Cal. Code. Regs., tit 8, §11070-17); and

- If, as Wal-Mart contends, the State of California has violated mandatory duties imposed on it by Labor Code Sec. 1173, then the proper procedure is for Wal-Mart to seek a writ of mandamus to compel the State of California to re-fund the IWC. See, California Code of Civil Procedure §1085; *San Francisco v. Superior Court of San Francisco*, 94 Cal. App. 318, 320 (1928)[ ["A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person."]; *Jenkins v. Knight* 46 Cal.2d 220, 222 (1956) ["[I]t has been consistently held for more than three quarters of a century that the writ will issue to compel a governor to perform ministerial acts required by law."].

## II.   LEGAL STANDARD

Rule 12(c) motions for judgment on the pleadings may be filed once the pleadings are closed. Fed. R. Civ. P. 12(c).  In this case, the pleadings closed nearly nine years ago on July 21, 2009, when Defendant filed its Answer. See, ECF No. 1 p. 20.  In fact, the pleadings closed in this case some five years after the 2004 de-funding of the IWC.  Why Wal-Mart waited nearly nine years to file the instant motion is mystifying.

Judgment on the pleadings is only proper when the moving party clearly establishes *on the face of the pleadings* that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).   When deciding a Rule 12(c) motion, "the allegations of the nonmoving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.*  Judgment on the pleadings is improper when the moving party relies on evidence not embraced by the pleadings themselves, as Wal-Mart does here. *Id.*  Fed. R. Civ. P. 12(c).

Wal-Mart's Motion does not challenge the sufficiency of the allegations contained within the Complaint (ECF No. 1 p. 11-15), which were specifically denied by Wal-Mart.  See, ECF No. 1 p. 17-20.  Instead, Wal-Mart relies on extrinsic evidence, an article from the New York Times, to mount a constitutional challenge to IWC Wage Order 14(a)'s suitable seating requirement.  Based on this article, Wal-Mart muses that since there may be health risks associated with sitting for 9 to 10 hours straight then, had the IWC not been defunded in 2004, the possibility exists that the IWC may have learned about this article and then relied on it as the basis to amend or modify §14(a)'s suitable seating provisions. See, ECF No. 226, p.12.  Wal-Mart's reliance on this article is clearly improper because the article relied upon by Wal-Mart is "evidence" that is neither attached to nor referenced in the Complaint or Answer. See, ECF No. 1.  As a result, the Court cannot consider this evidence in ruling on the instant motion as it would require the court to go beyond the scope of the pleadings. *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1146 (C.D. Cal. 2015), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017). As noted in Section V(B), below, Plaintiffs also object the admissibility of this article on other grounds.

It is axiomatic that a party challenging the constitutionality of a statue, as Wal-Mart does here, caries a heavy burden.  *Mathews v. Harris*, 7 Cal. App. 5th 334, 349–50 (2017); *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1132 (N.D. Cal. 2017) [Statutes are presumed to be constitutional and "must be upheld unless their unconstitutionality clearly, positively and unmistakably appears."]  Further, in determining issues of constitutionality, this Court presumes that the Legislature understood its constitutional limits in passing a law, and it intended circumstances in which the law would be constitutional.  *In re S. Bay Expressway, L.P.*, 455 B.R. 732, 741 (Bankr. S.D. Cal. 2011); *Cty. of Sonoma v. Superior Court*, 173 Cal. App. 4th 322, 336–

37 (2009) [We accord a presumption of constitutionality to acts of the Legislature, particularly when that body has enacted a statute with the relevant constitutional prescriptions clearly in mind.]

Although not stated in the Motion, it appears that Wal-Mart is using the Legislature's defunding of the IWC to present a facial challenge to the constitutional validity of the Wage Orders. A facial challenge considers only the text of the measure itself, not its application to the particular circumstances of an individual. *Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, 1084–85 (1995). In *Tobe*, the California Supreme Court confirmed as follows regarding a facial challenge:

> To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute .... Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.

Under this standard, Wal-Mart's motion must be denied as it is based entirely upon the hypothetical claim that, had the IWC not been defunded, the possibility exists that the IWC may have modified, amended, or rescinded §14 (a)'s suitable seating requirement. See, ECF No. 226 p. 15:22-27 [arguing that: "the extension of the Suitable Seating Requirement to areas of commercial activity to which it had not previously been applied by the IWC *has the potential to impose* economic consequences that the agency never considered. It is therefore *possible* that the Suitable Seating Requirement is no longer reasonable..." (emphasis added)][3]

## III.   RELEVANT HISTORY OF IWC WAGE ORDERS

The IWC "'is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California.'" (*Morillion v. Royal Packing Co.* 22 Cal.4th

---

[3]   To the extent that Wal-Mart asserts an "as applied" challenge, it would be entirely inappropriate for this Court to entertain such a challenge in the context of a Rule 12(c) Motion for Judgment on the Pleadings. This is because an "as applied" challenge requires an analysis of the facts of a particular case or cases to determine the circumstance in which the statute or ordinance has been applied. *Tobe*, 9 Cal.4th at p. 1084. Such an analysis would necessarily require this Court to consider facts other than those contained on the face of the pleadings, which is prohibited when ruling on motion brought under Rule 12(c).

575, 581 (2000).)  The Legislature created the IWC in 1913, "delegating to it broad authority to regulate the hours, wages and labor conditions of women and minors." (*Martinez v. Combs,* 49 Cal.4th 35, 54 (2010) (*Martinez*).) The Legislature also "propos[ed] to the voters a successful constitutional amendment confirming the Legislature's authority to proceed in that manner." (*Ibid.*) "The IWC's initial statutory duty under the 1913 act was to 'ascertain the wages paid, the hours and conditions of labor and employment in the various occupations, trades, and industries in which women and minors are employed in the State of California, and to make investigations into the comfort, health, safety and welfare of such women and minors.'" (*Martinez, supra*, 49 Cal.4th at p. 54.) "If, after investigation, the IWC determined that the wages paid to women and minors in any industry were 'inadequate to supply the cost of proper living, or the hours or conditions of labor [were] prejudicial to the health, morals, or welfare of the workers, the IWC was to convene a '"wage board"' of employers and employees." (*Id.* at pp. 54-55.) "Based on the wage board's report and recommendations, and following a public hearing, the commission was to issue wage orders fixing for each industry '[a] minimum wage to be paid to women and minors. . . and the standard conditions of labor [citation]." (*Id.* at p. 55.)

"Today 18 wage orders are in effect, 16 covering specific industries and occupations, one covering all employees not covered by an industry or occupation order, and a general minimum wage order amending all others to conform to the amount of the minimum wage currently set by statute." (*Martinez, supra*, 49 Cal.4th at p. 57, fns. omitted.) These Wage Orders "are legislative regulations specifying minimum requirements with respect to wages, hours and working conditions." (*Mendiola v. CPS Security Solutions, Inc.*, 60 Cal.4th 833, 838 (2015).) "The Legislature defunded the IWC in 2004, however its wage orders remain in effect." (*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1102, fn. 4 (2007).)

In *Martinez* (a decision issued six years after the IWC was defunded), the California Supreme Court set forth the judicial deference applied to the Wage Orders:

> The Legislature and the voters have repeatedly demanded the courts' deference to the IWC's authority and orders. In the original 1913 act, the Legislature narrowly confined the scope of judicial review of the commission's orders, making its findings of fact conclusive in the absence of fraud and declaring that the minimum wage fixed by the commission was "presumed to be reasonable and lawful." (Stats. 1913, ch. 324, § 12, p. 636; see now Lab. Code, §§ 1185 [IWC's orders "shall be valid and operative"], 1187 [IWC's findings of fact are conclusive in the absence of fraud].) At the same time, as noted, the Legislature enacted and successfully proposed to the voters a constitutional amendment approving the IWC's creation and providing that no part of the state Constitution would be construed as limiting the Legislature's authority in the matter. (Cal. Const., former article XX, section 17 1/2; see *ante*.) The ballot argument in favor of the measure explained the Assembly had proposed the amendment "to make sure that after the commission's work is done, its findings and rulings cannot be assailed and made useless by the state courts declaring this [the 1913] act unconstitutional." (See Ballot Pamp., *supra*, argument in favor of Assem.  Const. Amend. No. 90, at p. 29.).[4]  *Martinez,* at p. 60.

Contrary to Wal-Mart's unsupported contention, the legislation which enacted the IWC, Stats. 1913, ch. 324, did not <u>require</u> the IWC to amend or rescind portions of the Wage Orders. See, ECF No. 226 at p. 9.  Instead, the enacting legislation stated as follows stats 1913, ch. 324, §7:

> Whenever wages, or hours, or conditions of labor have been so made mandatory in any occupation, trade, or industry, the commission **may** at any time **in its discretion**, upon its motion or upon petition of either employers or employees, after a public hearing held upon the notice prescribed for an original hearing, rescind, alter or amend any prior order. [Emphasis added.]

In order to ensure the continuing validity of the IWC and its wage orders, the enabling statute of 1913 included a savings clause declaring that:

> If any section, subsection, or subdivision of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining

---

[4] Current Article XIV, section 1, of the California Constitution similarly confirms that: "[t]he Legislature may provide for minimum wages and for the general welfare of employees and for those purposes may confer on a commission legislative, executive, and judicial powers."  *Martinez,* 49 Cal. 4th at 54, FN 20.

portions of this act. The legislature hereby declares that it would have passed this act, and   each section, subsection, subdivision, sentence, clause, and phrase thereof, irrespective of the fact that any one or more sections, subsections, subdivisions, sentences, clauses, or phrases is declared unconstitutional.  Stats 1913, ch. 324, §18 (b).

A provision similar to that enacted in 1913 is found today at Cal. Labor Code §24 which states: "If any provision of this code, or the application thereof to any person or circumstances, is held invalid the remainder of the code, and the application of its provisions to other persons or circumstances, shall not be affected thereby."  See, Stats. 1937, c. 90, p.186, §24, as amended.

The premise of Wal-Mart's motion, that the Wage Orders violate the APA, stumbles right out of the gate since Wal-Mart fails to mention that, in 1949, the Legislature provided that the IWC's orders "**shall be valid and operative" and exempt from the Administrative Procedure Act** (Gov. Code, § 11340 et seq.). Lab. Code, § 1185; Stats. 1949, ch. 1454, § 12, p. 2538, as amended; *Martinez,* 49 Cal.4th at 60; *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 569 (1996) (emphasis added).    Thus, contrary to Wal-Mart's claim, the Wage Orders cannot be determined to be unconstitutional for violating the APA because the IWC and its Wage Orders have been specifically **exempted** from the requirements of the APA. See, ECF No. 226 at p. 13-18.

In furtherance of the intent of both the California Legislature and the California voters, in *Martinez*, 45 Cal. 4th at 61, the California Supreme Court further confirmed:

- [c]ourts have shown the IWC's wage orders extraordinary deference, both in upholding their validity and in enforcing their specific terms. Concerning the wage orders' validity, "[j]udicial authorities have repeatedly emphasized that in fulfilling its broad statutory mandate, the IWC engages in a quasi-legislative endeavor, a task which necessarily and properly requires the commission's exercise of a considerable degree of policy-making judgment and discretion." (*Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d 690, 702.)

- "Because of the quasi-legislative nature of the IWC's authority, the judiciary has recognized that its review of the commission's wage orders is properly circumscribed.... 'A reviewing court does not superimpose its own policy

judgment upon a quasi-legislative agency in the absence of an arbitrary decision....'" (*Ibid.,* quoting *Rivera v. Division of Industrial Welfare* 265 Cal.App.2d 576, 594 (1968).)

- "Moreover, past decisions ... teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." (*Industrial Welfare Com. v. Superior Court, supra,* at p. 702.)

Notably, §14(a) of Wage Order 7-2001 (Cal. Code Regs., tit. 8, §11070 -14(a)), the provision at issue in this litigation, has remained unchanged since 1976. See, *Kilby*, 63 Cal.4th at 13. In fact, the history of the Wage Order's seating requirements, discussed in *Kilby*, demonstrates that the IWC <u>strengthened</u> the suitable seating requirement through the years when it revised its Wage Orders by expanding its application from "work tables and machines" and demanding that it be applied to <u>all employees</u>. *Id.* at p. 11-13; IWC Wage Order 7 R (June 1, 1947) §17; Wage Order 7-76 (Oct. 18, 1976) §14(a), former Cal. Admin Code tit. 8 §1215-14.    Thus, prior to the defunding of the IWC in 2004, Wal-Mart had nearly three decades to petition the IWC to alter or amend the Wage Order's suitable seating requirement.  For reasons unknown, Wal-Mart failed to do so. Moreover, during the fourteen-year period following the defunding of the IWC in 2004, the California Supreme Court and appellate courts have repeatedly confirmed that the IWC's wage orders *remain in effect*. See, *Huntington Memorial Hospital v. Superior Court,* 131 Cal.App.4th 893, 902, fn. 2, (2005); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1102, (2007); *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1027 (2012); *Dynamex*, 2018 WL 1999120, at *27.

## IV.    THE SUITABLE SEATING REQUIREMENT DOES NOT VIOLATE THE CALIFORNIA APA

Wal-Mart's primary argument is that the Wage Order's suitable seating requirement is unconstitutional because it violates the California APA §§ 11340.6, 11350, and 11342.2.  See,

ECF No. 226 at p. 13-18.  This argument lacks merit because, as noted above, both the California legislature and the California Supreme Court have confirmed that **the IWC's orders "shall be valid and operative" and are "expressly exempted" from the Administrative Procedure Act (Gov. Code, § 11340 et seq.).** Lab. Code, § 1185; Stats. 1949, ch. 1454, § 12, p. 2538, as amended; *Martinez*, 49 Cal. 4th at 60-61 (emphasis added).  The provisions of the APA upon which Wal-Mart relies, §11342.2 and 11350 were added by Statutes 1979, c. 567 §1 and were operative on July 1, 1980. Section11340.6 was added by Stats. 1194, c. 1039, §5.  However, by this time, the Legislature had already declared that the IWC's orders were **exempt** from the APA.   See, Lab. Code, § 1185; Stats. 1949, ch. 1454, § 12, p. 2538, as amended.  Since the IWC's Wage Orders "shall be valid and operative" and are "expressly exempted" from the APA, the Wage Order's suitable seating requirement cannot be deemed unconstitutional for violating provisions that specifically do not apply to it.

Wal-Mart relies on *Bearden v. U.S. Borax, Inc.,* 138 Cal.App.4[th] 429, 435 (2006) for the proposition that "no regulation adopted is valid or effective unless consistent and not in conflict with the [agency's authorizing] statute and reasonably necessary to effectuate the purpose of the statute."  See, ECF No. 226 at p. 14:12-17. However, a closer review of *Bearden* reveals that the *Bearden* Court was referring to provisions of the APA §11342.1, **from which the IWC's Wage Orders have been expressly exempted**.  As a result, this citation does not assist Wal-Mart.

In *Bearden*, the California Court of Appeals did <u>not</u> hold that the IWC Wage Orders were unconstitutional, as Wal-Mart argues here.   Nor was that issue even addressed in *Bearden*.  Instead, in *Bearden*, the Court of Appeals addressed the issue of whether the IWC exceeded its authority in enacting §10(E) of Wage Order 16-2001, which created an <u>additional</u> exemption from Labor Code §512's meal period provisions for employees governed by collective bargaining

agreements. *Bearden,* 138 Cal.App.4th at 487.  The Court of Appeals determined that the IWC overstepped its bounds by creating additional exemptions from the meal period requirement beyond those provided by the Legislature.  *Id.* at 490.  Notably, in *Bearden,* the Court specifically stated that "we are not concerned in this case with the power of the IWC to amend or rescind its wage orders under section 1173."  *Id.*  Simply put, *Bearden* does not support Wal-Mart's claim that the suitable seating requirement, or any other provision of the Wage Order, is unconstitutional.

## V.    WAL-MART RETAINS THE ABILITY TO SEEK REDRESS FROM THE LEGISLATURE FOR THE REPEAL OR MODIFICATION OF THE SUITABLE SEATING REQUIREMENT

According to Wal-Mart, California's Wage Orders – one and all – must be deemed unconstitutional because, due to the defunding of the IWC in 2004, there is no avenue available to seek the repeal or modification of Wage Order regulations.  This argument fails miserably.  As noted recently by the California Supreme Court in *Dynamex,* when discussing the defunding of the IWC, "the Legislature, of course, retains the authority to re-fund the IWC or to revise any provisions of the current wage orders through the enactment of new legislation."  *Dynamex,* supra, at \*17.  Contrary to Wal-Mart's argument, it actually has (and has had for both the past nearly 9 years that this case has been pending and for many decades prior to 2004) the ability to petition the Legislature for the amendment or repeal of the suitable seating requirement.  Specifically, Wal-Mart retains – and has always retained – the right request the Legislature to: (1) re-fund the IWC so that Wal-Mart can petition the IWC for repeal or amendment from the Wage Order's suitable seating requirement; or (2) modify, amend or revise the Wage Order's suitable seating requirement through the enactment of new legislation.

Tellingly, Wal-Mart fails to cite to any authority to support its argument that due to the defunding of the IWC, the Wage Orders and labor laws are not being monitored by the California

Legislature.   Ironically, the case relied upon by Wal-Mart to support its misplaced arguments, *Bearden*, 138 Cal. App. 4th at 434, demonstrates that, despite defunding the IWC, the California Legislature has amended the California Labor Code on a number of occasions, and continues to oversee both the California Labor code as well as the IWC's wage orders.   In fact, the California Legislature has enacted numerous revisions to the California Labor Code without the involvement of the IWC.   See, for example, Labor Code §510 [restoring the 8 hour work day], §512[meal period requirements], §226.7[meal and rest period requirements]; and §1182.12[increases to the minimum wage].

Wal-Mart has had the ability to seek redress prior to the IWC being defunded in 2004. Wal-Mart has also had the ability to seek redress through the California Legislature regarding the suitable seating requirement for many decades.   In fact, Wal-Mart has had the option to do so even after the defunding of the IWC in 2004 and the filing of this action in 2009.   Wal-Mart blithely ignores the fact that it has always had an unfettered right to petition the Legislature.   In fact, Wal-Mart's "chicken little" motion fails to disclose whether or not it has, in fact, ever attempted to pursue legislative changes (either refunding the IWC or modifications to the Labor Code) since 2004.   The Court would be correct to be skeptical of Wal-Mart's claim that it may wish to do something that it has never attempted to do since the statute was enacted and/or since this lawsuit was filed – particularly where Wal-Mart's request comes five months before this matter is set for trial, in a case that has been pending for nearly 9 years.

A.    **Wal-Mart Also Retains The Right To Seek An Exemption From The Suitable Seating Requirement Directly Through The DLSE**

In addition to its right to either seek the re-funding of the IWC, or the repeal or modification of the suitable seating requirement from the California Legislature, Wal-Mart also has the power to seek **a specific exemption** from the suitable seating requirement from the agency

statutorily charged with the responsibility for interpreting and enforcing the Wage Order's requirements – the DLSE. See, Labor Code §61, 95, 98-98.7, 1193.5.   Specifically, §17 of Wage Order 7-2001 (Cal. Code Regs., tit. 8, §11070 -17), titled "EXEMPTIONS" provides as follows:

> If, in the opinion of the Division after due investigation, it is found that the enforcement of any provision contained in Section 7, Records; Section 12, Rest Periods; Section 13, Change Rooms and Resting Facilities; **Section 14, Seats**; Section 15, Temperature; or Section 16, Elevators; would not materially affect the welfare or comfort of employees and would work an undue hardship on the employer, exemption may be made at the discretion of the Division. Such exemptions shall be in writing to be effective and may be revoked after reasonable notice is given in writing. Application for exemption shall be made by the employer or by the employee and/or the employee's representative to the Division in writing. A copy of the application shall be posted at the place of employment at the time the application is filed with the Division. [Emphasis Added.]

Thus, contrary to Wal-Mart's argument, it has not been "powerless" to seek redress from the Wage Order's suitable seating requirement.  Not only could it have sought modification, repeal, amendment or re-funding of the IWC through the Legislature, it could also have requested a specific exemption to the suitable seating requirement through the DLSE.  In fact, the exemption form can be found at the DLSE's website at www.dir.ca.gov/dlse/DLSE104ExemptionforIWCOrder.pdf.  By this avenue, Wal-Mart has been free to both express its beliefs about the suitable seating requirement's impact upon it and other California retailers and provide the DLSE with newspaper articles to support its position.  Of course, Wal-Mart is also free to – and has – raised a myriad of arguments in this litigation to support its claim that the nature of the work does not reasonably permit the use of seats.  See, Cal. Labor Code §2699(e)(2) [allowing the court discretion to reduce penalties if the full amount would be unjust, arbitrary and oppressive, or confiscatory.]

## VI.    WAL-MART'S CONSTITUTIONAL ARGUMENTS FAIL

Wal-Mart also argues that the defunding of the IWC somehow violates both the United States Constitution as well as the California Constitution because it infringes Wal-Mart's right to petition for the redress of grievances. See, ECF No. 226 p. 18. This argument fails because, as noted above, Wal-Mart retains the right to petition (a) the California Legislature for either the enactment of new legislation relating to the suitable seating requirement, or for the re-funding of the IWC, and (b) the right to seek petition the DLSE for an exemption.

In a footnote, Wal-Mart argues that seeking relief from the California Legislature "is not a substitute for petitioning the IWC" because "[t]he Suitable Seating Requirement represents an exercise by the Executive Branch of quasi-legislative authority." See, ECF No. 226 at p. 19, FN 2. Notably, Wal-Mart fails to cite to any authority to support this argument. As discussed above in Section III, the IWC was created in 1913 when the California Legislature enacted the statutes of 1913. See, *Martinez*, 49 Cal.4[th] at 60-61. At that same time, the Legislature enacted and successfully proposed to the voters a constitutional amendment both approving the IWC's creation and "providing that no part of the state Constitution would be construed as limiting the Legislature's authority in the matter. *Id.;* Cal. Const., former article XX, section 17 1/2. These were not acts of the Executive branch, as Wal-Mart incorrectly suggests. Instead, these were acts by the voters and the *Legislative* Branch. As a result, Wal-Mart's argument that "forcing parties to petition the Legislature to amend or repeal regulations promulgated by the Executive..." misses the mark completely. Simply put, Wal-Mart has not been deprived of its right to petition for the redress of any grievances it may have.

Ironically, a mere two pages after Wal-Mart argues that "the Suitable Seating Requirement represents an exercise by the Executive Branch" Wal-Mart does a complete 180 and makes the inherently contradictory argument that "the current enforcement scheme for the IWC's wage

orders unduly infringes on the Executive" branch. Compare, ECF No. 226 p. 19, fn 2 "The suitable seating requirement represents an exercise by the Executive Branch" with ECF No. 226 p. 22 "the continued enforcement of the Suitable Seating Requirements … encroaches upon the Executive's authority under the California Constitution." Put simply, Wal-Mart can't have it both ways. In any event, as discussed below in Section V(D), Wal-Mart's structural violations argument is pure fiction.

### A. Wal-Mart Misconstrues Both The History And Applicability Of The Suitable Seating Requirement

Wal-Mart's argument that "recent enforcement actions have greatly expanded the application of the Suitable Seating requirement beyond its original purpose" by seeking "to apply the Suitable Seating requirement to retail employees" is both misleading and disingenuous. See, ECF No. 226 p. 19. Wal-Mart cites to *Garvey v. Kmart Corp.* in support of this claim. At the outset, in *Garvey v. Kmart Corp.,* 2012 WL 1231803, *2 (N.D. Cal. 2012)) the Court did <u>not</u> find that the suitable seating requirement was being expanded beyond its original purpose of covering "situations where the work is usually performed in a sitting position with machinery, tools or other equipment" as Wal-Mart suggests. See, ECF NO. 226 p. 19. In fact, the *Garvey* Court specifically <u>rejected</u> that argument while denying K-Mart's motion for Summary Judgment. *Id.* In doing so, the Court reasoned as follows:

> Kmart argues that these statements support its interpretation that Section 14(A) specifically excludes "retail salespersons." Kmart's interpretation is unpersuasive. There is no inconsistency between the above-quoted statements and the plain language of the Section 14. The agencies' statements do not carve out an exception for "retail salespersons." Instead, they merely note that in the late 1980s, when the statements were issued, the nature of the work for salespersons did not reasonably permit the use of seats *because* salespersons "have been expected to be in a position to greet customers, move freely throughout the store to answer questions and assist customers in their purchases." A quarter of a century later, the job description for "retail salespersons" may have changed and may not be uniform among all retailers today. Thus, there is no exception in Section 14 for employees labeled as "retail salespersons." The plain language of the statute, "all working employees ... when the nature of the work reasonably permits," controls.

This Court would be well within its right to admonish Wal-Mart for its pattern of misrepresenting the holdings of *Garvey* and other cases in order to suit its arguments. Wal-Mart's specious claim that the requirements of Wage Order 7 were not intended to apply to retail employees is further belied by the language of the Wage Order itself, as well as the California Supreme Court's decision in *Kilby*. Wage Order 7-2001 §2(H) defines "Mercantile Industry" as: "any industry, business, or establishment operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail; or for the purpose of renting goods or commodities." See, Cal. Code Regs., tit. 8, §11070-§2(H). This definition necessarily applies to and covers "retail employees." Further, as noted in *Kilby*, 63 Cal.4th at 11, the IWC orders covering the mercantile industry have included suitable seating provisions since as early as 1919. See, IWC Order No. 13, Mercantile Establishments (effective Feb. 17, 1920) §23. In fact, the suitable seating provision at issue in this case, §14(a), applicable to the mercantile industry, has remained unchanged since 1976. *Kilby*, 63 Cal.4th at 13; former Cal. Admin. Code. Tit 8 §11215-14(a). Thus, contrary to Wal-Mart's claim, the IWC orders governing the mercantile industry applicable to "retail employees" have included suitable seating requirements in one form or another for nearly a century now.

**B.    The New York Times Article Is Both Inadmissible And Irrelevant**

Wal-Mart's reliance on a newspaper article published in the New York Times does not somehow invalidate the Wage Order's suitable seating requirement. See, ECF No. 226 pp. 12, 15 and 19. Although Wal-Mart provides a link to this article, the article is neither attached to the motion itself, nor submitted with either separate authentication or a request for judicial notice.[5]

---

[5]    No request for judicial notice was included with Wal-Mart's motion. Judicial notice would not apply to the NYT article in any event because judicial notice can only be taken of "adjudicative facts" (e.g., court records, pleadings, etc.) and other facts not subject to

Plaintiffs object to this evidence based on both FRE 802 and 805 (hearsay and multiple hearsay) and FRE 901 (failure to authenticate or identify evidence). Further undermining any possible relevance of this article is that Plaintiffs have never suggested that Wal-Mart cashiers should be forced to use a seat, or that they would actually use a seat continuously for 9 to 10 hours a day, as this Court is well aware. See, ECF No. 92 p. 10:19-11:2.

By citing to this article, it appears that Wal-Mart is asking this Court to superimpose its own beliefs over the judgment of the IWC, which is strictly prohibited. *Martinez*, 49 Cal.4th at 534["Because of the quasi-legislative nature of the IWC's authority, the judiciary has recognized that its review of the commission's wage orders is properly circumscribed… 'A reviewing court does not superimpose its own policy judgment upon a quasi-legislative agency in the absence of an arbitrary decision.'"]   Here again, the proper method for Wal-Mart to seek the repeal or modification of the suitable seating requirement is through the California Legislature or though an exemption issued by the DLSE.  Of course, Wal-Mart can also avoid the requirements of the Wage Order by proving to this Court that the nature of cashier work does not reasonably permit the use of a seat.

### C.  Wal-Mart's Due Process Rights Have Not Been Violated

Wal-Mart's due process arguments are based on the faulty premise that: (1) the Wage Orders violate the California APA; and (2) Wal-Mart has "been deprived of any opportunity to petition the IWC or any other agency regarding the Suitable Seating Requirement." See, ECF No. 226 p. 21-22.  For the reasons stated in Sections III and IV, above, both of these arguments fail

reasonable dispute and either "generally known" in the community or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." (FRE 201(b)); see *Lee v. City of Los Angeles* 250 F3d 668, 688-690 (9th Cir. 2001) [discussing what may and may not be judicially noticed (overruled on other grounds by *Galbraith v. County of Santa Clara* 307 F3d 1119, 1125-1126 (9th Cir. 2001))].

because: (1) The APA does not apply to the IWC's Wage orders and (2) Wal-Mart retains the right to seek redress from the suitable seating regulation either through the California Legislature or the DLSE.

### D.  The Current Enforcement Scheme Does Not Unduly Infringe Upon The Authority Of The Executive

Wal-Mart's argument that the defunding of the IWC encroaches on the Governor's authority under the California Constitution is, at best, difficult to follow.  In making this argument Wal-Mart relies on a partial out-of–context quotation from *Carmel Valley Fire Protection Dist. v. State*, 25 Cal.4th 287, 297 (2001). See, ECF No. 226 p. 23.  The full text of the quote from that opinion reads as follows: "[c]ourts have not hesitated to strike down provisions of law that either accrete to a single Branch powers more appropriately diffused among separate Branches or that undermine the authority and independence of one or another coordinate Branch."  In the next sentence, the Court confirmed that, "The doctrine, however, recognizes that the three branches of government are interdependent, and it permits actions of one branch that may 'significantly affect those of another branch.'" *Id.* at 298. In *Carmel Valley,* the California Supreme Court held that the Legislature did <u>not</u> undermine the authority and independence of another coordinate Branch – the Executive – as Wal-Mart suggests.  Instead, the California Supreme Court confirmed the Legislature's power over the purse to appropriate funds in the Budget as it sees fit and that "The power of appropriation includes the power to withhold appropriations. Neither an executive administrative agency nor a court has the power to require the Legislature to appropriate money." *Id.* at 300.

Contrary to Wal-Mart's argument, by defunding the IWC the Legislature did not improperly strip power from the Governor.  It is true that Labor Code §70 provided the Governor, with the consent of the senate, to appoint members of the IWC.  However, Labor Code §57 also

allows the Governor to appoint the chief officer presiding over the DLSE, the entity charged with the interpretation and enforcement of the IWC wage orders. *Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1093 (E.D. Cal. 2009) [confirming that the Labor Code empowers the DLSE to interpret and enforce IWC Orders].  As noted above, despite the defunding of the IWC, the Legislature, the Department of Industrial Relations, the LWDA, the Labor Commissioner's office and the DLSE all remain operative.  Thus, by defunding the IWC the California Legislature did not encroach upon the Executive's authority under the California Constitution as the Governor still retains the power to appoint members of the DLSE who both interpret and enforce the IWC orders.

## VII.   WAL-MART'S PROPOSED REMEDY OF DECLARING THE WAGE ORDER UNCONSTITUTIONAL IS NOT SUPPORTED

Other than citing to provisions of the APA, from which the IWC Wage Orders are specifically exempted, Wal-Mart fails to cite to any authority to support a remedy that the Wage Order's suitable seating requirement should be deemed unconstitutional.  Wal-Mart has <u>not</u> argued that the suitable seating provision included in the Wage Order is either inconsistent with, or in conflict with, the IWC's authorizing statute -- Stats. 1913, ch. 324.  Nor could it since, as discussed above in Section III, above, the IWC's authorizing statute did not <u>require</u> the IWC to alter or amend its wage orders. See, 1913, ch. 324, §7.  Nor has Wal-Mart argued that the IWC lacked the authority to either enact the suitable seating provision in the first instance or amend §14(a)'s suitable seating requirements. See, *Kilby* at 11[discussing the changes made to the suitable seating requirement by the IWC over the years]; *California Labor Fed'n, AFL-CIO v. Indus. Welfare Comm'n*, 63 Cal. App. 4th 982, 993–94 (1998) [confirming that the IWC "obviously has jurisdiction under both the Constitution and statute to promulgate new rules on matters within its jurisdiction, including amendments to rules already promulgated."]

Instead, Wal-Mart argues that all IWC Wage Orders should be declared unconstitutional because, since the IWC has been defunded, the IWC no longer has the ability to review and amend its Wage Orders. ECF No. 226 at p. 16. However, the section of the Labor Code that Wal-Mart contends can no longer be complied with, the current version of Labor Code §1173, does not require the IWC to amend or rescind its Wage Orders. To the contrary, the relevant portion of §1173 merely states that the IWC "**may**, upon its own motion or upon petition, amend or rescind any order or portion of any order..." *Id.* [emphasis added]. Pursuant to Labor Code §15, "shall" is mandatory and "may" is permissive. As a result, the Legislature never required the IWC to amend or rescind any portions of its Wage Orders, although it granted the authority to do so at its discretion.

Moreover, the remedy sought by Wal-Mart – deeming the entirety of the Wage Orders unconstitutional – is in direct conflict with both the legislation enacting the IWC (Stats 1913, ch. 324, §18 (b)), discussed above in Section III, as well as Labor Code §24. While Plaintiffs strongly believe there is no basis for this motion, it is worth repeating that where one has substantiated a "beef" with the State of California then the proper remedy is not to attack the constitutionality of the regulatory scheme, but rather to seek a writ of mandamus against the State of California and/or its agencies. See, California Code of Civil Procedure §1085; *San Francisco v. Superior Court of San Francisco*, 94 Cal. App. 318, 320 (1928); *Jenkins v. Knight* 46 Cal.2d 220, 222 (1956).

Dated May 31, 2018

Respectfully Submitted,
Jones Law Firm


/s/ Charles A. Jones
Charles A. Jones
Class Counsel

**CERTIFICATE OF SERVICE**

I, the undersigned, declare as follows:

I am employed in the County of Washoe, State of Nevada.

I am over the age of eighteen (18) years and not a party to the within action; my business address is 9585 Prototype Court, Suite B, Reno Nevada, 89521.

On May 31, 2018, I served the foregoing documents describes as:

1.　　PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS.

on all interested parties in this action addressed to the addressee as follows:

Anthony D. Sbardellati
Lisa Yumi Mitchell
Steven C. Gonzalez
Particia A. Kinaga
Alexander Humphrey Hu
LTL ATTORNEYS LLP
300 S. Grand Ave., Floor 14
Los Angeles, CA 90071
Telephone: 1-213-612-8900
Facsimile: 1-213-612-3773

Gloria Franke Shaw
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: 1-310-788-4400
Facsimile:_ 1-310-788-4471

Andrew G. Klevorn
Chad J. Doellinger
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
Telephone: 1-312-902-5200
Facsimile: 1-312-902-1061

__X__ By ECF (Electronic Case Filing). I e-filed the above-detailed document utilizing the United States District Court, Northern District of California's mandated ECF service on May 31, 2018.

I declare under penalty of perjury under the laws of the State of Nevada that the above is true and correct.

Executed on May 31, 2018, at Reno, Nevada.

Nikki Nevarez