1
2
3
4           UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6                 SAN JOSE DIVISION
7

8    NISHA BROWN, et al.,                    Case No.  09-cv-03339-EJD
              Plaintiffs,
9                                            **ORDER DENYING MOTION FOR
     v.                                      JUDGMENT ON THE PLEADINGS;
10                                           DENYING CROSS-MOTIONS FOR
                                             SUMMARY JUDGMENT; GRANTING
11   WAL-MART STORE, INC.,                   IN PART AND DENYING IN PART
              Defendant.                     MOTION FOR SANCTIONS**
12
13                                           Re: Dkt. Nos. 192, 226, 239, 245

14          In this case, a certified class of California cashiers led by Plaintiffs Kathy Williamson and

15   Nisha Brown (collectively, "Plaintiffs") sue their employer, Defendant Wal-Mart Store, Inc.

16   ("Wal-Mart"), for failing to provide them with seats while they work at checkout lanes.  Currently

17   before the Court are a slew of motions—Wal-Mart's motion for judgment on the pleadings, the

     parties' cross-motions for summary judgment, and Plaintiffs' motion for sanctions.  For the
18
     reasons provided below and stated at the July 12, 2018 hearing, the Court DENIES Wal-Mart's
19
     motion for judgment on the pleadings, DENIES the parties' cross-motions for summary judgment,
20
     and GRANTS in part and DENIES in part Plaintiffs' motion for sanctions.
21
     **I.      BACKGROUND**
22
            This class action, originally filed in California Superior Court in June 2009, was removed
23
     to federal court by Wal-Mart in July 2009.  Dkt. No. 1.  Plaintiffs allege only one cause of
24
     action—namely, that Wal-Mart has violated § 14(A) of California Wage Order 7–2001 (the
25
     "Wage Order") by failing to provide seats for its cashier employees.  Id.  In relevant part, the
26

27   Case No.: 09-cv-03339-EJD
     ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
28   MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
     MOTION FOR SANCTIONS
                                                1

Wage Order provides: "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats." Wage Order 7–2001 § 14(A). Plaintiffs allege that Wal-Mart's violation of the Wage Order in turn constitutes a violation of California Labor Code § 1198, thus giving rise to a private right of action and penalties under the California Private Attorney General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, *et seq.* The heart of the dispute before this Court centers on whether Wal-Mart has violated the Wage Order.

In August 2012, this Court certified a class of "[a]ll persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the position of Cashier." Dkt. No. 110 at 14. Wal-Mart appealed that decision to the Ninth Circuit, and the Ninth Circuit affirmed the grant of class certification. See Brown v. Wal–Mart Stores, Inc., 651 F. App'x 672 (9th Cir. 2016). Before this Court, Wal-Mart moved to decertify the class, but that request was denied. Dkt. No. 230. Additionally, in April 2018, the Court granted in part Plaintiffs' motion for sanctions and excluded certain evidence that Wal-Mart had not timely disclosed during discovery. Dkt. No. 231.

Presently before the Court are three sets of motions. First, on April 25, 2018, Wal-Mart moved for judgment on the pleadings, arguing that (among other things) the Wage Order violates its statutory and constitutional rights to petition. Dkt. No. 226 ("MJP Mot."). Plaintiffs filed an opposition on May 31, 2018, Dkt. No. 238 ("MJP Opp."), and Wal-Mart filed a reply on June 14, 2018, Dkt. No. 246 ("MJP Reply").

Second, back on January 2, 2018, Plaintiffs filed a motion for summary judgment contending that the evidence in the record compels a judgment that Wal-Mart has violated the Wage Order. Dkt. No. 192 ("SJ Mot."). On April 26, 2018, the Court issued an order permitting Wal-Mart to file a cross-motion for summary judgment. Dkt. No. 229. On May 31, 2018, Wal-Mart filed its cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment. Dkt. No. 239 ("SJ Cross-Mot."). Plaintiffs filed a combined opposition and

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

2

reply on June 21, 2018. Dkt. No. 248 ("SJ Opp."). Wal-Mart filed a reply on June 28, 2018. Dkt. No. 254 ("SJ Reply").

Third, on June 8, 2018, Plaintiffs filed a motion for sanctions against Wal-Mart on the basis that Wal-Mart had failed to comply with a discovery order entered in the case. Dkt. No. 245 ("Sanctions Mot."). Wal-Mart filed an opposition on June 22, 2018, Dkt. No. 251 ("Sanctions Opp."), and Plaintiffs filed a reply on June 29, 2018, Dkt. No. 256 ("Sanctions Reply").

The Court held a hearing on these three scattered sets of motions on July 12, 2018. Dkt. No. 262. The Court herein addresses Wal-Mart's motion for judgment on the pleadings, the parties' cross-motions for summary judgment, and Plaintiffs' motion for sanctions.

## II.    LEGAL STANDARD

### A.    Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings. Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012).

The standard for a Rule 12(c) motion is essentially the same as that for a Rule 12(b)(6) motion. Id. Thus, a court must "accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004) (alterations and citation omitted). A Rule 12(c) motion for judgment on the pleadings may be granted if, after assessing the complaint and matters for which judicial notice is proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief." Morgan v. County of Yolo, 436 F. Supp. 2d 1152, 1155 (E.D. Cal. 2006).

## B. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." <u>Samuels v. Holland Am. Line–USA Inc.</u>, 656 F.3d 948, 952 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). The Court "must draw all reasonable inferences in favor of the nonmoving party." <u>Id.</u> "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Id.</u> (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986)).

## C. Sanctions

Federal Rule of Civil Procedure 37(b)(2)(A) empowers a court to sanction a party for "fail[ing] to obey an order to provide or permit discovery." The Ninth Circuit has read the term "order" broadly to encompass any order relating to discovery. <u>Sali v. Corona Reg'l Med. Ctr.</u>, 884 F.3d 1218, 1222 (9th Cir. 2018). Where a party has violated such an order, the court "may issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). The Court may also award reasonable expenses. Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.").

Similarly, Federal Rule of Civil Procedure 26(e)(1)(B) requires parties to supplement their prior interrogatory responses "as ordered by the court." Failure to comply with Rule 26(e) is sanctionable under Rule 37(c)(1). That subsection provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

4

justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule also lists other sanctions that a court may impose in addition to or in lieu of an exclusion sanction. See Fed. R. Civ. P. 37(c)(1)(A)–(C). Once a violation of Rule 37(c)(1) is shown, the non-compliant party seeking to introduce the information has the burden to demonstrate that the "failure to disclose the required information is substantially justified or harmless." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106–07 (9th Cir. 2001).

## III.    DISCUSSION

Three sets of motions have been filed in this case. First, Wal-Mart's motion for judgment on the pleadings seeks a declaration from the Court that the Wage Order is invalid and unenforceable. Second, both parties move for summary judgment, submitting that the evidence in the record compels a judgment in their favor. Third, in a motion for sanctions, Plaintiffs contend that Wal-Mart has failed to honor its discovery obligations. The Court addresses each in turn.

### A.    Wal-Mart's Motion for Judgment on the Pleadings

Wal-Mart's motion for judgment on the pleadings seeks to terminate the entire litigation on the ground that the Wage Order deprives Wal-Mart of statutory and constitutional rights. See MJP Mot. On the statutory front, Wal-Mart argues that the Wage Order is invalid because it conflicts with the California Labor Code and the California Administrative Procedure Act ("APA"). Id. at 7–11. On the constitutional front, Wal-Mart contends that enforcement of the Wage Order is unconstitutional because it violates the right to petition the government for redress of grievances under the federal and California Constitutions, the right to procedural due process under the federal and California Constitutions, and the authority of the Executive under the California Constitution. Id. at 12–19. The Court begins with a short synopsis of the pertinent history of the Wage Order, then addresses Wal-Mart's statutory and constitutional arguments.

#### 1.    Brief History of the Wage Order

The Court first sets the stage of how the current version of the Wage Order came to be. In 1913, the California Legislature established a five-member state agency, the Industrial Welfare

Commission ("IWC"), to regulate wages, hours, and working conditions. See Indus. Welfare Comm'n v. Superior Court, 613 P.2d 579, 583 (Cal. 1980). The Legislature specifically "propos[ed] to the voters a successful constitutional amendment confirming the Legislature's authority to proceed in that manner." Martinez v. Combs, 231 P.3d 259, 270 (Cal. 2010). Pursuant to its broad statutory mandate, the IWC had the power to investigate industries and issue legislative enactments (called wage orders) in the realm of labor. Brinker Rest. Corp. v. Superior Court, 273 P.3d 513, 527 (Cal. 2012). Today, wage and hour claims in California are governed by the provisions of the Labor Code enacted by the Legislature and the eighteen wage orders adopted by the IWC. Mendiola v. CPS Sec. Sols., Inc., 340 P.3d 355, 358 (Cal. 2015).

The first version of the Wage Order was enacted by the Legislature in 1911. Kilby v. CVS Pharm., Inc., 368 P.3d 554, 559 (Cal. 2016). It required that employers in the mercantile industry "provide suitable seats for all female employees" and allow them "to use such seats when they are not engaged in the active duties of their employment." Id. (citation omitted). In 1919, the IWC adopted a detailed wage order that applied to the mercantile industry and included some language—"the nature of the work permits"—that eventually formed the basis for the current version. Id. at 560. In 1931, the IWC replaced that order with a substantially similar order that applied to all industries. Id.

As time went on, the wage order was revised closer and closer to the version that exists today. The 1947, 1952, 1957, and 1963 versions identically read: "Suitable seats shall be provided for all female employees. When the nature of the work requires standing, an adequate number of said seats shall be placed adjacent to the work area and employees shall be permitted to use such seats when not engaged in the active duties of their employment." Id. The 1968 version clarified that female employees were entitled to suitable seats when "the nature of the work permits." Id. (citation omitted). In 1972 and 1973, the Legislature amended the Labor Code to authorize the IWC to regulate wages, hours, and working conditions for all employees, men and women alike. Indus. Welfare Comm'n, 613 P.2d at 584. Then, in 1976, the IWC modified the relevant language

United States District Court
Northern District of California

in the relevant wage order to the form that it occupies today—namely, seating was to be made available "when the nature of the work reasonably permits the use of seats." Kilby, 368 P.3d at 561. Other modifications were later made to the wage order but the core language quoted above remained the same. See id.

In 2004, the Legislature took an action that is central to the instant dispute. Specifically, the Legislature defunded the IWC. Murphy v. Kenneth Cole Prods., Inc., 155 P.3d 284, 289 n.4 (Cal. 2007). However, the Legislature continued to fund the administrative agency authorized to enforce California's labor laws—the Division of Labor Standards Enforcement ("DLSE") in the Department of Industrial Relations ("DIR")—and left the IWC's wage orders intact. Id. Several years after defunding the IWC, the Legislature revised some of the IWC's wage orders by legislation and granted the DIR authority to amend those portions of the wage orders. Cal. Lab. Code §§ 1182.12–.13. Nevertheless, under the statute, the DIR has no power to amend the remainder of the IWC's wage orders (including the Wage Order), id. § 1182.13(b), which "remain in effect" to this date. Murphy, 155 P.3d at 289. But as the California Supreme Court recently observed, "[t]he Legislature, of course, retains the authority to re-fund the IWC or to revise any provisions of the current wage orders through the enactment of new legislation." Dynamex Operations W., Inc. v. Superior Court, 416 P.3d 1, 21 n.14 (Cal. 2018). With this background in mind, the Court turns to Wal-Mart's statutory and constitutional arguments.

### 2. Statutory Arguments

Wal-Mart claims that the Wage Order contravenes both the California Labor Code and the California APA. Neither argument is persuasive.

### a. California Labor Code

Wal-Mart first seeks to hold the Wage Order invalid based on the IWC's failure to comply with its authorizing statute. Under California law, an administrative agency may not "exceed the scope of authority conferred on the agency by the Legislature." Bearden v. U.S. Borax, Inc., 41 Cal. Rptr. 3d 482, 487 (Ct. App. 2006); see also Cal. Gov't Code § 11342.2 ("Whenever by the

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

United States District Court
Northern District of California

express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute."). For this reason, "a regulation which impairs the scope of a statute must be declared void." Bearden, 41 Cal. Rptr. 3d at 487.

The IWC's statutory mandate is contained in California Labor Code § 1173. That section provides that "[i]t is the continuing duty of the Industrial Welfare Commission . . . to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees." Id. Furthermore, the IWC "may, upon its own motion or upon petition, amend or rescind any order or portion of any order." Id. Relatedly, § 1176.1 allows "[a]ny interested party [to] petition the [IWC] requesting the adoption, amendment, or repeal of a regulation." Wal-Mart contends that the Wage Order is invalid because the defunct IWC can no longer comply with these statutory duties. Wal-Mart is incorrect.

Wal-Mart does not contest that, at the time that the IWC adopted the operative language of the Wage Order in 1976, the agency was fulfilling its "continuing duty" to investigate employee welfare and ascertain labor conditions. Indeed, the IWC issued versions of the relevant seating provision in the years 1947, 1952, 1957, 1963, 1976, and 1980. Nor does Wal-Mart contend that the IWC acted outside its authority in adopting the Wage Order or that the content of the Wage Order conflicts with § 1173 or § 1176.1 of the Labor Code. These concessions would seem to end the matter because the relevant question is whether "the IWC exceeded its authority." Bearden, 41 Cal. Rptr. 3d at 488; see also Cal. Gov't Code § 11342.2 (asking whether the regulation is "consistent and not in conflict with the [authorizing] statute").

However, Wal-Mart says that the Wage Order must be declared invalid because the IWC's defunded status prevents the agency from complying with its "continuing duty" under the Labor Code and from entertaining petitions to modify its regulations. Wal-Mart cites no statutory

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

authority or case law supporting its view. Indeed, Wal-Mart's argument would have the effect of invalidating not only the Wage Order, but the entirety of the wage orders issued by the IWC. Such a result would contravene the California courts' recognition that the IWC's wage orders remain part of California's wage and hour scheme. Mendiola, 340 P.3d at 358. Although Wal-Mart suggests that an agency should continually reevaluate societal understanding of and scientific developments in the area of employee welfare, the Legislature has expressly set up the current system, wherein the DIR does not have the authority to change the Wage Order. Cal. Lab. Code § 1182.13(b). The Court will not override that legislative judgment, and the Legislature remains free to change it. See Dynamex, 416 P.3d at 21 n.14 (noting that the Legislature may "revise any provisions of the current wage orders through the enactment of new legislation").

The Court makes one additional point. Even if the IWC were still operational today, it would have no obligation to change its wage orders pursuant to its duty to continuously assess employment conditions or receive petitions requesting changes to the regulations. The operative statute provides that the IWC "*may*, upon its own motion or upon petition, amend or rescind any order or portion of any order." Cal. Lab. Code § 1173 (emphasis added). It is a well-embedded principle that the word "may" is ordinarily deemed permissive, rather than mandatory. Cal. Corr. Peace Officers Ass'n v. State Pers. Bd., 899 P.2d 79, 85 (Cal. 1995). In fact, the California Labor Code itself explicitly recognizes this rule. See Cal. Lab. Code § 15 ("'Shall' is mandatory and 'may' is permissive."). That the IWC would have discretion, rather than direction, to amend or rescind the Wage Order further weakens Wal-Mart's position. For all of these reasons, the Court concludes that the Wage Order does not violate Wal-Mart's identified sections of the California Labor Code.

### b.    California APA

Wal-Mart poses a separate, yet similar, conflict between the Wage Order and the California APA. Under the California APA, "any interested person may petition a state agency requesting the adoption, amendment, or repeal of a regulation" unless "the right to petition for

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
MOTION FOR SANCTIONS

adoption of a regulation is restricted by statute to a designated group or where the form of

procedure for such a petition is otherwise prescribed by statute." Cal. Gov't Code § 11340.6. A

party qualifies as an "interested person" if the party "is or may well be impacted by a challenged

regulation." Envtl. Prot. Info. Ctr. v. Dep't of Forestry & Fire Prot., 50 Cal. Rptr. 2d 892, 896 (Ct.

App. 1996). The California APA, in turn, provides that a regulation "may be declared to be

invalid for a substantial failure to comply with" the California APA. Cal. Gov't Code § 11350(a).

Even assuming that these provisions of the California APA apply here,[1] the Wage Order is

not invalid for many of the same reasons stated in the previous section. Unsurprisingly, Wal-Mart

has failed to cite any authority finding that all of a defunded agency's regulations are

automatically invalidated even if they were issued in compliance with the California APA.

Fatally, Wal-Mart makes no argument that the IWC failed to follow any APA-mandated procedure

at the time that it adopted the Wage Order. See id. (noting that declaring a regulation invalid

requires "a substantial failure to comply with" the California APA). Wal-Mart had the option to

file a petition with the IWC from the adoption of the Wage Order in 1976 to the IWC's defunding

in 2004. Under the current scheme established by the Legislature, Wal-Mart has different options.

Wal-Mart could ask the Legislature to make a legislative change or to refund the IWC. Dynamex,

416 P.3d at 21 n.14. Additionally, although DIR cannot amend the Wage Order, Cal. Lab. Code

§ 1182.13(b), DLSE may grant Wal-Mart an exemption from enforcement, see Wage Order 7–

2001 § 17. Wal-Mart attempts to override these legislative judgments even though the statute that

Wal-Mart relies on expressly permits statutory proscription of the right to petition. See Cal. Gov't

Code § 11340.6 (providing caveats where "the right to petition for adoption of a regulation is

restricted by statute to a designated group or where the form of procedure for such a petition is

---

[1] Plaintiffs contend that the Wage Order is exempt from the California APA under California
Labor Code § 1185 and Martinez, 231 P.3d at 275. The Court need not address this issue.

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
MOTION FOR SANCTIONS

1  otherwise prescribed by statute"). Like its claim under the California Labor Code, Wal-Mart's

2  claim under the California APA fails.

3  ### 3. Constitutional Arguments

4  With no remaining statutory arguments, Wal-Mart advances arguments under the federal

5  and California Constitutions. Specifically, Wal-Mart contends that enforcement of the Wage

6  Order is unconstitutional because it violates the right to petition the government for redress of

7  grievances under the federal and California Constitutions, the right to procedural due process

8  under the federal and California Constitutions, and the authority of the Executive under the

9  California Constitution. MJP Mot. at 12–19. The Court addresses each of these arguments below.

10  ### a. Right to Petition

11  Wal-Mart first challenges the Wage Order under the Petition Clauses of the federal and

12  California Constitutions. Id. at 12–14. The First Amendment to the U.S. Constitution prevents

13  the federal government and the States (through the Fourteenth Amendment) from abridging "the

14  right of the people . . . to petition the Government for a redress of grievances." U.S. Const.

15  amend. I; see also Edwards v. South Carolina, 372 U.S. 229, 235 (1963) (noting that the right to

16  petition has been incorporated against the States). The Petition Clause is both physically and

17  doctrinally connected to the Free Speech Clause of the First Amendment. See Borough of Duryea,

18  Pa. v. Guarnieri, 564 U.S. 379, 388 (2011); McDonald v. Smith, 472 U.S. 479, 482 (1985).

19  Likewise, the California Constitution grants "[t]he people . . . the right to . . . petition government

20  for redress of grievances." Cal. Const. art. I, § 3(a).

21  The U.S. Supreme Court "has recognized the 'right to petition as one of the most precious

22  of the liberties safeguarded by the Bill of Rights.'" Lozman v. City of Riviera Beach, Fla., 138 S.

23  Ct. 1945, 1954–55 (2018) (quoting BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524 (2002)).

24  One aspect is "the right of access to courts for redress of wrongs." Sure-Tan, Inc. v. NLRB, 467

25  U.S. 883, 896–97 (1984). However, the right to petition applies with equal force to a person's

26  right to seek redress from all branches of government. See Cal. Motor Transport Co. v. Trucking

27  Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART

28  MOTION FOR SANCTIONS

Unlimited, 404 U.S. 508, 510 (1972). Thus, the right to petition has been held to "protect[] the right of corporations to petition legislative and administrative bodies." Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 355 (2010) (quoting First Nat'l Bank of Bos. v. Bellotti, 435 U.S. 765, 792 n.31 (1978)). California courts have described the state constitutional right to petition in similar terms. The right encompasses "the right to complain about and complain to the government." Chorn v. Workers' Comp. Appeals Bd., 200 Cal. Rptr. 3d 74, 86 (Ct. App. 2016). And the right includes "the right to petition the judicial branch for resolution of legal disputes" as well as "the right to petition the executive or legislative branches directly." Vargas v. City of Salinas, 134 Cal. Rptr. 3d 244, 253 (Ct. App. 2011).

In this case, Wal-Mart contends that the continued enforcement of the Wage Order violates its federal and state rights to petition because Wal-Mart cannot seek recourse from the now-defunct IWC. MJP Mot. at 12. As a preliminary matter, it is important to note the scope of Wal-Mart's challenge. Wal-Mart does not suggest (nor could it) that the Wage Order itself imposes any burden on Wal-Mart's ability to petition. Indeed, the Wage Order sets a standard for when employers must provide seats for their employees but does not circumscribe the right to petition a branch of the government. Thus, Wal-Mart's true focus is on the California Legislature's decision to defund the IWC. At bottom, Wal-Mart contends that the Legislature acted unconstitutionally when it shut down one narrow avenue for attacking the Wage Order. The Court disagrees.

At present, Wal-Mart retains the ability to petition all departments of the government. See BE & K Const. Co., 536 U.S. at 525. First, as Wal-Mart acknowledges, MJP Mot. at 12, there is no constraint on its ability to challenge compliance with the Wage Order in litigation. Wal-Mart has shown no barrier to its access to the courts, where it can file or defend against a lawsuit under the Wage Order. Both activities have been held to be protected petitioning activity. See Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1184 (9th Cir. 2005) (noting that, like affirmative pleadings, defensive pleadings are subject to the Petitions Clause "because asking a court to deny one's opponent's petition is also a form of petition"); see also Chambers v. Balt. & O.R. Co., 207

U.S. 142, 148 (1907) ("The right to sue and defend in the courts is the alternative of force."). To that point, Wal-Mart has vigorously opposed Plaintiffs at every turn in the instant suit. Thus, petitioning the judiciary is an open and available route.

Second, Wal-Mart could seek relief from the California Legislature. Specifically, Wal-Mart could ask the Legislature to modify the Wage Order through legislation or to reinstate the IWC, as the California Supreme Court recently corroborated. See Dynamex, 416 P.3d at 21 n.14 ("The Legislature, of course, retains the authority to re-fund the IWC or to revise any provisions of the current wage orders through the enactment of new legislation."). Wal-Mart recognizes this option as a theoretical possibility, MJP Mot. at 13 n.2 (writing that "Wal-Mart also could theoretically seek relief from the California Legislature"), but chastises this approach as an imperfect alternative to petitioning the IWC. Specifically, Wal-Mart worries that the IWC's regulations have been elevated to the status of laws without the attendant accountability associated with the legislative process. Id. But Wal-Mart fails to realize that the IWC's constitutionally authorized adoption of regulations was legislative in nature. See Indus. Welfare Comm'n, 613 P.2d at 584 ("[T]he IWC engages in a quasi-legislative endeavor, a task which necessarily and properly requires the commission's exercise of a considerable degree of policy-making judgment and discretion."). And affirmative actions by the Legislature have left the Wage Order in place while making changes to certain other wage orders. Cal. Lab. Code §§ 1182.12–.13. Indeed, the Legislature explicitly conferred on the DIR the authority to "amend and republish [some] wage orders" but withheld the authority to "make [any] other changes to the wage orders of the [IWC] that are in existence on [January 1, 2007]." Id. § 1182.13(b). In this way, the Legislature remains accountable for the Wage Order and might be persuaded to update that order if presented with changed circumstances in a petition from a private party. See Guarnieri, 564 U.S. at 388 (explaining that "[t]he right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives").

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

13

1    Third, and finally, Wal-Mart has had the opportunity to pursue relief before an executive

2    agency.  Before the IWC's defunding in 2004, Wal-Mart had the ability to petition that agency for

3    the repeal or modification of the Wage Order.  Currently, Wal-Mart may request a specific

4    exemption from the Wage Order with the DLSE, the agency statutorily charged with the

5    responsibility of interpreting and enforcing the Wage Order's requirements.  See Cal. Lab. Code

6    §§ 61, 95(a), 1193.5.  Section 17 of the Wage Order provides in relevant part:

7        If, in the opinion of the [DLSE] after due investigation, it is found that the
         enforcement of any provision contained in . . . Section 14, Seats . . . would not
8        materially affect the welfare or comfort of employees and would not work an
         undue hardship on the employer, exemption may be made at the discretion of the
9        [DLSE].  . . .  Application for exemption shall be made by the employer . . . to the
         [DLSE] in writing.
10

11   And the non-burdensome exemption form is freely available on the DLSE's website at

12   https://www.dir.ca.gov/dlse/dlse104exemptionforiwcorder.pdf.  Wal-Mart asserts that this avenue

13   of redress is not meaningful because it requires a showing that enforcement "would not materially

14   affect the welfare or comfort of employees and would not work an undue hardship on the

15   employer."  MJP Reply at 11–12.  However, in so arguing, Wal-Mart improperly treats this

16   avenue as the sole means of petitioning despite the presence of the judicial and legislative avenues

17   discussed above.  When all of these routes are considered in conjunction, Wal-Mart has no

18   substantial argument that its constitutional right to petition has been unduly restricted by the

19   defunding of the IWC.

20   Wal-Mart's remaining argument is unavailing.  Wal-Mart submits that the deprivation of

21   its right to petition "is further intensified by the expanded application of the [Wage Order] and

22   changing landscape in the California Labor market."  MJP Mot. at 13.  For example, Wal-Mart

23   contends that recent enforcement actions have greatly expanded the application of the Wage Order

24   beyond its original purpose to cover retail employers.  See id.  However, a similar argument was

25   rejected by the California Supreme Court.  The Wage Order, which has remained largely

26   unchanged since 1976, applies to the retail industry by its plain terms.  See Wage Order 7–2001

27   Case No.: 09-cv-03339-EJD
     ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
28   MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
     MOTION FOR SANCTIONS

14

§ 2(H) (defining "Mercantile Industry" as "an industry, business, or establishment operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail"). And the California Supreme Court explained that little can be gleaned from the DLSE's inaction in enforcing the Wage Order because "[a]n agency's enforcement decisions are informed by a host of factors, some bearing no relation to the agency's views regarding whether a violation has occurred." Kilby, 368 P.3d at 567 (quoting Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 157 (2012)). Relatedly, Wal-Mart complains about the prevalence of lawsuits under the California PAGA and the deference paid to regulations of the now-dormant IWC. MJP Mot. at 13–14. But, as noted above, the California Legislature has countenanced this result through legislation. Furthermore, the Legislature remains a viable forum (along with the judiciary and the executive) where Wal-Mart can express its concerns.

As a final clarifying point, this Court does not mean to imply that the right to petition would be infringed if a party does not have all of the options that Wal-Mart does. Rather, in the words of the U.S. Supreme Court, the Petition Clause must be construed to "protect[] the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Guarnieri, 564 U.S. at 387. The California courts have been even more explicit that the state right to petition encompasses the right to petition the judiciary and "the right to petition the executive *or* legislative branches directly." Vargas, 134 Cal. Rptr. 3d at 253 (emphasis added). Based on the various grievance-resolution alternatives that Wal-Mart has available before all three branches of the government, the Court concludes that Wal-Mart has not been deprived of its federal or state constitutional rights to petition.

### b.      Procedural Due Process

Wal-Mart's penultimate contention that its federal and state procedural due process rights have been violated is derivative of its claims under the California Labor Code and California APA. In its motion, Wal-Mart explains that "[t]he California Labor Code and APA grant Wal-Mart the right to petition the IWC regarding the [Wage Order], which necessarily triggers Wal-Mart's

procedural due process rights under the federal and California Constitutions." MJP Mot. at 15. Similarly, in its reply, Wal-Mart states that "to the extent that Wal-Mart has established a violation of its right to petition under the California APA or the Labor Code (as it has), Wal-Mart has likewise established a violation of its due process rights under the United States and California Constitutions." MJP Reply at 14. Because the Court has already rejected Wal-Mart's statutory arguments, the Court also rejects Wal-Mart's federal and state procedural due process claims.

### c. Executive Authority

Wal-Mart's final argument is that enforcement of the Wage Order upsets the balance of power between the California Executive and Legislative branches. The California Constitution vests the "supreme executive power of this State . . . in . . . the Governor." Cal. Const. art. V, § 1. Courts are permitted to "strike down provisions of law that . . . undermine the authority and independence of one or another coordinate Branch." Carmel Valley Fire Prot. Dist. v. California, 20 P.3d 533, 538 (Cal. 2001). Here, however, Wal-Mart has not shown that the Legislature's actions encroach upon the Executive's authority.

It is true that the Governor is statutorily permitted to appoint, with the consent of the Senate, the five members of the IWC. See Cal. Lab. Code § 70 ("The members of the commission shall be appointed by the Governor, with the consent of the Senate."). Nevertheless, the California Constitution gives the Legislature the authority to create the IWC and to confer any "legislative, executive, and judicial powers." Cal. Const. art. XIV, § 1. More broadly, the Legislature has the power to make decisions about appropriation of funds. See Carmel Valley, 20 P.3d at 540. In that regard, "[n]either an executive administrative agency nor a court has the power to require the Legislature to appropriate money." Id. The Legislature's decision to defund the IWC in 2004 appears to fit squarely within these enumerated powers, and Wal-Mart has not raised any reason to think otherwise.

In fact, the current state of affairs neatly tracks the usual roles for the Executive and Legislative Branches. With regard to the Executive Branch, an executive agency—namely, the

ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

DLSE within the DIR—is responsible for understanding and enforcing the Wage Order's requirements. See Cal. Lab. Code §§ 61, 95(a), 1193.5. Under California Labor Code § 57, the Governor appoints the chief officer who presides over the DLSE. See id. § 57 ("Each division shall be in charge of a chief who shall be appointed by the Governor . . . ."); id. § 56 (listing the DSLE as one of the divisions). Moreover, the Legislature has vested the DIR with authority to amend the IWC's orders dealing with minimum wage, meals credits, and lodging credits. Id. § 1182.13(b). With regard to the Legislative Branch, the Legislature has left in place the legislative enactments of the IWC, which now form part of the fabric of California's wage and hour law. Brinker Rest., 273 P.3d at 527. And the Legislature has specifically provided that the DIR may not make changes to any of the IWC's wage orders falling outside the areas noted above. See Cal. Lab. Code § 1182.13(b) ("The [DIR] shall make no other changes to the wage orders of the [IWC] that are in existence on the effective date of this section."). Contrary to Wal-Mart's assertion, this setup does not present political-accountability issues antithetical to the separation of powers. See, e.g., Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 497–98 (2010).

In sum, the Court rejects Wal-Mart statutory and constitutional bases for holding the Wage Order invalid and unenforceable. Accordingly, the Court DENIES Wal-Mart's motion for judgment on the pleadings.

**B.    Parties' Cross-Motions for Summary Judgment**

Having rejected Wal-Mart's motion for judgment on the pleadings, the Court proceeds to the parties' cross-motions for summary judgment. As noted above, the determinative issue in this case is whether Wal-Mart violated the Wage Order. Both sides contend that the evidence in the record compels a judgment in their favor. For the reasons that follow, the Court concludes that genuine issues of material fact preclude summary judgment for either Plaintiffs or Wal-Mart.

The legal framework is relatively straightforward. The Wage Order sets the standard, mandating "suitable seats" for working employees "when the nature of the work reasonably

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

17

permits the use of seats." Thus, the relevant question in the instant case is whether the nature of the work performed by California Wal-Mart cashiers reasonably permits the use of a seat. Both parties acknowledge that the starting point is the California Supreme Court's recent decision in Kilby, 368 P.3d 554, in which the Supreme Court provided authoritative guidance about the proper inquiry under the Wage Order.

In Kilby, the California Supreme Court began with an interpretation of the phrase "nature of the work." Id. at 563. The Supreme Court rejected the broad view that courts should consider all of the tasks performed by an employee throughout her shift and the narrow view that courts should myopically focus on each individual task. Id. at 563–64. Instead, the Supreme Court explained that the inquiry must take into account all of the employee's tasks performed at a particular location. More specifically, "courts must examine subsets of an employee's total tasks and duties by location, such as those performed at a cash register or a teller window, and consider whether it is feasible for an employee to perform each set of location-specific tasks while seated." Id. at 564. A court's objective is to ascertain the actual work done at the discrete location, so the court must look to an employee's actual or expected tasks, with greater attention paid to those performed more frequently or for longer duration. Id.

These standards place important constraints on the relevant considerations in this case. Plaintiffs contend that California cashiers are entitled to a seat while working the cash registers at Wal-Mart's checkout lanes. See Dkt. No. 1, Ex. A ¶¶ 7–8. Thus, the analysis here trains on the tasks performed at Wal-Mart's checkout lanes, not the tasks that take the cashiers away from that area. See Kilby, 368 P.3d at 564 (explaining that "courts must examine subsets of an employee's total tasks and duties by location, such as those performed at a cash register"). This Court has previously rebuffed Wal-Mart's attempts to rely on "tasks cashiers perform while away from the checkout lanes." Dkt. No. 230 at 5; see also Dkt. No. 110 at 10 ("[A]ny variance in the work performed at outlying registers in specific departments that are not at the main front-end register bank is irrelevant because the persons who access those outlying registers are not cashiers."

(footnote omitted)).  Yet Wal-Mart again points to non–checkout lane tasks, such as "gathering shopping carts from the parking lot."  SJ Cross-Mot. at 16.  The Court takes this opportunity to reiterate that "Wal-Mart ignores or misapprehends the appropriate inquiry," Dkt. No. 230 at 5, and emphasize that the pertinent tasks are the ones performed at the checkout lanes.

With that clarification upfront, the Court returns to Kilby.  After defining the "nature of the work," the California Supreme Court next analyzed the "reasonably permits" language.  Kilby, 368 P.3d at 565.  Noting the IWC's conscientious choice of a broad reasonableness standard, the Supreme Court emphasized that the inquiry depends on a flexible, qualitative assessment of the totality of the circumstances.  Id.  The Supreme Court laid out the analytical framework as follows:

> Analysis begins with an examination of the relevant tasks, grouped by location, and whether the tasks can be performed while seated or require standing.  This task-based assessment is also balanced against considerations of feasibility.  Feasibility may include, for example, an assessment of whether providing a seat would unduly interfere with other standing tasks, whether the frequency of transition from sitting to standing may interfere with the work, or whether seated work would impact the quality and effectiveness of overall job performance.

Id.  This totality-of-the-circumstances test recognizes that, for each location where seating is sought, "numerous factors, such as the frequency and duration of tasks, as well as the feasibility and practicality of providing seating, may play a role in the ultimate conclusion."  Id. at 566.

As directed by the California Supreme Court, this Court first "begins with an examination of the relevant tasks, grouped by location, and whether the tasks can be performed while seated or require standing."  Id. at 565.  On this score, Plaintiffs submit substantial evidence about the critical functions of the cashier position and the frequency with which those tasks are performed.  For example, Plaintiffs cite the deposition testimony of Wal-Mart's Rule 30(b)(6) designee, Jackie Grube, who testified that the primary job function of all California cashiers is to operate a cash register to check out customers.  Dkt. No. 192-4 ("Grube Depo.") at 22:11–23; see also Dkt. No. 192-8 ("Crecelius Depo.") at 32:21–24 (agreeing that "the primary job function of a California

cashier is to check customers in and out").  Ms. Grube also attested that, based on data received

from survey results, Wal-Mart's experts rated the importance and frequency of tasks performed by

cashiers and determined that the two most critical functions for all California cashiers are (1)

operating cashier equipment (i.e., a cash register and scanner); and (2) processing customer

transactions (i.e., scanning and bagging items and processing payments).  Grube Depo. at 54:14–

55:10.  Wal-Mart's standardized training material reflects that reality: "A Cashier's work is pretty

simple.  Greet the customers, make them feel appreciated, *scan, deactivate, and bag their*

*merchandise* in a courteous and efficient way, *tender the transaction*, and thank them for shopping

at Wal-Mart, making sure that they have all their items before leaving the store."  Dkt. No. 192-3

at WM218 (emphasis added).  All of these descriptions designate "actual tasks performed, or

reasonably expected to be performed," not "abstract characterizations, job titles, or descriptions

that may or may not reflect the actual work performed."  Kilby, 368 P.3d at 564.

Plaintiffs also point to deposition testimony from other deponents about the frequency with

which the tasks are performed.  Marcia Ungles, a California cashier, testified that she stands to use

a hand scanner in only three out of every ten transactions.  Dkt. No. 248-22 at 13:18–22.

Similarly, in response to the question whether "Wal-Mart know[s] the amount or percentage of

time that persons employed in the cashier position in Wal-Mart's California stores have spent at a

cash register station from June 11, 2008 to the present," Wal-Mart Rule 30(b)(6) designee John

Crecelius responded that the figure is 68%.  Crecelius Depo. at 22:21–23:4.  However, Wal-Mart

notes that that number does not necessarily capture the time that cashiers are performing tasks

behind the register.  SJ Cross-Mot. at 16 n.9.  Mr. Crecelius explained that the 68% figure

represents the time that cashiers are signed in to the cash register.  Crecelius Depo. at 32:1–6.  As

another Wal-Mart deponent described, not all time logged into the cash register is spent working at

the checkout lane.  Dkt. No. 239-19 at 48:9–50:16.

Wal-Mart attempts to paint a contrasting picture of active cashiers performing a varied

range of tasks at the checkout lane.  For example, Wal-Mart relies on a Cashier Profile Report that

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
MOTION FOR SANCTIONS

1  lists cashier tasks performed during the checkout process.  Dkt. No. 192-5.  Based on that report,

2  Wal-Mart infers that cashiers must regularly stretch for merchandise, bend to view the bottom of a

3  customer's shopping cart, place merchandise into bags, and turn toward the cash register.  SJ

4  Cross-Mot. at 15 (citing Dkt. No. 192-5 at WM44–45, 47).[2]  Additionally, Wal-Mart provides

5  evidence that cashiers working at a checkout lane may need to stand to scan heavy items by hand

6  or to clean and organize the workspace.  Dkt. No. 239-17 at 97:3–98:3, 127:13–16.  But Wal-Mart

7  does not provide any numerical figures about how often cashiers must stand as part of their

8  checkout lane duties.  Contra id. at 127:4–8 (testifying that on average the deponent spent 90% of

9  time behind the register scanning and bagging items).  Thus, a reasonable factfinder would have

10  some basis to find that some of the relevant tasks performed by cashiers require standing.

11      More conspicuously, the parties have raised genuine issues of material fact with regard to

12  multiple feasibility factors at play in this case.  Even a non-exhaustive overview of the parties'

13  evidence reveals material factual disputes that inform the ultimate liability issue and cannot be

14  resolved at summary judgment.  Take, for example, the question whether customers have a

15  preference for standing or seated cashiers.  The California Supreme Court has instructed that "[a]n

16  employee's duty to provide a certain level of customer service should be assessed" as part of the

17  calculus.  Kilby, 368 P.3d at 566.  And here, the parties present competing evidence about where

18  customer preferences lie.

19      On one side, Plaintiffs tender the results of an opinion survey conducted by a third-party

20  expert consulting firm, Directions Research Inc. ("Directions Research"), in 2007 and 2008.  Dkt.

21  Nos. 192-46 ("2008 Survey"), 239-12 ("2007 Survey").  Wal-Mart specifically hired Directions

22  Research to conduct surveys in order to measure customer perceptions of cashiers performing their

23  work at a checkout lane while using a stool.  Dkt. Nos. 192-40 at 44:21–25, 192-41 at WM870;

---

[2] Plaintiffs rely on the same report to conclude that a cashier's role is generally limited to nineteen discrete tasks.  SJ Mot. at 8.

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

21

2008 Survey at DIR 4107; 2007 Survey at WM1760. Directions Research proceeded by taking exit interviews of customers at control stores providing no seat to the cashiers and at test stores providing seats to the cashiers. 2007 Survey at WM1761.[3] Notably, Directions Research made multiple relevant findings about customer perceptions: (1) "[f]ew Wal[-]Mart customers noticed employees using stools," (2) "[u]sage of the stools does not appear to have a negative impact on . . . employee or Wal[-]Mart perceptions," and (3) "[t]here is no evidence . . . that demonstrates a detrimental impact on perceptions of employee performance or Wal[-]Mart perceptions if employees are allowed to use stools." 2008 Survey at 4111; 2007 Survey at WM1761. Wal-Mart points to testimony by its Rule 30(b)(6) designee, Michelle Medlin, which quibbles with some— but not all—of these findings. See, e.g., Dkt. No. 239-13 at 124:8–17, 133:2–134:11, 161:8– 163:3. However, there is no cited evidence in the record that Wal-Mart disputed the findings of the study before this litigation, and Ms. Medlin admits that no other pre-litigation studies were conducted. Dkt. No. 248-5 at 55:22–56:1, 56:14–16, 173:7–23.

On the other side, Wal-Mart submits the expert report of Dr. Jerry Wind, a professor at the Wharton School of the University of Pennsylvania. ECF No. 239-11 ("Wind Report") ¶ 2. Wal-Mart asked Dr. Wind to prepare a report for this litigation assessing California consumers' preference for seated or standing cashiers. Id. ¶ 47. Wal-Mart recorded a forty-five minute video of Wal-Mart associates performing cashier duties in seated and standing positions at an Arkansas Wal-Mart location. Dkt. No. 223-7 ¶ 3. Dr. Wind chose a limited amount of this footage and conducted a consumer survey in which 1,209 California Wal-Mart shoppers from an Internet panel were shown both videos and asked questions regarding their perceptions of seated and standing cashiers. Wind Report ¶ 47. The results found that 40% of the shoppers preferred a store with a standing cashier while 11% preferred a store with a seated cashier. Id. ¶¶ 48, 53. Similarly, 76%

---

[3] Wal-Mart was active in the survey's design: Wal-Mart selected the control and test stores and also revised and approved the exit-interview questions. Dkt. No. 248-5 at 97:23–99:25, 144:1–5, 145:15–146:20, 163:4–19.

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

22

of the shoppers would select a checkout lane with a standing cashier, whereas 24% would select a checkout lane with a seated cashier. Id. ¶¶ 48, 54. According to Dr. Wind, shoppers stated that they preferred standing cashiers to seated cashiers in part because standing cashiers appeared more customer-friendly and efficient. Id. ¶¶ 55–56. Wal-Mart also provides a declaration from a store manager, Robin Feathers, who testifies that in her experience seated cashiers appear less proactive to assist customers. Dkt. No. 239-8 ¶ 6.[4]

Both parties raise issues with the other side's evidence. Plaintiffs note that the videos underlying Dr. Wind's report do not depict actual California shoppers (but rather depict Arkansas Wal-Mart employees posing as customers) and that Dr. Wind's February 2018 report, prepared for this litigation, is not necessarily representative of previous years. SJ Opp. at 7–8 (citing Dkt. No. 248-23 at 268:19–269:12). For its part, Wal-Mart raises analogous concerns that the Directions Research study is flawed because, among other things, the work was undertaken more than ten years ago and was based on a non-random sample that did not include any California stores or customers. Id. at 12.[5] These weaknesses are not fatal but instead bear on the weight that a factfinder might ultimately give to this evidence. See Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal., 694 F.2d 1150, 1156 (9th Cir. 1982) ("Technical unreliability [typically] goes to the weight accorded a survey, not its admissibility."). For example, a factfinder might reasonably

---

[4] Although Plaintiffs argue that Wal-Mart may not rely on Ms. Feathers's declaration, SJ Opp. at 5–6, the Court need not resolve this issue because it would reach the same conclusion with or without Ms. Feathers's testimony.

[5] Wal-Mart asks the Court to toss the Directions Research reports on the ground that they are inadmissible hearsay. SJ Cross-Mot. at 9 n.3. But Plaintiffs may admit the reports as nonhearsay under Federal Rule of Evidence 801(d)(2)(C), as the Ninth Circuit concluded on nearly identical facts. See Reid Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1306–07 (9th Cir. 1983) (upholding admissibility under Rule 801(d)(2)(C) of report that was prepared at the request of the party opponent, based on a review of the party opponent's data, and presented at a meeting to the party opponent's executives). More broadly, surveys are routinely "admissible, if relevant, either as nonhearsay or through a hearsay exception." Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal., 694 F.2d 1150, 1156 (9th Cir. 1982). At a minimum, "[c]ourts frequently find that survey evidence is admissible under the 'catch-all' exception to the hearsay rule." Sanchez v. Cty. of San Bernardino, No. 10-CV-09384-MMM, 2014 WL 12734756, at *8 (C.D. Cal. Mar. 10, 2014).

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

determine that the pre-litigation Directions Research reports are more believable.  Or a factfinder

might reasonably conclude that Dr. Wind's survey is entitled to more weight because it sampled

California customers.  At summary judgment, it is not the Court's role to make such credibility

determinations or weigh the evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986).  Based on the evidence submitted by the parties, a reasonable factfinder could find either

that customers do or do not have a preference for standing cashiers.

A similar conflict in the evidence emerges with respect to cashier productivity, which also

forms part of the totality-of-the-circumstances inquiry.  See Kilby, 368 P.3d at 567 ("An

employer's evaluation of the quality and effectiveness of overall job performance is among the

factors that can be objectively considered . . . .").  Plaintiffs again cite to the Directions Research

reports, which concluded that "[u]sage of the stools does not appear to have a negative impact on

check-out speed."  2008 Survey at 4111; 2007 Survey at WM1761.  Ms. Medlin's deposition

testimony further confirms that, based on a review of daily productivity reports (known as SWAS

reports), Wal-Mart saw no appreciable difference in productivity depending on whether a stool

was available.  Dkt. No. 192-40 at 92:2–93:14, 95:2–9; see also Dkt. No. 192-19 ("Cormack

Depo.") at 83:12–13 ("The providing of stools should not result in decreased performance as long

as their use is properly managed.").

Wal-Mart counters with an expert report from Dr. Jeffrey Fernandez.  Dr. Fernandez

analyzed over six-hundred SWAS reports covering forty-two California stores from the period of

October 31, 2016 to December 17, 2017.  Dkt. No. 239-15 ("Fernandez Report") ¶ 43.  Based on

this universe of SWAS reports, Dr. Fernandez concluded that standing cashiers processed more

items per hour on average than seated cashiers—specifically, he calculated that standing cashiers

processed approximately 420 items per hour, but seated cashiers processed approximately 392

items per hour (or about 6.5% less than standing cashiers).  Id.  Although Plaintiffs halfheartedly

suggest that Dr. Fernandez's entire rebuttal report is inadmissible, SJ Opp. at 11, his analysis is

based on presumably admissible SWAS reports.  Nor can Dr. Fernandez be faulted for failing to

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
MOTION FOR SANCTIONS

24

rely on the entire universe of SWAS reports when the Court excluded the additional 356,850 SWAS reports that were not timely disclosed to Plaintiffs. Dkt. No. 231 at 14. As before, the factfinder would have to make a choice between the pre- and post-litigation studies of cashier productivity. Thus, there is a genuine dispute of material fact as to whether cashier productivity is affected by the availability of a seat. See Anderson, 477 U.S. at 255 (noting that weighing evidence is in the sole province of the factfinder).

The same is true for the factual question whether seated cashiers are more susceptible to injuries than standing cashiers. See Kilby, 368 P.3d at 567 (recognizing that "the seating requirement is a workplace condition aimed at the welfare of employees performing work" (internal quotation marks and citation omitted)). Plaintiffs once more draw on the Directions Research reports. Before Directions Research undertook the surveys, Wal-Mart successfully identified a suitable stool for cashiers' use that took into account considerations of the essential job functions to be performed by cashiers, the layout of the checkout lane, and possible ergonomic issues resulting from the use of the stool. Dkt. No. 192-40 at 81:11–82:25. Beyond the Directions Research reports, Plaintiffs also cite testimony from two of Wal-Mart's deponents. One deponent testified that Wal-Mart has determined that cashiers can safely use a stool during the performance of their job duties. Dkt. Nos. 192-17 ("Vargas Depo.") at 69:21–70:3. The other deponent went even further. He testified that Wal-Mart has concluded that the presence of an approved stool does not create safety hazards for cashiers transitioning between sitting and standing tasks. Cormack Depo. at 126:11–17. In fact, he confirmed that Wal-Mart has determined that use of a stool will likely *decrease* accidents because it will lessen the strain on employees who were previously required to stand for the entirety of their shifts. Id. at 88:10–20.

Wal-Mart, in turn, puts forward evidence that use of stools could lead to ergonomic and safety issues. Specifically, Wal-Mart raises portions of Dr. Fernandez's report that address these topics. Although Dr. Fernandez is designated as a rebuttal expert to rebut Plaintiffs' expert, Dr. Mark Benden, and Plaintiffs do not explicitly rely on Dr. Benden's report in their motion for

summary judgment, Plaintiffs present the substance of Dr. Benden's opinions through other

means.  See Truckstop.Net, L.L.C. v. Sprint Commc'ns Co., L.P., 537 F. Supp. 2d 1126, 1133 (D.

Idaho 2008) (noting that rebuttal expert testimony may be properly introduced at summary

judgment where the opposing party "admit[s] the gist of [its expert's] testimony through means

other than [the expert] himself").  Dr. Fernandez analyzed videos of cashiers and checkout lane

dimensions to perform a biomechanical analysis of the musculoskeletal stresses placed on cashiers

when performing common tasks in different postures.  Fernandez Report ¶¶ 10–34.  Dr. Fernandez

concludes that "biomechanical modeling establishes the increased risk of musculoskeletal

[i]njuries" for cashiers using a stool.  Id. ¶ 33.  For example, as Dr. Fernandez describes, lifting

heavy items from a seated position increases compressive forces in spinal discs and puts cashiers

at an increased risk of back-related musculoskeletal disorders.  Id. ¶¶ 31–34.  Additionally, Dr.

Fernandez opines that "the presence of a stool would increase trip hazard for either cashiers or

Walmart customers."  Id. ¶ 35.  Deposition testimony recounted other instances in which stools

have caused injuries to cashiers and customers alike.  Dkt. No. 239-33 at 38:14–16 ("I've heard

that there are instances where people fall off of the stools while they're working.  I've heard that

there are instances where people may trip over it.").

Presented with the varied evidence about safety concerns, a factfinder could rationally

decide that using seats does or does not pose an increased risk of ergonomic and safety hazards.

Again, it is for the factfinder at trial, not the Court at summary judgment, to make that call.  See

Anderson, 477 U.S. at 255 (explaining that the factfinder weighs the evidence).

If all of that were not enough, the parties offer dueling accounts as to another recognized

consideration—namely, "the physical layout of a workspace."  Kilby, 368 P.3d at 567.  To help

combat employers unreasonably designing a workspace to prevent use of a seat, the California

Supreme Court explained that courts may look to "[e]vidence that seats are used to perform

similar tasks under other, similar workspace conditions."  Id.  Plaintiffs have presented that

evidence here.  In particular, Plaintiffs have put forward evidence that Wal-Mart has an

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
MOTION FOR SANCTIONS

accommodations policy, referenced in a frequently asked questions document authored by Wal-Mart, under which employees may request a stool. Vargas Depo. at 66:19–70:22; Dkt. No. 192-35 at 3–5. Under that policy, Wal-Mart would not grant a request to use a stool unless an employee could continue to perform the essential functions of her job. Vargas Depo. at 55:7–25; Cormack Depo. at 40:19–23. The record discloses that, during the class period, Wal-Mart has approved requests by at least 230 California cashiers to use stools while performing their work at checkout lanes. Dkt. No. 254-23 ¶ 2. And at least forty-two of those accommodations have been granted on a permanent basis. Id. Critically, Wal-Mart made no modifications to the existing checkout lane configurations to accommodate these requests. Cormack Depo. at 106:7–15.

Additionally, Plaintiffs indicate that, pursuant to its obligations under the Americans with Disabilities Act ("ADA"), Wal-Mart has designed and implemented a checkout lane that allows cashiers to perform their work while seated in a wheelchair. Dkt. No. 192-20 at 25:22–26:15. According to Wal-Mart's Rule 30(b)(6) designee, Steve Hartman, these checkout lanes have been available since 2000 and can be used by both standing and seated cashiers. Id. at 26:16–21, 30:4–17. Mr. Hartman further testified that the footprints of Wal-Mart's ADA and non-ADA checkout lanes are similar, with the primary difference being that the ADA checkout lane has leg space underneath the scanner. Id. at 33:7–22; see also Dkt. No. 192-16 at 23:20–24:2. Another Wal-Mart deponent explained that the cost for a belted ADA checkout lane is about $2,900 to $3,400, within the same range as the non-ADA belted checkout lane. Dkt. No. 192-16 at 32:19–33:9.

Wal-Mart's retort that accommodations under state disability laws or the ADA have no relevance in the totality-of-the-circumstances inquiry misunderstands Plaintiffs' reason for seeking to introduce this evidence. SJ Cross-Mot. at 22–25. Plaintiffs do not equate the standards under state disability laws, the ADA, and the Wage Order. Nor do they argue that Wal-Mart is automatically required to provide seats under the Wage Order simply because it does so under state disability laws or the ADA. Instead, Plaintiffs submit Wal-Mart's accommodations policy and ADA-compliant checkout lanes as "[e]vidence that seats are used to perform similar tasks

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

under other, similar workspace conditions." Kilby, 368 P.3d at 567. Indeed, Plaintiffs' approach finds support in the California Supreme Court's observation that "the seating provision [never] suggested that physical differences among employees were relevant when considering whether any employee may work while seated." Id. at 568. Thus, the Court rejects Wal-Mart's attempt to discard or ignore this evidence.

Nonetheless, Wal-Mart marshals its own evidence in support of the view that it would need to overhaul the front end of its stores to provide the requisite suitable seating. For example, Wal-Mart's Director of Store Layout within Merchandising Operations, Brian Williams, submits a declaration stating that more space would need to be added between registers to allow for adequate employee and customer space.[6] Dkt. No. 239-10 ("Williams Decl.") ¶ 8; see also Dkt. No. 239-20 at 27:14–19. In addition to expanding aisle space, Wal-Mart would need to add storage space for stools when they are not in use. Williams Decl. ¶ 9. In Mr. Williams's view, Wal-Mart would have to incur the costs to change the layout and also could lose substantial revenue if forced to decrease the number of checkout lanes overall. Id. ¶ 10. More broadly, fewer checkout lanes could lead to diminished customer service due to longer checkout lines and wait times. Id. ¶ 11. A rational factfinder might credit Mr. Williams's testimony over Wal-Mart's policy and practice of providing seating accommodations to cashiers. Either way, the factfinder will have to resolve this material factual dispute as to the physical layout of Wal-Mart's stores. See Anderson, 477 U.S. at 255 (noting that factual debates must be submitted to the factfinder).

---

[6] The Court disagrees with Plaintiffs' objection that Mr. Williams's declaration must be excluded because he was not identified in Wal-Mart's initial disclosure. SJ Opp. at 3. In a September 8, 2017 response to Plaintiffs' interrogatories, Wal-Mart disclosed Mr. Williams as a "witness[] supporting [Wal-Mart's] contention that the physical layout of any of the front end checkout lanes at [its] stores may not reasonably be changed to accommodate the use of a seat or stool by Cashiers." Dkt. No. 254-21 at 23–24. Disclosure in this fashion seems appropriate. See, e.g., Jackson v. Express, No. 10-CV-01760-MMM, 2011 WL 13268076, at *2 (C.D. Cal. June 16, 2011) (allowing party to call witnesses not disclosed in the initial disclosure because their identities were disclosed during the course of discovery). Judge van Keulen's discovery order did not require anything more. See Dkt. No. 179.

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

Given the numerous material factual disputes identified above, neither party can show entitlement to judgment as a matter of law. Instead, the case must proceed to trial so that a factfinder can evaluate the evidence and weigh the various considerations to make the ultimate determination whether the nature of the work performed by California Wal-Mart cashiers reasonably permits the use of a seat. Such a disposition is not uncommon in cases involving questions of reasonableness. See, e.g., Cohen v. City of Culver City, 754 F.3d 690, 700 (9th Cir. 2014) ("The trier of fact must determine whether the duration of the obstruction was reasonable."); Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (concluding that the question of the reasonableness of force used to effect an arrest should usually be submitted to a jury). Accordingly, the Court DENIES the parties' cross-motions for summary judgment.

**C.      Plaintiffs' Motion for Sanctions**

Plaintiffs' motion for sanctions centers on Wal-Mart's allegedly late production of information pursuant to a discovery order. The present dispute originates with two interrogatories that Plaintiffs served on June 23, 2017. The first, Interrogatory No. 18, states: "For each Cashier who worked for [Wal-Mart] during the relevant time period, state the number of payroll periods where s/he worked at the front end checkout and was not provided with a seat/stool." Dkt. No. 245-2 at 4. The second, Interrogatory No. 19, states: "For each Cashier who worked for [Wal-Mart] during the relevant time period, state the number of payroll periods where s/he worked at the front end checkout and was provided with a seat/stool." Id. at 5. Thus, Plaintiffs sought from Wal-Mart the number of pay periods worked by cashiers while standing and the number of pay periods worked by cashiers while seated.

On August 26, 2017, Wal-Mart objected to the production of this information as overly burdensome. Dkt. No. 245-1 ("Jones Decl.") ¶ 2. However, the parties met and conferred on this issue, and they ultimately agreed that Wal-Mart could produce the information by April 2018. Id. On December 29, 2017, the parties submitted a joint stipulation to the Court, apparently to resolve this issue. Dkt. No. 190. That stipulation stated that, by April 6, 2018, Wal-Mart would "provide

1    to Plaintiffs full and complete responses" to "Plaintiffs['] propounded discovery seeking . . . the

2    number of pay periods worked by each class member during the class period." Id. at 2–3. The

3    Court approved the stipulation on December 29, 2017. Dkt. No. 191.

4         The April 6, 2018 deadline came and passed but Wal-Mart did not produce the

5    information. Jones Decl. ¶ 3. In mid-April, Plaintiffs' counsel contacted Wal-Mart's new counsel

6    in this matter to inquire into the reason that the information had not been produced. Id. Wal-

7    Mart's new counsel informed Plaintiffs that they were not aware of the stipulation but promised to

8    get the information to Plaintiffs in a timely fashion. Id. On May 1, 2018, Wal-Mart produced a

9    spreadsheet containing the names of each class member and the pay periods that each worked as a

10   front-end cashier during the class period. Dkt. No. 251-1 ("Paulson Decl.") ¶ 5. The spreadsheet

11   did not, however, break down the pay periods by whether each class member was or was not

12   provided a seat.

13        Plaintiffs followed up on this deficiency on May 21, 2018. In an email from Plaintiffs'

14   counsel to Wal-Mart's counsel, Plaintiffs' counsel noted that "we are still missing a response to

15   the [interrogatory] asking for length of time for each class member when they were using a stool."

16   Dkt. No. 245-4 at 2. On May 22, 2018, Wal-Mart's counsel replied that their team was "working

17   as quickly as possible to do this and will continue to update [Plaintiffs] on our progress." Id. at 1.

18   Wal-Mart represents that Plaintiffs never responded to that email. Sanctions Opp. at 7. Instead, a

19   few weeks later, Plaintiffs filed their motion for sanctions. Sanctions Mot. In the interim, Wal-

20   Mart has made two more productions to Plaintiffs. On May 11, 2018, Wal-Mart produced a

21   summary report maintained by its third-party disability claims provider showing all

22   accommodations requests made by California front-end cashiers from mid-2013 through May 11,

23   2018. Paulson Decl. ¶¶ 6–7. On June 22, 2018, Wal-Mart provided a list of accommodation

24   requests and the timeframes in which a stool request was granted (to the extent it could be

25   determined). Id. ¶ 11.

26

27   Case No.: 09-cv-03339-EJD
     ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
28   MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
     MOTION FOR SANCTIONS

United States District Court
Northern District of California

Against that factual backdrop, the Court now addresses Plaintiffs' sanctions motion. Plaintiffs ask the Court to sanction Wal-Mart for failing to comply with the December 29, 2017 stipulation. Sanctions Mot. at 3. Federal Rule of Civil Procedure 37(b)(2) and (c)(1) both permit sanctions for failure to comply with a discovery-related order. See Fed. R. Civ. P. 37(b)(2)(A) (allowing sanctions for a party's "fail[ure] to obey an order to provide or permit discovery"); Fed. R. Civ. P. 37(c)(1) (allowing sanctions for a party's failure to supplement their prior interrogatory responses "as ordered by the court" under Rule 26(e)(1)(B)). Here, the Court easily finds that Wal-Mart violated the December 29, 2017 stipulation. While that stipulation required Wal-Mart to produce information by April 6, 2018, Wal-Mart concedes that it did not produce anything to Plaintiffs until May 1, 2018. A separate question is whether Wal-Mart's May 1, 2018 production was compliant with the December 29, 2017 stipulation. The Court concludes that it was. The stipulation stated that Wal-Mart would provide "full and complete responses" to "discovery seeking . . . the number of pay periods worked by each class member during the class period." That is exactly the information that Wal-Mart provided on May 1, 2018. Although Plaintiffs are likely correct that all involved parties knew that Plaintiffs actually sought responses to Interrogatory Nos. 18 and 19, the stipulation did not single out those interrogatories, let alone mention interrogatories at all. Therefore, Wal-Mart's delay to May 1, 2018 is the sole basis for concluding that Wal-Mart violated the December 29, 2017 stipulation.

Having found that Wal-Mart failed to obey a discovery order in this limited manner, the Court must decide what sanctions (if any) are appropriate. Under Rule 37(b)(2)(A), where a party has violated a discovery order, the court "may issue further just orders." Plaintiffs advocate that the Court "direct[] that the matters embraced in the order . . . be taken as established for purposes of the action" and that the Court prohibit Wal-Mart "from supporting or opposing designated claims or defenses, [and] from introducing designated matters in evidence." See Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii). These sanctions do not appear "just" on the facts of this case. Although Wal-Mart missed the April 6, 2018 deadline, it produced the information very soon after Plaintiffs

Case No.: 09-cv-03339-EJD
ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS

31

1   informed Wal-Mart of the problem.  More importantly, the harm to Plaintiffs occasioned by the

2   delay was next to nothing.  The stipulation provided that the information was "directly relevant to

3   the issue of penalties," an issue that would not be presented until trial in October 2018.  Plaintiffs

4   now suggest that the information also bears on the issue of liability, Sanctions Reply at 3, but it

5   does not appear to the Court that the updated information would have changed the summary

6   judgment analysis in any meaningful way.  And Plaintiffs have plenty of time to review and

7   prepare the evidence for trial.  Thus, the Court declines to issue any of the sanctions listed in Rule

8   37(b)(2)(A).[7]

9       However, the Court will—and indeed, must—issue an award of reasonable expenses under

10  Rule 37(b)(2)(C).  That subsection provides: "Instead of or in addition to the orders above, the

11  court must order the disobedient party, the attorney advising that party, or both to pay the

12  reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

13  substantially justified or other circumstances make an award of expenses unjust."  As the

14  language's use of the mandatory word "must" indicates, the award is obligatory unless one of the

15  two exceptions—substantial justification or other circumstances—applies.  See Novak v. Wolpoff

16  & Abramson LLP, 536 F.3d 175, 178 (2d Cir. 2008); F.D.I.C. v. Conner, 20 F.3d 1376, 1382 (5th

17  Cir. 1994); Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 188 (E.D.N.Y. 2005).  Wal-Mart

18  has the burden to make that showing.  See Fed. R. Civ. P. 37 advisory committee's note to 1970

19  amendment (placing burden on disobedient party to avoid expenses).

20      Wal-Mart has not even attempted to demonstrate substantial justification or other

21  circumstances.  Wal-Mart submits no affidavit or other evidence providing any explanation for its

22  tardiness.  In its opposition, Wal-Mart states only that it "inadvertently did not produce th[e]

23  information on April 6, 2018 as agreed because the case was being transitioned to new counsel."

24

25  _____

26  [7] Similarly, the Court also would not issue an exclusion sanction under Rule 37(c)(1) because the
    untimely disclosure was harmless.

27  Case No.: 09-cv-03339-EJD
    ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
28  MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
    MOTION FOR SANCTIONS

1    Sanctions Opp. at 3.  The transition to new counsel cannot by itself constitute a substantial

2    justification for the failure to comply with the December 29, 2017 stipulation.  That stipulation

3    was approved by the Court and entered on the public docket as a formal order.  It is not too much

4    to expect that new attorneys will review the orders and rulings that were issued in the case before

5    the attorneys signed on.  Moreover, Wal-Mart's prior attorneys were still on the case at the time of

6    the April 6, 2018 deadline; they did not file a formal request to withdraw until June 25, 2018.  See

7    Dkt. No. 252.  Because Wal-Mart has not shown a substantial justification or other circumstances,

8    Wal-Mart is ordered to pay Plaintiffs' reasonable expenses, including attorney's fees, caused by

9    Wal-Mart's failure to produce the required information until May 1, 2018.  In all other respects,

10   Plaintiffs' motion for sanctions is denied.  Accordingly, the Court GRANTS in part and DENIES

11   in part Plaintiffs' motion for sanctions.

12          Finally, the Court adds that is not clear if Wal-Mart has fully provided the information

13   requested in Interrogatory Nos. 18 and 19.  To the extent that there is outstanding discovery on

14   that score, the parties are ordered to meet and confer as soon as possible.  The Court ORDERS

15   Wal-Mart to produce any such outstanding discovery to Plaintiffs no later than July 31, 2018 to

16   ensure that Plaintiffs have sufficient time to review and prepare that information for trial.

17   **III.    CONCLUSION**

18          For the foregoing reasons, Wal-Mart's motion for judgment on the pleadings is DENIED,

19   the parties' cross-motions for summary judgment are DENIED, and Plaintiffs' motion for

20   sanctions is GRANTED in part and DENIED in part.  Wal-Mart is ORDERED to produce any

21   outstanding discovery as to Interrogatory Nos. 18 and 19 by July 31, 2018.

22          **IT IS SO ORDERED.**

23   Dated: July 13, 2018

24   _____

25   EDWARD J. DAVILA
     United States District Judge

26

27   Case No.: 09-cv-03339-EJD
     ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING CROSS-
28   MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
     MOTION FOR SANCTIONS