1  CHARLES A. JONES State Bar No. 224915
   KELLY McINERNEY State Bar No. 200017
2  JONES LAW FIRM
   9585 Prototype Ct., Suite B
3  Reno, Nevada 89521
   Telephone: (775) 853-6440 / Facsimile: (775) 853-6445
4  Email: caj@cjoneslawfirm.com. Kelly@cjoneslawfirm.com

5  MATTHEW RIGHETTI, State Bar No. 121012
   RIGHETTI GLUGOSKI, P.C.
6  456 Montgomery Street, Suite 1400
   San Francisco, CA 94101
7  Telephone: (415) 983-0900 / Facsimile: (415) 397-9005
   Email: matt@righettilaw.com

8
   Class Counsel
9

10              UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13  NISHA BROWN and KATHY WILLIAMSON,        CASE NO.:  5:09-CV-03339-EJD
14  individually and on behalf of all others similarly   **NOTICE OF MOTION AND MOTION**
    situated,                                **FOR PRELIMINARY APPROVAL OF**
15                                           **CLASS ACTION SETTLEMENT**
     Plaintiffs,
16
    vs.                                      Date:     October 24, 2018
17                                           Time:     9:00 AM
    WAL-MART STORES, INC., and DOES 1 through  Location:  Courtroom 4 (5th Floor)
18  50 inclusive,                            Judge:    Honorable Edward J. Davila
                    Defendants.
19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

Table of Contents .................................................................................................................i

Table of Authorities.......................................................................................................ii-iv

I.     INTRODUCTION ...................................................................................................1

II.    SUMMARY OF KEY SETTLEMENT TERMS ...................................................2

III.   FACTUAL BACKGROUND ................................................................................4

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT...............8

     A.    There Is A Presumption Of Fairness ........................................................10

     B.    The Settlement Is The Product of Arm's-Length Bargaining ...............11

     C.    The Strength Of The Plaintiffs' Case And The Risk, Expense, Complexity, And Likely Duration Of Further Litigation.................................................12

     D.    The Risk Of Maintaining Class Action Status Throughout Trial........................15

     E.    The Amount Offered In Settlement..........................................................16

     F.    The Extent Of Discovery And The Stage Of The Proceedings............................21

     G.    The Experience And Views Of Counsel ..................................................21

V.    CLASS NOTICE ...................................................................................................21

VI.   CLASS CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE .................................................................................................23

VII.  ESTABLISHMENT OF THE QUALIFIED SETTLEMENT FUND ............................24

VIII. CONCLUSION .....................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brailsford v. Jackson Hewitt, Inc.*
(N.D. Cal. May 3, 2007) 2007 WL 1302978........................................................20

*Brown v. Wal-Mart Stores, Inc.*
(9th Cir. 2016) 651 F. App'x 672.............................................................6, 23

*Churchill Vill. L.L.C. v. Ge. Elec.*
(9th Cir. 2004) 361 F.3d 566, 575...........................................................21

*Garner v. State Farm Inc.*
(N.D. Cal. April 22, 2010) 2010 WL 1687829 .......................................20

*Hanlon v. Chrysler Corp.*
(9th Cir. 1998) 150 F.3d 1011, 1026-27.................................................9, 16

*In re Activision Sec. Litig.*
(N.D. Cal. July 1, 2015) 2015 WL 4040388 ...........................................20

*In re Celera Corp. Sec. Litig.*
(N.D. Cal. Mar. 31, 2015) 2015 WL 1482303 ..................................12, 16

*In re Google Referrer Header Privacy Litig.*
(N.D. Cal. Mar. 26, 2014) 2014 WL 1266091 ........................................17

*In re Haier Freezer Consumer Litig.*
(N.D. Cal. May 21, 2013) 2013 WL 2237890 ...........................................9

*In re Heritage Bond Litig.*
(C.D. Cal. June 10, 2005) 2005 WL 1594403 ........................................20

*In re Mego Fin. Corp. Sec. Litig.*
(9th Cir. 2000) 213 F.3d 454, 458 .............................................................9

*In re Pacific Enterprises Sec. Litig.*
(9th Cir. 1995) 47 F.3d 373, 379 .............................................................20

*In re Tableware Antitrust Litig.*
(N.D. Cal. 2007) 484 F. Supp.2d 1078, 1079.......................................9, 16

*Linney v. Cellular Alaska P'ship*
(N.D. Cal. 1997) 1997 WL 450064 ..........................................................20

*Officers for Justice v. Civil Service Comm'n*
(9th Cir. 1982) 688 F.2d 615, 624 .........................................................9, 10

*Nat'l Rural Telecomms. Corp. v. DIRECTTV, Inc.*
(C.D. Cal. 2004) 221 F.R.D. 523, 525.......................................................9

*Staton v. Boeing, Inc.*
(9th Cir. 2003) 327 F.3d 959 ...................................................................10

Newberg On Class Actions, 3rd Ed. (1992) §11.41 ........................................................... 10

Newberg On Class Actions, 5th Ed. (1992) §13.10 ........................................................... 9

Newberg On Class Actions, 5th Ed. (1992) §13.14 ........................................................... 10

**NOTICE OF MOTION**:

PLEASE TAKE NOTICE THAT at 9:00 a.m. on October 24, 2018 in Courtroom 4 of this Court, located at 280 S. 1st Street in San Jose, California, Class Representative Kathy Williamson will, and hereby does, move for an order preliminarily approving the settlement of this class action pursuant to Fed. R. Civ. P. 23(e). The basis for the relief is set forth in the following points and authorities as well as the declarations of Charles A. Jones and Matthew Righetti and the exhibits attached thereto.

## I.   INTRODUCTION

Class Representative Kathy Williamson and Defendant Wal-Mart Stores, Inc. ("Wal-Mart") have reached a proposed settlement of this certified class action under which Wal-Mart will pay Sixty-Five Million Dollars ($65,000,000) and provide seating to its front-end cashiers pursuant to the Seating Pilot Program as set forth in the Settlement Agreement at §5.1. As set forth below, this proposed settlement represents the largest PAGA settlement in the history of the State of California, and significantly exceeds the amount of all other suitable seating settlements *combined*. Jones Decl. ¶11. Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs move the Court to: (1) preliminarily approve the proposed settlement, which is set forth in the Settlement Agreement ("Agreement") attached as Exhibit 1 to the Declaration of Charles A. Jones; (2) approve the form and content of the class notice and claim form, attached as Exhibits 1(A) and 1(B); and (3) approve Phoenix Settlement Administrators ("PSA") as the settlement administrator. This Motion is unopposed by Wal-Mart.

After more than nine years of hard-fought litigation, the parties reached this settlement following an all-day mediation session with well-respected mediator Hon. Layn Phillips (ret.). This settlement was reached less than a month before trial was set to commence and after the parties had substantially completed all pre-trial litigation, and were actively preparing for trial. At

all times, the negotiations leading to the settlement were non-collusive and conducted at arm's length by experienced counsel. (Jones Decl. ¶6). As set forth in detail below, Plaintiffs and Class Counsel believe the proposed settlement is fair, reasonable, in the best interests of the approximately 99,000 class members in this case and warrants preliminary approval so that (a) an approved notice program can proceed, and (b) necessary preparations can be made for a final fairness hearing.

## II.   SUMMARY OF KEY SETTLMENT TERMS

As set forth in the attached Agreement, the monetary value of this non-reversionary settlement is Sixty-Five Million Dollars ($65,000,000). Agreement at §5.2. The $65,000,000 cash amount is referred to in the Agreement as the "Gross Settlement Amount." *Id.* Because the settlement is *non-reversionary*, this means that Wal-Mart has agreed to pay out the full $65,000,000, regardless of the number of claims received by the Class Members, and any amounts not claimed will be redistributed to approved claimants on a pro rata basis. For example, if only half of the class members submit timely and valid claim forms, the individual payment amounts would increase proportionally such the claim payment **may be twice as much** for those Class Members who submit timely and valid claim forms. *Id.* at §5.2.2.2.6.

From the Gross Settlement Amount of $65,000,000 the following amounts will be deducted to arrive at the Net Settlement Amount (i.e., the amount which is used to calculate settlement payments to the California Labor and Workforce Development Agency ("LWDA") and the Class Members who submit timely and valid claim forms): (1) Attorney's fees of up to one third of the settlement amount ($21,664,500), subject to Court approval; (2) Litigation Costs of up to $312,000, subject to Court approval; (3) Settlement administration costs of up to $150,000, subject to Court approval; and (4) Enhancement awards to the class representative (Kathy Williamson) and the other named Plaintiff, Nisha Brown, not to exceed the combined amount of $30,000, subject to

Court approval. *Id.* at ¶5.2. Assuming that the Court approves all of the above amounts, the Net Settlement Fund amount to be distributed to the LWDA and the Class Members will be $42,843,500. *Id.* Should the Court decline to approve or reduce any of the amounts noted above, the non-reversionary Net Settlement Fund amount shall increase proportionately. *Id.*

As this is a PAGA action, seventy-five (75%) of the Net Settlement Fund (projected to be $32,132,625) will be paid to the California LWDA. Cal. Labor Code §2699(i); Agreement §5.2.1. Once that payment has been made, the amount remaining in the Net Settlement Fund (projected to be $10,710,875) will be paid to those Class Members who timely submit valid claim forms. *Id.* at §5.2.2 PAGA penalties are assessed on a pay period basis. See, Cal. Labor Code §2699(f)(2). Under the settlement all pay periods are considered of equal value. Class Members who timely submit valid claim forms will be paid based on the number of pay periods they were employed as a front-end Cashier in a California Wal-Mart store during the class period. (*Id.* at p. 8-9.) Although the exact amount of each Class Member's settlement payment will not be known until the claim filing period has closed, assuming that all Class Members submit timely and valid claim forms, the minimum value of each pay period (net) is estimated to be over $4.00 per pay period. Jones Decl. ¶9. Since the class period spans ten years, this means that Class Members who were employed by Wal-Mart as front-end cashiers during the entire class period (June 11, 2008 through the date the Court grants preliminary approval) and who submit valid claims will recover over $1,000 under the terms of this Settlement. (*Id.*)

In addition to the substantial monetary benefits, Class Counsel were successful in negotiating an agreement that Wal-Mart will provide seating to its front-end cashiers pursuant to the Seating Pilot Program as set forth in the Agreement at §5.1. This provision will benefit not only the currently employed Class Member cashiers, but also those California cashiers who become employed with Wal-Mart in the future. This provision also ensures that the health and

safety priorities underpinning the enactment of section 14(a) of Wage Order 7-2001 will be realized. As set forth below, the settlement class mirrors the class definition certified by this Court – and <u>only</u> includes front-end cashiers employed by Wal-Mart in California during the class period. *Id.* at §2.3.1. Thus, the Class period contemplated under the settlement is June 11, 2008 through the date the Court grants preliminary approval of this settlement. As of the date of the filing of this motion, there are over 99,000 Class Members in this case.[1] As the class period runs through the date of preliminary approval (i.e., a future date that is not precisely known), the exact number of Class Members is unknown. Under the Agreement, Wal-Mart will provide the Settlement Administrator with an electronic file identifying the names, last known addresses and social security numbers of all Class Members within fourteen (14) days of Preliminary Approval. Agreement §2.32. Finally, the release is narrowly tailored. Class Members who do not opt-out will be releasing only their rights pertaining to the alleged seating regulation violation during the class period while they were employed as front-end cashiers. *Id.* at §13.1; Jones Decl. ¶17.

## III.    FACTUAL BACKGROUND[2]

After submitting the required pre-litigation notice to the LWDA, Plaintiffs Nisha Brown and Kathy Williamson filed their class action complaint against Wal-Mart on June 11, 2009. The complaint alleged a single cause of action under the Labor Code Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq.*, arising from Wal-Mart's alleged failure to provide seats to its front-end cashiers for their use while checking out customers at the front-end registers. See, ECF No. 1. The PAGA was enacted based on a finding that many workplace violations were going un-remedied because State enforcement agencies were understaffed and inadequately funded. (*See* Stats. 2003, S.B. No. 796, §1.)

---

[1]    970 individuals submitted timely opt-outs to the court approved class notice in 2016. See, ECF No. 164 at ¶9. Those individuals have been properly removed from this case and will not be included in either the proposed settlement, or the proposed notice program.

[2]    Wal-Mart does not concede all of the factual statements set forth herein. For purposes of this Settlement, however, Wal-Mart does not object to the filing of this Motion for Preliminary Approval.

un-remedied because State enforcement agencies were understaffed and inadequately funded. (*See* Stats. 2003, S.B. No. 796, §1.)

This case was one of the first "suitable seating" cases filed in the State of California. Righetti Decl. ¶8.   At the time this case was filed it was not clear that violations of wage order regulations qualified as a PAGA violation.   That question was answered approximately one year later by *Home Depot U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 221-22, 226 (employer's non-compliance with §14(A) constitutes a violation of Labor Code §1198 that may be enforced through PAGA action); *Bright v. 99¢ Only Stores* (2010) 189 Cal.App.4th 1472, 1478-79, 1481 (same).)

This case has been hotly contested and vigorously litigated since its inception in 2009. Shortly after removing the case to this Court, the parties initiated formal discovery.   Wal-Mart filed a motion for Judgment on the Pleadings, which the Court denied on October 19, 2010.   See, ECF No. 52.   Thereafter Plaintiffs continued their investigation and discovery efforts and began to prepare for briefing on Plaintiffs' Motion for Class Certification.   On August 5, 2011, Plaintiffs filed their Motion for Class Certification.   See, ECF No. 81.   Following a lengthy hearing, the Court granted Plaintiffs' Motion for Class Certification on August 24, 2012 (ECF No. 110) and certified the following class: "All persons who, during the applicable statute of limitations, were employed by Wal-Mart in the State of California in the position of Cashier."   In the Certification Order, the Court confirmed that the job title "Cashier" in the certification motion and class definition refers to "only the positions with Job Code 30548." *Id.* at p. 6, FN 1.   This is due to the fact that Wal-Mart's Rule 30(b)(6) designees confirmed that code 30548 classified within Wal-Mart as a job analysis code – encompasses the job codes for front-end cashiers, all of whose primary job duty was to checkout customers at the front end registers.   See, ECF No. 110.

On November 7, 2012, Wal-Mart filed a Rule 23(f) Petition for Permission to Appeal the Court's certification Order. ECF No. 113. On November 26, 2012, Plaintiffs filed their Motion to facilitate Class Notice (ECF No. 115) and on October 4, 2012, Wal-Mart filed its Motion to Stay the case pending its Rule 23(f) petition (ECF No. 117). On November 11, 2012, this Court granted Wal-Mart's Motion to Stay and denied the Motion to facilitate Class Notice as moot. (ECF No. 124).

In May of 2013, Plaintiffs filed their Answering Brief in the Ninth Circuit. Oral argument was heard by the Ninth Circuit on Wal-Mart's appeal on December 6, 2013. On that date, the Ninth Circuit also heard oral argument in two other suitable seating cases that had been administratively coordinated before the same panel, *Kilby v. CVS Pharmacy, Inc.*, No. 12-56130 (9th Cir.) and *Henderson v. JPMorgan Chase Bank, N.A.*, No. 13-56095 (9th Cir.). On December 31, 2013, the Ninth Circuit certified questions to the California Supreme Court regarding interpretation of California Wage Order 7-2001, Section 14. Briefing and argument ensued at the California Supreme Court. On April 4, 2016, the California Supreme Court issued a ruling on the certified questions. *See Kilby v. CVS Pharmacy, Inc.*, 63 Cal.4th 1 (2016). Subsequently, the Ninth Circuit affirmed this Court's order granting class certification See, *Brown v. Wal-Mart Stores, Inc.*, 651 F. App'x 672 (9th Cir. 2016).

On November 14, 2016, the Court approved the Class Notice program proposed by Plaintiffs and appointed a Notice Administrator (Phoenix Settlement Administrators (PSA)). Notice was mailed to the 80,640 members of the certified class shortly thereafter. See, ECF Nos. 149 and 164. The notice program resulted in 970 opt-outs. See, ECF No. 164.

The parties then continued to pursue discovery pertaining to all issues, briefed and obtained rulings from Magistrate Van Keulen, and attended numerous case management conferences. On January 2, 2018, Plaintiffs filed their Motion for Summary Judgment (ECF No. 192) and on

January 4, 2018, Wal-Mart filed its Motion to Decertify the Class (ECF No. 193). On January 15, 2018, while those motions were pending, the parties attended a full-day mediation before Mark Rudy, Esq. in San Francisco.  Although this mediation attempt was unsuccessful, the parties and the mediator discussed the strengths and weaknesses of each party's respective litigation positions in this case in great detail.  Jones Decl. ¶6.  Following the deadline to disclose expert witnesses, Plaintiffs filed a Motion to Strike Wal-Mart's expert witness disclosures due to a failure to comply with the disclosure requirements of Rule 26.  (ECF No. 213).

On April 25, 2018, Wal-Mart filed a Motion for Judgment on the Pleadings.  (ECF No. 226).  According to a schedule set by the Court the parties briefed Wal-Mart's Motion to Decertify the Class and Plaintiffs' Motion to Strike.  After hearing oral argument, on April 27, 2018, the Court denied Wal-Mart's Motion to Decertify the Class, and granted in part and denied in part, Plaintiffs' Motion to Strike.  ECF Nos. 230 and 231.  On May 31, 2018, Wal-Mart filed a Cross Motion for Summary Judgment. ECF No. 239.  Again, according to a schedule set by the Court, the parties fully briefed those motions.  On July 13, 2018, the Court denied the parties' Cross Motions for Summary Judgment and denied Wal-Mart's motion for Judgment on the Pleadings. (ECF No. 263).  The parties then completed their respective portions of the Joint Final Pretrial Conference statement and on August 31, 2018, Wal-Mart filed a Motion for Leave to Appeal the denial of its Motion for Judgment on the Pleadings.  On September 3, 2018, Wal-Mart filed a Motion in Limine. (ECF No. 276).

On September 4, 2018, less than a month before trial was set to commence, the parties attended a second full day of mediation before retired United States District Court Judge Layn Phillips in Chicago.  As a result of that mediation the parties agreed to resolve this action, in principal, on the terms and conditions set forth in the Agreement.  Jones Decl. ¶6.  At all times, the mediation was conducted at arm's length, hard fought, and non-collusive.  During the mediation

process, Class Counsel carefully considered and evaluated the relevant legal authorities relating to both liability and the assessment of PAGA penalties, the evidence adduced to support the claims asserted, the likelihood of prevailing at trial, the risk, expense and duration of continued litigation, and the substantial likelihood of appeals and subsequent proceedings if Plaintiffs were to prevail at trial.  Jones Decl. ¶¶14-17.  Ultimately, the parties were able to reach an agreement that Class Counsel believes is fair, reasonable, and in the best interests of the Class Members.

A review of the Docket in this case provides some perspective on the considerable amount of litigation and motion effort that was devoted to this case by Plaintiffs and Class Counsel.  Yet, most of the discovery and investigation efforts are not evident from the Docket entries.  Discovery and investigation were both extensive endeavors.  In total, the parties conducted and/or defended 30 depositions all over the nation.  These depositions included the two named plaintiffs, an additional California cashier Class Member, the depositions of seven Wal-Mart Store Managers, six expert witness depositions, the depositions of nine Wal-Mart Rule 30(b)(6) witnesses covering 82 topics, the depositions of three Wal-Mart non Rule 30(b)(6) witnesses, and the depositions of two Rule 30(b)(6) witnesses for Wal-Mart's checkout lane suppliers.  Jones Decl. ¶5.  In terms of written discovery, Plaintiffs propounded a total of Ninety-Five (95) Document Requests to Wal-Mart and fifty (50) Interrogatories.  *Id.*  In turn, Wal-Mart propounded a total of Four Hundred Twenty-Eight (428) Document Requests, Thirty Eight (38) Interrogatories and Thirty Three (33) Requests for Admissions.  *Id.*  When pressed on what Wal-Mart would rely upon to support its denials and affirmative defenses, Wal-Mart produced in excess of One Million Seven Hundred Thirty Thousand (1,730,000) documents to Plaintiffs and over One Thousand Two Hundred (1,200) hours of video depicting cashiers performing their work at the check-out lanes.  *Id.*  Finally, over One Thousand (1,000) pages of documents were produced pursuant to subpoenas issued to third parties.  Wal-Mart's experts relied upon – and their expert files included – literally

*hundreds* of texts and articles that required (a) careful review in preparation for depositions and trial, and (b) review with Plaintiffs' experts.

## IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), "[a] class action shall not be dismissed or compromised without the approval of the court...." Fed. R. Civ. P. 23(e).  Rule 23(e) requires a district court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The purpose of the requirement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) "Approval under 23(e) involves a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

The District Court has "broad discretion" to determine whether a proposed class action settlement is fair.  *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *5 (N.D. Cal. May 21, 2013).  The burden to establish fairness rests with the parties seeking settlement. *Id.* at 2013 WL 2237890, at *5.  Approving a preliminary settlement agreement and notice to a proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).   In reviewing a request for preliminary approval of a class action settlement, the Court's task is to determine whether the proposed settlement is within the "range of

reasonableness" that would warrant sending out a notice of the settlement and giving the class members the opportunity to object. (4 *Newberg on Class Actions*, 5th Ed. §13.10; *Manual for Complex Litigation*, §30.41.)

The relevant factors for the fairness inquiry are: "(1) strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; and (7) the experience and views of counsel." *Staton v. Boeing Co*, 327 F.3d 938, 959 (9th Cir. 2003); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (1996), citing *Officers for Justice*, supra, 688 F.2d at 624.

## A.   There Is A Presumption Of Fairness

Courts presume the absence of fraud or collusion in negotiation of the settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, §13.14.  While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and significant discovery has been completed. *Id*.  A presumption of fairness in a class action settlement agreement exists where:  (1) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.  *Dunk*, 48 Cal. App. 4th at 1802, citing Newberg & Conte, *Newberg on Class Actions* (3d ed. 1992) § 11.41, p. 11-91.  Fairness is also presumed where the settlement follows a formal mediation, especially where the mediator is a respected member of the legal community, and recommends the settlement. *Dunk*, 48 Cal. App. 4th at 1802; *Newberg* §13.14.  According to the *Dunk* court:

Due regard should be given to what is otherwise a private consensual agreement between the parties. The [Court's] inquiry 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.' (*Id.* at 1801 <u>quoting</u> *Officers for Justice*, 688 F.2d at 624.

The proposed settlement meets these criteria, and merits the Court's preliminary approval because it was reached through arm's length bargaining, involved a mediation before a respected and experienced mediator; investigation and discovery are sufficient to allow counsel and the Court to act intelligently; and because Class Counsel is experienced in similar litigation, as explained more fully below.

**B.     The Settlement Is The Product Of Arm's-Length Bargaining**

The parties engaged in two thoroughly briefed and protracted mediation sessions with two separate mediators before resolving this case. The first mediation was conducted by Mark Rudy, Esq. in January of 2018. Jones Decl. ¶6. Although the parties were not able to resolve the case at the first mediation, this mediation assisted the parties in better understanding their respective litigation positions. *Id.*

The second mediation in Chicago, which resulted in the parties agreeing to resolve this action, was presided over by a well-respected mediator, retired United States Court District Judge Layn Phillips. This mediation was conducted after the Court denied the parties' cross Motions for Summary Judgment. See, ECF No. 263 at p. 24-28 [identifying numerous material factual disputes precluding summary judgment]. Moreover, this mediation was conducted less than a month before trial was set to commence and <u>after</u> the parties had substantially completed their trial preparations including the following: (1) their respective portions of the Joint Final Pre-Trial Conference Statement; (2) the exchange of trial witness lists; (3) the exchange of trial exhibits; (4) the preparation of Motions in Limine; (5) the completion of proposed findings of fact and conclusions of law; (6) the identification of deposition page and line cites and discovery responses to be used at

trial, and (7) extensive pre-trial work with Executive Presentations in Los Angeles who, due to the sheer volume of evidence at hand, was engaged by Plaintiffs as a digital trial services consultant. Jones Decl. ¶¶5-6.

During all settlement discussions the parties conducted their negotiations at arms' length, and, in spite of a mutual desire to resolve the case, always in an adversarial manner. The parties have been able to construct a settlement that, given the constraints and realities of the case, is fair, reasonable, adequate, and in the best interests of the Class. Jones Decl. ¶¶14-17. The absence of collusion can also be found in the settlement terms agreed upon by the parties. Unlike many class action settlements where a portion of the settlement fund reverts to the Defendant, this is a non-reversionary settlement in which Wal-Mart has agreed to pay out the full Sixty-Five Million Dollars, regardless of the number of claims submitted by the Class Members. Under the terms of this total payout settlement, none of the Sixty-Five Million Dollars reverts to Wal-Mart. Agreement §5.2. Similarly, should the Court decide to award a lesser amount in attorney's fees, costs, or enhancement awards, the difference between the amount sought and the amount awarded does not revert to Wal-Mart and instead increases the Net Settlement Fund, 75% of which goes to the LWDA and 25% of which goes to the class. *Id.* at §5.2.3-5.2.4; See, *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) [noting that similar factors weigh in favor of preliminary approval].

**C.      The Strength Of The Plaintiffs' Case And The Risk, Expense, Complexity, And Likely Duration Of Further Litigation**

Arriving at a settlement acceptable to both parties was no small achievement since both parties were confident that they would prevail at trial on the singular liability issue involved in this case – whether the nature of the work performed by front-end cashiers reasonably permits the use of a seat. On the one hand, Plaintiffs were confident that their evidence, consisting of testimony from Wal-Mart's Rule 30(b)(6) designees and Wal-Mart's decade long experience with providing

seats to injured/disabled cashiers for their use at the front-end check stands, as well as a pre-litigation customer perception study conducted by Directions Research Inc.  Plaintiffs feel strongly that this evidence demonstrates that the nature of the work reasonable permits the use of a seat.  See, ECF No. 192 (Motion for Summary Judgment) [outlining the evidence relied upon by Plaintiffs at summary judgment].

On the other hand, Wal-Mart was similarly confident in its evidence regarding liability.  Such evidence consisted of expert testimony from: (a) an ergonomist outlining his opinions regarding safety/risk concerns with providing seats and the negative health effects stemming from seated cashier work; (b) a survey conducted of Wal-Mart customers relating to their preferences of seated versus standing cashiers; (c) documentation allegedly demonstrating a decrease in cashier productivity associated with seated cashier work compared to standing cashier work; and (d) testimony regarding the difficulties and costs (including lost profits) that Wal-Mart felt would be associated with providing seats to cashiers.  See, ECF No. 239 (Wal-Mart's Cross Motion for Summary Judgment)[outlining the evidence relied upon by Wal-Mart at summary judgment].

This Court's Order denying the parties' cross Motions for Summary Judgment highlights the numerous factual disputes precluding summary judgment and also underscores the <u>significant risks</u> facing both sides at trial.  See, ECF No. 263.  The factual issues identified in the Court's Order denying Summary Judgment were discussed at length by both sides during the mediation.  Jones Decl. ¶6, 14-17.  Class Counsel carefully considered and evaluated the relevant legal authorities, the evidence gathered by both sides relating to liability, the likelihood of prevailing at trial, the risk, expense and duration of continued litigation, and the high likelihood of appeals and subsequent proceedings if Plaintiffs prevailed at trial.   In agreeing to resolve this case, Plaintiffs were mindful of the fact that the only two other suitable seating cases that have gone to trial resulted in a verdict for the defense.  Jones Decl. ¶¶14-17. Plaintiffs were also mindful of the fact

that, after nine years of litigation, they risked recovering nothing in the event of a defense verdict at trial. While Plaintiffs were very confident in their evidence, a verdict in Plaintiffs favor at trial was certainly not pre-ordained.

The biggest unknown factor in this case was, even assuming Plaintiffs prevailed at trial, what amount would the Court actually award in penalties? Regarding this issue, Class Counsel considered the significant risk of prevailing at trial and actually receiving less in penalties then the amount offered at settlement. This is because the PAGA provides the Court with wide discretion to award a lesser amount than the maximum civil penalty amount specified based on a number of factors. See, Cal. Labor Code §2699(e)(2). In fact, the reported decisions regarding the assessment of PAGA penalties demonstrate that trial courts have consistently exercised their discretion under §2699(e)(2) to vastly reduce the amount of PAGA penalties well below the maximum amount provided by the PAGA. See, Jones Decl. ¶14. The risk of receiving a lesser award in penalties than the amount offered at settlement, or receiving no penalties at all in the event of a defense verdict, was given great consideration by Class Counsel. Plaintiffs had to be cognizant that there was a risk of achieving a pyrrhic victory at trial, or after an appeal.

Regarding the issue of complexity, class action cases such as this are, by definition, inherently complex. Obtaining class certification -- and maintaining class certification through trial -- are complex issues that require specialized knowledge and skill. Additionally, litigating large class action cases such as this on a contingency fee basis involving nearly 100,000 class members against a well funded and well respected Defendant like Wal-Mart, also require attorneys who are willing to take substantial risks. In addition to the class aspects of this case, this case was complex in that liability is based on a novel issue of law that had not previously been litigated prior to the filing of this action. Over the course of the last nine plus years, Class Counsel skillfully litigated this case and developed a comprehensive discovery plan designed to enhance the

possibility of prevailing at trial.    Righetti Decl. ¶9.   While there were attorneys in other similar

suitable seating cases (filed around the same time as this case) who chose to focus their efforts on

litigating the "nature of the work station," Class Counsel here choose a different approach and

instead focused on the *nature of the work* as demonstrated by Wal-Mart's policy and practice of

providing seats to its injured/disabled cashiers under its ADA accommodations policies.  Id.  At

trial, Plaintiffs also faced novel and complex issues relating to Defendant's business judgment

defense and how to combat Wal-Mart's arguments that it would both lose substantial revenue and

be required to reconfigure its front-end operations in order to accommodate the use of seats.  Jones

Decl. ¶14.

Finally, Class Counsel also considered the high likelihood of appeals on the issue of

penalties had they prevailed at trial in light of the fact that no court has yet to assess penalties

against a defendant for failing to provide seats to its employees in violation of §14(a) of Wage

Order 7-2001.  Jones Decl. ¶¶14-17.  An appeal would necessarily prolong any recovery in a case

which had already been pending for more than nine years.  As discussed in more depth below,

Class Counsel are very satisfied with the terms of the settlement.  In particular, Class Counsel are

pleased with the overall monetary settlement amount, the fact that the settlement is non-

reversionary (i.e., no settlement monies will revert to Wal-Mart), and that Wal-Mart has agreed to

provide seating to its front-end cashiers pursuant to the Seating Pilot Program as set forth in the

Settlement Agreement at §5.1. See, Jones Decl. ¶10.  After all, that is what this whole case is

about.  In summary, Plaintiffs contend that these factors warrant preliminary approval.

**D.     The Risk Of Maintaining Class Action Status Throughout Trial**

The Settlement class in this case mirrors the class definition certified by the Court since it

includes all persons employed by Wal-Mart in California in the position of front-end Cashier

during the class period.  The Court will recall that at both certification, and again at decertification,

Wal-Mart pointed to differences in the work performed by cashiers at outlying registers such as sporting goods, lawn and garden, etc. as compared to the work performed by front-end cashiers. See, ECF Nos. 110 at p. 12; 230 at p.5. As the Court noted in its original certification order and order denying decertification, the work performed at these outlying registers was immaterial since the persons working those registers had a different job codes and titles than front end cashiers. *Id.* Due to their diligence in pursuing both pre and post certification discovery on this issue, Class Counsel were able to identify the specific job codes and titles of those Class Members who perform their work at the front-end registers (i.e., front-end cashiers) and only front-end cashiers are included in this settlement. In addition, the Class Members are <u>only</u> releasing their claims under §14 of Wage Order 2001, during the time period that they were employed by Wal-Mart as front-end cashiers. Ex. 1, Agreement §13.1. Thus, Class Members retain their right to sue Wal-Mart for other alleged violations of the Labor Code. In fact, Class Members retain their right to sue Wal-mart for alleged violations of §14 of Wage Order 2001during the time that they may have been employed by Wal-Mart in a position <u>other</u> than front-end cashier. *Id.;* Jones Decl. ¶17.

While there is always a risk that the Court could decertify the class either at trial or even following trial, candidly, in light of the Court's Orders Certifying the Class and Denying Wal-Mart's Decertification Motion, Class Counsel believe the risk of maintaining class action status throughout trial was minimal. Of course, this does not mean that the Court should not preliminarily approve this settlement. See, *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015).

**E.      The Amount Offered In Settlement**

In assessing the amount offered in settlements of class action cases such as the instant case, the Court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with "proper deference to the private consensual decision of the parties" to

reach an agreement rather than to continue litigating. *Hanlon,* 150 F.3d at 1027; *see also In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Notably, class action settlements do not need to embody the best result for preliminary approval. *In re Google Referrer Header Privacy Litig.*, No. 5:10-CV-04809 EJD, 2014 WL 1266091, at *6 (N.D. Cal. Mar. 26, 2014).

The amount offered in settlement, Sixty-Five Million Dollars, clearly supports preliminary approval. Based on Class Counsel's research into other pure PAGA settlements/verdicts, we believe that this case presents the largest pure PAGA settlement ever in the state of California since the PAGA was enacted, by far. Jones Decl. ¶¶11-13. Additionally, as discussed in the Jones Decl. at ¶¶11-13 and 15, this $65,000,000 settlement is nearly $30,000,000 more than **the combined amount** of all other settlements/verdicts in other suitable seating cases to date ($35,596,166).[3]   In PAGA cases such as this the State of California is the real party in interest. *Iskanian v. CLS Transportation of Los Angeles, LLC* (2014) 59 Cal.4th 348, 382; *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003. As a result, in assessing the reasonableness of this proposed settlement due regard should be given to the amount recovered by the State of California ($32,132,625), as opposed to the individual Class Members.

Civil penalties for PAGA violations are assessed on a pay period basis at up to One Hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and up to Two Hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. Cal. Labor Code §2699 (f)(2). As noted, the Court retains the direction to reduce this amount based on the factors enumerated in §2699(e)(2). The law is unsettled as to when and how PAGA's "subsequent" violation provisions of $200 per pay period are triggered. In fact, there is scant case law addressing this issue. See, *Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157,

---

[3] Recently, Preliminary approval was granted in another suitable seating case pending in the San Diego Superior Court for $18,000.000 in *Hall vs. Rite Aid* case No. 37-2009-00087938. Even if one includes the Rite Aid settlement into the equation, the combined settlement amount for all other suitable seating cases amounts to only $53,596,166.

1209 (2008)[suggesting that "subsequent" violations only occur <u>after</u> the employer is notified of a violation by the Labor Commissioner or a Court].  Here, Wal-Mart argues that PAGA's subsequent violations have not been triggered because neither the Labor Commissioner, nor any court, has notified Wal-Mart that they are in violation of the Labor Code by failing to provide seats to their California front-end cashiers.  Simply put, whether or not PAGA's $200 subsequent violations penalty provision has been triggered is unsettled and undoubtedly would have been the subject of considerable discussion at trial – and perhaps on appeal -- assuming the Plaintiffs prevailed at trial

According to Wal-Mart's records, there were a total of 2,610,921 pay periods settlement Class Members were employed by Wal-Mart as front end cashiers as of the mediation.  Thus, Wal-Mart's maximum exposure, assuming zero reduction by the Court for the factors enumerated in §2699(e)(2), is between $261,092,100 (assuming $100 per pay period) and $522,184,200 (assuming $200 per pay period).  As a result, this settlement represents 24.9% of Wal-Mart's maximum exposure at $100 per pay period, or 12.45% of Wal-Mart's Maximum exposure at $200 per pay period.  Class Counsel believes this is an excellent result.  In considering the reasonableness of the settlement achieved in this case, the Court should also take into consideration the settlements achieved in other suitable seating cases seeking PAGA penalties for violations of §14(a) of Wage Order 7-2001.  As discussed in the Jones Declaration at ¶12, the average amount per pay period for other similar suitable seating settlements to date (including the Rite Aid settlement) is only $13.80 per pay period. In this case, the proposed settlement amounts to $24.90 per pay period, an $11 per pay period increase over the average pay period settlement amount in other suitable seating cases.  Jones Decl. ¶12.

In terms of settlements in other suitable seating cases, the case which is most similar to the instant case in terms of pay periods (2,610,921), class members (approximately 99,000), the position at issue (front-end cashier), and the similarity of the Defendant's operations (big box

retailer) is *Enombang v. Target*, Alameda County Superior Court Case No. RG17853948. The *Target* case involved over 90,000 front end cashier class members, 1,939,006 pay periods, and was brought against Wal-Mart's directed competitor who sells a similar mix of items sold by Wal-Mart. The *Target* case settled for $9,000,000 which equates to only $4.66 per pay period. The reasonableness of this settlement is demonstrated by the fact that proposed settlement amount in this case is 622% higher than the *Target* settlement amount, and the dollar per pay period amount is 434% higher as well. Jones Decl. ¶13.

Further enhancing the reasonableness of this settlement is the fact that in addition to paying $65,000,000 to settle this case, Wal-Mart has agreed to *change its practices* and provide seating to its front-end cashiers pursuant to the Seating Pilot Program as set forth in the Settlement Agreement at §5.1. This is a very significant result as it not only impacts Wal-Mart's currently employed cashiers, but also cashiers who will become employed by Wal-Mart in the future. Additionally, by agreeing to provide seats to its cashiers, this settlement achieves the purpose behind the enactment of the suitable seating provision of the Wage Order which is designed to promote employee's health and safety. See, *Kilby v. CVS Pharmacy, Inc.* 63 Cal.4[th] 1,11 (2016).

The reasonableness of this settlement is further enhanced by the proposed distribution formula under which 75% of the net settlement fund ($32,132,625) will be paid to the State of California pursuant to Cal. Labor Code §2699(i) to be used for enforcement of the State's labor laws and education of employers and employees alike about their rights and responsibilities under the labor code. Here again, this settlement achieves the very purposes underpinning the PAGA. See, *Arias v. Superior Court,* 46 Cal.4[th] 969, 980 (2009) [confirming purpose of PAGA enactment]. In addition, the amount remaining in the Net Settlement Fund after the payment to the LWDA is fairly apportioned to the Class Members based on the number of pay periods they were employed during the class period as front end cashiers. Agreement §5.2.2. As noted in the Jones

Decl. at ¶9, assuming that all Class Members submit timely and valid claim forms, Class Members who were employed as front-end cashiers during the entire class period will actually recover over $1,000, which is a truly meaningful amount when one considers that the average hourly wage paid to the class is $10.00 per hour.  In addition, assuming that not all Class Members timely submit valid claim forms, the amounts received by Class Members who do submit valid claims will increase substantially.

In terms of the amounts sought for attorney's fees, up to one-third of the settlement amount, Class Counsel are aware that this amount exceeds the bench mark award set in the Ninth Circuit of 25% for common fund cases.  However, this should not prevent preliminary approval of this settlement as Class Counsel will submit a formal fee application, should preliminary approval be granted, outlining both the substantial amount of work completed in this case over the course of the last nine years as well as the reasons why an upward departure from the bench mark amount is warranted in this case.  Further, the settlement agreement does not include a "clear sailing provision" relating either to the amount of attorney's fees, costs, or enhancements awards, and Wal-Mart is free to object to any of the amounts sought, as are the class members themselves. Finally, Class Counsel note that numerous District Courts in the Northern District have awarded fees exceeding the bench mark amount of 25%.[4]

Considering all of the circumstances of this case which led to the settlement, including the possibility of either losing on the merits at trial and recovering no monetary compensation

---

[4] See,  *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013)[awarding fees of 30% of the common fund]; *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.1995) [affirming fee award equal to 33% of fund]; *Garner v. State Farm Ins.*, 2010 WL 1687829 (N.D. Cal. April 22, 2010) [awarding fee of 30% of the $15 million settlement fund]; *In re Activision Sec. Litig.*, 723 F.Supp. at 1375 (Patel, J.) [32.8% fee]; *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, *7 (N.D.Cal.1997) (Jensen, J.) [33.3% fee]; *In re Heritage Bond Litig*, 2005 WL 1594403, at *18, n.12 (C.D. Cal. June 10, 2005) [noting that more than 200 federal cases have awarded fees higher than 30%]; *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 379 [affirming award equal to 33% of common fund]; *Vizcaino*, 290 F.3d at 1047 [28% fee award]; *Brailsford*, 2007 WL 1302978 at * 5 [awarding fee equal to 30% of settlement fund].

whatsoever, the possibility of prevailing at trial and receiving a penalty award less than the amount offered in settlement, and the high likelihood of appeals, Class Counsel submit that the relief obtained for the class falls within a reasonable range of possible settlements.

### F.    The Extent Of Discovery And The Stage Of The Proceedings

As discussed above, the settlement of this action occurred less than one month before trial was set to commence and the parties engaged in extensive discovery, motion practice, and trial preparation prior to reaching a settlement in this case.   Class Counsel are confident that sufficient discovery was conducted prior to agreeing to settle this case.   These factors weigh in favor of preliminary approval. Jones Decl. ¶5.

### G.    The Experience And Views Of Counsel

As set forth in the declarations of lead counsel, Charles A. Jones and Matthew Righetti, Class Counsel are very experienced in class action litigation.   In fact, lead counsel are among a select few attorneys in this country who have actually tried class action cases.   Jones Decl. ¶4. Righetti Decl. ¶¶2-6.  In addition, Class Counsel are well versed in this area of law having filed one of the first cases alleging a violation of §14(a) of Wage Order 7-2001 and also by obtaining the first order certifying one of these types of cases as a class action.  *Id.* As set forth in their respective declarations, in light of all relevant factors, Class Counsel firmly believe that this settlement is fair, reasonable and adequate and warrants preliminary approval by this Court. *Id.*

## V.    CLASS NOTICE

Rule 23(c)(2)(B) requires parties to provide class members with "the best notice... practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) requires provision of reasonable notice to all class members that would be bound by the proposed settlement. "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*

*v. Ge. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (citations and internal quotations omitted).   The notice program submitted by the parties complies with these requirements.

Each of the 99,000 plus Class Members will receive a notice and claim form, attached as Exhibits 1(A) and 1(B).  The Notice and Claim form will be mailed to the last known address of each of the Class Members based on Wal-Mart's records.   Prior to mailing, the Settlement Administrator PSA (which is the same entity that administered class notice) will perform both National Change of Address updates for the entire class, as well as high level skip traces using the last four digits of the Class Member's social security numbers. Agreement §6.2.  This is designed to ensure that all Class Members actually receive this notice.   In addition, a web site has been created which contains the following information: (1) a brief description of the nature of this action; (2) the Complaint; (3) the proposed Notice; (4) the Settlement Agreement; (5) a Claim Form unique to each Class Members that can be filled out and submitted through the website; (6) a toll free number staffed 24 hours with qualified operators to provide information to Class Members, and (7) the direct contact information of Class Counsel which Class Members can use to obtain more information and/or answers to their questions. [5] Agreement §6.3.

With respect to the Notice, the proposed form of Notice is based on examples of settlement notices contained on the Federal Judicial Centers Web Site which can be viewed at https://www.fjc.gov/content/securities-class-action-certification-and-settlement-full-notice.      In addition, the proposed Notice also includes the language suggested on the Northern District's "Procedural Guidance For Class Action Settlements."  For the Court's convenience, Word versions of the Notice and Claim form are also being submitted to the Court.  In order for Class Members to receive a settlement payment, they are required to submit a timely and valid claim form either via mail or through the website as discussed in the Notice and Agreement.

---

[5] Consistent with the "Procedural Guidance For Class Action Settlements" of the Northern District of California, Class Counsel will file their application for attorney's fees, costs and enhancement awards at least fourteen days before the deadline for objections to this settlement.

In short, the proposed Notice and Claim Forms advise the Class Members of their anticipated minimum net recovery under this settlement, how they can object to the settlement[6], how they can exclude themselves from the settlement, the amount of fees and costs sought by Class Counsel, how the Class Members can view Class Counsel's fee application, the amount of enhancement payments sought, as well as the date of the final approval hearing.  The deadline for Class Members to submit claim forms, objections, and exclusion letters, is sixty days from the date of the mailing of notice. Agreement §6.5.  In addition, Class Members can dispute the accuracy of Wal-Mart's records regarding the number of pay periods employed as a front-end cashier during the class period if they believe that Wal-Mart's records are inaccurate. (*Id.* at §5.2.2.5.4.)  In the event that a class member disputes Wal-Mart's records and the parties are not able to resolve the disputes informally, the dispute will be submitted to the Settlement Administrator.  The Settlement Administrator will resolve any such disputes by reviewing the records submitted by the class member and Defendant. *Id.*   In addition, the Settlement Administrator will send a reminder postcard for any un-cashed checks 30 days prior to the check expiration dated. *Id* at §5.2.2.7. Subject to Court approval, the amount of any un-cashed checks shall be paid to the LWDA. *Id.*

## VI.   CLASS CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE

The Court granted Plaintiffs Motion for Class Certification on August 24, 2012 (ECF No. 110) and on June 8, 2016, the Ninth Circuit affirmed the Court's Certification Order. See, *Brown v. Wal-Mart Stores, Inc.,* 651 F. App'x 672 (9th Cir. 2016).  Thereafter, on April 27, 2018, the Court denied Wal-Mart's Motion to Decertify the Class (ECF No. 230).  Put simply, the Court is very

---

[6] It is doubtful that aggrieved employees have any right to object to a PAGA settlement. In PAGA actions, the State is the real party in interest, and PAGA confers no substantive rights on the aggrieved employees. (*Iskanian v. CLS Transportation of Los Angeles, LLC* (2014) 59 Cal.4th 348, 382; *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.) Furthermore, the PAGA statute only requires notice of settlement to be sent to the LWDA, not the aggrieved employees, which suggests that the aggrieved employees are not intended to have any role in the approval process.  (Labor Code § 2699(1)(2)).) Nevertheless, because there is no authority directly on point, the parties have agreed to send out class notice and give Class Members the opportunity to voice any concerns about the settlement.

familiar with the evidence and arguments supporting certification in this case. The settlement class proposed by the parties "all individuals who were employed by Wal-Mart in the State of California in the position of front-end cashier between June 11, 2008 and the date the District Court grants preliminary approval of the Settlement[7]" mirrors the class definition approved by this Court at certification. See, ECF No. 149 at p.1. For the reasons stated in ECF No. 110, the Ninth Circuit's Order affirming the original class certification order, and ECF No. 230, certification of the proposed Settlement Class in this case remains appropriate.[8]

## VII.   ESTABLISHMENT OF THE QUALIFIED SETTLEMENT FUND

Under the Settlement Agreement, Wal-Mart has agreed to transfer the required portions of the Class Settlement Amount into a Qualified Settlement Fund as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1, in full settlement and discharge of the claims of the Settlement Class Members against Wal-Mart that are included under the Settlement Agreement. (Agreement §12.1.) The Parties determined that establishing a Qualified Settlement Fund to receive and hold the settlement funds, and to distribute the funds according to the terms of the Settlement Agreement and under the administration of the Settlement Administrator, meets the criteria under the regulations and also would serve the best interests of the Parties, and on this basis request the Court approve the establishment of a Qualified Settlement Fund.

The Qualified Settlement Fund will be administered by the Settlement Administrator, who, along with the Qualified Settlement Fund, will remain subject to the continuing jurisdiction of this Court. The Qualified Settlement Fund will be a segregated bank account opened at a financial institution mutually agreed by the Parties. The Qualified Settlement Fund account will receive the Gross Settlement Amount from Wal-Mart and will hold that sum, and the earnings thereon, until

---

[7] As noted in the Agreement at §2.34, the 970 individuals who excluded themselves as class members from this case by opting-out of this case when given the opportunity to do so in response to the Notice of Pendency of Class Action sent on December 23, 2016, are not settlement class members and will not receive Notice of this Settlement.

[8] Wal-Mart reserves its objections to class certification, but does not oppose certification of the proposed settlement solely for purposes of settlement.  Agreement at §3.8.

the Settlement Administrator has completed all administration of such funds and income thereon, as well as disbursements to Settlement Class Members and Class Counsel, and payment of taxes and administrative costs, as more fully set forth in Section 12 of the Settlement Agreement and subject to further approvals of this Court, if required.

Approval by the Court of the establishment of the Qualified Settlement Fund best serves the interests of the Settlement Class Members by assuring that the Class Settlement Amount is transferred by Wal-Mart following approval of this Motion. Approval by the Court of the establishment of the Qualified Settlement Fund best serves the interests of Wal-Mart by assuring finality to the claims against Wal-Mart in this litigation that are the subject of the Settlement Agreement.  With the Court's approval, therefore, establishment of a Qualified Settlement Fund will satisfy the requirements of Treasury Regulation §1.468B-1(c), C.F.R. §1.468B-1(c), by (a) being established pursuant to the approval of this Court, (b) resolving and satisfying claims against Wal-Mart for alleged violations of law, and (c) constituting a segregated account, all as required by those regulations.

## VIII.  CONCLUSION

A proposed Order granting preliminary approval is submitted concurrently herewith.  For the Court's convenience, a Word version of the proposed Order is also being provided to the Court. As all of the relevant dates under this settlement are triggered by the date of the entry of a preliminary approval Order, the proposed Order also includes a proposed settlement approval schedule.  For example, should the Court grant preliminary approval of this proposed settlement on the date of the hearing scheduled for this Motion (October 24, 2018), the parties request that the final fairness hearing be scheduled for February 14, 2019 (113 days following the entry of the Order granting preliminary approval.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

JONES LAW FIRM
RIGHETTI GLUGOSKI, P.C.

Dated:  October 10, 2018

 /s/ Charles A. Jones
Charles A. Jones
Class Counsel