1  CHARLES A. JONES State Bar No. 224915
2  KELLY McINERNEY State Bar No.  200017
   JONES LAW FIRM
3  9585 Prototype Ct., Suite B
   Reno, Nevada 89521
4  Telephone: (775) 853-6440 / Facsimile: (775) 853-6445
   Email: caj@cjoneslawfirm.com. Kelly@cjoneslawfirm.com

5  MATTHEW RIGHETTI, State Bar No. 121012
6  RIGHETTI GLUGOSKI, P.C.
   456 Montgomery Street, Suite 1400
7  San Francisco, CA 94101
   Telephone: (415) 983-0900 / Facsimile: (415) 397-9005
   Email: matt@righettilaw.com

8
9  Class Counsel

10              **UNITED STATES DISTRICT COURT**

11        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                   **SAN JOSE DIVISION**

13

| | |
|---|---|
| 14  NISHA BROWN and KATHY WILLIAMSON, individually and on behalf of all others similarly | CASE NO.:  5:09-CV-03339-EJD |
| 15  situated, Plaintiffs, | **NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION** |
| 16  vs. | **SETTLEMENT** |
| 17 | |
| 18  WAL-MART STORES, INC., and DOES 1 through 50 inclusive, | Date:       March 28, 2019 |
| 19          Defendants. | Time:       10:00 AM Location:   Courtroom 4 (5th Floor) Judge:      Honorable Edward J. Davila |
| 20 | |

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................ i-ii

Table of Authorities........................................................................................... ii-iv

I.     INTRODUCTION ............................................................................................1

II.    SUMMARY OF KEY SETTLMENT TERMS.................................................2

     A.    Seating Program ................................................................................2

     B.    Monetary Relief ................................................................................3

     C.    Plan of Distribution ..........................................................................4

     D.    Scope of Release ..............................................................................4

     E.    No "Clear Sailing Provision" ...........................................................5

     F.    Cy Pres .............................................................................................5

III.   FACTUAL BACKGROUND ...........................................................................5

IV.   FINAL APPROVAL OF THIS SETTLEMENT IS WARRANTED .........................8

     A.    The Strength of the Plaintiffs' Case ................................................9

     B.    Risk of Continued Litigation ..........................................................12

     C.    Maintaining Class Status ................................................................13

     D.    Amount Offered ..............................................................................13

     E.    Extent of Discovery ........................................................................18

     F.    Experience and Views ....................................................................18

     G.    Presence of Governmental Participant ...........................................19

     H.    Reaction of the Class .......................................................................20

V.    STATUS OF CLAIMS PROCEDURE ...........................................................20

     A.    Dispute Resolution ..........................................................................23

     B.    Late Filed Claims ...........................................................................23

C.    Individuals Who Previously Opted-Out of This Case Following Class Notice in

2016 ................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Serv., Inc.*
(S.D. Cal. Aug. 10, 2009) 2009 WL 2448430..........................................................15

*Bayat v. Bank of the West*
(N.D. Cal. Apr. 15, 2015) 2015 WL 1744342 ...........................................................12

*Bellinghausen v. Tractor Supply Co.*
(N.D. Cal. 2015) 306 F.R.D. 245 ..................................................... passim

*Brown v. Walmart Stores, Inc.*
(9th Cir. 2016) 651 F. App'x 672 ..........................................................7

*Brailsford v. Jackson Hewitt Inc.*
(N.D. Cal. 2007) 2007 WL 1302978..........................................................22

*Bennett v. Simplexgrinnel LP*
(N.D. Cal. 2015) 2015 WL 12932332..........................................................10

*Chun–Hoon v. McKee Foods Corp.*
(N.D.Cal.2010) 716 F.Supp.2d 848 ..........................................................20

*Churchill Vill., LLC v. Gen. Elec.*
(9th Cir.2004) 361 F.3d 566..........................................................9

*Class Plaintiffs v. City of Seattle*
(9th Cir.1992) 955 F.2d 1268 ..........................................................9

*Curtis–Bauer v. Morgan Stanley & Co., Inc.*
(N.D.Cal. Oct. 22, 2008) 2008 WL 4667090 ..........................................................13

*Custom LED v. eBay, Inc.*
(N.D. Cal. 2013) 2013WL 6114379 ..........................................................20

*Garner v. State Farm Auto Ins. Co.*
(N.D. Cal. April 22, 2010) 2010 WL 1687829 ..........................................................passim

*Hanlon v. Chrysler Corp.*
(9th Cir. 1988) 150 F.3d 1011 ..........................................................passim

*In re Crazy Eddie*
(E.D. NY. 1993) 824 F. Supp. 320..........................................................16

ii.

*In re Corel Corp. Sec. Litig.*
(E.D. Pa. 2003) 293 F. Supp. 484 ..................................................................16

*In re Gen. Instruments Sec. Litig.*
(E.D. Pa. 2001) 209 F. Supp.2d 423 ..............................................................16

*In re Med. X-Ray Film Antitrust Litig.*
(C.D. Cal. 2008) 1998 WL 1661515 ..............................................................16

*In re Omnivision Techs, Inc.*
(N.D. Cal. 2008) 559 F. Supp. 1036 ...............................................................19

*In re Online DVD-Rental Antitrust Litig.*
(9th Cir. 2015) 779 F.3d 934 ............................................................................9

*LaGarde v. Support.com, Inc.*
(N.D. Cal. Mar. 26, 2013) 2013 WL 1283325 ...............................................12

*Larsen v. Trader Joe's Company*
(N.D. Cal. July 11, 2014) 2014 WL 3404531 .................................................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
(C.D. Cal. 2004) 221 F.R.D. 523 ............................................................passim

*Noll v. eBay, Inc.*
(N.D. Cal. 2015) 309 F.R.D. 593 ...................................................................16

*Officers for Justice v. Civil Serv. Comm'n*
(9th Cir.1982) 688 F.2d 615 ............................................................................9

*Rannis v. Recchia*
(9th Cir. 2010) 380 Fed. Appx. 646 ...............................................................21

*Rodriguez v. W. Publ'g Corp.*
(9th Cir. 2009) 563 F.3d 948 ..........................................................................13

*Silber v. Mabon,*
(9th Cir. 1994) 18 F.3d 1449 ..........................................................................21

*Trang v. Turbine Engine Components Techs. Corp*
(C.D. Cal. Dec. 19, 2012) 2012 WL 6618854 ...............................................15

## STATE CASES

*Amaral v. Cintas Corp. No. 2*
(2008) 163 Cal.App.4th 1157 .........................................................................15

*Arias v. Superior Court*
(2009) 46 Cal.4th 969, 980-981 (2009) ............................................................5

*Carrington v. Starbucks Corporation,*
(2018) 2018 WL 6695970 ...............................................................................11

*Iskanian v. CLS Transportation of Los Angeles, LLC*
(2014) 59 Cal. 4th 380 ............................................................................. 6

*Kilby v. CVS Pharmacy, Inc.*
(2016) 63 Cal. 4th 1 .................................................................................. 3

*Thurman v. Bayshore Transit Mgmt., Inc.*
(2012) 203 Cal. App. 4th 1112 .............................................................. 11

## RULES/REGULATIONS

California Labor Code §1198 ................................................................... 18

California Labor Code §2699-2699 ............................................... *passim*

Wage Order 7-2001 §14 ............................................................... *passim*

8 Cal. Code Regs. §11070 ....................................................................... 6

Fed. R. Civ. P. 23 (c) and (e) ................................................................ 21

**NOTICE OF MOTION**:

PLEASE TAKE NOTICE THAT, pursuant to this Court's December 6, 2018 Order (ECF No. 292), at 10:00 a.m. on March 28, 20019 in Courtroom 4 of this Court, located at 280 S. 1st Street in San Jose, California, Class Representative Kathy Williamson will, and hereby does, move for an order granting Final Approval pursuant to Fed. R. Civ. P. 23(e). The basis for this motion is set forth in the following Memorandum of Points and Authorities as well as the declarations of Charles A. Jones, Matthew Righetti, Melissa Meade from Phoenix Settlement Administrators and the Honorable Layn Phillips (ret.) and the exhibits attached thereto. This Motion is unopposed.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After nearly a decade of hard-fought and protracted litigation, the parties have reached a Sixty-Five Million Dollar ($65,000,000) non-reversionary settlement of this class action. Under the terms of this settlement, Walmart will also completely change its seating policy and practice relating to front-end cashiers and, should final approval be granted, Walmart will provide seats on an on-going basis to those cashiers who choose to use seats. Notably, none of the $65,000,000 reverts to Walmart. This Settlement provides significant monetary and non-monetary benefits to the Class Members and avoids the risk, expense, and delay associated with further litigation. Notice of this Settlement has been provided to the 100,362 Class Members, the California Labor and Workforce Development Agency ("LWDA"), the Attorney Generals and Departments of Labor of all fifty (50) states, the Department of Labor, and the United States Attorney General. Jones Decl. ¶¶3-4. As provided in this Court's December 6, 2018 Order, both the fee application and the enhancement application were filed on January 21, 2019, well in advance of the deadline to make claims, opt-out and/or object. In addition, both the fee and enhancement applications were

---

[1] Walmart has informed Class Counsel that it does not concede all of the factual assertions set forth herein. For purposes of this Settlement, however, Walmart does not object to the filing of this Motion for Final Approval.

posted on the settlement website for this case.  Meade Decl. ¶3.   Not a single objection has been filed to any aspect of this settlement and only 335 Class Members, 0.33% of the Class, have filed valid requests for exclusion.  Meade Decl. ¶¶15-16. As discussed below, this Settlement is fair, reasonable and adequate and warrants Final Approval.[2]

## II.  SUMMARY OF KEY SETTLMENT TERMS

**A.    Seating Program:**  Should Final Approval be granted, Walmart has agreed to completely change its long-standing policy and practice.  In short, Walmart will begin providing seats to its front-end cashiers for their use, on an **on-going basis**, should cashiers choose to use a seat. See, Ex. 1, Settlement Agreement at §5.1.1- 5.1.5.  In furtherance of its on-going obligation to provide seating to its front-end cashiers, Walmart will also provide notice to its cashiers informing them of their ability to use a seat, that they will not be retaliated against for choosing to use a seat, and how they can obtain a seat.  *Id.* at §5.1.2.  In addition, the seating program requires Walmart to inform the LWDA in perpetuity if it elects to stop providing seats to its cashiers.  *Id.* at §5.1.6 – 5.1.7.  As well, the seating program requires Walmart to inform both the cashiers and Class Counsel for a period of not less than **twelve (12) years** if it elects to stop providing seats to its cashiers.  *Id.* at §5.1.6 – 5.1.7.  Finally, the Seating Program places restrictions on Walmart in the event that it elects to stop providing seats to cashiers.  In that event, Walmart would be required to: (1) meet and confer with Class Counsel at least 100 days prior to removing seats (*Id.* at 5.1.6); and (2) provide Class Counsel with any "objective evidence" derived from the actual usage of seats by Cashiers that it believes warrants termination of the Seating Program prior to removing seats.  *Id.* at §5.1.5 – 5.1.7.   The seating program will benefit not only the 20,215 currently employed Class Members, but also those California cashiers who become employed by Walmart in the future.

---

[2] By separate motion filed on January 29, 2019, Class Counsel applied for an award of attorney's fees in the amount of $21,664,500 (one-third of the $65,000,000 gross settlement amount), litigation costs in the amount of $312,000, and enhancement awards to the class representative Kathy Williamson and named plaintiff Nisha Brown in the combined amount of $30,000.  See, ECF Nos. 296 and 297.  Both of those Motions are unopposed and no objection has been filed to either Motion.

Jones Decl. ¶10(A).   This provision ensures that the health and safety priorities underpinning the enactment of section 14(a) of Wage Order 7-2001 will be realized.   See, *Kilby v. CVS Pharmacy Inc.*, 63 Cal.4[th] 1, 11 (2016).

     **B.**    <u>**Monetary Relief:**</u>  The monetary value of this non-reversionary settlement is $65,000,000.   Settlement Agreement at §5.2.  The $65,000,000 cash amount is referred to in the Agreement as the "Gross Settlement Amount." *Id.*   Because the settlement is *non-reversionary*, Walmart has agreed to pay out the full $65,000,000, regardless of the number of claims received by the Class Members, and any amounts not claimed will be redistributed to approved claimants on a pro rata basis. *Id.* at §5.2.2.2.6.

     From the Gross Settlement Amount the following amounts will be deducted to arrive at the "Net Settlement Amount" – the amount which is used to make settlement payments to the LWDA and the Class Members who submitted timely and valid claim forms):  (1) Attorney's fees of up to one third of the settlement amount ($21,664,500), subject to Court approval; (2) Litigation Costs of up to $312,000, subject to Court approval; (3) Settlement administration costs of up to $150,000, subject to Court approval; and (4) Enhancement awards to the class representative (Kathy Williamson) and the other named plaintiff (Nisha Brown), not to exceed the combined amount of $30,000, subject to Court approval. *Id.* at ¶5.2 *et seq;* Meade Decl. ¶11.

     Assuming that the Court approves all of the above amounts, the Net Settlement Fund amount to be distributed to the LWDA and the Class Members will be $42,843,500. *Id.*  As this is a PAGA action, seventy-five (75%) of the Net Settlement Fund (projected to be $32,132,625) will be paid to the California LWDA. Cal. Labor Code §2699(i); Agreement §5.2.1; Meade Decl. ¶11. Once that payment has been made, the amount remaining in the Net Settlement Fund (projected to be $10,710,875) will be paid to those Class Members who timely submit valid claim forms. *Id.* at §5.2.2.; Meade Decl. ¶11.

**C.** **Plan of Distribution:** PAGA penalties are assessed on a pay period basis. See, Cal. Labor Code §2699(f)(2). In order to ensure that the settlement awards are fairly and evenly distributed to the class members who timely submit valid claim forms, under the settlement all pay periods are considered of equal value. Settlement Agreement §5.2.2.2.5. Class Members who timely submit valid claim forms will be paid based on the number of pay periods they were employed as a front-end Cashier in a California Walmart store during the class period. (*Id.* at 5.2.2.5.1.) In the notice approved by this Court, Class Members were informed that they would receive no less than $4.00 per pay period – and perhaps more per pay period depending on the number of claims received. Jones Decl. ¶10(C); Meade Decl. ¶19. The true benefit of this non-reversionary settlement is demonstrated by the fact that the Class Members who timely submitted valid claim forms will actually receive $13.99 per pay period (net) in this case (i.e., a 249.75% increase). Meade Decl. ¶14, 19. According to the Settlement Administrator, the highest settlement payment to individual Class Members is $3,764.10, and the average individual Class Members settlement payment is nearly $550. *Id.*[3]

**D.** **Scope of Release:** The release is narrowly tailored and only relates to the claims asserted in this action. Class Members who have not opted-out will be releasing only their right to PAGA penalties pertaining to the alleged seating regulation violation during the class period while they were employed in the position of front-end cashiers. *Id.* at §13.1; Jones Decl. ¶10(D). For example, should Final Approval be granted, participating Class Members will retain their right to sue Walmart for (a) PAGA penalties for other labor code violations unrelated to the alleged seating requirement violation, (b) PAGA penalties related to the seating requirement violation during the time that they held a position other than front-end cashier and (c) common law and/or statutory claims unrelated to seating claims (i.e., Section 14 of the Wage Order). In addition, the settlement

---

[3] As set forth in the Meade Decl. at ¶14, and addressed below in Section V(B), the amount received per pay period will be decreased by $0.20 per pay period if late filed Claim Forms are accepted by the Court.

class mirrors both the class definition and time period certified by this Court (i.e., it <u>only</u> includes front-end cashiers employed by Walmart in California during the class period). *Id.* at §2.3.1.

**E.      No "Clear Sailing Provision":**  Unlike many class action settlements where the Defendant agrees not to object to an award of attorney fees, this settlement does not contain a "clear sailing provision" and Walmart retained the option to object to the amount of fees, costs, and enhancement awards sought by Class Counsel. Settlement Agreement §5.2.3.1. Notably, Walmart has not objected to the amount of fees, costs and enhancement awards sought by Class Counsel.

**F.      Cy Pres:**  Although this is a total payout settlement, the Settlement Agreement at §5.2.2.2.7 requires that the amount of any checks remaining uncashed after 120 days will be paid to the California LWDA.

## III.    FACTUAL BACKGROUND

The full factual background of this case, including the significant amount of discovery, depositions, motion practice, and trial preparations completed by both parties over the last decade, is set forth in the Motion for Preliminary Approval (ECF No. 282 at p. 8 -13) and the Motion for Attorney's Fees and accompanying declarations of Class Counsel. See, ECF Nos. 296, 296-1, and 296-10.

In 2003, the California Legislature enacted PAGA for the express purpose of supplementing the funding and staffing available to state labor law enforcement agencies by "allow[ing] aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations" in order "to achieve maximum compliance with state labor laws" that could not otherwise be obtained without "adequate financing of labor law enforcement." *Arias v. Superior Court,* 46 Cal.4[th] 969, 980-981 (2009), quoting Stats. 2003, ch. 906 1.  It is well settled that in PAGA actions such as the instant case, "[t]he government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit." *Iskanian v. CLS Transportation*

*Los Angeles, LLC,* 59 Cal. 4th 348, 382 (2014); See, *Arias, supra,* 46 Cal.4th at p. 986[confirming that: (1) "an action to recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties' "; (2) "[i]n a lawsuit brought under the [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies"; and (3) that "an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself."]    As a result, in evaluating this settlement for purposes of Final Approval, due regard must be given to the amount of money recovered on behalf of the State of California, as opposed to the settlement payments to individual Class Members, which are also substantial.

The complaint, filed on June 11, 2009 alleged a single cause of action under the Labor Code Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 *et seq.*, arising from Walmart's alleged failure to comply with the requirement in Wage Order 7-2001 §14 (a) to provide seats to its front-end cashiers for their use while checking out customers. See, ECF No. 1; 8 Cal. Code Regs. §11070, §14(a).    This case was one of the first "suitable seating" cases filed in the State of California.    See, ECF No. 296-1 at p. 10.

This case has been hotly contested and vigorously litigated since its inception in 2009.    At the time this case was filed it was not clear whether violations of Wage Order regulations would qualify as a PAGA violation.    In total, the parties completed 30 depositions, and exchanged over 1,700,000 pages of documents, over 1000 hours of video and other data relating to the claims alleged. See, ECF No. 296-1 at p. 16-32. The contested motion for Class Certification was granted by this Court on August 24, 2012. (ECF No. 110.) The Court certified the following class: "All persons who, during the applicable statute of limitations, were employed by Walmart in the State of California in the position of Cashier."[4]    Walmart appealed the Certification Order to the Ninth

---

[4] In the Certification Order, the Court confirmed that the job title "Cashier" in the certification motion and class definition refers to "only the positions with Job Code 30548." *Id.* at p. 6, FN 1.  This is due to the fact that Walmart's

Circuit and, following briefing and oral argument, the Ninth Circuit Court of Appeals affirmed this Court's Class Certification Order. See, *Brown v. Walmart Stores, Inc.,* 651 F. App'x 672 (9th Cir. 2016). On November 14, 2016, the Court ordered Class Notice be sent by Phoenix Settlement Administrators ("PSA") to the 80,640 members of the certified class. (ECF Nos. 149 and 164.) The notice program resulted in 970 opt-outs. (ECF No. 164.)

On January 4, 2018, Walmart filed its Motion to Decertify the Class (ECF No. 193), which was denied on April 27, 2018. (ECF No. 230.)  The Court also denied two separate Motions for Judgment on the Pleadings filed by Walmart. (ECF Nos. 52, 263.)  The parties also filed Cross Motions for Summary Judgment (ECF Nos. 192 and 239).  On July 13, 2018, the Court denied the parties' cross motions for Summary Judgment and denied Walmart's second Motion for Judgment on the Pleadings. (ECF No. 263).  This case settled less than one month prior to trial, by which time the parties had completed their respective portions of the Joint Final Pretrial Conference Statement.

The parties attended two separate mediations in this case.  The first mediation on January 15, 2018, was presided over by Mark Rudy, Esq. in San Francisco.  That mediation was unsuccessful. On September 4, 2018, the parties attended a second full day of mediation before retired United States District Court Judge Layn Phillips in Chicago.  At the second mediation the parties agreed to resolve this action subject to Court approvals. See, Phillips Decl ¶¶9-19; ECF No. 282-1 at p. 4-5.  At all times, the mediations were conducted at arm's length, hard fought, and non-collusive.  During the mediation process, Class Counsel carefully considered and evaluated the relevant legal authorities relating to both liability and the assessment of PAGA penalties, the evidence adduced to support the claims asserted, the likelihood of prevailing at trial, the risk,

---

Rule 30(b)(6) designees confirmed that code 30548 classified within Walmart as a job analysis code – encompasses the job codes for front-end cashiers, all of whose primary job duty was to check out customers at the front-end registers. See, ECF No. 110.

expense and duration of continued litigation, and the substantial likelihood of appeals and subsequent proceedings if Plaintiffs were to prevail at trial.  Jones Decl. ¶9.  Ultimately, the parties were able to reach an agreement that Class Counsel believes is fair, reasonable, and in the best interests of the Class Members.

On October 15, 2018, the parties provided notice of this Settlement to the California LWDA.  Jones Decl ¶3.  On October 18, 2018, the parties provided notice of this settlement to the Attorney Generals of all fifty (50) states as well as the United States Attorney General and the United States Department of Labor.  *Id.* at ¶4.  On October 19, 2018, Plaintiffs filed their Motion for Preliminary Approval of this Settlement.  ECF No. 282.  Following two hearings, on December 6, 2018 the Court issued its Order granting Preliminary Approval of this Settlement and approving the form and content of the Class Notice, Claim Form and Exclusion Form.  ECF No. 291.  Pursuant to this Court's Order, on December 27, 2018, the court-approved settlement administrator, Phoenix Settlement Administrators ("PSA") mailed the Notice, Claim Form and Exclusion Form to 100,362 Class Members.  Meade Decl. ¶7.  A detailed discussion of the notice procedures followed in this case, as well as the responses received, is set forth in the Declaration of the Settlement Administrator Melissa Meade and addressed in Section V below.

## IV.    FINAL APPROVAL OF THIS SETTLEMENT IS WARRANTED

"Approval under Rule 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998).  Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors

the compromise and settlement of class action suits. *See, e.g., Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir.2004); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon,* 150 F.3d at 1026.    To assess the fairness of a settlement, courts look to the eight so-called *Churchill* factors:

> (1) the strength of the plaintiffs case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *In re Online DVD–Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir.2015) [quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004)].

A review of each of these factors demonstrates why Final Approval of this class action settlement is warranted.

## A.    The Strength of the Plaintiffs' Case

In assessing the strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome must be tested.'" *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 255 (N.D. Cal. 2015). Rather, "the court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mutual Auto. Ins. Co.,* No. 08–CV–1365–CW, 2010 WL 1687832, at *9 (N.D. Cal. April 22, 2010).

Arriving at a settlement acceptable to both parties in this case was no small achievement since both parties were confident that they would prevail at trial on the singular liability issue involved – whether the nature of the work performed by front-end cashiers reasonably permits the

use of a seat.  On the one hand, Plaintiffs were confident that their evidence, consisting of: (a) testimony from Walmart's Rule 30(b)(6) designees; (b) Walmart's decade long experience with providing seats to injured/disabled cashiers for their use at the front-end check stands; (c) a pre-litigation customer perception study conducted by Directions Research, Inc.; (d) a pre-litigation ergonomics study conducted by an ergonomics professional at the University of Arkansas; (e) testimony and documents from Walmart's check stand vendors, and (f) testimony and studies supplied by Plaintiffs' experts.  Plaintiffs felt strongly that this evidence demonstrated that the nature of the work reasonable permits the use of a seat.  See, for example, ECF No. 192 (Motion for Summary Judgment)[outlining the evidence relied upon by Plaintiffs at summary judgment].

On the other hand, Walmart was similarly confident in its evidence regarding liability. Such evidence consisted of expert testimony from: (a) an ergonomist outlining his opinions regarding potential safety/risk concerns with providing seats and the negative health effects stemming from seated cashier work; (b) an online survey conducted concerning whether individuals preferred seated versus standing cashiers; (c) documentation allegedly demonstrating a decrease in cashier productivity associated with seated cashier work compared to standing cashier work; and (d) testimony regarding the difficulties and costs (including lost profits) that Walmart felt would be associated with providing seats to cashiers.  See, ECF No. 239 (Walmart's Cross Motion for Summary Judgment)[outlining the evidence relied upon by Walmart at summary judgment].

This Court's Order denying the parties' cross Motions for Summary Judgment not only highlighted disputes as to material facts relative to the liability factors outlined by the California Supreme Court in *Kilby*, 63 Cal.4[th] at 16, but also concluded that a rational fact finder might credit Walmart's evidence over the evidence submitted by Plaintiffs.  See, ECF No. 263 at pages 21, 24, 25-28; Phillips Decl. ¶22. The Court's findings at Summary Judgment were discussed at length

during the mediation.

Additionally, in assessing the amount offered in settlement, Plaintiffs also gave great consideration to the fact that the only two other suitable seating cases that have gone to trial (*Allen v. AMC Theaters*, Alameda County Superior Court, Case No. RG11585502 and *Garvey v. Kmart Corp.*, U.S.D.C. No. Dist. Cal. Case No. C 11-02575 (WHA)) both resulted in a verdict for the defense. ECF No. 296-1 at p. 11-12; Phillips Decl. ¶14.

In addition to liability, Plaintiffs also faced a risk that this Court could exercise its discretion under California Labor Code §2699(e)(2) to reduce the amount of penalties based on factors such as (a) the lack of regulatory enforcement by the State of California during the years preceding this lawsuit; (b) the stay of proceedings while the Court's class certification order was on review in the Ninth Circuit; and (c) substantial disagreement amongst the courts during the litigation concerning interpretation of Section 14's statutory language. Phillips Decl. ¶23. In fact, in each of the reported decisions to date on this issue, the courts exercised their discretion to vastly reduce the amount of penalties in PAGA actions. See, *Thurman v. Bayshore Transit Mgmt., Inc.,* 203 Cal.App.4[th] 1112, 1136 (2012) [reducing the original penalty of $512,268.88 by 30% to $358,588.22]; *Fleming v. Covidien Inc.,* 2011 WL 7563057, at *4 (C.D. Cal. Aug. 12, 2011) [reducing the original penalty of $2.8 million by 82% to $500,000]; *Aguirre v. Genesis Logistics,* 2013 WL 10936035 at *2-3 (C.D. Cal. Dec. 30, 2013) [reducing the original penalty of $1.8 million by 72% to $500,000, noting among other reasons that the maximum penalty would be punitive without evidence that the employee intentionally violated the wage order]; *Carrington v. Starbucks Corporation,* 2018 WL 6695970 at *15 (filed Nov. 27, 2018, publication ordered Dec. 19, 2018)[reduction of the $50 maximum penalty (per initial violation) to only $5 per initial violation].

In addition, Class Counsel carefully weighed the delay and expense associated with trial

and likely post-trial motions and appeals, prior to agreeing to settle this case.  Jones Decl. ¶11.  Put simply, the ultimate success at trial in this case, as well as the amount of penalties, was uncertain.  As such, this factor weighs strongly in favor of settlement.  See, *Bayat v. Bank of the West*, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("Because the strengths of Plaintiffs' claims is in doubt, the first *Churchill* factor tips in favor of final approval of the settlement.").

## B.     Risk of Continued Litigation

"Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.,* 2014 WL 2926210, at *4 (N.D.Cal. June 27, 2014).   Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation. *See LaGarde v. Support.com, Inc.,* 2013 WL 1283325, at *4 (N.D.Cal. Mar. 26, 2013).   In this case, even assuming Plaintiffs prevailed on the ultimate liability issue at trial, the risk of continued litigation through post-trial motions and appeals was almost certain. Jones Decl. ¶11.   This is demonstrated by the fact that, prior to settlement, Walmart had filed a request for an interlocutory appeal from this Court's Order denying its second Motion for Judgment on the Pleadings.  See, ECF No. 274.  Plaintiffs anticipated that, assuming a liability finding in favor of Plaintiffs at trial, Walmart would also have filed post-trial motions and appeals regarding any penalties awarded by the Court.   Based on the prior history of this case in the Ninth Circuit, any appeals would have the effect of greatly delaying any monetary recover by the class.   In contrast, through this settlement both the State of California (the real party in interest) and the Class Members will benefit from promptly recovering substantial monetary and non-monetary benefits under this settlement including a complete change of Walmart's policy of not providing seats to its front-end cashiers.

As such, this factor favors settlement because it avoids significant delays and provides all class members with an immediate, substantial benefit in the form of a credit or check. *Curtis–Bauer v. Morgan Stanley & Co., Inc.,* 2008 WL 4667090, at *4 (N.D.Cal. Oct. 22, 2008) ["Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."]; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)[confirming that the potential for post-trial motions and appeals delaying recovery for class members weighs in favor of settlement.]

**C.    Maintaining Class Status**

It is well settled that the fact that a district court can decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 966 (9th Cir.2009). Here, there was some risk that the Court could decertify this case based on evidence submitted at trial. For example, included within Walmart's trial witnesses were seven store managers. It appeared that Walmart intended to use testimony from those witnesses to point out differences between the types of stores and the types of tasks actually performed by the Class Members based on the store size, number of employees, the season, customer demographics, the shift worked, the different tasks that required the class members to stand during their work at the front-end, and the differences between the cash register configurations, in order to demonstrate that the nature of cashier work varies from one cashier to the next. Plaintiffs submit that this factor also supports Final Approval.

**D.    Amount Offered**

The fourth *Churchill* factor "is generally considered the most important." *See Bayat,* 2015 WL 1744342, at *4 (N.D.Cal. Apr. 15, 2015). The $65,000,000 non-reversionary settlement in this case is believed to be the largest PAGA settlement to date and exceeds the **combined** amount of all other "suitable seating" settlements by more than $10,000,000. See, ECF No.296-1 at. p. 6-7.   If

the Court awards the full amount of attorney's fees, costs, and enhancement awards sought, under this settlement the real party in interest, the California LWDA, will receive $32,132,625 to be used for enforcement of labor laws and education of employers and employees alike. See, Cal. Labor Code §2699(i); Meade Decl. ¶11. Once the payment to the LWDA has been made, the amount remaining in the Net Settlement Fund (projected to be $10,710,875), will be paid to those Class Members who timely submit valid claim forms. *Id.;* Settlement Agreement at §5.2.2. PAGA penalties are assessed on a pay period basis. See, Cal. Labor Code §2699(f)(2). In order to fairly apportion the settlement awards to the Class Members, under this settlement all pay periods are considered of equal value. Settlement Agreement §5.2.2.2.5. As a result, Class Members who timely submit valid claim forms will be paid based on the number of pay periods they were employed as a front-end Cashier in a California Walmart store during the class period. *Id.*

In the Motion for Preliminary Approval, the parties estimated that each class member would recover approximately $4.00 (net) for each pay period worked during the class period if all Class Members timely submitted valid Claim Forms. See, ECF No 282 at p. 7. Class Counsel are pleased to report that, due to the non-reversionary aspect of this settlement, those Class Members who timely submitted valid claim forms will actually recover over **$13.00** for each pay period worked. Meade Decl. ¶¶14, 19. This represents nearly a 250% increase in the amount of the awards to individual Class Members. Jones Decl. ¶10(C). Based on the most current statistics from the Claims Administrator, the maximum settlement amount awarded to individual class members is $3,764.10, and the average individual settlement amount is $549.16. Meade Decl. ¶19. This is a truly meaningful amount of money for the Class, considering that over the course of the last decade, the vast majority of the Class Members earned, on average, $10.00 an hour or less. Jones Decl. ¶10(C). As discussed below, under the terms of this settlement not only will the State

of California receive the largest settlement payment to date in a suitable seating case, but the individual class members will as well. *Id.*

In addition to the $65,000,000 cash settlement amount, this settlement also provides significant forward-looking relief for the Class Members in the form of <u>complete</u> policy change under which Walmart will now provide seats to its cashiers on an on-going basis, should they choose to use a seat. See, Settlement Agreement §5.1; Phillips Decl. ¶¶19, 27; Jones Decl. ¶10(A). Obtaining any forward-looking relief for the Class was a significant accomplishment in this case because PAGA <u>only</u> provides for penalties for past violations.  PAGA does <u>not</u> provide for any forward looking or injunctive relief whatsoever. See, Cal. Labor Code §2699 *et. seq.*  As a result, this settlement provides significantly more benefits for the Class than PAGA provides, or even that the class could have achieved had they prevailed at trial. Jones Decl. ¶10.

The amount recovered in this case compares very favorably with settlements in other similar suitable seating cases approved by other courts. Civil penalties for PAGA violations are assessed on a pay period basis at up to One Hundred Dollars ($100) for each aggrieved employee per pay period for the "initial" violation and up to Two Hundred Dollars ($200) for each aggrieved employee per pay period for each "subsequent" violation.  Cal. Labor Code §2699 (f)(2).  What triggers a "subsequent" penalty amounts is currently a matter of substantial debate in the courts. See, *Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4[th] 1157, 1209 (2008)["subsequent" violations only occur <u>after</u> the employer is notified of a violation by the Labor Commissioner or a Court]; *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Serv., Inc.,* 2009 WL 2448430, at *9 (S.D. Cal. Aug.10, 2009); *Trang v. Turbine Engine Components Techs. Corp.,* 2012 WL 6618854, at *5 (C.D. Cal. Dec. 19, 2012).  Since PAGA penalties are assessed on a "per pay period" basis, one way to compare values for suitable seating settlements is the number of pay periods involved in the case in relation to the total settlement amount.  Here, there were a total of 2,610,921 pay

periods as of the second mediation.  This settlement results in the payment of $24.90 (gross) for each pay period. See, ECF No. 296-1 at p. 8-9.  Based on Class Counsel's research, the average gross dollar per pay period amount from other suitable seating settlements is only $13.80.  *Id.* Thus, the gross dollar per pay period settlement amount in this case is nearly **two times** the average amount.  Class Counsel submits that the amount of this settlement compared against other "suitable seating" settlements supports Final Approval.

In assessing the fourth *Churchill* factor, courts also measure the settlement amount compared to the Defendant's maximum potential exposure.  See, *Noll v. eBay, Inc.*, 309 F.R.D. 593, 607 (N.D. Cal. 2015).  Assuming zero reduction by the Court for the factors enumerated in Cal. Labor Code §2699(e)(2), Walmart's maximum exposure is between $261,092,100 (assuming $100 per pay period) and $522,184,200 (assuming $200 per pay period).  As a result, this settlement represents 24.9% of Walmart's maximum potential exposure at $100 per pay period, or 12.45% of Walmart's maximum exposure at $200 per pay period. See, ECF No. 296-1 at p. 7-9. The amount of this settlement compares favorably with settlements approved by other courts.  See, *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1042 (N.D.Cal.2008) [approving settlement awarding class members 9% of potential damages]; *Custom LED, LLC v. eBay, Inc.*, 2013 WL 6114379, at *14 (N.D.Cal. Nov. 20, 2013) [approving settlement awarding eBay sellers 1.8% or 16% of the fees at issue and explaining that "courts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement."]; *Bellinghausen*, 2015 WL 1289342, at *6–7 [stating that it is "well-settled law that a proposed settlement may be acceptable even though it amounts to

only a fraction of the potential recovery that might be available to class members at trial," and approving settlement that represented between 11% and 27% of potential recovery.][5]

Not only does this settlement compare favorably with other class action settlements in general, it also eclipses the amounts recovered in other suitable seating settlements approved by other courts by a long shot. A review of the settlement amounts, gross dollar recovery per pay period amounts, and percentage of the settlement in relation to the Defendant's maximum exposure in other suitable seating settlements demonstrates the excellence of the results achieved in this case. See, ECF No. 296-1 at p. 6-10.  Below is a chart measuring the results of this case against similar suitable seating settlements:

| Case | Settlement Amount | Pay Periods | % of Maximum Exposure at $100 per pay period | Gross $ per pay period amount |
|---|---|---|---|---|
| **Walmart** | **$65,000,000** | **2,610,092** | **24.9%** | **$24.90** |
| Target | $9,000,000 | 1,939,006 | 4.64% | $4.64 |
| 99c Only | $1,290,000 | 1,592,592 | .99% | $.81 |
| DSW | $625,000 | 151,461 | 4.2% | $4.12 |
| B of A | $15,000,000 | 1,000,000 | 15% | $15.00 |
| Rite Aid | $18,000,000 | 1,000,000 | 18% | $18.00 |
| J.C. Penny | $3,200,000 | 156,483 | 20.5% | $20.44 |
| Winco | $4,835,500 | 165,164 | 29% | $29.27 |

As reflected in the chart above, the average percentage of maximum exposure recovered in the other suitable seating settlements approved by courts of which Class Counsel are aware is 13.19%. See, ECF No. 296-1 at p. 8. In contrast, here, this Settlement represents 24.9% of Walmart's maximum potential exposure.  *Id.*  Of the other suitable seating settlements approved by courts, the case which is most similar to this case in terms of pay periods (2,610,921), class members (101,323), the position at issue (front-end cashier), and the similarity of the Defendant's

[5] *See also, In re Med. X–Ray Film Antitrust Litg,* 1998 WL661515, at *7–*8 (C.D. Cal. 2008) [approving settlement where counsel recovered 17% of damages]; *In re Crazy Eddie,* 824 F.Supp. 320, 326 (E.D. NY. 1993) [approving settlement that resulted in 10% of damages]; *In re Gen. Instruments Sec. Litig.,* 209 F.Supp.2d 423, 431, 434 (E.D.Pa.2001) [approving $48 million settlement fund that was approximately 11% of the plaintiffs' estimated damages]; *In re Corel Corp.,* 293 F.Supp.2d 484, 489–90, 498 (E.D. Penn 2003) [approving settlement which represented approximately 15% of total net damages].

operations (big box retailer) is *Enombang v. Target*, Alameda County Superior Court Case No. RG17853948.  See, ECF No. 296-3.  The *Target* case involved over 90,000 front-end cashier class members, 1,939,006 pay periods, and was brought against Walmart's direct competitor who sells a similar mix of items sold by Walmart.  The *Target* case settled for $9,000,000, which equates to $4.64 (gross) per pay period.  In contrast, the gross settlement amount in this case of $65,000,0000 is 622% higher than the *Target* settlement amount, the gross dollar per pay period ($24.90) amount is 434% higher, and the percentage of the defendant's maximum exposure 24.9% versus 4.64% is significantly higher as well. See, ECF No. 296-1 at p. 8-9.  Plaintiffs respectfully submit that the amount offered in settlement (both in terms of the monetary and non-monetary benefits from this settlement) supports Final approval.

**E.      Extent of Discovery**

This factor "evaluates whether 'the parties have sufficient information to make an informed decision about settlement.' " *Larsen v. Trader Joe's Company,*  2014 WL 3404531, at *5 (N.D.Cal. July 11, 2014). Formal discovery is not a requirement for final settlement approval; "[r]ather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Bellinghausen,* 306 F.R.D. at 257. A detailed description of the work performed in this case prior to settlement is set forth in Plaintiffs' Motion for Attorneys Fees and Costs (ECF No. 296).  In summary, this case settled less than one month before trial was set to commence, after the parties had conducted thirty (30) depositions, after the close of fact and expert discovery, after the Plaintiffs had reviewed over 1,700,000 pages of documents and other data, after two separate mediations with well respected mediators, and after the Court issued rulings on Walmart's Motion to Decertify the Class, the parties' Cross Motions for Summary Judgment, and two separate Motions for Judgment on the Pleadings. In sum, the parties carefully investigated the claims prior

to settlement and can confirm that all necessary investigation was completed prior to agreeing to settle this case.  Jones Decl. ¶8; Phillips Decl. ¶¶9-18, 25.

**F.      Experience and Views**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez,* 563 F.3d at 967. Consequently, " '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.' " *In re Omnivision Techns., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008). Class Counsel are familiar with class action litigation in general, having actually tried class action cases in the past, and are also very familiar with the claims alleged in this case having been involved with this case over the course of the last decade.  Jones Decl. ¶¶11-12.  Together, Class Counsel (Jones Law Firm and Righetti Glugoski P.C.) have collectively handled over 40 class action cases. *Id.*  Class counsel strongly support this settlement and believe that it is fair, reasonable and adequate in light of the uncertain nature of continued litigation, the risk of losing at trial and recovering nothing on behalf of the class, and the delay associated with post-trial motion practice and appeals. *Id.* The proposed Settlement is the result of extensive arm's-length bargaining and was achieved only after extensive analysis, a decade worth of hard-fought litigation, and difficult negotiations—including two formal mediations. *Id.;* Phillips Decl. ¶¶9-18.

**G.      Presence of Governmental Participant**

Under PAGA, the only requirements placed on settling parties are that they must submit their proposed settlement to the LWDA and must seek judicial approval of the settlement terms. Cal. Labor Code §2699(l)(2).   The parties complied with this requirement by providing a copy of the settlement agreement and Motion for Preliminary Approval of this Settlement to the LWDA on October 15, 2018 and again on December 13, 2018. Jones Decl. ¶¶3-4.  The LWDA, the real party in interest in this case, has not objected to any aspect of this settlement.  In turn, the Class Action

Fairness Act, or "CAFA," requires that notice of a settlement be given to state and federal officials and provides those officials a window of time to comment. 28 U.S.C. § 1715(b). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner,* 2010 WL 1687832, at *14. Here, the parties timely provided CAFA notice of this Settlement to the Attorneys General of all fifty states and no objection has been filed, indicating that such officials do not object to the Settlement. Jones Decl. ¶¶3-4. Thus, this factor weighs in favor of settlement.

### H.   Reaction of the Class

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval. *See Hanlon,* 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"). *See also Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). As set forth in the Meade Declaration at ¶15, only 335 class members timely excluded themselves or opted-out of this case following notice. This represents 0.33% of the class. Moreover, not a single class member has objected to any aspect of this settlement, including the attorney's fees and enhancement awards sought. Meade Decl. ¶¶15-16. The extremely low opt-out rate, combined with zero objections, indicate a favorable reaction by class members and their overall satisfaction with the Settlement. See, *Custom LED,* 2013 WL 6114379, at *9 (granting final approval and characterizing 0.04% exclusion rate, with one objection, as "overwhelmingly positive" reaction); *Chun–Hoon v. McKee Foods Corp.,* 716

F.Supp.2d 848, 852 (N.D.Cal.2010) (explaining that 4.86% opt-out rate strongly supported approval).  As such, this factor weighs in favor of final approval.

## V.    STATUS OF CLAIMS PROCEDURE

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Such notice must "clearly and concisely state in plain, easily understood language," the nature of the action, the class definition, and class members' right to exclude themselves from the class, among other things. Fed. R. Civ. P. 23(c)(2)(B).  Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994); see also *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

Pursuant to the Court's Preliminary Approval Order, on December 27, 2018, the Settlement Administrator, mailed, via first class mail, a Notice packet containing the Court approved Notice, Claim Form, and Exclusion Form, to each of the 100,362 Class Members.  See, Meade Decl. ¶¶3-10[describing in detail the dissemination of Notice and address update procedures]; Ex. A to Meade Decl [example of Notice packet].  As set forth in the Meade declaration at ¶¶3-8, the Notice program in this case contained greater-than-average safeguards to ensure that as many Class Members as possible would be located, despite the passage of time.  Specifically, the parties agreed to a 60-day claim filing period, far longer than the normal period for the filing of claims.  In addition, great efforts were taken to confirm the best available addresses both prior to mailing of the notice and claims forms as well as thereafter. *Id*.  In addition to running searches for the current

addresses using the National Change of Address database, prior to mailing, detailed high level skip

tracing was used based on the last four digits of the Class Members' social security numbers to

obtain current addresses for the Class Members. *Id.* at ¶6.  In addition, when notices were returned

as undeliverable PSA made further attempts to locate current mailing addresses through additional

skip tracing techniques.  *Id.* at ¶9.  These efforts resulted in only three (3) notice packets (0.002%

of the Class) being considered as undeliverable.  *Id.* at 10.

        In addition to the mailing of notice, a dedicated settlement web site

(www.Californiaseatinglaw.com) was established for this case.  The website contained a link to

important documents regarding this case, including the Settlement Agreement, the Order Granting

Preliminary Approval, the Class Notice, a sample Claim Form, a sample Exclusion form, and Class

Counsel's Motion for Attorney's Fees and Costs and the Motion for Enhancement Awards. *Id.* at

¶3.  The website contained a list of Frequently Asked Questions and Answers regarding this

settlement and detailed instructions regarding how to submit a Claim or Exclusion form and

allowed Class Members to submit their Claim Forms or Exclusion Forms online.  *Id.*

Additionally, a toll free number was established in order to answer any questions relating to this

settlement.  *Id.* at ¶4.  Finally, a reminder post card was sent out to the Class Members who had not

yet returned either a claim form or request for exclusion on February 1, 2019. *Id.* at ¶8; Ex. B, to

Meade Decl [copy of reminder postcard].

        As noted, of the 100,362 Class Members to whom notice was mailed, only three (3) notices

(0.002% of the Class) remained undeliverable following skip tracing and re-mailing.  Meade Decl,

¶10.  In total, only 335 Class Members (0.33% of the class) timely submitted valid requests for

Exclusion. *Id.* at ¶15.   In addition, **not a single Class Member**, the California LWDA, or any

State Attorney General objected to any aspect of this settlement, including the amount of fees or

enhancement awards sought. *Id.* at ¶16; Jones Decl. ¶¶3-4, 12.  In terms of the percentage of the

Net Settlement Fund claimed in this case, 75% of the Net Settlement Fund will be paid to the California LWDA.  With respect to the portion of the Net Settlement Fund apportioned to pay claims made by individual Class Members (25% of the Net Settlement Fund), 19,504 Class Members timely submitted valid claim forms representing 28.51% of the Net Settlement Fund attributed to paying claims filed by individual Class Members.  Meade Decl. at ¶13. This is an above average response rate for a class of this size spanning ten years.  *Id.*[6]   The parties submit that the Court approved Notice program in this case constitutes the best notice that is practicable under the circumstances of this case.

### A.    Dispute Resolution

The notice program approved by the Court allowed Class Members to dispute the number of pay periods worked during the class period as reported by Walmart when submitting their Claim Forms.  See, Settlement Agreement at §5.2.2.2.5.4; Notice at p. 7; Claim Form.  In total 108 Class Members disputed the number of pay periods as reported by Walmart.  Following receipt of these disputes, Walmart researched its records and provided detailed information to the Settlement Administrator addressing each of the disputes received. Jones Decl. ¶7;  Meade Decl. ¶17.  After meeting and conferring with Class Counsel, the parties have resolved nearly all disputes.  Jones Decl. ¶7.  The parties will provide a further update regarding dispute resolutions prior to the Final Approval Hearing on March 28, 2019.

### B.    Late Filed Claims

The Preliminary Approval Order set a deadline of February 25, 2019 (sixty days following the mailing of notice) to submit Claim Forms, Exclusion Forms or Objections.  ECF No. 292 at

---

[6] The numbers set forth here are as of March 11, 2019. The deadline to file a claim, request exclusion or object to the settlement was February 25, 2019. The numbers may be subject to change to reflect any additional claims or requests for exclusion postmarked by February 25, 2019 but received by the Settlement Administrator after the deadline.  Class Counsel and the Settlement Administrator will file Supplemental Declarations prior to the Final Approval hearing updating the Court regarding  any additional claims or exclusion forms received, as well as resolution of disputes and deficient claims.

¶11.  The Court approved Notice prominently set forth the February 25, 2019 deadline to submit

Claims, Exclusion Form and/or objections. See, Ex. A to Meade Decl.   In addition, the settlement

website also prominently noted the February 25, 2019 deadline on the first page of the website

under the heading "IMPORTANT DATES."  See, www.Californiaseatinglaw.com.  As of the date

of the filing of this Motion, 638 Class Members submitted Claim Forms after the Claim Form

filing date of February 25, 2019. Meade Decl. ¶14.  If the late filed claims are accepted, the net

recovery per pay period for the Class Members will be $13.79 per pay period.  *Id.*  If the late filed

Claims are excluded, the net recovery per pay period will be $13.99 per pay period.  This

represents a $0.20 reduction in the dollar per pay period amount if Late Claims are accepted.  *Id.*

The parties jointly request the Court to rule on whether late claims should be approved or denied,

in light of the Court's December 6, 2018 Preliminary Approval Order which required claim forms

to be postmarked on or before February 25, 2019. See, ECF No. 292 at ¶11.

### C. Individuals Who Previously Opted-Out of This Case Following Class Notice in 2016

Following Certification, on November 11, 2016, the Court ordered that Notice of the

pendency of this action be mailed to the members of the Certified Class.  See, ECF No. 149.

Specifically, the Notice instructed the Class Members that if they opted-out of this case they would

"not be entitled to share in any penalties that may be recovered in this lawsuit." ECF No. 149 at p.

6 [Class Notice] and p. 9[Exclusion Form].  Pursuant to this Court's Order, PSA mailed notice to

the Class Members on December 23, 2016.  See, ECF No. 164.  In response to the Notice, Nine

Hundred and Seventy individuals opted-out of this litigation.  *Id* at ¶9.  The Settlement Agreement

specifically excludes those individuals who previously opted-out of this case from participating in

this settlement. See, Settlement Agreement at §2.34.  The parties have received Claim Form

requests from two individuals who previously excluded themselves from this case following Notice

1   in 2016. See, Jones Decl. ¶14; Exhibit 3.  Neither of these individuals was provided with Notice of

2   this Settlement or Claim Forms.

3                                                          Respectfully Submitted,

4                                                          JONES LAW FIRM

5                                                          RIGHETTI GLUGOSKI, P.C.

6   Dated:  March 11, 2019                                  /s/ Charles A. Jones

7                                                          Charles A. Jones
                                                           Class Counsel
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28