Kevin McInerney (SBN 46941)
kevin@mcinerneylaw.net
1050 N. Hills Blvd., # 61388
Reno, Nevada 89506
Tel: (775) 849-3811
Fax: (775) 624-3589

Melissa Grant (SBN 205633)
melissa.grant@CapstoneLawyers.com
Jamie Greene (SBN 249355)
jamie.greene@capstonelawyers.com
Bevin Allen Pike (SBN 221936)
bevin.pike@CapstoneLawyers.com
Orlando Villalba (SBN 232165)
orlando.villalba@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel: (310) 556-4811
Fax: (310) 943-0396

*Attorneys for Movants*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BARBARA WATERS, SAMANTHA FERNANDEZ, DESTINEY LOPEZ, and APRIL SWOBODA, individually and on behalf of all others similarly situated,<br><br>Movants,<br><br>vs.<br><br>WALMART INC.<br><br>Respondent.<br><br>Ex rel.<br><br>NISHA BROWN and KATHY WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WAL-MART STORES, INC., and DOES 1 through 50 inclusive,<br><br>Defendants. | Case No.: 5:09-CV-03339-EJD<br><br>**MOVANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER TO SHOW CAUSE WHY MONETARY SANCTIONS SHOULD NOT BE IMPOSED UPON WALMART INC.**<br><br>Date:  November 5, 2020<br>Time:  9:00 a.m.<br>Ctrm:  Four<br>Judge: Edward J. Davila |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND .......................................................................................................... 3

    A.   Short Summary of *Brown v. Walmart, Inc*. .................................................... 3

    B.   The Settling Parties' Efforts to Resolve the Seating Claim ............................. 4

    C.   Walmart Is Violating the Judgment By Failing to Provide Seats To Front-End Cashiers ......................................................................................... 9

III. ARGUMENT .............................................................................................................. 10

    A.   This Court Can And Should Issue Sanctions For Violating Its Order ......................................................................................................... 10

        1.   The Court Retained Jurisdiction To Enforce Its Judgment ..................... 10

        2.   Movants Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda Have Standing ............................................... 11

    B.   Movants Have Provided Clear And Convincing Evidence That Walmart Is In Contempt Of Court ................................................................ 13

# TABLE OF AUTHORITIES

### Federal Cases

*Brown v. Wal–Mart Stores, Inc.*,
    651 F. App'x 672 (9th Cir. 2016) ................................................................................... 4

*Green v. Bank of America*, N.A.,
    512 F. App'x 665 (9th Cir. 2013) ................................................................................... 7

*Henderson v. JPMorgan Chase Bank*,
    No. CV113428PSGPLAX, 2013 WL 12126748 (C.D. Cal. Mar. 4, 2013), *rev'd and remanded sub nom. Henderson v. J.P. Morgan Chase Bank, N.A.,* 651 F. App'x 669 (9th Cir. 2016) .................................................................................................................................. 4

*Hook v. State of Arizona, Dep't of Corrections*,
    972 F.2d 1012 (9th Cir.1992) ...................................................................................... 10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693 (9th Cir. 1993) ......................................................................................... 13

*Karo v. San Diego Symphony Orchestra Ass'n*,
    762 F.2d 819 (9th Cir.1985) ........................................................................................ 12

*Kilby v. CVS Pharmacy, Inc.*,
    No. 09CV2051-MMA KSC, 2012 WL 1969284 (S.D. Cal. May 31, 2012), *rev'd and remanded,* 654 F. App'x 285 (9th Cir. 2016) ........................................................... 4

*Lasar v. Ford Motor Co.*,
    399 F.3d 1101 (9th Cir. 2005) (quoting *Ex parte Robinson*, 86 U.S. 505 (1873)) .......... 13

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
    478 U.S. 501 (1986) ...................................................................................................... 1

*Salimi v. BMW Fin. Servs. NA, LLC*,
    No. 12-CV-01754-JSW, 2017 WL 4570367 (N.D. Cal. Sept. 29, 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)) ................................................ 10

*Spallone v. United States*,
    493 U.S. 265 (1990), quoting *Shillitani v. United States,* 384 U.S. 364 (1966) .............. 13

*Stone v. City and County of San Francisco*,
    968 F.2d 850 (9th Cir. 1992) ), *as amended on denial of reh'g* (Aug. 25, 1992) ............ 13

### California Cases

*Bright v. 99¢ Only Stores,*
    189 Cal. App. 4th 1472 (2010) ...................................................................................... 7

*Goonewardene v. ADP, LLC*,
    6 Cal.5th 817 (2019) ................................................................................................... 12

*Home Depot U.S.A., Inc. v. Superior Court*,
    191 Cal. App. 4th 210 (2010), *as modified on denial of reh'g* (Jan. 10, 2011) ................ 7

*Kilby v. CVS Pharmacy, Inc.*,
    63 Cal.4th 1 (2016) .................................................................................................................. 4

Other Authorities

F.R.C.P. 70(a) ............................................................................................................................... 11

F.R.C.P. 70(e) ............................................................................................................................... 11

F.R.C.P. 71 ................................................................................................................................... 11

Cal. Civ. Code §1559 ................................................................................................................... 12

iii
MOVANTS' MEMO OF P&AS ISO MOT FOR AN ORDER TO SHOW CAUSE
CASE NO. 5:09-CV-03339-EJD

## I.   INTRODUCTION

Movants Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda seek an Order to Show Cause why Walmart Inc. should not be sanctioned. The Judgment entered on March 28, 2019 expressly allowed this Court to enforce the terms of a $65 million class action settlement ("Settlement") negotiated between Plaintiff Kathy Williamson and Wal-Mart Stores, Inc. and Walmart Inc. (collectively, "Walmart"). As important as the monetary component was, the Settlement also contained a Seating Program that required to Walmart to provide seats to current and future front-end California cashiers.[1]

That settlement was approved after two attempts. On the first motion for preliminary approval, this Court expressed strong reservations about the original "Seating Pilot Program," an effectively voluntary program for Walmart. (Doc. No. 282-2 at 7-9.) Under this toothless program, Walmart had wide discretion as to the timing and mechanics of implementation and enforcement. It also gave Walmart an escape hatch to later declare that seating was inconsistent with the company's "operational needs." Finally, it allowed Walmart to unilaterally terminate the program without any notice after two years.

To satisfy the Court's concerns, the settling parties fundamentally modified the Seating Program. The second iteration imposed upon Walmart "an ongoing obligation to provide seats" to any front-end casher "who choose[s] to use them." (Doc. No. 288-2, ¶5.1.1.) One important change was that, instead of allowing Walmart to cancel based on its self-declared "operational needs," the new Seating Program required Walmart to proffer objective evidence of business interference. It also required advance notice to Class Counsel, the LWDA, and front-end cashiers, before the Seating Program could be terminated during the first 4 years. (Doc. No. 288-2, ¶5.1.6.)

///

---

[1] Legally, the Seating Program was a consent decree because it is was a voluntary obligation undertaken by Walmart and ordered by a court. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 521–22 (1986) (explaining that the "voluntary nature of a consent decree is its most fundamental characteristic").

The Court, satisfied with these changes, preliminarily approved the Settlement on December 6, 2018. (Doc. No. 295, at 10:21-11:21.) Walmart was to give notice of the availability of seating and then have all the seats in place by August 16, 2019.

The Court retained jurisdiction on March 28, 2019, to enforce the Settlement, as provided by ¶14 of the Judgment:

> Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Settlement Agreement; (b) distribution of the Class Settlement Amount, the LWDA Payment, the Enhancement Payments and the Attorneys' Fees and Litigation Expenses Amount; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement and the Settlement, and the administration of Claims submitted by Settlement Class Members. The time to appeal from this Judgment shall commence upon its entry.

In June of this year, Movants' counsel asked Brian Kriegler, a recognized statistician, to randomly select 15 stores from each of Walmart's three store types (Supercenter, Discount, and Neighborhood Market).[2] In early July 2020, licensed private investigators visited those randomly selected 45 stores and recorded the number of seats present at or near the front checkout stands and the number of seated cashiers. The result of those visits showed that at approximately 419 regular front checkout stations (registers) and 199 cashiers working, only 21 seats were observed at or in the vicinity of a checkout stand, and only 6 seated cashiers were observed. At most Walmart stores in California there are self-checkout point of sale registers referred to as "Scan and Go." A group of these registers, usually 4 to 10, are attended by a cashier. These visits showed that out of 82 cashiers working, only 8 seats were available, and 2 cashiers were seated. In total, there were only 8 seated cashiers observed out of 281 working cashiers, which is only 2.8%. In the 45 stores, only 29 seats were observed at or near these registers, which is only .64 seats per store on average. Attached to the Declaration of Kevin J. McInerney as **Exhibit A** is a compilation chart reflecting the investigators'

---

[2] A supercenter is the largest of the stores at approximately 180,000 ft$^2$; a discount store is smaller at approximately 100,000 ft$^2$; and a neighbor store is yet smaller at approximately 30,000 ft$^2$ carrying mostly groceries. In California, 51.1% of Walmart stores are supercenters, 25.2% are discount stores, and 23.8% are neighborhood stores. In total there are 281 Walmart stores in California.

1  declarations. The declarations of the investigators who made these observations are attached as
2  **Exhibits B1-B45**.

3  Under the Judgment, which specifically recited the terms of the Seating Program,
4  Walmart had an ongoing obligation to provide seats to any front-line cashier who chose to use
5  one. But, as revealed by Movants' investigation, Walmart flouted those obligations and
6  violated the Judgment. To make things even worse, it appears that the relatively tiny number
7  of seats near or at the front checkstands are demonstrably unsuitable for use. The Wage Order
8  mandates seats that are "suitable." Obviously, cashiers would not use seats that were heavy,
9  non-adjustable, or bulky. Finally, to make things yet still worse, anecdotal conversations with
10 cashiers indicate store managers tell employees that a doctor's note is required to sit.

11 Movants, therefore, respectfully request that the Court make two orders. First, the
12 Movants request an order that Walmart promptly respond to limited discovery regarding its
13 apparent noncompliance with the Final Approval Order and Judgment. Secondly, Movants
14 request that this Court order Walmart to promptly show cause why monetary sanctions should
15 not be imposed.

16 **II.   BACKGROUND**

17     **A.   Short Summary of *Brown v. Walmart, Inc*.**

18 The seating case against Walmart was filed on June 11, 2009 in the Alameda Superior
19 Court. In their class action complaint, Plaintiffs Brown and Williamson asserted a single
20 PAGA claim, alleging that Walmart had violated California Wage Order 7-2001, §14(A) by
21 failing to provide suitable seats to its front-end cashiers. Walmart timely removed the case to
22 the Northern District under the Class Action Fairness Act ("CAFA"). On August 5, 2011,
23 Plaintiffs moved for class certification in this Court. Following full briefing and argument, on
24 August 24, 2012, this Court granted class certification. Walmart appealed that order and the
25 Ninth Circuit consolidated that appeal with two other seating cases for oral argument on
26 December 2, 2013. Those cases were *Kilby v. CVS Pharmacy Inc.,* No. 12-56130 (9th Cir.)
27 and *Henderson v. JPMorgan Chase Bank,* No. 13-56095 (9th Cir.). In those two other cases,
28 the district court, had denied class certification. *See Kilby v. CVS Pharmacy, Inc.,* No.

09CV2051-MMA KSC, 2012 WL 1969284 (S.D. Cal. May 31, 2012), *rev'd and remanded,* 654 F. App'x 285 (9th Cir. 2016) and *Henderson v. JPMorgan Chase Bank,* No. CV113428PSGPLAX, 2013 WL 12126748 (C.D. Cal. Mar. 4, 2013), *rev'd and remanded sub nom. Henderson v. J.P. Morgan Chase Bank, N.A.,* 651 F. App'x 669 (9th Cir. 2016).

Following oral argument, the Ninth Circuit certified questions to the California Supreme Court in the *CVS* and *Chase* cases. The Ninth Circuit ordered that the *Brown v. Walmart* appeal be held pending the California Supreme Court's ruling on *CVS* and *Chase*. On April 4, 2016, the California Supreme Court decided *Kilby v. CVS Pharmacy, Inc.,* 63 Cal.4th 1 (2016), and construed the language of the applicable Wage Orders. Following that ruling, the circuit panel in *Walmart* affirmed this Court's class certification order and remanded the action to this Court. *See Brown v. Wal–Mart Stores, Inc.,* 651 F. App'x 672 (9th Cir. 2016).

Two years of heavy litigation followed, including motions to dismiss and motions for summary judgment. In the expert phase of the action, this Court sanctioned Walmart for providing materials to its ergonomic expert that were never provided to Plaintiffs during discovery. Then, after two mediations, the parties settled in late 2018.

### B.     The Settling Parties' Efforts to Resolve the Seating Claim

The Court denied Plaintiffs' initial motion for preliminary approval. At that initial preliminary approval hearing, the Court expressed concern that the Seating Pilot Program, set forth in Section 5, permitted Walmart to unilaterally discontinue the program, with no notice required. (Doc. No. 286, at 22-27.) The Court also questioned how the Seating Pilot Program would be enforced, since the terms gave Walmart full discretion on implementation, including not providing seats if it determined that seating conflicted with stores' "operational needs." (*Id.,* at 27-37.) At one point, the Court asked, "Pardon me for being flip, but how does this get enforced? What happens if Wal-Mart in month 25 says, you know what, our – you know, it's no longer congruent with our business practices… what happens?" Class counsel responded, "The enforcement mechanism would be that they would be sued again." (*Id.,* at 34:17-35:4.) The Court made clear it wanted changes to the Seating Pilot Program:

> As I said, I want to make sure that this is enforceable. So I would invite you to look at that paragraph, counsel, and see if that might need some adjusting, Mr.

> Jones and Mr. Doellinger, and if you could incorporate some other mechanism in that that captures Wal-Mart's ability to come back and revisit this, and it might be this paragraph if the court retains jurisdiction over this.
>
> (*Id*. at 46:4-10.)

To address the Court's stated concerns, the settling parties significantly revised the Settlement Agreement. The new agreement of November 28, 2018 dramatically modified the Seating Program. Section 5 is set forth here for the convenience of the Court:

> 5.    TERMS OF SETTLEMENT
>
> Subject to the other terms and conditions of this Agreement, and subject to Court approval, Walmart agrees to the following:
>
> 5.1    Seating Program
>
> 5.1.1    Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands, as set forth below.
>
> 5.1.2    Within twenty (20) days of the Settlement Effective Date, Walmart will provide notice to current California front-end cashiers of the availability of seats for them to use while working at front-end checkstands. Walmart will also provide notice to associates who are either subsequently hired as a California front-end cashiers, or who transfer into the front-end cashier position. Notice(s) provided pursuant to this Section 5.1.2 shall inform cashiers (i) that Walmart provides seats to those California front-end cashiers who choose to use them while working at the front-end checkstands, (ii) how to obtain a seat, (iii) that they will not be retaliated against for requesting or using a seat, and (iv) that, if they use a seat pursuant to this Section 5.1, they will be held to the same performance, productivity and customer service standards and requirements as all other front-end cashiers.
>
> 5.1.3    Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands within ninety (90) days from the date notice is provided to current California front-end cashiers pursuant to Section 5.1.2. In the event Walmart needs additional time to meet its obligations, the Parties shall meet and confer in good faith and Class Counsel's agreement to a reasonable request for extension shall not be unreasonably withheld.
>
> 5.1.4    Walmart will advise Class Counsel in writing of the following dates: (i) the date that Walmart provides notice to front-end cashiers of the availability of seating in accordance with Section 5.1.2 ("the Initial Notice Date"); and (ii) the date of completion in accordance with Section 5.1.3.
>
> 5.1.5    Walmart's obligation to provide seats to front-end cashiers is an ongoing obligation, provided, however, that if, in the exercise of its good faith business judgment pursuant to applicable California law and based on objective evidence derived from those front-end cashiers who actually use seats at front-end checkstands in California, Walmart determines that the provision of seats: (i) results in increased injuries or accidents to front end cashiers or customers; (ii) unduly interferes with the standing tasks of front-end cashiers; (iii) results in an

> increase in the frequency of transitioning from sitting to standing which interferes with the work; (iv) negatively impacts the quality and effectiveness of the cashier's overall job performance; or (v) is no longer applicable due to a change in the law, Walmart has the option to stop providing seats to front-end cashiers for their use at the front-end checkstands.
>
> 5.1.6   If Walmart elects to stop providing seats in accordance with Section 5.1.5, Walmart will communicate its decision to (a) its California front-end cashiers that seats will no longer be provided for them; (b) Class Counsel; and (c) the LWDA. The notice, which shall include the reasons for Walmart's decision, shall be provided to Class Counsel and the LWDA at least one hundred (100) days before the termination, and to California frontend cashiers at least fourteen (14) days before the termination. Prior to termination and if requested by Class Counsel, Walmart shall meet and confer in good faith with Class Counsel regarding the reasons for its determination and, if requested by Class Counsel, shall provide Class Counsel with the information/evidence supporting Walmart's determination as set forth in section 5.1.5.
>
> 5.1.7.  The Parties further agree that notice to Class Counsel under 5.1.6 need only be provided for the first four (4) years following the Initial Notice Date, provided, however, that Walmart's obligation to provide notice to Class Counsel after the initial four (4) year period shall continue for a maximum of four (4) additional two-year periods thereafter provided that Class Counsel informs Walmart, in writing, that they wish to continue to receive notice by no later than the anniversary of the Initial Notice Date in the year Walmart's notice obligation to Class Counsel is set to expire.
>
> 5.1.8   The Class Representative, on behalf of herself and in her capacity as the representative of the State of California, agrees that Walmart has complied with its seating obligations owed to cashiers at the front end checkout under Section 14 of Wage Order 7-2001, California Labor Code Section 1198 and/or California Labor Code Section 2699 provided that Walmart meets its obligations under Section 5.1 and limited to such time that Walmart provides seats to California front-end cashiers who choose to use such while working at California Walmart front-end checkstands.

(Doc. 288-2, at 7-9.)

The modifications were major, eliminating conditions that Walmart could have unilaterally circumvented. For instance, the original Agreement permitted Walmart to delay rollout of the program due to unspecified "operational needs." (Doc. No. 282-2, ¶5.1.1.) And it permitted Walmart to unilaterally terminate the program with only notice during the first two years, and no notice after two years. (*Id.*) Under the new Settlement Agreement, Walmart was obligated to, among other things: provide notice to all front-end cashiers as to the availability of seats, including those later hired (*Id.,* ¶5.1.2); provide seats to all cashiers who choose to use them within 90 days of notice (*Id.,* ¶5.1.3); terminate the program only if it can provide "objective" evidence that supports a specified basis, such as increased injuries and only after

providing 20 days advance notice to front-end cashiers, and 100 days advance notice to Class Counsel and the LWDA. (*Id.,* ¶¶ 5.1.5-5.1.6.)

Significantly, Walmart's obligation to provide seats was under a new legal standard. The original Settlement Agreement stated that Walmart would provide seats to cashiers "[w]ho express a desire to use such while working at California Walmart front-end checkstands as part of a Seating Pilot Program." (Doc. No. 288-2, ¶5.1.1.) In other words, this provision simply obligated Walmart to provide seats to those who actually request a seat. Of course, under Wage Order §14 the employer is under an affirmative duty to provide seats. See *Bright v. 99¢ Only Stores,* 189 Cal. App. 4th 1472 (2010) and *Home Depot U.S.A., Inc. v. Superior Court,* 191 Cal. App. 4th 210 (2010), *as modified on denial of reh'g* (Jan. 10, 2011). Workers never have to ask a manager. *Green v. Bank of America, N.A.,* 512 F. App'x 665 (9th Cir. 2013).[3] The new Settlement Agreement stated that "Walmart will provide seats to those California front-end cashiers who choose to use them…," and that this is an "ongoing obligation." (Doc. No. 288-2, ¶¶5.1.1, 5.1.5.) This is congruent with the Wage Order and appellate caselaw. In other words, Walmart had to provide the front end with enough suitable seats that any cashier choosing to use one could simply take it.

At the second preliminary approval hearing, class counsel emphasized "that this is an ongoing obligation that Wal-Mart has agreed to, to provide stools to its cashiers should they choose to use them… [s]o we wanted to make that very clear for the public and anyone who had a question about that particular issue." (Doc. No. 295, at 7:2-4.) Class Counsel also explained that new the Seating Program makes it difficult for Walmart to renege because "it has to, number one, be based on objective evidence, and that's actually stronger than what the California Supreme Court said in the *Kilby* case." (*Id.* at 7:12-14.) Satisfied with the changes, the Court granted preliminary approval. (Doc. No. 292.)

///

---

[3] Hourly employees working in stores that had banned seating for decades would be extremely reticent to approach a manager to request a seat. As one cashier put it succinctly, "If you ask for a seat, you are s\*\*t."

In moving for final approval, Class Counsel wrote, with no objection from Walmart, "Walmart will begin providing seats to its front-end cashiers for their use, on an **on-going basis**, should cashiers choose to use a seat." (Doc. No. 298, 7:8-10.) (original emphasis). According to Class Counsel, "[t]he seating program will benefit not only the 20,215 currently employed Class Members, but also those California cashiers who become employed by Walmart in the future" and "ensures that the health and safety priorities underpinning the enactment of section 14(a) of Wage Order 7-2001 will be realized." (*Id.* at 7:24-8:3) (citing *Kilby v. CVS Pharmacy Inc.,* 63 Cal.4th 1, 11 (2016)).

Counsel for Walmart again did not disagree when, at the final fairness hearing, Class Counsel stated that the Seating Program justified approval of the Settlement:

> First and foremost, the settlement results in a complete policy change by Wal-Mart under which it will now begin providing seats to its California cashiers. We were able to achieve the goal that we envisioned when we first filed that case, this case about a decade ago. Change isn't always fast. Change takes time, but in this particular case change will occur nonetheless. It's no small feat to have achieved the provision of seats for all of the cashiers in the 280 stores, plus or minus, that Wal-Mart has throughout the State of California.

(Doc. No. 304, at 7:1-7.)

The Court found the Seating Program, which it termed "injunctive relief" reasonable. The final approval order and judgment was entered on March 28, 2019. (Doc. 302). Paragraph 14 of the Judgment stated in pertinent part that the Court retained jurisdiction over "(c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement…" (Doc. No. 302, 6:24-27.)

On July 11, 2019, the parties submitted a report to the Court, which addressed the disbursement of funds by the claims administrator. Significantly, two attorneys from Greenberg Traurig, LLP, Counsel for Walmart, wrote: "Defendant further states that it is implementing the Seating Program in accordance with Section 5.1 of the Settlement Agreement. Notice of the Seating Program was provided as required within 20 days of the Settlement Effective Date, **and seats have been made available at all California Walmart retail locations**." (Doc. No. 305, at 2:13-16.) (emphasis added). It now appears that this written representation was completely false.

### C.  Walmart Is Violating the Judgment By Failing to Provide Seats To Front-End Cashiers

Movants are current or former California front-end cashiers employed by Walmart. Barbara Waters began working at Walmart's Compton store location in January 2020, until she took COVID-related leave on April 21, 2020. Her Declaration is filed concurrently. Essentially, she declares that Walmart did not give her notice that a seat would be provided, that she could use one, or any other information regarding seating. She never observed any front-end cashiers using a seat or a stool while working at Walmart.

Samantha Fernandez is a current employee at Walmart's Chula Vista store location. She has worked both as a Customer Service Desk Associate and as a Front-End Cashier. While working at the customer service desk, she also would typically work several hours as a front-end cashier. Her Declaration is filed herewith. It recites that she does not recall receiving any notices about the availability of a seat and at her store she has never seen seats at or near the front-end checkstands. She also declares that she has never seen a seated front-end cashier.

Destiney Lopez worked as a Front-End Cashier at Walmart's Fresno location between approximately August 2018 to August 2019. Her Declaration is filed herewith. It recites that she does not recall receiving any notice from Walmart regarding seat availability. When she actually requested a seat, she was told by her supervisor that absent a doctor's note, Walmart would not permit seating for cashier duties. She states that in February 2019, she provided Adriana, the Personnel Manager, a doctor's note, but it took about three weeks for Walmart to provide her with a seat. She attaches to her Declaration, as Exhibit 1, a copy of the note. She also declares that Stephanie, the Customer Service Manager, told other front-end cashiers that seating was allowed for only those with medical restrictions and that she never observed any other seated front-end cashiers during her employment using a seat or a stool.

April Swoboda worked first for Walmart at its Rohnert Park location between approximately September 2018 to January 2019. Later, she worked at the Walmart's Rialto store location between approximately March 16, 2020 to May 31, 2020. Both times she worked as a Front-End Cashier. In April and/or May of 2020, she requested a seat because she

was pregnant and her feet were swelling. In her Declaration, which is filed herewith, she states that she made such a request on three separate occasion to three different managers (Krystal, Austin, and Julia). None of these managers ever provided her with a seat. She declares that there were five other pregnant employees working at the same time that she was pregnant. Because there were not enough stools for all, she only had the opportunity to use a backless metal stool with a small cushion on one occasion.

Investigation has also established that Walmart has never given notice as required under ¶5.1.6 to Class Counsel or the cashiers that it was terminating the mandated Seating Program. The real question Movants' counsel has is whether Walmart ever really started the Seating Program or has Walmart been defrauding everyone since 2018?

### III. ARGUMENT

#### A. This Court Can And Should Issue Sanctions For Violating Its Order

##### 1. The Court Retained Jurisdiction To Enforce Its Judgment

A district court retains jurisdiction to enforce its judgments. *Hook v. State of Arizona, Dep't of Corrections,* 972 F.2d 1012, 1014 (9th Cir.1992). And district courts have the "jurisdiction to resolve the dispute as to whether [a defendant] complied with the terms of the settlement." *Salimi v. BMW Fin. Servs. NA, LLC*, No. 12-CV-01754-JSW, 2017 WL 4570367, at *6 (N.D. Cal. Sept. 29, 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994)).

Jurisdiction exists here because the parties agreed to the continued jurisdiction of this Court and a statement of continued jurisdiction was set forth explicitly in the Court's Judgment.

> 14. Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Settlement Agreement; (b) distribution of the Class Settlement Amount, the LWDA Payment, the Enhancement Payments and the Attorneys' Fees and Litigation Expenses Amount; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement and the Settlement, and the administration of Claims submitted by Settlement Class Members. The time to appeal from this Judgment shall commence upon its entry.

///

Federal Rule of Civil Procedure 70(e) provides that a judgment may be enforced for noncompliance with a specific act by holding that party in contempt.

> Rule 70. Enforcing a Judgment for a Specific Act
>
> (a) Party's Failure to Act; Ordering Another to Act. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done- at the disobedient party's expense- by another person appointed by the court. When done, the act has the same effect as if done by the party.
>
> \*\*\*
>
> (e) Holding in Contempt. The court may also hold the disobedient party in contempt.

District courts in this Circuit have frequently issued contempt orders against party for failure to comply with an express term of an order, consent decree, or judgment. Because the Court expressly reserved jurisdiction to enforce the Settlement Agreement and make orders in furtherance of that power, the Court has the power to issue an order against Walmart for contempt.

### 2. Movants Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda Have Standing

Although the Movants were not named plaintiffs, Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda have standing to seek relief because they were either *Brown* Class Members or intended third party beneficiaries under the settlement agreement and under the Judgment. Because Movants are third party beneficiaries of the Settlement Agreement, they may seek to enforce that agreement pursuant to Federal Rule of Civil Procedure 71.

> Rule 71. Enforcing Relief for or Against a Nonparty
>
> When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party.

Third party beneficiaries have standing to enforce a settlement agreement or a consent decree. *See Hook*, 972 F.2d at 1014 (holding that intended third party beneficiaries of a consent decree have standing to enforce that decree because "[co]ntract principles are

11

generally applicable in our analysis of consent decrees, provided contract analysis does not undermine the judicial character of the decree.").

Under California law "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir.1985) California Civil Code section 1559 provides that a "contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." A third party beneficiary to a contract generally has standing to enforce the contract. *Goonewardene v. ADP, LLC*, 6 Cal.5th 817, 826–27 (2019); *see* Cal. Civ. Code §1559. For a third party to have standing, the express provisions of the contract and the relevant factual circumstances under which the contract was agreed to must establish that (1) the third party would in fact benefit from the contract, (2) a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) permitting a third party to bring its own breach-of-contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *Goonewardene*, 6 Cal.5th at 829–30.

There is no doubt that movants are third party beneficiaries under both Ninth Circuit precedent and California law. The Settlement Agreement is a classwide settlement that contains a consent decree – the Seating Program – that was to benefit all Class Members. Moreover, future employees are expressly named as beneficiaries of the Seating Program (Doc No. 288-2, ¶5.1.2.) In her final approval motion, Plaintiff Williamson confirmed that "[t]he seating program will benefit not only the 20,215 currently employed Class Members, but also those California cashiers who become employed by Walmart in the future." (Doc. No. 298, at 7:24-25.)

This Court at final approval expressly found future employees to be beneficiaries of the Settlement, even though not class members: "The employees and future employees of Wal-Mart will benefit from this settlement. The seating arrangements have already been engaged, as I understand, by Wal-Mart and many of its stores and will continue to do so. The oversight

subsequent to the settlement ensures that future employees will have access to proper seating subject to discussion with their employer, Wal-Mart… ." (Doc. No. 304, at 32:16-32.) Thus, both *Brown* class members and those employed as front-end cashiers are third party beneficiaries with standing to enforce the settlement.

### B. Movants Have Provided Clear And Convincing Evidence That Walmart Is In Contempt Of Court

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990), quoting *Shillitani v. United States,* 384 U.S. 364, 370 (1966). The Court may issue a contempt order if a party "(1) [ ] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A district court "has wide latitude in determining whether there has been a contemptuous def[ianc]e of its order." *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992) (internal quotation marks omitted). The moving party must demonstrate by clear and convincing evidence that the alleged contemnor violated "a specific and definite order of the court." *Id*. at 856 n.9. The burden then shifts to the opposing party to demonstrate that "they took every reasonable step to comply." *Id*. The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck*, 10 F.3d at 695.

In this context, contempt consists of disobedience of a court order "by failure to take all reasonable steps within the party's power to comply." *Id.* (emphasis added); *see also Lasar v. Ford Motor Co*., 399 F.3d 1101, 1118 (9th Cir. 2005) ("'[t]he power to punish for contempts is inherent in all courts'") (quoting *Ex parte Robinson*, 86 U.S. 505, 510 (1873)). Walmart has violated, and continues to violate, the Judgment (which incorporates the Settlement Agreement) without substantial justification. Under the Settlement Agreement, Walmart has had an affirmative, "ongoing obligation" to provide seats for all front-end cashiers who choose to have them.

It appears that by filing the Status Report of July 11, 2019 (Doc. No. 305), Walmart through its counsel deceived this Court and Class Counsel.

Dated: August 11, 2020                                       Respectfully submitted,

                                                             By:  /s/ Kevin J. McInerney
                                                                  Kevin J. McInerney


Dated: August 11, 2020                                       Respectfully submitted,

                                                             CAPSTONE LAW APC

                                                             By: /s/ Melissa Grant
                                                                 Melissa Grant
                                                                 Bevin Allen Pike
                                                                 Orlando Villalba
                                                                 Jamie Greene

                                                             *Attorneys for Movants*