UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NISHA BROWN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORE, INC.,<br><br>Defendant. | Case No. 5:09-cv-03339-EJD<br><br>**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 306, 320, 332 |

This class action settled in early 2019. An Order and Final Judgment Approving Settlement was issued on March 28, 2019 ("Judgment"). Dkt. No. 302. On August 11, 2020, Barbara Waters, Samantha Fernandez, Destiney Lopez, and April Swoboda (collectively "Movants") filed a motion for an Order to Show Cause ("Motion") why Defendant Walmart Inc. ("Walmart") should not be sanctioned for allegedly violating the Judgment by failing to provide seats to front-end cashiers. Dkt. No. 306. Movants request that the Court order Walmart to respond promptly to "limited discovery regarding its apparent noncompliance" and to show cause why monetary sanctions should not be imposed. *Id.*

Movants are not class representatives, nor are they represented by Class Counsel. Nevertheless, Movants represent that they are members of the class or intended third party beneficiaries under the settlement, and accordingly have standing to seek relief for the alleged violation.

Walmart filed an opposition on August 25, 2020. Dkt. No. 317. Movants filed a reply on September 1, 2020. Dkt. No. 318. Walmart next filed an administrative motion for leave to file a sur-reply (Dkt. No. 320) and objections to the reply (Dkt. No. 321) to address new evidence and

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
1

arguments in Movants' reply, and Movants filed an opposition to the administrative motion (Dkt. No. 322). The Court agrees with Walmart that the reply presents new evidence and argument, and therefore grants Walmart's administrative motion.

On January 5, 2021, Movants filed an administrative motion to submit supplemental evidence. Dkt. No. 332. That motion is denied as untimely.

The Motion is scheduled for hearing January 21, 2021 at 9:00 a.m. The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the motion will be denied.

**I.     BACKGROUND**

One of the provisions of the settlement in this case requires Walmart to implement a Seating Program.

> 5.1.1 Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands, as set forth below.
>
> 5.1.2 Within twenty (20) days of the Settlement Effective Date, Walmart will provide notice to current California front-end cashiers of the availability of seats for them to use while working at front-end checkstands. Walmart will also provide notice to associates who are either subsequently hired as a [sic] California front-end cashiers, or who transfer into the front-end cashier position. Notice(s) provided pursuant to this Section 5.1.2 shall inform cashiers (i) that Walmart provides seats to those California front-end cashiers who choose to use them while working at the front-end checkstands, (2) how to obtain a seat, (iii) that they will not be retaliated against for requesting or using a seat, and (iv) that, if they use a seat pursuant to this Section 5.1, they will be held to the same performance, productivity and customer service standards and requirements as all other front-end cashiers.
>
> 5.1.3 Walmart will provide seats to those California front-end cashiers who choose to use them while working at the front-end checkstands within ninety (90) days from the date notice is provided to current California front-end cashiers pursuant to Section 5.1.2. . . .
>
> 5.1.4 Walmart will advise Class Counsel in writing of the following dates: (i) the date that Walmart provides notice to front-end cashiers of the availability of seating in accordance with Section 5.1.2 ("the Initial Notice Date"); and (ii) the date of completion in accordance with Section 5.1.3.
>
> 5.1.5 Walmart's obligation to provide seats to front-end cashiers is an

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
2

ongoing obligation, provided, however, that if, in the exercise of its good faith business judgment pursuant to applicable California law and based on objective evidence derived from those front-end cashiers who actually use seats at front-end checkstands in California, Walmart determines that the provision of seats: (i) results in increased injuries or accidents to front end cashiers or customers; (ii) unduly interferes with the standing tasks of front-end cashiers; (iii) results in an increase in the frequency of transitioning from sitting to standing which interferes with the work; (iv) negatively impacts the quality and effectiveness of the cashier's overall job performance; or (v) is no longer applicable due to a change in the law, Walmart has the option to stop providing seats to front-end cashiers for their use at the front-end checkstands.

5.1.6 If Walmart elects to stop providing seats in accordance with Section 5.1.5, Walmart will communicate its decision to (a) its California front-end cashiers that seats will no longer be provided for them; (b) Class Counsel; and (c) the LWDA. The notice, which shall include the reasons for Walmart's decision, shall be provided to Class Counsel and the LWDA at least one hundred (100) days before the termination, and to California frontend cashiers at least fourteen (14) days before the termination. Prior to termination and if requested by Class Counsel, Walmart shall meet and confer in good faith with Class Counsel regarding the reasons for its determination and, if requested by Class Counsel, shall provide Class Counsel with the information/evidence supporting Walmart's determination as set forth in section 5.1.5.

5.1.7. The Parties further agree that notice to Class Counsel under 5.1.6 need only be provided for the first four (4) years following the Initial Notice Date, provided, however, that Walmart's obligation to provide notice to Class Counsel after the initial four (4) year period shall continue for a maximum of four (4) additional two-year periods thereafter provided that Class Counsel informs Walmart, in writing, that they wish to continue to receive notice by no later than the anniversary of the Initial Notice Date in the year Walmart's notice obligation to Class Counsel is set to expire.

5.1.8 The Class Representative, on behalf of herself and in her capacity as the representative of the State of California, agrees that Walmart has complied with its seating obligations owed to cashiers at the front end checkout under Section 14 of Wage Order 7-2001, California Labor Code Section 1198 and/or California Labor Code Section 2699 provided that Walmart meets its obligations under Section 5.1 and limited to such time that Walmart provides seats to California front-end cashiers who choose to use such while working at California Walmart front-end checkstands.

Dkt. No. 288-2 at 7-9 (hereinafter Settlement Agreement). The Court retained jurisdiction to enforce the Settlement Agreement.

On April 15, 2019, Walmart began to implement the Seating Program. Dkt. No. 328 at 17.

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**

3

Walmart delivered 1,980 stools to 282 California Walmart locations—eight stools per Superstore and four stools per Neighborhood Market. *Id*. Walmart has ordered 132 additional stools for the Seating Program, accommodations, and the photo center, collectively. *Id*. at 19.

Walmart also provided notice to "then current front-end cashiers of the availability of seats for them to use while working at frontend check stands." *Id*. Walmart also provided information to California Store Managers regarding the implementation of the Seating Program through Management Guidelines for the California Seating Program (the "Management Guidelines"), which are also available to California Store Managers through Walmart's intranet, referred to as "The Wire." *Id*. at 18.

At the Court's direction, the parties and Movants met and conferred, after which Class Counsel confirmed the following:

- Walmart represented to Class Counsel in April of 2019 that it began to implement the Seating Program in accordance with Section 5.1 of the Settlement Agreement and that it had delivered a large number of stools to its California Walmart locations;

- The Seating Program approved by the Court is still in effect. Walmart has not notified Class Counsel, pursuant to Section 5.1.6 of the Settlement Agreement, that it has elected to stop providing stools to front-end cashiers;

- Walmart represented to Class Counsel that it provided Notice of the Seating Program to front-end cashiers. Although the Settlement Agreement was silent on how Notice was to be provided, Walmart represented that Notice was provided through a training module and that front-end cashiers were asked to acknowledge that they had received and understood the Notice;

- The Notice was provided by Walmart to Class Counsel. The Notice advised the frontend cashiers about how to obtain a seat. The Notice further advised that front-end cashiers would not be retaliated against for using a seat and front-end cashiers who choose to use seats would be held to the same performance, productivity and customer service standards and requirements as all other front-end cashiers;

- In addition to the Notice provided to front-end cashiers, Walmart also represented that it provided additional instructions to its California Managers regarding the specifics of the Seating Program. These instructions were provided to Class Counsel and contain the information identified by Walmart in its section of this Joint Statement;

- Outside of the two calls referenced above, Class Counsel has not received any other calls, emails, or correspondence from front-end cashiers alleging that Walmart is not providing front-end cashiers with stools for their use at

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
4

the front-end registers, that Walmart is impeding front-end cashiers from using stools, that there are not a sufficient number of stools available for their use, or that Walmart is requiring a doctor's note prior to providing them with a stool;

- During periodic visits to various California Walmart stores since the implementation of the Seating Program, Class Counsel have observed individuals working at the front-end registers (a) using stools during the performance of their work, and (b) not using stools during the performance of their work;

- Class Counsel have discussed the allegations raised by Movants with counsel for Walmart and Walmart has provided Class Counsel with information regarding Movants and their declarants.

- Following the filing of Movants' Motion, Class Counsel spoke to Walmart's Counsel and requested that Walmart (a) reissue Notice to the front-end cashiers explaining the right of front-end cashiers to use seats if they choose to do so, and (b) reissue the instructions provided to Managers regarding the Seating Program. Walmart's Counsel later advised Class Counsel that Walmart had reissued Notice to front-end cashiers and the instructions to its Managers;

- Class Counsel also requested Walmart to provide Class Counsel with an inventory of the number of stools available for front-end cashier use at each of their California stores. Class Counsel has not yet received a response to this request.

Dkt. No. 328 at 8-10. During a joint telephone conference, Walmart's counsel confirmed the following:

- Walmart had represented to Class Counsel that it had provided the Notice to front-end cashiers as required by the Settlement Agreement;

- Class Counsel had read the Notice and that it informed front-end cashiers (a) how to obtain a seat, (b) that Walmart would not retaliate against those front-end cashiers who chose to use a seat, and (c) that the front-end cashiers who chose to use seats would be held to the same performance, productivity and customer service standards and requirements as all other front-end cashiers;

- Walmart had represented to Class Counsel that the Seating Program was still in effect and had not been modified;

- Walmart had provided instructions to its Managers regarding the implementation of the Seating Program and that Class Counsel had reviewed the instructions that Walmart represented were provided to its California Managers; and

- Class Counsel asked Defendant to confirm where the seats are inventoried/stored at California stores. As Walmart's statement points out, its Guidelines state that stores should locate seats/stools in designated areas in proximity to the front-end (i.e., customer service desk area, tobacco bullpen,

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
5

etc.).

*Id*. at 11-12.

## II. STANDARDS

Courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990), quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." *FTC v. Affordable Media*, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & County of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir. 1992)). The contempt need not be willful; however, a party should not be held in contempt if the party's action appears to be based on a good faith and reasonable interpretation of the court's order. *In re Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "The decision to find a party in contempt is within the discretion of the district court." *Wildearth Guardians v. Jackson,* 2011 U.S. Dist. LEXIS 148378, at *11 (N.D. Cal. Dec. 27, 2011) (citing *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004)).

## III. DISCUSSION

### A. Movants' Evidentiary Objections

Movants raise several objections to the declarations of Melinn Mitchell ("Mitchell"): lack of foundation; best evidence; hearsay; improper legal conclusion; and speculation. These objections are overruled. Mitchell is Project Manager III, U.S. Ethics & Compliance for Walmart. In that capacity, since 2018, she has responsibility for development and/or revision of compliance programs and training content in collaboration with business partners. Dkt. Nos. 317-2, 320. She represents that the facts set forth in her declarations are based on her personal knowledge or on information gathered, with the assistance of other employees, from records created and maintained in the ordinary course of business. *Id*. Further, she represents that the facts stated in her declarations are true and correct to the best of my knowledge, information and belief. *Id*. The

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**

6

declarations are also executed under penalty of perjury.

Movant also objects to portions of the declaration of Naomi Beer ("Beer") on several grounds: improper legal conclusions; lack of personal knowledge and foundation; hearsay; best evidence; and speculative. Movants' objections are deemed moot because the Court finds it unnecessary to consider the allegedly objectionable portions of Beer's declaration in ruling on Movants' motion.

### B.     Walmart's Evidentiary Objections

Walmart raises several objections to the information gathered by Movants' investigator, Mark Woodward, as well as the declarations of Movants' counsel, Kevin McInerney ("McInerney") and exhibits thereto: lack of relevance; lack of personal knowledge and foundation; improper legal conclusion; and hearsay. The hearsay objection is overruled based on the exception recognized in Federal Rule of Evidence 803(1). The remaining objections are overruled because they go to the weight, and not to the admissibility, of the evidence.

Walmart also objects to portions of the declarations of Samantha Fernandez ("Fernandez"), Destiny Lopez ("Lopez"), April Swoboda ("Swoboda"), Norma Izaguirre ("Izaguirre"), and Eduardo Romero ("Romero") as lacking foundation, not based on personal knowledge and irrelevant. The objections to these three declarations are overruled because they go to the weight, and not to the admissibility, of the evidence. The hearsay objection to Swoboda's recollections regarding pregnant employees is sustained: Federal Rule of Evidence 803(3) and 807(1) and (1) are inapplicable.

### C.     The Alleged Violations of the Settlement Agreement

Turning to the merits, the Court finds that Movants have not presented sufficient evidence, much less clear and convincing evidence, to warrant the issuance of an order to show cause for purported violations of the Settlement Agreement. Movants assert two fundamental violations of the Settlement. Dkt. No. 328 at 14. First, Movants contend that the Settlement Agreement has been violated because seating is tied to positions (i.e., front-end cashier) rather than location (i.e. front-end check stand) without regard to position. The Court disagrees. The Settlement

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**

7

1  Agreement requires that seats be provided to front-end cashiers who have asked for a seat to use
2  while working at a front-end checkstand.  Although the Settlement Agreement does not include a
3  definition of front-end cashier, the Court concludes that the term means a person employed "in the
4  position of front-end cashier," which is consistent with the Class definition.  Dkt. No. 288-2 at 4.
5  The Settlement Agreement does not require Walmart to provide seats to persons employed in other
6  positions with different titles who are called upon to fill in at the cashier.  Movants' contention
7  that employees who actually worked at the front end checkstands are *de facto* front-end cashiers
8  entitled to notice and the option to use seats is not supported by the plain language of the
9  Settlement Agreement.

10  Second, Movants contend that the Settlement Agreement has been violated because
11  covered employees are required to "request" a seat.  Dkt. No. 328 at 14.  The Court rejects this
12  argument.  The Settlement Agreement clearly contemplates front-end cashiers requesting a seat.
13  Requiring them to do so is not a violation of the Settlement.  Movants' assertion to the contrary is
14  baseless.

15  Movants also rely on five declarations of former or current Walmart employees to establish
16  the alleged violations of the Settlement Agreement.  Barbara Waters ("Waters") began working as
17  a front-end cashier at Walmart's Compton store in January 2020 and she took COVID-related
18  leave on April 21, 2020.  Dkt. No. 306-1 at 13.  As such, she has standing to assert a violation of
19  the Settlement Agreement.

20  Waters "declares that Walmart did not give her notice that a seat would be provided, that
21  she could use one, or any other information regarding seating." *Id*.  Walmart's records show,
22  however, that Waters viewed the training module and confirmed she received and understood the
23  notice of her right to request a stool.  Dkt. No. 317-2, ¶ 11.  Her declaration is insufficient to
24  warrant issuance of an order to show cause.

25  Fernandez began working for Walmart in March of 2017 and is a current employee.  Dkt.
26  No. 318-2, ¶ 2.  She has worked as a Customer Service Desk Associate and as a Front-End
27  Cashier.  Dkt. No. 306-1 at 13.  She "does not recall receiving any notices about the availability of

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
8

a seat and at her store she has never seen seats at or near the front-end checkstands." *Id*. Walmart's records, however, indicate that Fernandez worked as a front-end cashier from March 17, 2017 through September 30, 2017, which was prior to the implementation of the Seating Program. Dkt. No. 317-2, ¶ 14. As of September 30, 2017, Fernandez was no longer a front-end cashier. *Id*. ¶ 15. Her new position was and is to this day a courtesy desk associate. *Id*. Because the courtesy desk associate position is not covered by the Settlement Agreement, Fernandez lacks standing to assert a violation of the Settlement Agreement, even though she works at least two hours per day as a cashier at a front-end checkstand. Fernandez's declaration is insufficient to warrant issuance of an order to show cause.

Lopez worked at Walmart from approximately August 2018 to August 2019 in the capacity of a Front-End Cashier throughout her employment. Dkt. No. 306-7, ¶¶ 2-3. As such, she has standing to assert a violation of the Settlement Agreement. She "does not recall receiving any notice from Walmart regarding seat availability." *Id*. ¶ 3. She also declares that she was "not provided with any information regarding seating at front-end checkstands." *Id*. Her inability to recall receiving notice or information is not evidence of a breach of the Settlement Agreement. And although Lopez does not recall receiving notice or information about seating, Walmart's records indicate that she viewed the training module and executed the acknowledgment confirming that she received and understood the notice of her right to request a stool. Dkt. No. 317-2, ¶ 9.

Lopez declares that she requested a seat, but was told by her supervisor that absent a doctor's note, Walmart would not permit seating for cashier duties. *Id*. ¶4. Lopez, however, does not specify when this particular request was made. Lopez next declares that in February 2019, she provided a doctor's note dated February 11, 2019 to her manager and was eventually provided a seat approximately three weeks later. *Id*. ¶¶5-6. But this happened before the Settlement Agreement went into effect. Final approval of the Settlement Agreement was granted on March 28, 2019. Lopez's declaration is insufficient to warrant issuance of an order to show cause.

Izaguirre worked for Walmart from approximately April 2007 to November 2019. Dkt.

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
9

1   No. 318-4.  She states that she worked as a front-end cashier.   Izaguirre declares that she

2   requested a set and was told she would not be permitted to have one without a doctor's note.  *Id*. ¶

3   3.  It is unclear, however, when this request was made.  She further declares that in July of 2019,

4   she provided her manager with a doctor's note and was given a seat to use at her checkstand for a

5   short period of time.  *Id*. ¶¶ 4-5.

6         Walmart's records indicate that from March 16, 2019 until November of 2019, Izaguirre

7   held the position of Customer Service Desk Associate (Dkt. No. 320 at 17), which is a position

8   that is not covered by the Settlement Agreement of the Seating Program.  Because Izaguirre did

9   not work as a front-end cashier at any point after the Seating Program went into effect under the

10  terms of the Settlement Agreement, she does not have standing to assert a violation of the

11  Settlement Agreement and her claimed request for and denial of a seat necessarily do not establish

12  a violation of the Settlement Agreement.  Izaguirre's declaration is insufficient to warrant issuance

13  of an order to show cause.

14        Romero worked as a front-end cashier from about 2006 to 2010, and again from November

15  to December of 2019.  Dkt. No. 318-5, ¶ 2.  He states he was terminated because he was unable to

16  pass the online training modules and tests.  *Id*. ¶ 3.  He has standing based on his employment as a

17  front-end cashier in 2019.  He declares that he has only see one seated Front-End Cashier, and that

18  the Front-End Cashier and front end greeters had to share one stool.  None of this information

19  establishes a violation of the Settlement Agreement.  Again, the Settlement Agreement requires

20  Walmart to provide seats to front-end cashiers who choose to use them.   Nowhere in Romero's

21  declaration does he claim that he or any other front-end cashier wanted, or requested, a seat at any

22  time during his roughly six weeks of employment in 2019.

23        Romero further declares that he does not recall receiving any notice or information from

24  Walmart about seats being available to cashiers.  *Id*. ¶ 5.  Walmart's records, however, indicate

25  that Romero viewed the training module and on November 19, 2019, executed an

26  acknowledgment confirming he received and understood the notice of his right to request a stool.

27  Dkt. No. 320 at 17.  Romero's declaration is insufficient to warrant issuance of an order to show

28  **CASE NO.:  5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**

cause.

Swoboda worked as a Front-End Cashier between approximately September 2018 to January 2019, and from March 16, 2020 to May 31, 2020. Dkt. No. 306-1 at 13. The first period of employment was prior to the implementation of the Seating Program. Nevertheless, Swoboda has standing to assert a violation of the Settlement Agreement based on her representation that she was employed as a Front-End Cashier between March and May of 2020, which is after the Seating Program was implemented. Swoboda declares that in April and/or May 2020, she requested a seat because she was pregnant and her feet were swelling. Dkt. No. 306-8, ¶ 4. She declares she was never provided with a seat at her front-end check stand in response to her requests. *Id*. Swoboda states that the store only had one backless metal stool with a small cushion available for pregnant employees to use. *Id*. ¶ 5. Swoboda "only had the opportunity to use the stool on one occasion when it happened to be at [her] assigned register one day." *Id*.

Unlike the four previous declarations of current and former Walmart employees, Swoboda's declaration suggests a potential violation of the Settlement Agreement. Walmart argues that Swoboda "has not credibly demonstrated that she properly requested a seat and did not receive one." Dkt. No. 317 at 6. To the contrary, Swoboda specifies she asked for a seat on three separate occasions to three different managers named Krystal, Austin and Julia and was only able to use a stool on one day. Dkt. No. 306-8 at ¶¶ 4-5.

Movants also present information collected by their private investigators as evidence of Walmart's alleged noncompliance:

> In early July 2020, licensed private investigators visited those randomly selected 45 stores and recorded the number of seats present at or near the front checkout stands and the number of seated cashiers. The result of those visits showed that at approximately 419 regular front checkout stations (registers) and 199 cashiers working, only 21 seats were observed at or in the vicinity of a checkout stand, and only 6 seated cashiers were observed. At most Walmart stores in California there are self-checkout point of sale registers referred to as "Scan and Go." A group of these registers, usually 4 to 10, are attended by a cashier. These visits showed that out of 82 cashiers working, only 8 seats were available, and 2 cashiers were seated. In total, there were only 8 seated cashiers observed out of 281 working cashiers, which is only 2.8%. In the 45 stores, only 29 seats were observed at or near

CASE NO.: 5:09-CV-03339-EJD
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
11

these registers, which is only .64 seats per store on average.

Dkt. No. 306-1 at 6. Movants contend that the .64 seats observed per store "has become more significant since Walmart has now disclosed that the Management Guidelines provided to the store managers 'provide that each store manager should designate a storage place for the seats that ensures accessibility during hours of operation, and that they may select a storage area from among the following locations, all located in the front end of the store: the customer service desk, the tobacco bullpen, and unused registers.'" Dkt. No. 328 at 16.

The results of the investigators' seat count fail to establish Walmart violated the Settlement Agreement. The Settlement Agreement does not require Walmart to place a seat at each checkstand or to make sure front-end cashiers choose to use seats. Nor does the Settlement Agreement require Walmart to have available seats "observ[able] at or in the vicinity of a checkout stand" as Movants seem to suggest. That investigators did not observe seats stored at unused registers or other places fails to demonstrate a violation of the Settlement Agreement and is an insufficient basis to issue an order to show cause.

Movants also fault Walmart for failing to provide "suitable" seats as required by the Wage Order. Dkt. No. 306-1 at 7. But Movants do not present any evidence to support their assertion. Finally, Movants assert that "anecdotal conversations with cashiers indicate store managers tell employees that a doctor's note is required to sit." *Id*. These conversations, without more, are insufficient to warrant issuing an order to show cause.

### III. CONCLUSION

The motion for an order to show cause and for discovery is DENIED without prejudice. In the event Movants' counsel uncovers new evidence of a concrete violation of the Settlement, Movants' counsel shall immediately provide all such evidence to Class Counsel and Walmart, after which all parties shall meet and confer in good faith to resolve the alleged violation without court intervention. If after meeting and conferring in good faith, the alleged violation cannot be resolved without court intervention, the parties and/or Movant may seek court assistance.

Although the Court declines to grant Movants' requested relief, the Court finds good cause

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
12

to order Walmart to provide Class Counsel and the Court with an inventory of the number of stools available for front-end cashier use at each of their California stores and to specify for each store where available stools are located. Walmart shall provide the information to Class Counsel no later than January 31, 2021.

Further, no later than January 31, 2021, Walmart shall submit to the Court for *in camera* review the notice that was provided through the training module.

Further, the Court will authorize the deposition of April Swoboda. Any party may notice the deposition of Ms. Swoboda, which shall be conducted via Zoom or other similar technology, and concluded no later than February 26, 2021. Walmart's questioning of the witness shall not exceed four hours.

**IT IS SO ORDERED.**

Dated: January 6, 2021

_____
EDWARD J. DAVILA
United States District Judge

**CASE NO.: 5:09-CV-03339-EJD**
**ORDER DENYING MOTION FOR AN ORDER TO SHOW CAUSE**
13